```
                  UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF NEW YORK


 UNITED STATES OF AMERICA,    *      Docket Number:
                                     22-MJ-00124-HKS-1
                              *
                              *      Buffalo, New York
               v.             *      June 16, 2022
                              *      10:35 a.m.
                              *
 PAYTON GENDRON,              *      INITIAL APPEARANCE
                              *
               Defendant.     *
                              *
 * * * * * * * * * * * * * * *
```

### TRANSCRIPT OF PROCEEDINGS
### BEFORE THE HONORABLE H. KENNETH SCHROEDER, JR.
### UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Government: | TRINI E. ROSS,<br>UNITED STATES ATTORNEY,<br>By JOSEPH M. TRIPI, ESQ.,<br>   BRENDAN T. CULLINANE, ESQ.,<br>   SHAN PATEL, ESQ.,<br>   BRETT A. HARVEY, ESQ.,<br>Assistant United States Attorney,<br>Federal Centre,<br>138 Delaware Avenue,<br>Buffalo, New York 14202,<br>Appearing for the United States. |
| For the Defendant: | FEDERAL PUBLIC DEFENDER'S OFFICE<br>By MARYBETH COVERT, ESQ.,<br>   MARIANNE MARIANO, ESQ.,<br>   ANNE M. BURGER, ESQ.,<br>Assistant Federal Public Defender,<br>300 Pearl Street,<br>Suite 200,<br>Buffalo, New York 14202. |
| The Courtroom Deputy: | LLANE M. GUIDOTTI |

1  Court Reporter:          BONNIE S. WEBER,
2                           Notary Public,
                            Robert H. Jackson Courthouse,
3                           2 Niagara Square,
                            Buffalo, New York  14202,
4                           Bonnie_Weber@nywd.uscourts.gov.

5       Proceedings recorded by mechanical stenography,
              transcript produced by computer.

6

7           (Proceedings commenced at 10:35 a.m.)

8

9       **THE CLERK:**  All rise.

10      The United States District Court for the Western

11  District of New York is now in session.  The Honorable H.

12  Kenneth Schroeder, Jr. Presiding.

13      **THE COURT:**  Be seated, please.

14      **THE CLERK:**  United States versus Payton Gendron,

15  Docket Number 22-MJ-124.  This is the initial appearance.

16      Assistant United States Attorneys Joseph Tripi,

17  Brendan Cullinane, Brett Harvey, Shan Patel, appearing on behalf

18  of the Government.

19      Assistant Federal Public Defenders Anne Burger,

20  MaryBeth Covert and Federal Public Defender Marianne Mariano

21  appearing with defendant.

22      United States probation officer, Lillian Cullin.

23      **THE COURT:**  Good morning.

24      **MR. TRIPI:**  Good morning.

25      **MS. COVERT:**  Good morning.

1   **THE COURT:** Marshal, do we have an overflow area or
2   courtroom operation as well?
3   **US MARSHAL:** Yes, Judge.
4   **THE COURT:** That's being videoed?
5   **US MARSHAL:** Yes.
6   **THE COURT:** It's my understanding also that there are
7   participants by telephone, including international media, who
8   are audibly monitoring today's proceedings.
9   And therefore, I want to admonish all as follows: On
10  behalf of the Court, everyone who is present on or during this
11  video and audio conference is admonished that recordings, any
12  audio or video of this court proceedings, is strictly
13  prohibited.
14  You may not record any audio or video or any part of
15  this proceeding. You may not let anyone else record any audio
16  or video of this court proceeding.
17  There are serious possible sanctions for a violation
18  of these prohibitions on recording, including a finding of
19  contempt of court.
20  Mr. Gendron, you are charged in a criminal complaint
21  as follows: That on or about the date of May 14, 2022, in the
22  County of Erie, in the Western District of New York, you, Payton
23  Gendron, violated Title 18 of the United States Code, Section
24  249(a)(1).
25  There being ten counts of alleged violation of this

1  statute, which involves a hate crime resulting in death.
2          You are also charged with violating Title 18 of the
3  United States Code, Section 249(a)(1) in three additional
4  counts, which involve a hate crime involving bodily injury and
5  attempt to kill.
6          You are also charged having violated Title 18 of the
7  United States Code, Sections 924(c)(1)(A), subdivision three and
8  924(j), subdivision one, in ten counts, being use of a firearm
9  to commit murder during and in relation to a crime of violence.
10         You are also charged with having violated Title 18 of
11 the United States Code, Section 924(c)(1)(A), subdivision three
12 in three counts; that is use and discharge of a firearm during
13 and in relation to a crime of violence.
14         Because of the serious nature of these charges, I want
15 to make sure you fully understand exactly what those statutes
16 that I just quoted say.
17         Section 249(a)(1) reads as follows:  Offenses
18 including actual or perceived race, color, religion or national
19 origin, whoever whether or not acting under color of law
20 willfully causes bodily injury to any person or through the use
21 of fire, a firearm, a dangerous weapon or a explosive or
22 incendiary device attempts to cause bodily injury to any person
23 because of the actual or perceived race, color, religion or
24 national origin of any person; subdivision A, shall be
25 imprisoned not more than ten years, fined in accordance with

