**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
─────────────────────────────────────

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**v.**                                                          **22-CR-109V(Sr)**

**PAYTON GENDRON,**

        **Defendant.**
─────────────────────────────────────


<u>**DECISION AND ORDER**</u>

        This case was referred to the undersigned by the Hon. Lawrence J. Vilardo, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #8.


        The defendant, Payton Gendron, is charged in a 27 count indictment with violations of Title 18 United States Code Section 249(a)(1)(B)(i) (Hate Crime Act Resulting in Death - ten counts); Title 18 United States Code Sections 924(c)(1)(A)(i), 924(c)(1)(A)(iii), and 924(j)(1) (Discharge of a Firearm to Commit Murder - ten counts); Title 18 United States Code Section 249(a)(1)(B)(ii) (Hate Crime Act Involving an Attempt to Kill - four counts); and Title 18 United States Code Sections 924(c)(1)(A)(i) and 924(c)(1)(A)(iii) (Use and Discharge of a Firearm During and in Relation to a Crime of Violence - three counts), following a mass shooting at the Tops grocery store at 1275 Jefferson Avenue, Buffalo, New York, on May 14, 2022. Dkt. #6.

-1-

Currently before the Court is defendant's motion to modify the Protective

Order Governing Discovery ("protective order"), to allow defense counsel to provide

certain discovery materials to attorneys representing victims and family members of the

victims in civil litigation ("civil counsel") (Dkt. #54), and the government's motion to

enforce and/or modify the protective order to preclude defense counsel from disclosing

any discovery provided pursuant to the protective order to anyone for use in any civil

proceeding. Dkt. #57. For the following reasons, the defendant's motion is denied and

the government's motion is granted in part.


BACKGROUND

Upon motion (Dkt. #25), of the United States Attorney's Office and upon

consent of counsel for the defendant, the Court entered a Protective Order Governing

Discovery on September 16, 2022. Dkt. #27. The Protective Order notes that

> Discovery in this case is voluminous and many of these
> materials and documents include personally identifiable
> information (PII) such as Social Security Numbers, dates of
> birth, addresses, financial account numbers, and other
> personal identifiers. Such materials also include video
> recordings of the crime, crime scene photographs, grand
> jury materials, and other law enforcement sensitive
> materials.

Dkt. #27, ¶ 5. The Protective Order restricts disclosure of discovery materials to the

"state prosecution team" and the "defense team," the latter of which is defined as

"federal and state defense counsel of record, and any individuals working on this matter

in collaboration with or under the supervision of federal and state defense counsel,

including attorneys, investigators, paralegal, law clerks, testifying and consulting

experts, and legal assistants." Dkt. #27, ¶ 5. Defense team members are prohibited

from disclosing discovery materials or their contents, directly or indirectly, to any person

outside of the defense team, with specific provisions addressing potential witnesses,

the defendant and third parties. Dkt. #27, ¶ 5.

> As relevant to the instant motion, the Protective Order provides that:
>
> Defense team members shall retain custody of all copies of
> the discovery materials. Defense team members shall use
> discovery materials only for the purpose of preparing a
> defense to this case. Defense team members may review
> the discovery materials with potential witnesses and/or their
> counsel for the purposes of defense and trial preparation,
> provided that the potential witnesses and/or their counsel
> may review the materials only in the presence of a defense
> team member and may not take notes regarding the content
> of the discovery materials.

Dkt. #27, ¶ 7. Defense counsel are explicitly prohibited from disclosing "discovery

materials to a third party unless this Court, having considered the privacy and security

interests of victims and witnesses, determines there is good cause for the disclosure."

Dkt. #27, ¶ 9.

