UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

    v.                                      22-CR-109 (LJV-HKS)

PAYTON GENDRON,

              Defendant.
_____

### REPLY TO GOVERNMENT'S RESPONSE TO DEFENSE APPEAL OF MAGISTRATE JUDGE H. KENNETH SCHROEDER'S SCHEDULING ORDER AND MOTION TO RESCIND THE REFERRAL ORDER

The defense hereby files this Reply to the Government's Response (Doc. 83) to the Defense Memorandum in Support of the Appeal of Magistrate Judge H. Kenneth Schroeder's Issuance of the Scheduling Order and Motion to Rescind the Referral Order.  (Doc. 80). In our original Memorandum, the defense set forth in detail the grounds upon which the scheduling order was inappropriately entered in this case and should be vacated because the Attorney General of the United States has yet to render a decision on whether the death penalty will be sought against Mr. Gendron. Since the Appeal was filed it has become clear that the process by which that decision will be made is actively moving forward. The parties are in discussions regarding the scheduling of the next step, namely the meeting with the DOJ Capital Case Committee at which the defense will present mitigating evidence in an effort to persuade the Attorney General to decline to seek their client's execution, for a date in September, 2023. There is therefore reason for optimism that a decision will be forthcoming shortly thereafter.

The government's response to the appeal of the scheduling order indicates that it "was and is [its] intention to propose a scheduling order that would be consistent with the scheduling

orders utilized in other similar mass-shooting cases." *See* Doc. 83, p.7. Additionally, the government does not oppose the motion to rescind the referral order, recognizing that continued referral in this case would "sap the goals of judicial economy and efficiency, but also increase media coverage of the case and the number of court appearances that the victims and victims' family members, understandably, feel a need to stay informed of and attend." Doc. 83, p. 9.

In light of the parties' positions, and the ample support for those positions as presented in Mr. Gendron's original Memorandum, we ask that the Court issue a scheduling order tied to the determination of whether a death sentence will be sought. We request that the parties be directed to confer within 14 days of the filing of the Attorney General's decision whether to seek the death penalty and file a joint proposed scheduling order if one is required. We also ask the Court to exercise its discretion to rescind the referral order in the interests of judicial economy and efficiency, and more importantly to avoid burdening the victims and their families by increasing the number of court appearances they must attend and the abundant media coverage that each one inevitably generates.

While the government's ultimate position that the Scheduling Order should be modified and its deference of the decision to recall the referral order to the Court, is consistent in principle with the defense request, the government's response raises a few points that bear further reply.

In suggesting the magistrate committed no clear error in issuing a scheduling order, the government cites two capital-eligible cases from this district, namely *United States v. Rounds*, No. 10-CR-239-WMS (W.D.N.Y.), and *United States v. Green*, No. 12-CR-83S (1)(2)(3), 2018 WL 786185 (W.D.N.Y.), *aff'd sub nom. United States v. Black*, 918 F.3d 243 (2d Cir. 2019). Firstly, neither of these cases is comparable to this one, as neither involved a mass shooting with

multiple decedents and surviving victims.[1]  The procedural histories of those cases were also

vastly different than in this case. Here, as Mr. Gendron has made clear, a decision by the

Attorney General not to seek the death penalty will result in a plea of guilty and the automatic

imposition of multiple life sentences without possibility of release, obviating the need for any

motions practice. In *Green* and *Rounds*, however, motions practice was going to be required

regardless of the Attorney General's authorization decision. As the parties anticipated, both cases

proceeded to a non-capital trial.[2]

Additionally, both cases had been pending for much longer than this one has been. In

*Rounds,* 10-cr-239, ECF 1, defendants were charged by an initial non-capital indictment on

August 17, 2010. Initial pretrial motions were filed in September 2011 on the non-capital

indictment, *id.*, ECF 88-94. Following the issuance of a superseding potentially capital

indictment in June 2012, ECF 163, almost two years after the original indictment was handed

down, an additional series of pretrial motions were filed. ECF 220-223. Still, seventeen months

of additional litigation occurred *after* the government finally filed its Notice of Intent Not to

Seek the Death Penalty in June, 2014, ECF 364, before jury selection finally commenced on

November 3, 2015. ECF 685.

In *Green*, five years and seven months elapsed between arraignment on the original non-

capital indictment on March 7, 2012, and the eventual announcement by the Attorney General

that the death penalty would not be sought. *See United States v. Black*, 918 F.3d 243, 248 (2d

---

[1]  The government implicitly concedes this point later in its Response, where it notes its agreement that a new scheduling order be entered that is "consistent with the scheduling orders utilized in similar mass-shooting cases." Doc. 83, p.7. The three most recent examples of such cases, *United States v. Saipov, United States v. Crusius*, and *United States v. Bowers*, were cited in Mr. Gendron's Memorandum. *See* ECF 80, pp. 18-19. In all three cases the district judge declined to impose scheduling orders that would have required the defense to file pretrial motions prior to the Attorney General issuing a decision regarding seeking the death penalty.
[2] The *Rounds* trial defendants all plead following jury selection.

Cir. 2019). Alerted to the potential for a superseding indictment charging death eligible offenses on the day of the initial arraignment, all three defendants requested an adjournment of the pre-trial motion deadlines until the government had issued its death penalty decision, pointing out that "if the government sought the death penalty, the defense would need to scrap existing motions and begin anew". *Id.* at 249-250. The magistrate judge granted that motion and vacated the existing scheduling order with the intention of setting a new schedule once the government had issued its death penalty decision, just as Mr. Gendron is requesting here.

