UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                                    22-CR-109 (LJV)

v.

PAYTON GENDRON,

        Defendant.
_____

**MEMORANDUM IN SUPPORT OF DEFENDANT'S PROPOSED SCHEDULE FOR LITIGATION PURSUANT TO FED. R. CRIM. P. 12.2(b)**

    Defendant, Payton Gendron, through undersigned counsel, respectfully files this Memorandum in Support of the Defense Proposed Schedule for Litigation Pursuant to Fed. R. Crim. P. 12.2(b), the rule that prescribes procedures to be followed when a defendant opts to present expert evidence of his mental health condition at the penalty phase of a capital trial.

    The defense proposal facilitates the timely and efficient litigation of the important procedural issues that are likely to arise in this context, many of which implicate important constitutional rights including the Fifth Amendment right against self-incrimination, Sixth Amendment right to the effective assistance of counsel and the Fifth and Eighth Amendment rights to due process, a fair trial and to present evidence in mitigation of a sentence of death. The proposal also ensures that the government will have ample opportunity for rebuttal of defense expert evidence if it is presented. Finally, the proposed schedule accommodates the extraordinarily complex and time-consuming process of investigating and preparing to present expert mental health evidence on behalf of a defendant in a death penalty case.

I. **THE DEFENSE PROPOSAL FACILITATES EFFICIENT LITIGATION OF THE NUMEROUS ISSUES THAT THE COURT MUST ADJUDICATE PRIOR TO THE FILING OF A DEFENSE NOTICE OF INTENT UNDER FED. R. 12.2(b)**

Although it establishes certain parameters governing the presentation of expert mental condition evidence, Fed. R. Crim. P. 12.2(b) requires a trial court to adjudicate multiple significant procedural matters before a compelled government examination of a capital defendant may be ordered. *See* Fed. R. Crim. P. 12.2 advisory committee's note to 2002 amendment ("The amendment leaves to the court the determination of what procedures should be used for a court-ordered examination on the defendant's mental condition (apart from insanity)."). Consequently, extensive pretrial litigation of the issues raised by the possibility of the presentation of expert evidence of mental condition by defense counsel will be necessary.

Those issues begin with the contents of the defense notice of intent itself. Counsel for the government correctly acknowledged at the status hearing held before the Court on February 2, 2024, that this is typically the first bone of contention between the parties. *See* 2/2/2024 Tr. at 58 ("Judge . . . for sure I think there's gonna be briefing on what the, you know, what the contents of the notice is gonna be. And I'm sure we're gonna disagree on that."). *See also United States v. Sampson*, 335 F.2d 166, 242 (D. Mass. 2004) (considering government request for supplement to defense Rule 12.2(b) notice to include experts' identities and qualifications, summary of their testimony and medical records reviewed and ultimately adopting parties' agreement that only general type of expert and specific tests administered should be disclosed); *United States v. Johnson*, 362 F. Supp. 2d 1043, 1080 (N.D. Iowa 2005) (same); *United States v. Wilson*, 493 F.

Supp. 2d 348, 351-53 (E.D.N.Y. 2006) (following *Sampson* and *Johnson*).[1] Accordingly, given that the Court will be asked to adjudicate the contents of any defense notice under Rule 12.2(b) prior to its filing, briefing on that question should be scheduled sufficiently in advance of the notice date, as set forth in the defense proposal. *See* Exhibit A (proposing that briefing on 12.2 litigation commence on March 10, 2025, and defense notice be due on June 23, 2025).

Further, for the sake of efficiency, it makes sense for all issues that are likely to arise in the 12.2(b) context to be briefed and adjudicated together. Those issues include, for example, the timing of the government expert's examination, *see United States v. Taveras*, 233 F.R.D. 318, 320-22 (E.D.N.Y. 2006) (directing government examination to occur after guilty verdict is entered to best protect defendant's constitutional rights); and disclosure of the identity of the government's experts, *see, e.g., United States v. Ciancia*, 13-cr-902 (C.D. Cal. May 13, 2015) (directing government to disclose in advance of examination the names and qualifications of its retained experts), *United States v. O'Reilly*, No. 05-cr-80025, ECF No. 444 (E.D. Mich. February 19, 2010) (same), and the specific tests they propose to administer, *see Sampson*, 335 F. Supp. 2d at 245-46, *Johnson*, 362 F. Supp. 2d at 1085.

