UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v. 

PAYTON GENDRON,

        Defendant.

22-CR-109-LJV
DECISION & ORDER

---

On July 28, 2022, the defendant, Payton Gendron, moved for a protective order prohibiting the government from accessing his pretrial detention records.  Docket Item 15.  The government opposed the motion, Docket Item 92, but it agreed not to pursue obtaining Gendron's pretrial detention records while the motion was pending, Docket Item 53 at 6-7.  Gendron filed a reply, Docket item 20, and the government filed a sur-reply, Docket Item 23.

The Court heard oral argument on February 2, 2024, and allowed the parties to file additional briefs to address whether the government needed to demonstrate some level of relevance before accessing the records.  *See* Docket Item 135.  The government filed a supplemental memorandum, Docket Item 140; Gendron responded, Docket Item 144; and the government replied, Docket Item 146.

For the reasons that follow, the Court grants Gendron's motion insofar as it requests that the records be provided to defense counsel for review before they are given to the government.

After the facilities release the records to defense counsel, defense counsel shall review them and create a log of any records they want to withhold, identifying the

applicable privilege or right.  If there is a dispute about any of the withheld records, the Court will review the records in camera and will rule on whether a privilege or right applies.  In order to facilitate review and assist the Court in deciding whether a privilege or right applies, on or before May 15, 2024, the government shall submit affidavits from the facilities addressing Gendron's privacy interests.

## BACKGROUND

A federal indictment charges Gendron with twenty-seven felony counts in connection with a shooting that killed ten people and injured three at a Tops grocery store in Buffalo on May 14, 2022.  Docket Item 6.  The government intends to seek the death penalty as to ten of the counts.  Docket Item 125.  Gendron was housed at one facility from May 14, 2022, until February 2023, when he was moved to a second facility.  Docket Item 144 at 1-2.

The government has requested six categories of pretrial detention records: (1) Gendron's recorded nonlegal communications, including telephone calls, texts, emails, and audio/video calls; (2) logs of those who visited Gendron, excluding legal and expert visits; (3) records, other documents kept in the regular course of business, and notes of observations of or interactions with Gendron, including, but not limited to, booking and intake records, reports relating to Gendron's daily activities, disciplinary records, and any voluntary statements Gendron made; (4) Gendron's commissary transactions; (5) nonlegal correspondence between Gendron and others; and (6) internet search history from any computer(s) or tablet(s) Gendron has used.  Docket Item 140 at 2-3.

The first facility reportedly has records for categories two, three, and four. Docket Item 144 at 2. In the third category, it has only booking and intake records. *Id.* The second facility reportedly has records for all six categories. *Id.*

## **DISCUSSION**

Rule 16(d)(1) of the Federal Rules of Criminal Procedure allows courts to issue protective orders. *See id.* ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."). The party seeking the protective order has the burden to show good cause for its issuance. *United States v. Smith*, 985 F. Supp. 2d 506, 522-23 (S.D.N.Y. 2013).

Gendron requests a protective order prohibiting the government from accessing any of his pretrial detention records. Docket Item 144 at 11. He contends that the records contain information that, if turned over to the government, would violate his rights and privileges, including: his rights under the First, Fourth, Fifth, and Sixth Amendments; his rights to due process and equal protection; his protections under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended ("Title III"), 18 U.S.C. §§ 2510-23; his right to confidentiality under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104-191; the attorney-client, doctor-patient, and psychotherapist-patient privileges; and the privileges afforded under the attorney work-product doctrine. Docket Item 15 at 2-3, 5; Docket Item 144 at 3-5. Additionally, he argues that disclosure would violate the Federal Rules of Criminal Procedure. Docket Item 15 at 3-5.

Gendron also argues that the government needs a subpoena under Federal Rule of Criminal Procedure 17 to access any pretrial detention records, Docket Item 144 at 7-

3

9, and he therefore requests an order prohibiting the facilities from disclosing his records to the government voluntarily, *id.* at 11. In the alternative, he asks for a hearing to determine relevant factual issues. *Id.* If the Court allows records to be disclosed to the government, Gendron requests that the records first be disclosed to his counsel so that they can raise objections to the government's access to particular documents and records. *Id.*

The government urges the Court to deny the protective order in full. Docket Item 146 at 12-13. It contends that a government filter team can "sift and cull the records for any arguably privileged materials" and that this would "adequately protect[]" Gendron's rights and interests. *Id.* at 12.

