UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

     v.

                           22-CR-109 (LJV-HKS)

PAYTON GENDRON,

          Defendant.
_____

## MOTION FOR INFORMATIONAL OUTLINE
## OF CERTAIN AGGRAVATING FACTORS

### I.  Introduction

      Defendant, Payton Gendron, through undersigned counsel, and pursuant to the Fifth,

Sixth and Eighth Amendments to the U.S. Constitution and the Federal Death Penalty Act

("FDPA"), hereby moves the Court to direct the government to provide him with an

informational outline of the statutory and non-statutory aggravating factors that it intends to

prove at a capital-sentencing phase of his trial to support a death sentence.

      At such a sentencing phase, aggravating factors will play a role similar to offense

elements at a guilt-innocence trial.  But here, for most of the aggravators, including the critical

ones involving the crime's effects on the deceased's relatives and on injured survivors, the

indictment and government's death-penalty notice contain only barebones, vague allegations,

lacking any information about the facts the government intends to rely upon.  This prevents

Gendron from preparing to defend against these aggravating factors at a sentencing phase.  It

also prevents the Court from carrying out its critical pretrial duty to act as a gatekeeper against

invalid factors and inadmissible evidence.  As most other district courts – including in this

Circuit – have recognized, an appropriate way to avoid these problems is for the government to

provide an informational outline of the essential facts underlying its aggravating factors.  Such an outline functions much like a bill of particulars does for a guilt-innocence trial when the indictment is similarly conclusory.

An informational outline should be provided within 90 days, by August 2, 2024.  By that date, the government will have had more than two years to investigate and prepare its case, and surely will be able share with the Court and the defense the essential facts underlying its aggravating factors.  And there is clear precedent from other district courts for such a deadline. Moreover, since Payton Gendron's trial has been provisionally scheduled for 13 months later, September 2025, further delay would interfere with the defense's ability to complete the time-consuming process of investigating and preparing to confront and rebut those factual allegations. And – especially as defense pretrial motions are due in six months, by November 1, 2024 – further delay would also force a cramped, rushed process on the parties and the Court for resolving the extensive, complex litigation over the aggravating factors and evidence that must await receipt of the informational outline and full discovery.

## II.  Factual Background

If this case reaches a capital-sentencing phase, the government will seek to persuade the jury that Payton Gendron should be condemned to die for using a gun to kill ten people at the Tops grocery store in Buffalo on May 14, 2022.  Almost immediately after he was arrested at the scene by local law enforcement and charged in state court, federal officials including the Attorney General publicly signaled an intent to also pursue a federal prosecution and the harshest punishment of Payton Gendron in federal court.  The government mounted a massive federal investigation and filed a federal complaint, ECF No. 1, the following month.  The indictment that followed a month later charged him with killing the ten deceased victims because of their race,

18 U.S.C. § 249(a)(1)(B)(3), the ten capital counts of using a firearm to kill them, 18 U.S.C. §

924(j), and seven other counts for attempting to kill three victims who were shot but survived.

ECF No. 6.  Although the indictment contains an "Introduction," it is similarly sparse, adding

only that Payton Gendron drove to the scene on the date of the crime and how he was armed and

reciting the statutory language of four enumerated aggravating factors that it alleged as Special

Findings establishing eligibility for a sentence of death.  ECF No. 6 at 1-2, 11-12.

The government formally announced its intent to seek the death penalty against Payton

Gendron four months ago, in January 2024.  The government's Notice of Intent, ECF No. 125,

says that, at a capital-sentencing phase, it intends to prove a total of nine aggravating factors.

Four of these are aggravating factors listed in the FDPA: (1) "Grave Risk of Death to Additional

Persons," (2) "Substantial Planning and Premeditation," (3) "Vulnerable Victim," and (4)

"Multiple Killings and Attempted Killings."  The remaining five are factors the government has

crafted on its own: (5) "Victim Impact," (6) "Injury to Surviving Victims," (7) "Racially-

Motivated Killings," (8) "Attempt to Incite Violence," and (9) "Selection of Site."  ECF No. 125

at 3-5.