1  this title or both.
2         I also want to point out to you that Title 18 of the
3  United States Code, Section 924(c)(1)(A); subdivision three
4  reads as follows:  Except to the extent that a greater minimum
5  sentence is otherwise provided by this subsection or by any
6  other provision of law, any person who during and in relation to
7  any crime of violence or drug trafficking crime, including a
8  crime of violence or drug trafficking crime that provides for an
9  enhanced punishment, if committed, by the use of a deadly or
10 dangerous weapon or device for which the person may be
11 prosecuted in a court of the United States uses or carries a
12 firearm or who, in furtherance of any such crime, possesses a
13 firearm shall in addition to the punishment provided for such
14 crime of violence or drug trafficking crime; subdivision three,
15 if the firearm is discharged be sentenced to a term of
16 imprisonment of not less than ten years.
17        Title 18 of the United States Code, Section 924(j)(1)
18 also provides as follows:  A person who in the course of a
19 violation of subsection C causes the death of a person through
20 the use of a firearm shall, one, if the killing is a murder, as
21 defined in Section 1111 of Title 18, be punished by death or by
22 imprisonment for any term of years or for life.
23        Those are the charges that you are now facing by way
24 of this criminal complaint.
25        **MR. TRIPI:**  Your Honor, if I may --

1          **THE COURT:**  Yes.

2          **MR. TRIPI:**  Just as to the initial charging of

3   249(a)(1), which you read in part, there is an additional

4   portion that says in sum and substance:  If the hate crime

5   results in death that that is punishable by life.

6          I believe you omitted that portion of that statement.

7          **THE COURT:**  I did, but I thought it was going to be

8   covered as well in the possible life or death provision.

9          **MR. TRIPI:**  Sorry.  Thank you.

10         **THE COURT:**  Now, Mr. Gendron, because you are charged

11  presently with a crime, you have the right to remain silent.

12         You cannot be compelled by anyone to answer any

13  questions or make any statements, because anything you might say

14  can be used against you.

15         You also have the right to be represented at all

16  stages of this case by an attorney.  And you have the right to

17  hire an attorney of your choice.

18         But if you cannot afford to hire an attorney because

19  of your financial circumstances, the Court will assign an

20  attorney to represent you.  And the cost for that legal service

21  will be paid by the taxpayers of this country.

22         Do you plan on hiring an attorney of your choice?

23         **THE DEFENDANT:**  No.

24         **THE COURT:**  Are you asking the Court to assign an

25  attorney to represent you, because you cannot afford to hire an

1  attorney?

2  **THE DEFENDANT:** Yes.

3  **THE COURT:** Because you are asking the Court to assign
4  an attorney to represent you, I must first determine whether you
5  qualify financially to have such an assignment made.

6  And the only way I can reasonably do that is by having
7  you fill out a financial affidavit, swear to its contents as
8  being complete and true.

9  You and must also allow me to place you under oath and
10 question you about your financial circumstances.

11 And my questions will be limited solely to your
12 financial circumstances and, therefore, I don't want you to
13 volunteer or say anything other than those which are in response
14 to my questions about your finances.

15 Do you understand?

16 **THE DEFENDANT:** Yes.

17 **THE COURT:** Do you agree to allow me to place you
18 under oath?

19 **THE DEFENDANT:** Yes.

20 **THE COURT:** Do you agree to allow me to question you
21 about YOUR financial circumstances?

22 **THE DEFENDANT:** Yes.

23 **THE COURT:** Do you, Payton Gendron, solemnly swear
24 that the answers you are about to give and make will be the
25 truth, the whole truth and nothing but the truth, so help you

1  God?

2  **THE DEFENDANT:** Yes.

3  **THE COURT:** Because you are now under oath, you must
4  answer each and every one of my questions not only truthfully,
5  but also completely.

6  Because if you should knowingly and/or intentionally
7  answer any question less than truthfully by withholding material
8  facts or information that can result in you being charged with
9  additional crimes of perjury and/or making a false statement.