By letter dated January 17, 2023, civil counsel for two of defendant's

victims asked the United States Attorney's Office to modify the protective order "to allow

victims' counsel meaningful access to the discovery information produced to the

defendant in this case, and especially to the defendant's social media data." Dkt. #61-1,

p.2. In support of this request, civil counsel stated that his "clients seek to understand"

how defendant was radicalized online and indicated that the "most fruitful source of

information regarding the individuals and entities who influenced the defendant's murderous rampage is his social media data." Dkt. #61-1, p.2. Civil counsel opined that the protective order "recognizes the victims' legitimate interest in accessing the discovery material and grants them the right to do so," but noted that the requirement that such discovery be viewed "only in the presence of defense counsel and without copying any of the data they view or taking notes on what they see render the victims' rights meaningless." Dkt. #61-1. p.2. Civil counsel requested a meeting with the United States Attorney's Office "to discuss safe and secure methodologies to provide the defendant's social media data to victims and their counsel and appropriate changes in the terms of [the protective order] to accomplish this objective." Dkt. #61-1. p.3.

By letter dated February 2, 2023, the United States Attorney's Office responded that it had "concluded that the protective order in the criminal case does not permit disclosure of discovery materials for the purpose of advancing potential civil lawsuits." Dkt. #60, p.2. Among other reasons, the United States Attorney's Office noted that "grand jury subpoena responses pertaining to firearms, social media, other individuals, and school records pertaining to the defendant . . . are not permitted to be disclosed pursuant to Fed. R. Crim. P. Rule 6(e)." Dkt. #60, p.3.

On March 10, 2023, the Court granted defendant's sealed motion (Dkt. #49), to designate this indictment a complex case pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii) based upon the potential for a capital prosecution along with the volume and complexity of the discovery provided by the United States Attorney's Office.

By letter dated March 16, 2023, the United States Attorney's Office responded to another lawyer representing the victims and family members of the victims regarding their request to modify the protective order. Dkt. #60, pp.6-7. While recognizing the potential importance of the materials obtained through the federal criminal investigation to their client's civil interests, the United States Attorney's Office advised that a release of such materials during the pendency of the federal criminal case could significantly impact the federal prosecution. Dkt. #60, p.6. The United State's Attorney's Office emphasized that the protective order "restrict[ed] disclosure of the discovery materials for any purpose other than the preparation of the defense case" and noted that civil counsel's statement that the current protective order allows civil counsel to look at discovery "overstates the scope of the permitted use of the discoverable materials." Dkt. #60, p.7. The United States Attorney's Office advised civil counsel that the protective order

> permits your clients to look at discovery as necessary for preparation in the federal prosecution. Discovery in the criminal case may not be reviewed in furtherance of any potential civil litigation.

Dkt. #60, p.7.

On April 28, 2023, defendant moved to modify the protective order to allow defense counsel to provide to certain discovery materials covered by the protective order to civil counsel. Dkt. #54. More specifically, defense counsel seeks to permit civil counsel to retain forensic images of defendant's cell phone, laptop computer and desktop computer, including social media data such as computer files, text

messages, emails and activities on various social media accounts, subject to the terms of the protective order prohibiting disclosure to third parties, "for the purpose of investigating matters related to their representation of the victims in this case and related civil litigation stemming therefrom." Dkt. #54-1, p.2. In support of this request, defense counsel posits that under the terms of the protective order, civil counsel "are already permitted to *review* all the discovery provided to the defense team" as "potential witnesses and/or their counsel," but are precluded from retaining copies or taking notes, which makes "meaningful review of the material . . . virtually impossible." Dkt. #54. pp.1-2 & 4. Defense counsel explains that such access is necessary to allow civil counsel to explore whether there is a basis for civil litigation "against any individuals or entities that may have facilitated the commission of this crime such as gun manufacturers, body armor manufacturers, and social media platforms." Dkt. #54, p.3.