As time went on, however, with no superseding indictment filed and no decision regarding the death penalty made, the *defendants* expressed a desire to press forward with motion practice. Several distinguishing factors led to that decision: (1) counsel relied on the assumption that the government would not be bringing a superseding indictment; (2) the case would be tried whether authorized or not; and (3) all defendants frequently and explicitly asserted their rights to a speedy trial throughout the proceedings. Those three defendants "made known their desire to proceed expediently to trial throughout the litigation." *Id.* at 266.

In stark contrast, Payton Gendron has expressly waived his speedy trial rights and requested a designation that the case is complex for the purpose of excluding delays from the speedy trial calculation. He is serving a sentence of life without possibility of release in state court and thus no speedy trial concerns are present here. And in this case, the course of the federal litigation depends entirely on the authorization decision. What motions to file, if any, will be dictated by the government's decision.  If the government decides against seeking a death sentence, there will be no motion practice; the case will end with a prompt guilty plea and the mandatory imposition of multiple additional life sentences.

The Magistrate Judge failed to recognize the unique procedural posture of this case when he erroneously issued an expedited scheduling order calling for the filing of all "standard" motions. Of course, there are no "standard" motions in capital litigation, particularly here, where there will be no pre-trial motions filed at all if the government does not seek our client's execution. If it does, as noted in the defense Memorandum, the contents of every pre-trial motion will be tied at least in part to that decision. *See* Doc. 80, pp. 10-11. That is why, as the government acknowledges, judges overseeing capitally-eligible mass shooting cases in other districts have declined to set scheduling orders before the Attorney General made the authorization decision. (Doc. 83, pp. 5-6). This Court should compare this case to those, similar cases (not dissimilar cases that happen to have been litigated in this district) and set a schedule for filing pretrial motions tied to the Attorney General's authorization decision. *See* Doc. 80, pp. 17-19, *discussing United States v. Saipov*, 17-CR–722-VSB (S.D.N.Y.); *United States v. Patrick Wood Crusius*, 20-CR-389-DCG (W.D.Tex.); *United States v. Robert Bowers,* 18-CR-00292-RJC (W.D.PA.).

In arguing the Magistrate Judge did not commit clear error, the government concedes he incorrectly characterized the Attorney General's obligation to consider mitigating information before making his authorization decision. The government acknowledges that "the Attorney General is directed to consider evidence, including mitigation evidence that the defense elects to share, beyond the facts of the underlying crime, when making an authorization decision." *See* Doc. 83, p. 6. While mistakenly insisting that the Attorney General need only consider the facts of the underlying crime and not mitigation, the Magistrate Judge issued an expedited Scheduling Order based on the flawed premise that the pretrial litigation could have no impact on the authorization process; this was clear error. This error was compounded by the imprecise

language used in the oral pronouncement of the scheduling order, which excluded filing of motions regarding "the government seeking the death penalty" (Doc. 77, p. 45); language which was omitted from the written order. It remains unclear what pretrial motions are excluded from the deadline. "Where life itself is what hangs in the balance, a fine precision in the process must be insisted upon." *Lockett v. Ohio*, 438 U.S. 586, 620-1 (1978) (Marshall, J., concurring).

The government oddly suggests that the defense is concerned our client will not receive acceptance of responsibility points under the Sentencing Guidelines, which are clearly inapplicable here. *See* Doc. 83, p. 5. The defense raises no concerns regarding his mathematical guideline calculations. Our client has demonstrated his acceptance of responsibility for this crime by pleading guilty in state court and accepting multiple sentences of life without possibility of release. That expression of his acceptance of responsibility is undermined when counsel is required to publicly file and litigate pretrial motions challenging aspects of the investigation and prosecution that they have no interest in challenging unless the government decides to seek the death penalty.

As detailed in the original supporting Memorandum (Doc. 80, pp.14-17), the DOJ Manual governing capital authorization procedures now specially identifies as a non-statutory mitigating factor "defendants who have accepted responsibility as demonstrated by a willingness to plead guilty and accept a non-death sentence, proportional to the crime committed." *See* DOJ Manual, §9-10.140 (Standards for Determination), Subsection B.  That mitigating factor weighs particularly heavily against the need to seek the death penalty in this case. Requiring counsel to file pretrial motions (for example, to suppress certain evidence implicating Mr. Gendron) in compliance with their ethical obligations to preserve all legal issues in a death penalty prosecution, before the Attorney General has even indicated whether this will be a death penalty

prosecution, risks diluting this factor, at least in the eyes of those most impacted by the offenses in this case and of the media and general public, at a critical stage in what is essentially a settlement negotiation. *See* ABA, *Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases*, Commentary, Guideline 10.9.1 – The Duty to Seek an Agreed-Upon Disposition*, 31 Hofstra L. Rev. 913, 1041 (2003) ("Emotional and political pressures, including ones from the victim's family or the media, are especially likely to limit the government's willingness to bargain.")

Lastly, we emphasize that we do not seek to hasten the Attorney General's deliberative process given its import, nor do we seek to delay it. The process is continuing to move forward independent of a scheduling order for pretrial motions. As noted, the defense was recently invited to meet with the Capital Review Committee in the coming months. Delaying a scheduling order will enhance the efficiency and fairness of this process, not impede it.

Dated:      July 21, 2023
            Buffalo, New York

                              *s/MaryBeth Covert*
                              _____
                              MaryBeth Covert
                              Senior Litigator

                              *s/Sonya A. Zoghlin*
                              _____
                              Sonya A. Zoghlin
                              Assistant Federal Public Defender

                              *s/Anne M. Burger*
                              _____
                              Anne M. Burger
                              Supervisory Assistant Federal Public Defender