The Court must also carefully delimit the scope of the government expert's inquiry in general, *see United States v. Williams*, 731 F. Supp. 2d 1012, 1017-19 (D. Haw. 2010) (holding that government's experts are limited to rebutting the defendant's mental health evidence, "*not*

---

[1] Such matters are not merely abstract concerns or matters of timing. Requiring a defendant to submit to a compelled mental health evaluation by an agent of the government implicates important constitutional guarantees under the Fifth and Sixth Amendments, as does any requirement that the defense disclose information to the government in advance of trial that may be used against him. *See generally Estelle v. Smith*, 451 U.S. 454, 463 (1981) (holding that Fifth Amendment applies with equal force to compelled mental health evaluation as to forced testimony by defendant at trial); *Buchanan v. Kentucky*, 483 U.S. 402, 424 (1987) (holding that right to assistance of counsel in this context means that defendant has right to discuss examination and its scope with his lawyers before deciding whether to submit to procedure).

3

*ascertaining another possible motive for Defendant's actions*") (emphasis in original), and in particular, with respect to specific areas of questioning to which the defendant objects, *see Johnson*, 383 F. Supp. 2d at 1165 (restricting questioning of defendant by government experts regarding offense in light of scope of defense evaluations). Additionally, the Court may be called upon to decide whether the examinations of the government experts may be recorded. *See United States v. Bowers*, No. 18-cr-292-RJC, ECF No. 1200 at 16-17 (W.D. Pa. May 8, 2023) (denying government request for recording of examinations). In order to allow sufficient time for comprehensive briefing on all of these issues by both sides, oral argument, and a decision by the Court, as noted we propose that briefing begin approximately 120 days prior to the defense notice date.

Once that litigation is completed, the defense proposal further includes dates for the government to move for permission for its expert to examine Payton Gendron,[2] followed by the defense response and the government's reply. This step is necessary to afford the defense an opportunity to raise any challenges to the government's basis for seeking such an examination as well as the sufficiency of its description of what its expert proposes to do and the appropriateness thereof in light of the Court's rulings on the preceding briefing. As soon as objections, if any, to the government's proposal are resolved, the rebuttal examination can be scheduled.

---

[2] In its own proposed scheduling order, the government appears to assume that it is automatically entitled to an examination of Payton Gendron by its own expert once the defense files notice under Rule 12.2(b)(6). *See* ECF No. 133 Ex. A at 3 ("If defendant provides such notice, defendant *shall* be examined by a corresponding mental health professional or professionals selected by the government for purposes of rebuttal") (emphasis added). As Rule 12.2 makes clear, however, the government has no such right. R. 12.2(c)(1)(B) ("If the defendant provides notice under Rule 12.2(b) the court *may*, upon the government's motion, order the defendant to be examined under procedures ordered by the court.") (emphasis added). Rather, the Court first must examine the government's request and the bases therefore and determine whether the proposed procedure is consistent with Payton Gendron's Fifth and Sixth Amendment rights.

## II. THE DEFENSE PROPOSAL AFFORDS THE GOVERNMENT ADEQUATE TIME FOR REBUTTAL OF DEFENSE MENTAL CONDITION EVIDENCE SHOULD ANY BE PRESENTED

The defense proposal affords the government ample time to secure a rebuttal examination of Payton Gendron, if one is ordered, well in advance of the penalty phase of trial. The government will receive notice (if applicable) of the defense's intent to present expert mental condition evidence by June 23, 2025, over two and a half months before the scheduled commencement of voir dire on September 8, 2025. The government is afforded 30 days in which to prepare and file a motion for a rebuttal examination, which itself may be scheduled, if ordered, before the voir dire process begins. Given the government's projection of three to four months to complete jury selection, followed by five to six weeks for its case-in-chief at the culpability phase, 2/2/2024 Tr. at 40-41, the defense proposed schedule affords it an abundant window of time in which to arrange and secure a rebuttal examination or examinations long before the commencement of the penalty phase.