Because Gendron's protections as a detainee are limited, *see Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979), the government may access at least some of the pretrial detention records it seeks. Therefore, Gendron's request for a blanket protective order requiring a subpoena for all pretrial detention records is denied.

At the same time, Gendron has presented good cause for oversight over the government's access to the facilities' records. Gendron does retain some rights and privileges, *see, e.g.*, *id.* at 545; *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011), and he has presented good cause for concern that when the facilities produce the records the government seeks, the production may include items that are privileged or that would violate his constitutional or statutory rights. And for the reasons explained below, this Court finds that the defense team is best suited to screen the records.

I.      **RULE 17 SUBPOENA**

A threshold issue is whether the government must seek a Rule 17 subpoena for pretrial detention records.  Gendron asks this Court to hold that prosecutors always need a subpoena for pretrial detention records—even if the facility is willing to turn them over without one.  Docket Item 144 at 9.  If the government needed a Rule 17 subpoena, the lack of a subpoena here could constitute good cause for a protective order.

Both sides agree that the Second Circuit has not squarely addressed the issue of whether detention facilities may provide records to prosecutors absent a warrant or subpoena.  Docket Item 144 at 8-9; Docket Item 146 at 10.  Some facilities voluntarily produce records for the government, while other facilities seem to require subpoenas.  *United States v. Feaster*, 2017 WL 6492101, at *4 (W.D.N.Y. Nov. 6, 2017), *report and recommendation adopted*, 2017 WL 6409153 (W.D.N.Y. Dec. 15, 2017).

The government submits that it is "well-established practice in this District" for the government to receive information that facilities voluntarily disclose.  Docket Item 140 at 7.  But that is not dispositive.  A practice may be customary but nevertheless improper.

On the other hand, Gendron offers no legal authority that might require the government to seek a subpoena to access pretrial detention records that a facility is willing to produce without one.  *See* Docket Item 144 at 7-9.  Nor has this Court found any authority suggesting that a government entity needs a subpoena to obtain records that a detention facility is willing to provide voluntarily.

In the absence of such authority, and because the Court is ordering a procedure for reviewing the records in this case, this Court need not and does not hold that

5

facilities must require subpoenas before voluntarily producing pretrial detention records to the government.  Nor will the Court preclude facilities from requiring a subpoena.  The Court finds only that the government's failure to seek a subpoena does not constitute good cause for a protective order with respect to material that a facility is willing to produce without one.

## II.     GENDRON'S RIGHT TO PRIVACY

Gendron argues that turning over several of the government's requested categories of records—such as his jail calls and nonlegal mail—would constitute a violation of his right to privacy.  Docket Item 144 at 3-7.

Pretrial detainees retain some constitutional rights, *Bell*, 441 U.S. at 545, but "[t]he fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights," *id.* at 546.  For example, pretrial detainees may retain some residual privacy interests under the Fourth Amendment, but those rights can be limited to maintain prison security and preserve institutional order and discipline.  *United States v. Willoughby*, 860 F.2d 15, 21 (2d Cir. 1988).  Inmates also retain First Amendment rights, but those rights are subject to prison regulations "'reasonably related to legitimate penological interests.'"  *United States v. Felipe*, 148 F.3d 101, 108 (2d Cir. 1998) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

To determine whether taping and monitoring an inmate's telephone conversations is an unreasonable invasion of privacy, courts consider the institution's interest in preserving security as well as whether inmates are given notice that their calls may be monitored.  *Willoughby*, 860 F.2d at 20-21.  Notice is also a touchstone for claims under Title III, which generally prohibits intentional interception of wire

communications without a court order.  *Willoughby*, at 19-20 (explaining that inmates' use of telephones despite having notice that calls will be monitored constitutes implied consent and that Title III's prohibition therefore does not apply).  Officials may intercept inmates' correspondence consistent with the First and Fourth Amendments if they have good or reasonable cause to inspect the mail.  *Felipe*, 148 F.3d at 108.  Here, absent any evidence about notice and good cause for the facility to access Gendron's communications, Gendron has plausible arguments about privacy in his phone calls and correspondence.[1]  *See* Docket Item 144 at 6.