The Notice's allegation for each of these aggravating factors is quite summary.  In one

instance, this may suffice because the facts encompassed are necessarily clear, narrow, and

concrete.  That is the "Multiple Killings and Attempted Killings" aggravating factor, which

alleges that Payton Gendron "intentionally killed and attempted to kill more than one person in a

single criminal episode.  18 U.S.C. 3592(c)(16)."  ECF No. 125 at 3.  This obviously tracks the

indictment's allegations, meaning that he in fact killed ten people in the store and attempted to

kill three others.

But otherwise the Notice's allegations are generalized and unbounded, leaving the defense blind as to what acts, events, harms – in short, what facts – the government intends to prove.  The most glaring examples are the two aggravators likely to spawn the most extensive litigation over their validity, scope, and admissibility and to consume most of the government's sentencing presentation if permitted: the "non-statutory" factors of "Victim Impact" and "Injury to Surviving Victims."   For the former, the Notice says only that the government will prove each victim's "personal characteristics" and "the impact of the victim's death upon his or her family and friends."  And for the latter, the Notice says only that the government will prove "serious physical and emotional injury, and severe psychological impact" suffered by the surviving victims.  ECF No. 125 at 4.  Furthermore, to date the defense has received no discovery about such personal characteristics or impacts, including no 302's or other statements from the deceased's relatives and friends.[1]

Over defense objections, the Court has scheduled the trial to begin in 16 months, on September 8, 2025.  And it has ordered Payton Gendron's pretrial motions to be filed in six months, by November 1, 2024.  ECF No. 141.

## III.  Argument

### A.  Payton Gendron is entitled to meaningful advance notice of the theories and facts the government intends to prove at a capital-sentencing phase to establish its aggravating factors.

The sentencing phase of a capital trial parallels an ordinary criminal trial in certain respects, with aggravating factors functioning much like elements of the offense:  The government must prove each aggravating factor beyond a reasonable doubt; jurors may not

---

[1] In recent discussions, the government has indicated that it intends to provide some victim related 302s in its next production.  As of this filing, we have not yet received that production.

consider an aggravating factor unless they unanimously find it so proved; and their ultimate verdict turns on their findings of such factors – along with the defendant's mitigating factors, which analogize to affirmative defenses.  *See* 18 U.S.C. § 3593(c)-(e); *United States v. Fell*, 360 F.3d 135, 142 (2d Cir. 2004).

As with any trial, Payton Gendron is entitled to meaningful notice of what the government intends to prove, so that he can prepare and present a defense, including any legal or evidentiary challenges.  Thus, in an ordinary criminal prosecution, a bill of particulars is required when the indictment charges are phrased in general terms so that they "do not advise the defendant of the specific acts" the government will seek to prove.  *United States v. Chen*, 378 F.3d 151, 162-63 (2d Cir. 2004); *see* Fed. R. Crim. P. 7(c)(1) (indictment must include a "definite written statement of the essential facts constituting the offense charged"); Fed. R. Crim. P. 7(f) (authorizing court to "direct the government to file a bill of particulars" to supplement the indictment, "as justice requires"); *see also United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (purpose of bill of particulars is "to prevent surprise").  And such a bill of particulars is particularly appropriate when the potential acts covered by the charges are broad in scope or wide-ranging.  *United States v. Bortnovsky*, 820 F.2d 572, 574-75 (2d Cir. 1987); *United States v. Clarkson Auto Elec., Inc.*, 2014 WL 3906324, at **3-4 (W.FDPD.N.Y. Aug. 8, 2014).

At a capital-sentencing phase, with Payton Gendron's life at stake, the right to meaningful notice of the government's aggravating factors enjoys heightened, due-process protection.  *See Lankford v. Idaho*, 500 U.S. 110, 123-25 (1991); *Gardner v. Florida*, 430 U.S. 349, 358-59 (1977).  The FDPA permits the jury to consider only aggravating factors "for which notice has been given" by the government.  18 U.S.C. § 3592(c).  While the statute does not specify the kind or extent of the notice required, as another district court in this Circuit

recognized, "at a minimum, due process requires a defendant to receive sufficient notice of aggravating factors to enable him to respond and prepare his case in rebuttal." *United States v. Wilson*, 493 F. Supp. 2d 364, 377 (E.D.N.Y. 2006); *United States v. Duncan*, 2008 WL 656036, at *5 (D. Idaho Mar. 6, 2008) (same); *United States v. Kaczynski*, 1997 WL 34626785, at *18 (E.D. Cal. Nov. 7, 1997) (same).  Otherwise, it "raises the specter of unfair surprise and potentially prejudices Defendant's ability to defend against the government's efforts to impose the death penalty." *United States v. Rodriguez*, 380 F. Supp. 2d 1041, 1057 (D.N.D. 2005).