10  Do you understand?

11  **THE DEFENDANT:** Yes.

12  **THE COURT:** Do we have a financial affidavit for
13  Mr. Gendron?

14  **THE CLERK:** It's on the bench.

15  **THE COURT:** Thank you.

16  Mr. Gendron, I show you what appears to be a financial
17  affidavit in the case of United States versus Payton Gendron,
18  bearing the signature of what appears to be Payton Gendron and I
19  ask you if that's a your signature that appears at the bottom
20  portion of the page.

21  **THE DEFENDANT:** Yes.

22  **THE COURT:** Did you review this financial affidavit
23  with attorneys before you signed it?

24  **THE DEFENDANT:** Yes.

25  **THE COURT:** Did you understand the questions that were

1  being asked of you in this financial affidavit?
2            **THE DEFENDANT:** Yes.
3            **THE COURT:** Did you then give responses to the
4  questions contained in the financial affidavit, which were
5  immediately recorded on the document?
6            **THE DEFENDANT:** Yes.
7            **THE COURT:** You swear the contents of the financial
8  affidavit are complete?
9            **THE DEFENDANT:** Yes.
10           **THE COURT:** You swear the contents of the financial
11 affidavit are true?
12           **THE DEFENDANT:** Yes.
13           **THE COURT:** You indicate that you do not have
14 employment.
15           When was the last time, if ever, you had gainful
16 employment approximately?
17           **THE DEFENDANT:** A year.
18           **THE COURT:** Do you have any bank accounts anywhere?
19           **THE DEFENDANT:** Yes.
20           **THE COURT:** What kind and where?
21           **THE DEFENDANT:** I have a checking account and saving
22 account with Visions Federal Credit Union.
23           **THE COURT:** Approximately how much is in each account?
24           **THE DEFENDANT:** $16.
25           **THE COURT:** You have access to any safety deposit

1  boxes?
2  **THE DEFENDANT:** No.
3  **THE COURT:** Do you have any money hidden anywhere?
4  **THE DEFENDANT:** No.
5  **THE COURT:** Is anyone holding any money for your
6  benefit, other than what might have been taken from you when you
7  were arrested?
8  **THE DEFENDANT:** No.
9  **THE COURT:** You indicate you own two shares of stock
10 in Disney?
11 **THE DEFENDANT:** Yes.
12 **THE COURT:** Do you own any other type of securities or
13 bitcoins or any other type of assets?
14 **THE DEFENDANT:** No.
15 **THE COURT:** Do you own any automobiles?
16 **THE DEFENDANT:** No.
17 **THE COURT:** Do you own any real property?
18 **THE DEFENDANT:** No.
19 **THE COURT:** Do you own any expensive jewelry?
20 **THE DEFENDANT:** No.
21 **THE COURT:** Based on the responses given to me by the
22 defendant, as well as the contents of this financial affidavit,
23 I find that the defendant qualifies financially to have the
24 Court assign counsel to represent him.
25 And therefore, I am assigning the Federal Public

1  Defenders Office for that purpose.

2      For the purposes of the record, I do want to disclose
3  that when the events of May 14, 2022, or shortly thereafter had
4  occurred, my chambers was contacted by representatives of the
5  Federal Public Defenders Office as a result of there having been
6  references to a possible Federal charge being made involving the
7  death penalty.

8      And because of that possible charge and the reference
9  having been made, the provisions contained in Section 15.C1A and
10 B of the Criminal Justice Act became operable.

11     And that is where I was compelled, upon consent, as
12 well as upon request, to appoint what is called learned counsel,
13 as defined in the act.

14     Learned counsel is a special term that is used in
15 which an attorney has to have certain qualified experience in
16 case involving the death penalty.  Obviously, because of the
17 seriousness of the nature of the case and the possibility of
18 death being implemented.

19     I was advised and determined that two members of the
20 Federal Public Defenders Office, namely Ms. Anne Burger, who is
21 present, and Ms. Sonya Zoghlin, who is engaged in another
22 matter, both in that office, have been qualified as learned
23 counsel.