The United States Attorney's Office responds that the protective order does not permit civil counsel to review criminal discovery materials to investigate civil litigation and states that it has explained to civil counsel why their request for access to criminal discovery, including material obtained through the federal grand jury process, cannot be produced during the pendency of the federal criminal case. Dkt. #57, pp.3-4. The United States Attorney's Office argues that the federal grand jury cannot be used as a tool for investigation of civil lawsuits and that the defense has failed to establish good cause to modify the protective order, which they believe has been violated. Dkt. #57, p.4. More specifically, the United States Attorney's Office argues that it relied upon the protective order when it agreed to provide discovery far beyond what was required

at this stage of the proceeding so as to "expedite this prosecution in order to ensure that there is not undue delay in the processing of this case, to demonstrate the strength of the evidence against the defendant, and to enable the defense team to have meaningful conversations with the defendant about how to defend against the charges against him." Dkt. #57, pp.2 & 6.

The United States Attorney's Office also argues that "[n]either the defendant, his attorneys, nor civil attorneys pursuing civil lawsuits have the authority to usurp the privacy interests of many people whose private information was acquired during the course of the grand jury investigation." Dkt. #57, p.6. The United States Attorney's Office notes that defense counsel has failed to articulate any basis for modifying the Protective Order that is relevant to the preparation of their defense or development of mitigation evidence for sentencing in the criminal case. Dkt. #57, pp.6 & 8. The United States Attorney's Office argues that "this criminal case takes priority over any pending or potential civil lawsuits" and that "[i]t will be impossible to keep sensitive information properly secured until trial once it is used in civil lawsuits." Dkt. #57, p.13. The United States Attorney's Office requests that the Court require the defense to provide written certifications to the Court for its *in-camera* review regarding all third parties who have been provided access to discovery and what specific discovery materials have been disclosed to such third parties. Dkt. #57, p.16.

Defense counsel replies that there is no reason that defendant's victims and family members of defendant's victims should be denied access to a portion of the

voluminous discovery that the government has provided to defendant. Dkt. #61, p.1.

Defense counsel objects to the classification of victims as third parties and states that

the United States Attorney's Office was aware that they were considered potential

witnesses and that they had reviewed discovery under the terms of the protective order.

Dkt. #61, pp.1-2 & 9. Defense counsel argues that the civil attorneys represent potential

witnesses at the sentencing phase of any capital trial and "facilitating their access to the

discovery is consistent with our obligation to provide our client with a rigorous and

comprehensive defense." Dkt. #61, pp.2-3. In addition, defense counsel argues that any

claims presented by defendant's victims and family members of defendant's victims in

their civil lawsuit will "provide a rich source of mitigation that is clearly relevant to a

potential sentencing phase of a capital trial." Dkt. #61, p.5. Moreover, defense counsel

argues that "communicating with the victims' families and endeavoring to provide some

measure of assistance in accomplishing their objectives is squarely within the role of

defense counsel in a death penalty case." Dkt. #61, p.5. Defense counsel hopes that

providing defendant's victims and family members of defendant's victims with

information regarding "the people and entities who indoctrinated [defendant],

encouraged him, armed him, protected him, and promoted his commission of this

terrible crime" may impact their opinion, which the government is required to consider,

as to whether the government should pursue the death penalty. Dkt. #61, p.5.

       The United States Attorney's Office reiterates that defense counsel should

not be permitted to provide civil counsel with access to criminal discovery for use in civil

litigation. Dkt. #65, pp.1-2.  More specifically, the United States objects to defense

-8-

counsel using criminal discovery to influence the opinion of defendant's victims and family members of defendant's victims regarding whether the United States should seek the death penalty. Dkt. #65, p.4. To the extent that defense counsel needs to review discovery material with victims and family members of the victims in order to prepare a defense to the indictment, the United States argues that the protective order permits such review and that defense counsel has therefore failed to establish good cause to modify the protective order. Dkt. #65, p.3.