By way of comparison, in the recent case of *United States v. Bowers*, No. 18-cr-292-RJC, ECF No. 640 (W.D.P.A. Nov. 12, 2021), the district court ordered the defense to file its notice under Rule 12.2(b) 60 days before the commencement of jury selection. The defense duly filed notice on February 23, 2023, 60 days before the start of voir dire on April 24, 2023. *Id.* at ECF No. 972. At the request of the government, *id.* at ECF No. 180, and in contrast to the defense proposal in this case, litigation regarding the particular procedures to be followed occurred after the defense filed its notice, rather than before. Extensive motions practice and briefing on the various issues continued beyond the start of jury selection and culminated in a memorandum opinion by the court on May 8, 2023. *Id.* at ECF No. 1200. The government's experts' examinations were therefore delayed until after the opinion was issued, yet still occurred in

plenty of time for the government to present its rebuttal evidence at the penalty phase of the trial. The defense proposal in this case will result in a significantly more streamlined and efficient procedure and even more time for the government to conduct its examinations.

Similarly, in *United States v. Saipov*, 17-cr-00722-VSB, ECF No. 173 (S.D.N.Y.), on May 20, 2019, the court entered a scheduling order that directed the defense to file notice under Rule 12.2(b) by February 3, 2020, or approximately 60 days prior to the commencement of jury selection, then-scheduled for April, 2020.[3] *See also United States v. O'Reilly*, 2010 WL 653188, at *3, ¶¶ 1 & 3 (E.D. Mich. May 10, 2010) (defense to provide 12.2 notice approximately three months before jury selection commences, but court will consider any requests to amend notice up to and including two weeks prior to start of jury selection); *United States v. Wilson,* 493 F. Supp. 2d 348, 353, 357 (E.D.N.Y. 2006) (notice required within three months of trial); *United States v. Minerd,* 197 F. Supp. 2d 272, 277 (W.D. Pa. 2002) (approximately three weeks prior to commencement of jury selection); *United States v. Edelin,* 134 F. Supp. 2d 45, 58 (D.D.C. 2001) (one month between notice and beginning of jury selection).

There is thus no basis nor justification for requiring the defense to file Rule 12.2(b) notice six months before the start of trial, as proposed by the government. ECF No. 133, Ex. A at 2-3. No matter when the examinations occur, the government is expressly precluded from accessing the results until after a guilty verdict is entered and the defense reaffirms its continuing intent to present its own expert mental condition evidence. *See* Rule 12.2(c)(2). The government's proposed deadline would constitute a wholly arbitrary and unnecessary reduction of the time available to ensure fulsome briefing of the complex issues that must be decided by the Court and

---

[3] The trial was later continued for unrelated reasons.

for the defense to complete the monumental task of investigating and assessing the defense mental health case.

### III. THE DEFENSE PROPOSED SCHEDULE IS NECESSARY TO ACCOMODATE THE MULTISTEP, RESOURCE-INTENSIVE PROCESS THAT MUST PRECEDE A DEFENSE DECISION TO PRESENT EXPERT MENTAL CONDITION EVIDENCE AT THE PENALTY PHASE UNDER THE FIFTH, SIXTH AND EIGHTH AMENDMENTS AND THE ABA GUIDELINES

Providing effective assistance to a defendant in a capital case under the Fifth, Sixth and Eighth Amendments to the Constitution with respect to the investigation and presentation of mental health evidence is an enormous undertaking. *See* American Bar Association, *ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, 31 Hofstra L. Rev. 913, 956 (2003) (Commentary, Guideline 4.1) ("ABA Guidelines") ("Creating a competent and reliable mental health evaluation consistent with prevailing standards of practice is a time-consuming and expensive process."). To make a reasonable determination whether to introduce mental health evidence at the penalty phase, counsel must complete a lengthy, multi-step process.