The government has offered to produce affidavits describing the facilities' notice provisions for monitoring and recording phone calls and the facilities' good or reasonable cause to screen inmate correspondence.[2]  Docket Item 146 at 5.  This Court agrees that such affidavits are necessary to determine whether Gendron has been

---

[1] For that same reason, Gendron has standing to seek a protective order.  The government argues that Gendron lacks standing under the Fourth Amendment to request a protective order for his pretrial detention records because he has no reasonable expectation of privacy in those records.  Docket Item 140 at 7-8.  But the government does not explain why Gendron lacks standing with respect to the other rights and privileges that he raises.  Moreover, as to Gendron's Fourth Amendment rights, the government has not yet shown Gendron's notice and the facilities' interests regarding recorded communications.  Nor has it demonstrated good or reasonable cause for the facilities to inspect and monitor his communications.  In the absence of all that information, the Court will not find Gendron lacks privacy interests as a matter of law.

[2] The government's categories distinguish between "[r]ecorded . . . communications," which include texts, emails, telephone calls, and audio/video calls, and "correspondence" which seems to include only mail.  *See* Docket Item 140 at 2-3; *and see Felipe*, 148 F.3d at 107-09 (analyzing issue of intercepting mail and using "mail" and "correspondence" interchangeably).  As the government notes, the second facility reported that it has both recorded communications and correspondence, while the first facility reported that it has only correspondence.  *See* Docket Item 146 at 5 n.2.  The government may produce affidavits from each facility as necessary to support its arguments.

7

given adequate notice that his communications are not private and to ensure that the facilities have good reason to monitor communications and screen correspondence. As to the phone calls, the government's brief does not say it intends to provide evidence about the institutional interests in monitoring and recording calls. *Id.* But the affidavits can and should include such information. *See Willoughby*, 860 F.2d at 21 (analyzing Fourth Amendment claim about a prison's practice of taping phone calls by addressing notice *and* by explaining that the prison officials considered the practice to be "extremely effective" in maintaining internal security and listing ways the practice had been effective). Furthermore, although the parties' briefing and the caselaw largely focus on phone calls and mail, given the similarities between those types of communication and texts, emails, and audio/video calls, the government should present information about the monitoring of texts, emails, and audio/video calls as well.

Accordingly, the government may contact the facilities to obtain affidavits about how and why Gendron's privacy rights are limited while he is detained. The affidavits should address the facilities' policies for notice and consent, the reasons for monitoring communications and screening correspondence, and any other relevant information. The government shall provide such affidavits to the Court and defense counsel on or before May 15, 2024.[3]

---

[3] Gendron submits that an evidentiary hearing is necessary. Docket Item 144 at 6. This Court will allow the government to produce affidavits and will consider holding a subsequent evidentiary hearing if necessary.

### III. PRIVILEGED RECORDS

Gendron also seeks to ensure that the facilities do not provide privileged records to the government. Docket Item 15 at 2. This Court agrees that it is crucial to ensure that the government does not obtain any privileged records. Indeed, government interference in the relationship between counsel and a defendant may violate the defendant's right to the effective assistance of counsel under the Sixth Amendment. *United States v. Ginsberg*, 758 F.2d 823, 833 (2d Cir. 1985). And intercepting a defendant's communications can threaten that right by, for example, inhibiting free exchanges between the defendant and counsel. *Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977).

The government says that it does not seek records protected by the attorney-client privilege. Docket Item 92 at 3. But there may be disputes between the parties as to what is privileged. And despite the government's stated desire not to seek legal communications or correspondence, Gendron has raised reasonable concerns that the institutions may—perhaps inadvertently—turn over records that are protected by the attorney-client privilege.

Moreover, the defense has suggested other privileges that might be implicated, such as the psychotherapist-patient privilege. *See Jaffee v. Redmond*, 518 U.S. 1, 15-16 (1996) (explaining that the psychotherapist-patient privilege covers confidential communications made to licensed psychiatrists, psychologists, and social workers in the course of diagnosis or treatment). And it may not always be obvious that a communication is protected by that privilege: Intake questions about mental health, for example, may implicate the psychotherapist-patient privilege. *See* Docket Item 20 at 6-7.