That means, at minimum, the government "must inform the defendant[] of the theories and facts that the government will use to establish each aggravating factor in the case." *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 472 (E.D. Pa. 2001); *United States v. Burkhalter*, 2021 WL 3519281, at **9-10 (W.D. Mo. Aug. 10, 2021) (same) *United States v. Lujan*, 2008 WL 11359151, at **23-24 (D.N.M. June 26, 2008) (same); *Duncan*, 2008 WL 656036, at *5 (same); *United States v. Diaz*, 2007 WL 196752, at *2-3 (N.D. Cal. Jan. 23, 2007) (same).

Requiring the government to disclose such theories and facts also enables this Court to carry out its essential gatekeeping function at a capital-sentencing phase.  *See* 18 U.S.C. 3593(c). By mandating advance notice, the Court ensures it can carefully consider the critical, complex defense motions that will follow, and make reasoned, deliberate choices in "screening of aggravating factors [which] is essential to channeling, directing and limiting the sentencer's discretion in order to prevent arbitrary and capricious imposition of the death penalty." *United States v. Hammer*, 2011 WL 6020157, at *3 (M.D. Pa. Dec. 1, 2011); *see also, e.g., United States v. Basciano*, 763 F. Supp. 2d 303, 357 n.4 (E.D.N.Y. 2011); *United States v. Karake*, 370 F. Supp. 2d 275, 280-81 (D.D.C. 2005) (requiring government to notice further "specifics" for aggravating factors also "provide[s] the court with some frame of reference for ruling on

objections to the death penalty notice").  The Court's current scheduling order, ECF No. 141,

establishes a deadline six months from now, on November 1, 2024, for defense pretrial motions,

which must include challenges to the government's aggravating factors.  But Payton Gendron is

not in a position to present those challenges if his only notice of the aggravators is the barebones

allegations in the government's death-penalty Notice.

      Even comprehensive discovery about aggravating factors – much of which, in any event,

Payton Gendron is still seeking from the government – cannot substitute for such notice of the

government's anticipated presentation, especially where, as here, the discovery will be

voluminous.

> [T]he fact that the precise acts and/or events may have been disclosed in the
> course of discovery does not obviate the need for a more specific notice.  Even if
> the government has provided Defendant with documents detailing specific acts,
> the government has not yet indicated which acts and/or events it intends to use at
> sentencing.  In fact, the characterization of the discovery provided as extensive
> lends further support for requiring the government to identify the particular acts
> upon which it will rely.  Extensive discovery could make it difficult for Defendant
> to ascertain which precise discovery will be used against him.

*Rodriguez*, 380 F. Supp. 2d at 1057–58; *see Kaczynski*, 1997 WL 34626785, at *19 (same); *Diaz*,

2007 WL 4169973, at *5 ("Merely referring to a range of several hundred pages (or thousands in

some cases) in discovery is not an informative outline . . . [T]oo much is left to guesswork.

Notice means notice. It does not mean a scavenger hunt for clues in discovery, including in

redacted pages").

## B. As in other cases, the government should be directed to provide an informational outline of its aggravating factors, particularly its sketchy allegations for "Victim Impact" and "Injury to Surviving Victims"