24     Ms. Covert, who is also present, is also a member of
25 the Federal Public Defenders Office and will serve in the

1  function of assistant counsel to those two learned counsel.
2        Now, I want to digress for a moment and express this
3  thought to the representatives of the Government and the
4  prosecution.
5        In my experience in being on this bench for the last
6  22 years, I had occasion to have a number of cases in which the
7  Government had indicated it was going to seek the death penalty
8  in certain drug homicide cases.
9        Because of that, once again, it became important and
10 necessary to appoint learned counsel.  And learned counsel being
11 advised of the possibility of a death penalty, obviously, has a
12 greater burden in the defense of a defendant in meeting whatever
13 will be presented in the way of seeking a death penalty.
14       It involves not only the actual charges and the issue
15 of guilt or innocence on the substantive charges, but the
16 defense often finds it necessary, as soon as possible, to start
17 developing defenses that would involve expert witnesses, such as
18 but not limited to:  Psychiatrist, medical examiners for autopsy
19 reports, chemists for analysis of whatever is going to be
20 utilized in the scientific field; high technology.
21       Since we know there is going to be a voluminous amount
22 of digital information, such as social media accounts, e-mails,
23 perhaps telephone conversations, videos, based on that
24 experience from those other cases, use of those type of experts
25 and hiring of those type of experts involves substantial amounts

of money.

And so in addition to making sure the Constitutional rights of the defendant are protected and that the rights of the Government and prosecuting are carried out, I also have an obligation to the taxpayers of this country to preserve and conserve as much as reasonably possible their assets, their dollars.

In those prior cases, after huge sums of money were expended, the Government then advised; we're not seeking the death penalty, and thousands and thousands of dollars were then expended needlessly.

Now, I'm not trying to tell the executive branch of government how to carry out its business. That's not my purpose. That's not my role. That's not my jurisdiction.

But this case has now been around for a month. I would hope the Department of Justice would undertake steps that will reasonably bring about a quick decision on that issue.

So that we will know as early as possible, reasonably, whether they, in fact, are going to pursue a death penalty or not.

So as to either set up a budget, which is another budget that I must address for defense counsel as to what monies will be made available, for what purposes, or if the Government makes the decision that it will not be pursuing the death penalty, then defense is put on notice that there will not be

1  that need for those kinds of expenditures to that degree of
2  expense.
3          So once again, I just ask that attention be given to
4  the appropriate representatives of the Department of Justice in
5  this decision-making process.
6          **MR. TRIPI:**  Yes, Your Honor.  Your Honor, we hear you.
7  We will order your transcript and we will convey the message.
8          Just very briefly, the next step in the process will
9  be an indictment.  Obviously, there is no potential of death
10 penalty just on the complaint.
11         At that point, it will be the Attorney General's sole
12 decision whether to seek or not seek the death penalty.
13         I believe as the Attorney General described yesterday
14 in some public comments, as well as the US Attorney, Ms. Ross,
15 that process will be serious; it will be thorough.
16         It we will be fair and we will ensure that this is as
17 expeditious as we can make it, while balancing all the equities
18 involved in terms of the defendant's rights, the public's
19 rights, the Court's concerns in making that decision.
20         **THE COURT:**  I appreciate that Mr. Tripi.  Thank you.
21         **MR. TRIPI:**  You're welcome.
22         **THE COURT:**  I would also point out for the benefit of
23 the defendant, because I know counsel know, I believe the
24 defendant was arrested yesterday or today in this case.
25         **MR. TRIPI:**  Technically, the arrest was today.  The

1  execution of the arrest warrant was by writ of habeas corpus.
2          He was in State custody, as the Court may be aware
3  through public reporting and information.  He's facing State
4  charges for these offenses as well.
5          He was brought here pursuant to a writ, authorized by
6  Your Honor and the Clerk of the Court.
7          And after today's proceeding, he will be returned to
8  State custody, where he is in primary State custody.
9          **THE COURT:**  Correct.  And I do point out that for the
10 benefit of the defendant, the Government now has a clock running
11 in that since the arrest was today, June 17th -- June 16th.
12         **MR. TRIPI:**  Today is the 16th.
13         **THE COURT:**  June 16, 2022, the Government, under the
14 Speedy Trial Act, is required to present the matter to a Grand
15 Jury within the next 30 days.
16         Now, as to bail, you have already indicated,
17 Mr. Tripi, that of course the defendant presently is in custody
18 of the State of New York.
19         And that I am going to return him to the custody of
20 the State of New York pursuant to the terms of the writ of
21 habeas corpus.
22         But nevertheless, the Government has a right to make
23 its views known as to bail or detention in the event that there
24 should be a change of circumstances in the State court
25 proceedings, so that immediate action will occur in the Federal.