DISCUSSION AND ANALYSIS

**Rule 16**

"Rule 16 is . . . the sole authorized vehicle under the Federal Rules of Criminal Procedure for pre-trial discovery of criminal cases." *United States v. Alshahhi*, 21-CR-371, 2022 WL 2239624, at *20 (E.D.N.Y. June 22, 2022), *quoting United States v. Louis*, No.04-CR-203, 2005 WL 180885, at *2 (S.D.N.Y. Jan. 27, 2005); *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case."). Rule 16 of the Federal Rules of Criminal Procedure requires that the United States Attorney's Office provide a defendant with his own statements and criminal history and afford defendant access to certain physical evidence as well as reports related to expert, scientific and medical evidence. More specifically, the United States Attorney's Office must provide access to "books, papers, documents, data, photographs, tangible objects, buildings or places" if such item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at

trial; or (iii) the item was obtained from or belongs to the defendant. Fed. R. Crim. P.

16(a)(1)(E). With respect to reports of examinations and tests, the United States

Attorney's Office must permit a defendant to inspect and to copy the results of any

physical or mental examination and any scientific test or experiment if: (i) the item is

within the government's possession, custody, or control; (ii) the attorney for the

government knows - or through due diligence could know - that the item exists; and (iii)

the item is material to preparing the defense or the government intends to use the item

in its case-in-chief at trial. Fed. R. Crim. P. 16(a)(1)(F).

Although the materiality standard of Rule 16 is not onerous, "[m]ateriality

means more than that the evidence in question bears some abstract logical relationship

to the issues in the case. *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991);

*See United States v. Tsarnaev*, 13-10200, 2013 WL 6196279, at *4 (D. Mass. Nov. 27,

2013)("Rule 16 does not require the pretrial disclosure of all evidence relevant to the

defense, but only such relevant evidence as is material."). "[E]vidence is material as

long as there is a strong indication that it will play an important role in uncovering

admissible evidence, aiding witness preparation, corroborating testimony, or assisting

impeachment or rebuttal." *United States v. Wilson*, 518 F. Supp.3d 678, 686 (W.D.N.Y.

2021), *quoting United States v. Stein*, 488 F. Supp.2d 350, 356-67 (S.D.N.Y. 2007);

*See also United States v. Giffen*, 379 F. Supp.2d 337, 342 (S.D.N.Y. 2004) ("Evidence

is material if its pretrial disclosure will enable a defendant to alter significantly the

quantum of proof in his favor."). In the context of a potential capital case, material

evidence includes evidence relevant to a statutory mitigating factor. *Id., citing Tsarnaev*,

2013 WL 6196279, at *4 ("in the context of a death-eligible case, discovery under Rule 16(a)(1)(E)(i) includes information material to defense preparation for the penalty phase."). "Materiality, of course, must be assessed against the backdrop of all the evidence presented to the jury." *Maniktala*, 934 F.2d at 28.

Rule 16 specifically excludes disclosure of "reports, memoranda, or other internal government documents made by an attorney for the government or other agency in connection with investigating or prosecuting the case." Fed. R. Crim.P. 16(a)(2). It also excludes discovery of statements made by prospective government witnesses, except as required by 18 U.S.C. § 3500 ("*Jencks* Act"), and generally protects disclosure of grand jury transcripts. Fed. R. Crim. P. 16(a)(2) & (3). Although *Brady v. Maryland* and its progeny provide the defendant with a constitutional right to receive exculpatory evidence that is material either to guilt or punishment, as well as evidence that may impeach the government's witnesses at trial, the timing of such disclosure is in time for its effective use at trial. 373 U.S. 83 (1963); *See Giglio v. United States,* 405 U.S. 150, 154 (1972); *Coppa v. United States*, 267 F.3d 132, 135 (2d Cir. 2001).

The Federal Rules of Criminal Procedure "grants district courts the discretion to establish conditions 'under which the defense may obtain access to discoverable information.'" *United States v. Smith*, 985 F. Supp.2d 506, 522 (S.D.N.Y. 2013), *quoting In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 122 (2d Cir. 2008), *cert. denied*, 556 U.S. 1283 (2009). Pursuant to Rule 16(d)(1) of the

Federal Rules of Criminal Procedure, a court may, "for good cause, deny, restrict or defer discovery or inspection, or grant other appropriate relief." This good cause standard applies "even where parties consent to a stipulated protective order." *Smith*, 985 F. Supp.2d at 523 (internal quotation omitted). If a party fails to comply with a protective order, the Court may, *inter alia*, enter any order that is just under the circumstances. Fed. R. Civ. P. 16(d)(2)(D).