First, counsel must substantially complete a constitutionally adequate investigation of their client's background and social history. *See, e.g., Griffin v. Pierce*, 622 F.3d 831, 844-45 (7th Cir. 2010) (reversing death sentence where trial counsel failed to conduct adequate investigation in light of available evidence of child abuse, a diagnosis of schizophrenic reaction with suicidal tendencies, past suicide attempts and drug addictions); *Pruitt v. Neal,* 788 F.3d 248, 272 (7th Cir. 2025) (finding counsel's failure to investigate defendant's mental illness, even after learning he had been diagnosed with schizophrenia, "fell below an objective standard of reasonableness").

7

Second, based upon the information revealed by that investigation, counsel must identify the areas of mental health expertise that are potentially implicated by the defendant's particular mental health profile. *See, e.g.,* Russell Stetler, *Mental Health Evidence and the Capital Defense Function – Prevailing Norms*, 82 U.M.K.C. L. Rev. 407, 427 (2014) ("Only after the social history data have been meticulously digested and the multiple risk factors in the client's biography have been identified will counsel be in a position to determine what kinds of culturally competent experts are appropriate to the needs of the case"); *Pruitt*, 788 F.3d at 271-72 (finding trial counsel ineffective where, although they investigated and presented evidence of the defendant's intellectual disability, they failed to investigate and retain experts regarding his mental illness, thereby depriving defendant of evidence that he suffered from paranoid schizophrenia).

Third, counsel must identify and retain individual experts who both have the necessary expertise in those areas and are willing and able to participate in a capital case. *See, e.g., Skaggs v. Parker*, 235 F.3d 261, 267 (6th Cir. 2000) (finding counsel ineffective for presenting unhelpful testimony of incompetent and fraudulent psychologist instead of expert testimony regarding defendant's mental retardation and diminished mental capacity that was available). Fourth, counsel's retained experts must review the evidence uncovered by the social history investigation so that they may competently identify all necessary and appropriate evaluative procedures based on the defendant's observed symptomatology and history. Douglas S. Liebert and David V. Foster, *The Mental Health Evaluation in Capital Cases: Standards of* Practice, 15 Am. J. of Forensic Psychiatry 43, 46 (quoting H.I. Kaplan and B.J. Sadock, *Comprehensive Textbook of Psychiatry*, (4th ed. 1985) (an expert in a capital case must first be provided with "an accurate medical, developmental, psychological and social history . . . An accurate and broad-based

history has been called the 'single most valuable element to help the clinician reach an accurate diagnosis.'"). A defendant with a suspected schizophrenia spectrum disorder, for example, will require very different experts and evaluative techniques than a defendant with intellectual disability, chronic exposure to childhood psychological trauma or an epileptiform disorder, to name just a few commonly encountered conditions.

Finally, when their experts' review of background information is complete, the indicated evaluations of Payton Gendron have been conducted and the experts' conclusions have been reached,[4] counsel will be in a position to make a competent and reliable determination of whether to present mental health evidence at the penalty phase of the trial and to timely file notice of same.

### IV. Conclusion

Defense counsel's proposed schedule for Rule 12.2(b) litigation facilitates the timely and efficient litigation of the important procedural and constitutional issues that arise in this context, ensures the government will have ample opportunity for rebuttal of defense expert evidence if it is presented, and accommodates the time-consuming process of investigating and preparing the expert mental health case required of the defense. The Court should therefore adopt the proposal and reject the government's position.

Dated:     February 16, 2024
           Buffalo, New York

---

[4] Of course, this determination must also be informed by a full understanding of the government's evidence of culpability and the theories of aggravation and death-worthiness that it intends to pursue at trial. The schedule set forth in the defense proposal sets the deadline for the defense to provide notice of intent to introduce expert mental condition evidence at a stage of pretrial litigation sufficiently advanced to ensure that defense counsel will have all information necessary to make meaningful decisions.

*s/Sonya A. Zoghlin*
Sonya A. Zoghlin
Assistant Federal Public Defender

*s/Anne M. Burger*
Anne M. Burger
Supervisory Assistant Federal Public Defender

*s/MaryBeth Covert*
MaryBeth Covert
Senior Litigator

*s/Julie Brain*
Julie Brain
Julie Brain, Attorney at Law