Particularly given the stakes in this case, this Court finds that Gendron has presented good cause for concern that the facilities' production of records may include privileged records. To protect those records from disclosure, the Court finds that the following procedure is necessary and appropriate.

## IV.     PROCEDURE FOR REVIEW OF RECORDS

In the abstract, it is difficult for the parties to argue and for the Court to discern the applicability of rights and privileges to records that are not before the Court. Yet it takes little imagination to see how the production of documents and records may include protected materials. Moreover, although the government now requests a narrowed set of records, any production of records for the six categories it seeks may well include records outside those categories. This may happen due to inadvertence, or the facilities may lack the narrow records the government seeks. For example, the facilities may lack the ability to provide visitor logs that exclude legal and expert visits, or recorded communications that do not include legal material. And even if the Court makes the dubious assumption that the records will be pristine, Gendron raises colorable arguments about the application of his rights and privileges to the records the government seeks.

Some entity must review the records to ensure that they fit within the government's request and do not violate Gendron's rights and privileges. The government wants the entity to be its own filter team. Docket Item 146 at 11-12. It correctly notes that courts in this circuit have approved the use of such teams. *Id.* at 11; *see e.g.*, *United States v. Avenatti*, 559 F. Supp. 3d 274, 282 (S.D.N.Y. 2021). But the

government has not shown that a filter team is the only acceptable—or even the better—approach.

In fact, as between a government filter team and the defense, the defense is better suited to sort these records.  The defense has the relevant information necessary to give the government the information it requests, and no more.  Consider the visitor logs, for example.  The defense knows the names of its own team members and experts and can easily redact the logs to remove those names.

Moreover, the defense is highly motivated to protect Gendron's rights and privileges.  That is paramount given the unique and important nature of this case.  *See, e.g.*, *California v. Ramos*, 463 U.S. 992, 998-99 (1983) ("[T]he qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination."); *Gardner v. Florida*, 430 U.S. 349, 357 (1977) ("[D]eath is a different kind of punishment . . . .").  The defense's proposal also allows the Court to take a familiar role as a backstop.  *See In re Grand Jury Subpoenas Dated Mar. 18, 2022 & Aug. 2, 2002*, 318 F.3d 379, 386 (in camera review is a common practice for producing materials that may be privileged).

Therefore, because of the risk that facilities will disclose records that are privileged or protected by statute or the Constitution, and because of the uncertainty of the application of certain rights and privileges to particular records, defense counsel shall review the records before they are turned over to the government.  Defense counsel shall create a log listing any documents or records that they contend should not be produced and shall provide that log to the government.  If Gendron seeks to raise a privacy argument notwithstanding the representations in the affidavits that the

government will submit, Gendron may raise that argument in connection with his log. If there are disputes about withheld records, the Court will review the log and the relevant records in camera. The Court will set a schedule for the review of records and the creation of a log once those documents have been produced to defense counsel and the Court has some idea of the magnitude of the task of preparing a log.

## **CONCLUSION**

In sum, Gendron has presented good cause for a protective order that allows his counsel to review the facilities' records before those records are turned over to the government.

The Court therefore GRANTS Gendron's motion insofar as it requests that the records be provided to defense counsel for review before being given to the government. The facilities shall release the records to defense counsel. Defense counsel shall review the records and create a log of any records it wants to withhold, identifying the applicable privilege or right. If there is a dispute about any of the withheld records, the Court will review the disputed records in camera and will rule on whether a privilege or right applies.

As noted above, the government may contact the facilities to obtain affidavits addressing their policies for notice and consent, their reasons for monitoring communications and screening correspondence, and any other relevant information. The government shall provide such affidavits to the Court and defense counsel **on or before May 15, 2024**. The Court will set a schedule for the preparation of a log and the production of documents to the government after the records have been provided to defense counsel.

SO ORDERED.

Dated:     April 29, 2024
               Buffalo, New York

                                                ***/s/ Lawrence J. Vilardo***
                                                LAWRENCE J. VILARDO
                                                UNITED STATES DISTRICT JUDGE