      Based on these due-process considerations, the FDPA's notice requirement, and inherent

judicial authority, most district courts have agreed to order the government to produce in

advance an informational outline of what specifically it intends to prove at a capital-sentencing

hearing, for at least certain aggravating factors.  That appears to include every district court in this circuit to address the issue.  *See, e.g., United States v. Saipov*, No. 1:17-cr-722, ECF No. 482 (S.D.N.Y. Aug 11, 2022); *Basciano*, 763 F. Supp. 2d at 357; *United States v. Jacques*, 2011 WL 1675417, at **1, 29 (D. Vt. May 4, 2011), *overruled in part on other grounds*, 684 F.3d 324 (2d Cir. 2012); *Wilson*, 493 F. Supp. 2d 364, 377-78; *United States v. Bin Laden*, 126 F. Supp. 2d 290, 304 (S.D.N.Y. 2001); *United States v. Walker*, 910 F. Supp. 837, 855-856 (N.D.N.Y. 1995).  It also includes numerous district courts in other circuits across the country.[2]  *See, e.g., Burkhalter*, 2021 WL 3519281, at *9; *United States v. Lujan*, 530 F. Supp. 2d 1224, 1269-70 (D.N.M. 2008);  *Rodriguez*, 380 F. Supp. 2d at 1057-58; *Karake*, 370 F. Supp. 2d at 280-81; *Llera Plaza*, 179 F. Supp.2d at 472; *United States v. Glover*, 43 F. Supp.2d 1217, 1222 (D. Kan. 1999); *United States v. Savage*, 2013 WL 1934531, at **11, 21 (E.D. Pa. May 10, 2013); *Hammer*, 2011 WL 6020157, at **2-4; *Duncan*, 2008 WL 656036, at *5; *United States v. O'Reilly*, 2007 WL 4591856, at *5 (E.D. Mich. Dec. 28, 2007);  *Diaz*, 2007 WL 4169973, at *3; *United States v. Gooch*, 2006 WL 3780781, at *23 (D.D.C. Dec. 20, 2006); *Kaczynski*, 1997 WL 34626785, at *19.

Below, Payton Gendron addresses more specifically the ways in which seven of the nine aggravating factors in the government's death-penalty notice – especially "Victim Impact" and "Injury to Surviving Victims" – require an informational outline in order to provide the defense with adequate notice of the theories and facts the government intends to prove.

---

[2] Some courts outside this circuit have held that a defendant is not entitled to advance notice of the *specific evidence* to be used to establish the government's aggravating facts and theories. *See, e.g., United States v. LeCroy*, 441 F.3d 914, 929-930 (11th Cir. 2006); *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003); *United States v. Lee*, 274 F.3d 485, 495 (8th Cir. 2001).  The Second Circuit has not addressed that issue.

1.   **"Grave Risk of Death to Additional Persons"**

The government's death-penalty notice alleges that "in the commission of the offense, and in escaping apprehension," Payton Gendron "knowingly created a grave risk of death to one or more persons in addition to the victims of the offense." ECF No. 125 at 3. This simply repeats the language of the aggravating factor listed in the FDPA. 18 U.S.C. § 3592(c)(5). It provides no notice of which "persons" are covered: Does it mean other shoppers or employees in the store who were not injured? Law enforcement officers who responded to the scene? Other people in the general area of the store? And which particular individuals within the designated group? Moreover, what does the Notice mean by "escaping apprehension," given that Payton Gendron surrendered almost as soon as he got out of the store? Nor does the aggravating factor as alleged identify which act or acts by Payton Gendron knowingly created a grave risk to such individuals.

Accordingly, the Court should follow the lead of other district courts and order the government's informational outline to include such specific notice for this aggravating factor. *See, e.g., Llera Plaza*, 179 F. Supp. 2d at 473 (ordering production of informative outline where "neither the indictment nor the NOIs specify which 'additional persons' the defendants are alleged to have put at risk during their alleged crimes"); *Savage*, 2013 WL 1934531, at *12 ("Nowhere in the Revised Notice of Intent or in the Indictment does the Government allege any individuals, other than the victims, who were exposed to 'grave risk' during the commission of the charged murders. The Government shall submit an outline of the evidence it intends to use at the sentencing phase with respect to this aggravating factor."); *Diaz*, 2007 WL 196752, at *4 (ordering informative outline because "[t]he government did not explain in its briefs or at oral

argument who was put at grave risk, what the grave risk was, or how the defendant 'knowingly' created the risk").

### 2.   "Substantial Planning and Premeditation"

The government's death-penalty notice alleges that Payton Gendron "committed the offense after substantial planning and premeditation to cause the death of a person."  ECF No. 125 at 3.  Again, this simply repeats the bare language of the aggravating factor listed in the FDPA.  18 U.S.C. § 3592(c)(9).  The notice is devoid of any of the facts the government intends to prove to establish such planning and premeditation, including, most importantly, what acts by Payton Gendron constituted the planning, when and where those acts occurred, and which person's or persons' deaths were planned and premeditated.