1          **MR. TRIPI:**  Yes, Judge.  So the record is clear, we
2     are moving for detention based on the defendant's danger to the
3     community and flight risk.
4          Many of the charges, all of the 924(c) and 924(j)
5     charges detailed in the complaint --
6          **MS. COVERT:**  Your Honor, if I could interject, the
7     Government did advise us ahead of time that they were moving for
8     detention and we consent to Mr. Gendron's detention at this
9     time.
10         **MR. TRIPI:**  Yes.  I was just going to say there a
11    presumption that would apply to this case.
12         **THE COURT:**  All right.  The defendant have consented,
13    I'm treating that as a waiver of his right to waive detention
14    hearing; is that correct, Ms. Covert?
15         **MS. COVERT:**  Yes, Your Honor.
16         **THE COURT:**  Then we have the issue of probable cause.
17    That is, for the benefit of the defendant, whether there is
18    probable cause for these Federal charges to be made against the
19    defendant.
20         And under the law, Mr. Gendron, you are entitled to
21    have a hearing on that issue, whether legally the Government has
22    submitted sufficient information under oath for these charges to
23    be made.
24         Ms. Covert, does the defendant waive his right to a
25    preliminary hearing?

1                **MS. COVERT:**  Yes, Your Honor.  He does.

2                **THE COURT:**  All right.  The defendant having waived

3    his right to a preliminary hearing, as well as to a detention

4    hearing, jurisdictionally, at this time there is nothing further

5    for this Court to address and, therefore, I am remanding the

6    defendant to the custody of the U.S. Marshals service for

7    purposes of returning the defendant to the appropriate State

8    authorities from which he has been brought, in accordance with

9    the writ of habeas corpus.

10               **MS. COVERT:**  Your Honor, if I may be heard briefly on

11   the Court's practice with respect to setting of a 48(b) date.

12               **THE COURT:**  I am not going to set a 48(b) date and for

13   the purposes of the record and the benefit of the defendant,

14   Rule 48(b), under the Federal Rules of Criminal Procedure would

15   allow a delay of the clock running -- the speedy trial clock, in

16   which the Government would be forced to do and accomplish

17   certain steps in the prosecution of this case.

18               And, normally, the parties would be given a period of

19   time from today to a deadline date in order to conduct

20   negotiations with the objective of reaching an agreement that

21   would dispose of this matter without the necessity of a trial.

22               I have used that provision frequently in certain types

23   of cases where it was obvious to me that the nature of the

24   charges and the facts and circumstances of the case were such

25   that in all probability the parties were going to be able to

1    work out an agreement that would dispose of the matter without
2    the necessity of a trial.
3            In exercising my 22 years on the bench and my 38 years
4    as a trial lawyer, I have concluded professionally that I don't
5    see that happening within a very short period of time in this
6    case, in light of the nature of the charges and the possibility
7    of the Government asking for the death penalty, and so I'm not
8    going to utilize the provisions of Title 48(b).
9            **MS. COVERT:**  Thank you, Judge.
10           **THE COURT:**  You're welcome.
11           Anything else?
12           **MS. COVERT:**  No, Your Honor.
13           **MR. TRIPI:**  No, Your Honor.
14           **THE COURT:**  Yes.  I have one other housekeeping
15   business.
16           As required by the Due Process Protections Act, Public
17   Health Law 116-182, 134 statute 894 and Federal Rule of Criminal
18   Procedure 5(f)(1), the Court confirms the United States
19   obligation to produce all exculpatory evidence to the defendant
20   pursuant to Brady versus Maryland, 373 US 83 and its progeny and
21   orders it to do so.
22           The Government must make these disclosures in
23   sufficient time that the defendant will have reasonable
24   opportunity to act upon the information efficaciously; citing
25   United States versus Rodriguez, 496 F.3d 221, 226, a Second

1  Circuit Court of Appeals in 2007; Leka versus Portuondo, 257
2  F.3d 8998 and United States versus Coppa, 267 F.3d 132, also
3  Second Circuit Court of Appeals decisions in 2001.
4          Failure to do so may result in consequences,
5  including, but not limited to exclusion of evidence, adverse
6  jury instructions, dismissal of charges, contempt proceedings or
7  sanctions by the Court.
8          Anything further?
9          **MR. TRIPI:** No, Your Honor.
10         **MS. COVERT:** No, Your Honor.
11         **THE COURT:** Thank you, everyone.
12         **MR. TRIPI:** Thank you. Have a good day, Judge.
13
14              (Proceedings concluded at 11:02 a.m.)
15                         *   *   *

20

1
2     In accordance with 28, U.S.C., 753(b), I certify that these
3     original notes are a true and correct record of proceedings in
4     the United States District Court for the Western District of
5     New York before the Honorable H. Kenneth Schroeder, Jr.
6
7
8
9
10    _s/ Bonnie S. Weber_                     _June 23, 2022_
      Signature                                Date
11
12    **BONNIE S. WEBER**
13    Official Court Reporter
      United States District Court
14    Western District of New York