### Good Cause

While the specificity required to demonstrate good cause varies with the complexities of the case, good cause will ordinarily exist "when a party shows that disclosure will result in a clearly defined, specific and serious injury." *In re: Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp.2d 220, 222 (S.D.N.Y. 2006). Compromising the privacy interests of third parties; causing a risk of harm to law enforcement officers or others; and impeding government investigations satisfy that standard. *See Smith*, 985 F. Supp.2d at 523-24. "In cases of unusual scope and complexity, broad protection during the pretrial stages of litigation may be warranted without a highly particularized finding of good cause." *In re: Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp.2d at 222.

There is good cause for the issuance of the protective order over materials obtained during the course of this criminal investigation. As the parties recognize, this is a complex case with voluminous discovery. As set forth in the protective order, the information disclosed includes law enforcement sensitive

materials, information obtained by the grand jury, and sensitive personally identifiable information. As represented to the Court, the United State's Attorney's Office has turned over to defense counsel information well beyond its obligations as set forth above, particularly at this stage of the proceeding, disclosing "everything, essentially," that the government has. Dkt. #72, p.12. This includes "a lot of other social media and a lot of other accounts" that the United States Attorney's Office "acquired . . . to make sure . . . that no one else was involved." Dkt. #72, p.12. The United States Attorney's Office further represented that it has disclosed information pertaining to interviews of family members, friends, *etc.*, encompassing

> Everything they could conceivably think might be *Brady*, . . . they have. They have the people who were in those Internet chats who were interviewed. They have those. They have people of color who interacted with [defendant] in his life and saw no racial animus from him. They have those.

Dkt. #72, pp.35-36. The United States Attorney's Office emphasized that it has "essentially opened file discovery in this case" and "gave them everything" so as to avoid subsequent *Brady* motions. Dkt. #72, p.12. The United State Attorney's Office has also disclosed "every Grand Jury transcript" and "search warrant affidavits unredacted for every search warrant," as well as "every subpoena return the Grand Jury had, whether it was relevant or not." Dkt. #72, pp.11-12. The United States Attorney's Office represented to Judge Vilardo on March 1, 2023 that it has "turned over everything that would already qualify as *Jencks* materials in the case . . . under the protective order."  Dkt. #53, p.12.

**Modification**

Although the Court of Appeals for the Second Circuit has yet to address the "good cause" standard in the context of modification of a protective order in a criminal case, district courts have generally applied the same standard utilized in civil cases. *United States v. Ngono*, 16 Cr. 367, 2021 WL 2850626, at *1 (S.D.N.Y. July 8, 2021); *United States v. Calderon,* No. 15 Cr. 25, 2017 WL 6453344, at *2 (D. Conn. Dec. 1, 2017). In civil cases, the Court of Appeals has opined that where there has been reasonable reliance upon the protective order, a district court should not modify the protective order absent a showing of improvidence in the grant of the protective order or some extraordinary circumstance or compelling need. *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001) ("It is . . . presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied."). In assessing whether a protective order reasonably invited reliance, courts consider, *inter alia*, the following factors: (1) the scope of the protective order; (2) the express language of the protective order; (3) the level of inquiry by the court prior to granting the protective order; (4) the nature of the reliance; and (5) the type of materials that the party seeking modification is attempting to access. *Ngono*, 2021 WL 2850626, at *2. Modification of a protective order is left to the discretion of the Court. *Jose Luis Pelaez, Inc. v. Scholastic, Inc*., 312 F. Supp.3d 413, 416-17 (S.D.N.Y. 2018).