Again, in similar circumstances, other courts have ordered the government to furnish an informational outline setting forth at least the factual basis for this aggravator.  *See, e.g.*, *United States v. Schlesinger*, 2021 WL 5578901, at *3 (D. Ariz. Nov. 30, 2021) ("specific acts"); *United States v. Con-Ui*, 2016 WL 9331115, at *18 (M.D. Pa. Jan. 28, 2016) (witnesses and evidence); *United States v. Ciancia*, 2015 WL 13798674, at *4 (C.D. Cal. Sept. 4, 2015) ("factual basis"); *Hammer*, 2007 WL 6020157, at *3 (information government plans to present); *Diaz*, 2007 WL 196752, at *4 ("factual basis"); *Glover*, 43 F. Supp. 2d at 1221-22 ("factual amplification").

### 3.   "Vulnerable Victim"

The government's death-penalty notice alleges that the five deceased victims named in Counts 12, 13, 14, 15 and 19 were each "particularly vulnerable due to old age and infirmity." ECF No. 125 at 3.  Again, this simply quotes the language of the aggravating factor listed in the FDPA.  18 U.S.C. § 3592(c)(11).  It does not specify, for each such victim, whether the alleged vulnerability was old age, infirmity, or both; if the former, how old the victim was; if the latter,

the nature of the infirmity; or how the victim's old age or infirmity allegedly made him or her particularly vulnerable to being shot and killed.  Nor does the death-penalty notice allege that Payton Gendron knew of each victim's particular vulnerability.

An informational outline providing those specifics is essential to enable the defense both to prepare to confront this aggravating factor and also to litigate, and for the Court to consider, pretrial requests to strike or narrow it.  "[E]vidence of victim vulnerability" as an aggravating factor "in a particular case is inherently individualized." *United States v. Green*, 2008 WL 4000870, at *19 (W.D. Ky. Aug. 26, 2008).  Thus, this aggravating factor requires that the government establish a nexus between the alleged special vulnerability and the victim's death. *See Jacques*, 2011 WL 1675417, at *21, *citing* 1 L. Sand, *Modern Federal Jury Instructions*, § 9A.14 (2008); *United States v. Mills*, 2019 WL 3024715 (E.D. Mich. July 11, 2019); *Savage*, 2013 WL 1934531, at *9; *United States v. Johnson*, 136 F. Supp. 2d 553, 560 (W.D. Va. 2001). *Cf. United States v. Sampson*, 486 F.3d 13, 48-49 (1st Cir. 2007) (evidence was sufficient that victim was vulnerable, as a result of obesity and previous open-heart surgery, *and* that his vulnerability easily could have contributed to his death).  Thus, an informational outline explaining the factual basis for this aggravator as to each victim, including the nexus between his or her particular vulnerability and the crime, is needed.

### 4.  "Victim Impact"

In its death-penalty Notice, the government alleges two broad-ranging "non-statutory" aggravating factors involving the lives of the victims and the crime's effects on them and those in their circles.  The first is "Victim Impact."  For this, the Notice says only that the government will prove the "injury, harm, and loss caused" by Payton Gendron "to each victim, as evidenced by the victim's personal characteristics and by the impact of the victim's death upon his or her

family and friends." ECF No. 125 at 4.  Nothing is mentioned – for each or, indeed, any victim – about what these characteristics or impacts were or which (or even how many or what kinds of) relatives or friends experienced the impacts, let alone which particular impacts each such loved one suffered.

As other district courts, including in this Circuit, have recognized: "That the range of human suffering—whether physical, emotional, or economic—is vast goes without saying." *Bin Laden*, 126 F. Supp. 2d at 304; *see Wilson*, 493 F. Supp. 2d at 378 ("The category of 'victim impact' is vast."); *Green*, 2008 WL 4000870, at *21 (same). Thus, an "oblique reference to victims' 'injury, harm, and loss,' without more, does nothing to guide [the defendant's] vital task of preparing for the penalty phase of trial." *Bin Lade*n, 126 F. Supp. 2d at 304.  It also hamstrings this Court's performance of its gatekeeping role in this especially fraught and sensitive area of the case.  As the district judge who handled the first mass-killing case tried under the FDPA observed: "This is the most problematical of all of the aggravating factors and may present the greatest difficulty in determining the nature and scope of the 'information' to be considered." *United States v. McVeigh*, 944 F. Supp. 1478, 1491 (D. Colo. 1996).