Although the scope of the protective order in this case is expansive, its breadth is appropriate to the circumstances because it allowed the U.S. Attorney's

Office to expeditiously disclose information beyond its discovery obligations and without first redacting privileged material and protected personal information. *See Smith*, 985 F. Supp. at 546 (broad protective order appropriate given the monumental burden required to review and redact the vast amount and array of discovery materials involved in case); *Cf. Calderon,* 2017 WL 6453344, at *3 ("Blanket protective orders tend to be overinclusive and may cover documents that a party would have been required to disclose without a protective order.").

The second factor is neutral because it recognizes the possibility of modification to permit disclosure of discovery materials to a third-party, but only after the Court has considered the privacy and security interests of victims and witnesses and determined there is good cause for the disclosure. Dkt. #27, ¶ 9 & ¶ 11.

As to the third factor, while this Court entered the protective order as a matter of course in reliance upon the stipulation of the parties, good cause is apparent from the face of the protective order (Dkt. #27, ¶ 4), which recognized that many of the documents contain personally identifiable information, grand jury materials, and other law enforcement sensitive materials. *See Ngono*, 2021 WL 2850626, at *2 (good cause apparent where protective order states that discovery contains sensitive personal identifying information).

The fourth factor weighs in favor of reliance as it is clear that the protective order allowed defense counsel to "quickly receive unredacted documents"

and gain access to documents that he might not otherwise even have been entitled to receive. *Ngono*, 2021 WL 2850626, at *2; *See Calderon,* 2017 WL 6453344, at *5 (unredacted documents containing potentially confidential information would not have been produced without review without the protective order).

As to the fifth factor, the Court should not modify a protective order to facilitate a litigant's "attempt . . . to get around obstacles in discovery in a separate case and access documents the party would not otherwise have a right to." *Calderon,* 2017 WL 6453344, at *5. Thus, upon consideration of the relevant factors, the Court concludes that the U.S. Attorney's Office reasonably relied upon the protective order and it should be modified only upon demonstration of some extraordinary circumstance or compelling need.

The defendant has not demonstrated an extraordinary circumstance or compelling need to modify the protective order. As represented to the Court by the United States Attorney's Office, the defendant has complete access to all of the information obtained by the government in this criminal case for his use in preparing his defense to these charges and to a potential death sentence. While the Court appreciates defense counsel's interest in providing civil counsel with information that could inform opinions of the victims and family members of the victims as to the appropriateness of seeking the death penalty, the disclosure of any such information to the victims and family members of the victims is most appropriately left to the discretion of the United States Attorney's Office.

With respect to potential and pending civil litigation, the Court finds that civil counsel has failed to demonstrate a compelling need to obtain information necessary to pursue such litigation from the criminal investigation rather than through, *inter alia*, civil pre-suit discovery or civil discovery procedures. *See U.S. v. Sells Eng'g, Inc.*, 463 U.S. 418, 431 (1983) (argument that disclosure of evidence compiled by grand jury would save time and expense in civil litigation insufficient to breach secrecy of grand jury proceedings).  In addition, the Court rejects the argument that extending the protective order to civil counsel would be sufficient to assuage the government's concerns about maintaining confidentiality of information obtained during the course of the criminal investigation. *See United States v. Tokhatkhounov*, 13 Cr. 268, 2020 WL 1032880, at *2 (S.D.N.Y. 2020) ("If the civil plaintiffs were correct, then any party to a civil litigation could argue that a protective order would mitigate, and trump, any Government concern about the integrity of its investigations and prosecutions."). Accordingly, defendant's motion to modify the protective order is denied. *See United States v. Evans*, 17 Cr. 684, 2021 WL 1535054 (S.D.N.Y. Dec. 19, 2021) (declining to modify protective order to allow disclosure of discovery in criminal case for use in civil proceeding commenced against defendants given the significant privacy interests of third parties where the government relied on the protective orders to produce materials in an expeditious and unredacted fashion); *United States v. Maxwell*, 20-CR-330, 2020 WL 5237334 (S.D.N.Y. Sept, 2, 2020) (denying modification of protective order to allow defendant to file documents received in the criminal case in civil cases where parties agreed to protective order providing that all discovery produced by the government shall be used solely for the defense of criminal action).