"The propriety of providing a defendant with such information is further underscored by the particular danger of eliciting an emotional reaction inherent in victim impact evidence." *United States v. Casey*, 2013 WL 12190487, at *2 (D.P.R. Mar. 1, 2013); *O'Driscoll*, 203 F. Supp. 2d at 340 (M.D. Pa. 2002) ("The presentation of victim impact evidence can be problematic because of the potential for emotional outbursts during the testimony").[3]

---

[3] Victim impact testimony has "unsurpassed emotional power . . . on a jury." *United States v. Johnson*, 362 F. Supp. 2d 1043, 1107 (N.D. Iowa 2005). The federal judge in that case described it as "the most forceful, emotionally powerful, and emotionally draining evidence that [he has] heard in any kind of proceeding in any case, civil or criminal, in [his] entire career as a practicing trial attorney and federal judge spanning nearly 30 years." *Id.*

Limitations on such testimony obviously need to be hammered out well in advance by the parties and the Court, rather than on the fly as witnesses are about to be sworn in, or, worse, while they are on the stand.  *See, e.g., United States v. Johnson*, 713 F. Supp. 2d 595, 625 (E.D. La. 2010) (during sidebar discussion of defense objection, victim's overwrought wife remained on stand and "continue[d] to cry within feet" of jurors, leaving them "totally vested in her plight" and "feel[ing] her misery unattended by counsel and the Court").

Thus, faced with similarly conclusory notices for victim impact, courts in other cases have ordered the government to "more specifically articulate the nature of this aggravator." *Glover*, 43 F. Supp. 2d at 1225. One court directed the government to specify "which members of the [victim's] family have suffered, the nature of their suffering, and the nature of the 'permanent harm,'" for example, "whether members of the family sought counseling or other medical treatment, such as hospitalization." *Id.*  Other courts have entered similar orders.  *See, e.g., United States v. Cooper*, 91 F. Supp. 2d 90, 111 (D.D.C. 2000) ("[T]he government shall amend its notice of intent . . . to include more specific information concerning the extent and scope of the injuries and loss suffered by each victim, his or her family members, and other relevant individuals, and as to each victim's 'personal characteristics' that the government intends to prove."); *Burkhalter*, 2021 WL 3519281, at *9 (ordering government to "provide an informational outline regarding victim impact evidence"); *United States v. Pleau*, 2013 WL 1673109, at *4 (D.R.I. Apr. 17, 2013) (same); *United States v. Talik*, 2007 WL 4570704, at *9 (N.D.W. Va. Dec. 26, 2007) (same); *Llera Plaza*, 179 F. Supp. 2d at 475 (same); *Duncan*, 2008 WL 656036, at *8 (same); *Green*, 2008 WL 4000870, at *20 (same); *O'Reilly*, 2007 WL 4591856, at *5 (same); *United States v. Williams*, 2013 WL 1335599, at *40 (M.D. Pa. Mar. 29, 2013) (same).

This Court, like others, should therefore "order the Government to outline the type and scope of the 'loss, injury, and harm' suffered by each victim, his or her family members, and other individuals as relevant, and the 'personal characteristics' of each victim that it intends to prove." *Gooch*, 2006 WL 3780781, at *23; *see, e.g., Schlesinger*, 2021 WL 5578901, at *3 (requiring government to provide "a list of the personal characteristics of the victims that the Government intends to prove" and "particularized categories of injury, harm, and loss"); *Con-Ui*, 2016 WL 9331115, at *19 (ordering informational outline on victim-impact aggravator specifying list of personal characteristics of victim, whether any testimony will be introduced from persons not named in the NOI, particularized categories of harm and loss that government intends to present, and any other pertinent information defendant would need to adequately prepare to respond.); *Savage*, 2013 WL 1934531, at *19 (ordering government to provide either actual "victim impact statements" or "an outline of the specific evidence about which [each] victim will testify."); *Pleau*, 2013 WL 1673109, at **4, 6 ("the Court hereby orders the government to provide an outline of its victim impact evidence").