**Violation**

The protective order prohibits disclosure of discovery materials by defense counsel other than for the purpose of preparing a defense to this criminal case. Dkt. #27, ¶ 7. More specifically, defense counsel is only able to review discovery materials with potential witnesses and/or their counsel for the purpose of preparing a defense to this criminal prosecution, including trial preparation. Dkt. #27, ¶ 7. Thus, the protective order does not permit defense counsel to allow review of information subject to the protective order for the purpose of pursuing civil litigation. Absent defense counsel's good faith basis to believe that the victims and family members of the victims require use of the discovery materials to support the defense or to prepare for their appearance as witnesses for the defendant, defense counsel's disclosure of information encompassed by the protective order to civil counsel is prohibited.

Defense counsel moved for modification of the protective order not to advance their defense of this criminal prosecution, but to facilitate civil counsel's ability to pursue civil remedies on behalf of the victims and family members of the victims:

> Lawyers for the surviving victims and the families of the deceased have indicated their intention to pursue civil remedies against any individuals or entities that may have facilitated the commission of this crime . . . To explore whether a basis for these claims exist, these attorneys require access to discovery material obtained by law enforcement during the investigation of this crime.

Dkt. #54, p.3. This purpose is further evidenced in the proposed Supplemental Protective Order Governing Discovery Materials To Be Provided to Victims' Legal Teams, which provides that civil counsel may review forensic images of defendant's

digital devices as well as social media data "for the purpose of investigating matters related to their representation of the victims in this case and related civil litigation stemming therefrom." Dkt. #54-1. While defense counsel suggests that such civil litigation may ultimately develop mitigation evidence beneficial to defendant, the Court has every confidence that any mitigation evidence which may be gleaned from the criminal investigation will be developed to its fullest potential by defendant's learned counsel without need for the assistance of civil counsel.

Having been informed by the United States Attorney's Office that the information obtained during the criminal investigation could not be utilized for the purpose of advancing potential civil lawsuits (Dkt. #60, pp.1, 4 & 6-7), the Court finds it disingenuous of civil counsel to have sought access to such information through defense counsel. Civil counsel is therefore prohibited from discussing or utilizing any information gleaned from its review of information subject to the protective order for any purpose unless such information has been obtained from an independent source.

Furthermore, defense counsel shall provide the United States Attorney's Office with a declaration setting forth the identity and contact information of any individual representing the victims and/or family members of victims who was permitted access to any information subject to the protective order, as well as the date(s) and length of time such access was provided and a detailed description of the materials such individual reviewed.

The United States Attorney's Office may renew it's motion to enforce the protective order in the event that defense counsel's disclosure and/or civil counsel's pursuit of civil remedies suggest that additional protections are necessary to maintain the integrity of this criminal prosecution,.

<u>CONCLUSION</u>

For the reasons set forth above, defendant's motion to modify the protective order (Dkt. #54), is denied and the government's motion (Dkt. #57), is granted in so far as the government seeks to enforce the protective order to preclude disclosure of discovery provided pursuant to the protective order to anyone for use in any civil proceeding.

It is hereby **ORDERED** pursuant to 28 U.S.C § 636(b)(1) that:

This Decision and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Decision and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Decision and Order in accordance with the above statue, Fed.R.Crim.P. 58(g)(s) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to

-20-

the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).  **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Judge's refusal to consider the objection.**

DATED:      July 13, 2023
            Buffalo, New York

           &#95;&#95; s/ H. Kenneth Schroeder, Jr. &#95;&#95;
           **H. KENNETH SCHROEDER, JR.**
           **United States Magistrate Judge**