Most of these cases featured a single victim, and thus the scope of the government's evidence was relatively narrow and manageable.  Here, by contrast, given the large number of victims, it is likely the government will seek to present a far broader case on the victim-impact aggravator.  This makes an informative outline even more critical.  *See Bin Laden*, 126 F. Supp. 2d at 304-05 (unusually large number of victims weighed significantly in favor of requiring government to provide "bill of particulars" on victim-impact and survivor-impact aggravating factors).

14

### 5. "Injury to Surviving Victims"

The second, non-statutory impact aggravator crafted by the government for its death-penalty notice is "Injury to Surviving Victims." The Notice is similarly vague and unspecific about this, saying only that Payton Gendron caused "serious physical and emotional injury, and severe psychological impact to [the three] individuals who survived the offense," as identified in the indictment. ECF No.125 at 4. Beyond such vague labels as "physical," "emotional," and "psychological," the Notice is completely silent about what the injuries or impacts were, and about which victim suffered which injuries or impacts. Accordingly, for the same reasons that apply to the "victim impact" factor, discussed above, the government should be directed to set forth, in its informational outline, essential facts it intends to rely upon to establish this factor as well.

### 6. "Racially-Motivated Killings" and "Attempt to Incite Violence"

The next two aggravating factors in the government's death-penalty notice, both "non-statutory" ones, are:

- "Racially-Motivated Killings," which alleges that Payton Gendron "expressed bias, hatred, and contempt toward Black persons and his animus toward Black persons played a role in the killings" of the ten deceased victims, and

- "Attempt to Incite Violence," which alleges that "in preparation for and in committing the acts of violence charged in this case," Payton Gendron "attempted to incite violence action by others."

ECF No. 125 at 4.

These allegations appear to encompass conduct by Payton Gendron (expressing hatred, attempting to incite violent action) at other dates and times than May 14, 2022, and at other

places than when and where the shootings occurred.  Indeed, the second aggravator makes this explicit, saying Payton Gendron attempted to incite violence not only in committing the crime but also "in preparation" for it.  Yet the death-penalty notice is wholly silent about the nature of those acts and about when and where Payton Gendron allegedly engaged in them.

Accordingly, for the reasons applicable to other aggravating factors as discussed, the government should be directed to provide Payton Gendron with notice of the theories and facts it intends to prove for these two aggravators at a capital-sentencing phase.

### 7.  "Selection of Site"

The remaining aggravating factor in the government's death-penalty notice, "Selection of Site," alleges that Payton Gendron "selected the Tops Friendly Market … in order to maximize the number of Black victims of the offense."  It is not clear whether this just alleges a mental state, more specifically, a specific motivation on Payton Gendron's part for choosing to commit the shootings at this particular location rather than elsewhere, or encompasses more, such as his conduct or the offense's consequences and, if so, what it claims those were.  Thus, the government should also be required to include in its informational outline the essential facts it intends to rely upon to establish this aggravator as well.

### C.  The government should be directed to provide an informational outline within 90 days.

Because an informational outline is essential to enabling the defendant to prepare to meet the government's aggravation case at the sentencing phase and the Court to carry out its gatekeeping duties, a number of district courts have ordered such an outline to be provided well before trial begins.  *See, e.g., Burkhalter*, No. 18-36, letter from government to defense (W.D. Mo. Oct. 13, 2021) (ordered informational outline provided by government while no trial date

16

pending; trial subsequently scheduled for two years later, in 2023); *United States v. Schlesinger*, No. CR-18-2719, ECF No. 432 (D. Ariz. June 3, 2022) (outline due July 28, 2022, in anticipation of trial date six months later, in January 2023; *see* ECF No. 220); *United States v. Duran-Gomez*, No. H-10-459, ECF No. 529 (S.D. Tex. Feb. 24, 2020) (government provided ordered outline while no trial date pending; trial subsequently scheduled for two years later, in 2022); *Con-Ui*, 2016 WL 9331115, *1 (government provided ordered outline on February 25, 2016, in anticipation of trial date seven months later, in September 2016, *see* ECF No. 864 at 3, ECF No. 922, at 11); *Pleau*, 2013 WL 1673109, at **4, 6 (government ordered to produce outlines of victim-impact and other aggravators by August 5, 2013, in anticipation of trial date four months later, December 1, 2013); *Lujan*, 530 F. Supp. 2d at 1271-72 (government ordered to produce outline "within reasonable time" and revised outline by March 24, 2011 for trial date three months after that, in June 2011).

Requiring production of an informational outline by August 2024 would in no way be burdensome or prejudicial to the government.  Presumably it already has that information in its possession, and any that it is missing it can obtain in relatively short order.  As noted, the federal government's investigation and preparation of this prosecution began the day after the crime occurred and has been massive in scope and intensity.  It undoubtedly includes extensive communications with the injured victims and the deceased victims' loved ones, both immediately after the crime and in connection with the government's process for seeking the death penalty.   The government's own protocols mandate that.  *See* Justice Manual, § 9-10.080 (A)(7) (local prosecutors and Department of Justice must inquire into and consider, among other factors, "background … of the victim," "views of the victim's family," and "other victim impact

evidence").  And the survivors and their civil attorneys have repeatedly been quoted in the media

referring to their communications with the government about Payton Gendron's case.[4]

It is true that, in some cases, including the last one tried in this circuit, *Saipov* (SDNY),

the government provided its informational outline nearer in time to the start of trial.  But a close

look at that case shows it actually supports Payton Gendron's request for an earlier deadline.

First, the scheduling of the informational outline there was highly idiosyncratic: The government

initially promised to provide it two months after the defense first asked for one.  *See United*

*States v. Saipov*, No. 1:17-cr-722, ECF No. 287, #300 at 8 (S.D.N.Y. 2020).  But this never

occurred, apparently because the prosecution was largely suspended due to the pandemic.  When

the defense next raised the issue in August 2022, ECF No. 462, two months before jury selection

was set to begin, the court ordered the government to produce the outline by the following

month, ECF No. 482, rather than on the eve of voir dire as the government sought, ECF No. 472

at 29.  Second, the government's principal argument for delaying the informational outline in

*Saipov* was that the case was "different from most (or all) other capital cases cited by the

defendant" owing to the government's early full disclosure of extensive witness statements; that

included victim- and survivor-impact witnesses, whom the government had repeatedly

interviewed, which interviews it had memorialized in detail.  ECF No. 472 at 34-35.  But, as

noted, no such disclosure has occurred in Payton Gendron's case.  Finally, it appears that the

delay in production of the informational outline in *Saipov* until a month before the start of jury

selection created serious and unnecessary logistical problems for the parties and the court, by

---

[4] If there is a particular victim- or survivor-impact witness as to whom the government still has
not and cannot determine the factual basis for the impact aggravators (for example, because of
some special personal circumstance of the witness), the government would be free to convey that
information to the Court and seek an extension of the deadline to provide the outline as to that
witness.

forcing the extensive litigation over the aggravating factors and evidence to play out while the trial was in progress, with numerous late-night filings, early-morning conferences, and extemporaneous rulings from the bench, especially as to the impact aggravators. *See, e.g.*, ECF Nos. 622, 627, 691, 698, 704, 707, 725, 730, 731, 732, 733, 735, 737, 739, 741, 742, 747, 749, 751, 753, 780. This Court can and should avoid that pitfall by ordering earlier production of an informational outline, which in turn will allow for litigation over the impact-aggravators to occur in the pretrial process.

## IV.   Conclusion

For the foregoing reasons, and pursuant to the Fifth, Sixth and Eighth Amendments to the United States Constitution and the Federal Death Penalty Act, the defendant requests that this Court grant this Motion for an Informative Outline of Aggravating Factors as described above.

Dated:        May 2, 2024
              Buffalo, New York


                            *s/Sonya A. Zoghlin*
                            Sonya A. Zoghlin
                            Assistant Federal Public Defender

                            *s/Anne M. Burger*
                            Anne M. Burger
                            Supervisory Assistant Federal Public Defender

                            *s/MaryBeth Covert*
                            MaryBeth Covert
                            Senior Litigator

                            *s/Julie Brain*
                            Julie Brain
                            Attorney at Law