UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

PAYTON GENDRON,

Defendant.

22-CR-109 (LJV-HKS)

**REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR INFORMATIONAL OUTLINE OF CERTAIN AGGRAVATING FACTORS**

## I. Introduction

Defendant, Payton Gendron, through undersigned counsel, submits this reply to the government's Response (ECF No. 167) to his Motion (ECF No. 160) asking the Court to direct the government to provide him with an informational outline of certain aggravating factors alleged in the Notice of Intent to Seek the Death Penalty (ECF No. 125).[1] Those include the critical factors involving the crime's effects on relatives and friends of the ten deceased victims ("victim impact") and on the three injured victims ("injury to surviving victims"). Because the Indictment and the government's Notice of Intent list these and most of the other aggravators only in barebones terms, the Motion simply requests an outline of the *facts* the government intends to prove at a capital sentencing hearing, so that Payton Gendron can prepare a defense

[1] In light of the government's withdrawal of the allegation that five of the slain victims each suffered from "infirmity" (ECF No. 167 at 34 n.15), Payton Gendron withdraws his request for an outline on the vulnerable-victim aggravating factor. And the Motion never sought an outline on the multiple-killings aggravating factor – which the government correctly observes is "narrow and concrete" and whose "factual basis" is simply the allegation that he "kill[ed] all ten victims." (ECF No. 167 at 36). Thus, the remaining issues involve the other two statutory and five non-statutory aggravating factors.

and the Court can exercise its gatekeeping function. As the Motion makes clear (but the government's Response overlooks), it does *not* seek a preview of the government's *specific evidence*.

Most district courts across the country have ordered such outlines and federal prosecutors have voluntarily agreed to provide them in still more cases. Yet here the government resists providing *any* outline of *any* of its aggravating factors on *any* deadline. That includes victim impact and injury to surviving victims, even though the government recently revealed that a massive team has already taken statements about those subjects from many of its witnesses and thus it could readily particularize its notice of these aggravators. In trying to justify its maximalist, outlier position, the government's Response gets it wrong several times over – on the case law supporting the Motion, the defense's and the Court's need for an informational outline, the government's ability to provide one, and the inadequacy of massive discovery as a substitute for such an outline.

## II. Argument

### A. The precedents relied on by Payton Gendron strongly support his request for an informational outline.

The government does not seriously dispute that in federal capital cases across the country, many district courts, including all those in the Second Circuit who have written on the issue (*see* ECF No. 160 at 8), have directed informational outlines on some or all aggravating factors.[2] As discussed in the Motion, those courts have relied on their authority under Federal

[2] The government suggests that one district court in this circuit completely denied a request for an outline of aggravating factors beyond the death-penalty notice. (ECF No. 167 at 18 n.10 (citing *United States v. Williams*, 2004 WL 2980027, at *23 (S.D.N.Y. Dec. 22, 2004)). Actually, that court postponed decision on whether to require further particularization on victim impact, saying the issue would best be addressed "nearer to the sentencing phase," at which time it would "revisit[] the procedures outlined" in other cases for having the government provide an

Rule of Criminal Procedure 7(f) (to order a bill of particulars), 18 U.S.C. § 3593(c)(2) (to require adequate "notice" of aggravating factors), and their inherent authority.  (ECF No. 160 at 5-6).

While the government claims the decisions in this circuit turned on the "circumstances of each case" (ECF No. 167 at 15), they did not materially differ from Payton Gendron's case.  Nor were those decisions ill-reasoned, as the government also complains, because they selectively ordered outlines for some but not all aggravators.

In *United States v. Wilson*, 493 F. Supp. 2d 364 (E.D.N.Y. 2006), the court explained that no outline was needed for certain aggravating factors involving the defendant's other crimes because they had already been particularized in the indictment as overt acts for the racketeering counts.  But the court reasonably found that the same was not true for the victim-impact factor, which, as here, was alleged in summary terms in the death-penalty notice and thus merited an outline.  *Id.* at 377-78.

Similarly, in *United States v. Basciano*, 763 F. Supp. 2d 303 (E.D.N.Y. 2011), the district court reasonably distinguished different aggravating factors: It found that an outline was needed for the still unparticularized factor of the defendant's other crimes, but not for victim impact because the government already had "provided Basciano with a summary of expected victim impact testimony" which apparently was functionally treated as an outline.  *Id.* at 359.

And in *United States v. Jacques*, 2011 WL 1675417 (D. Vt. May 4, 2011), *overruled in part on other grounds*, 684 F.3d 324 (2d Cir. 2012), the court also reasonably directed the government to provide an informational outline for the victim-impact aggravating factor because,

---

advance outline of that factor.  *Id.* at *23 nn. 38-39.  Moreover, for two other aggravating factors challenged by the defense, the government satisfied the court that it had provided sufficient notice because it provided "further specification" including the "factual bases it intends to prove."  *Id.*

as here, it had been stated only in "oblique" terms in the death-penalty notice, but not for the aggravator that the murder was torturous, because the government had already particularized the "factual basis it intends to offer" to prove that.[3]  *Id.* at *1, 19-21, 29.

Equally unavailing is the government's dismissal of *United States v. Bin Laden*, 126 F. Supp. 2d 290, 304 (S.D.N.Y. 2001) – the Embassy Bombing case, in which a bill of particulars was also ordered for victim impact – as owing to the unusually large number of potential victim-impact witnesses.  This case, by the government's own estimate, involves dozens, if not more than a hundred, relatives and friends of the victims as potential witnesses, also an unusually large number that creates heightened challenges for the defense in its preparation and the Court in its gatekeeping, and thus also makes an informational outline especially appropriate.

Finally, the government wrongly dismisses the most recent case in this circuit, *United States v. Saipov* – which also involved charged mass hate-crime killings (of New York City tourists by a defendant in the name of ISIS) – because there "the government agreed to provide an informational outline for reasons not clear from the record."  (ECF No. 167 at 15).  In *Saipov*, as here, the government disputed the district court's authority to order such an outline – though it offered to provide one, in what it characterized as a matter of grace, on the eve of voir dire.[4]  *See*

---

[3] Likewise, the government mistakenly dismisses two of the many decisions from other circuits on which the defense relies, *United States v. Lujan*, 530 F. Supp. 2d 1224 (D.N.M. 2008), and *United States v. Llera Plaza*, 179 F. Supp. 2d 464 (E.D. Pa. 2001), as internally "inconsistent" because they ordered outlines "for some aggravators but not others."  (ECF No. 167 at 16 n.8).  In fact, each decision canvassed the particular aggravating factors in the death-penalty notice and ordered outlines on those – like victim impact — that had been stated in broad, summary terms and thus required particularization.  *See Lujan*, 530 F. Supp. 2d at 1267-72; *Llera Plaza*, 179 F. Supp. 2d at 472-75.

[4] The government is apparently unconcerned about leaving the choice of such important procedures to the proclivities of the individual prosecutors assigned to each case, even though this would seem to invite the kind of "arbitrariness" in the administration of the federal death

*United States v. Saipov*, No. 1:17-cr-722, ECF No. 472, at 39-41 (S.D.N.Y. Aug. 5, 2022). In formally ordering the government to furnish the outline and to do so on an earlier schedule, *see id.*, ECF No. 482, at 1, the court necessarily rejected the government's legal position, the same one advanced here.

**B. The government's position fares no better under the case law it affirmatively enlists.**

According to the government, several other circuits say a federal capital defendant is not entitled to an informational outline of the essential facts comprising any aggravating factor. (ECF No. 167 at 7-9). But none of those decisions addressed that issue, let alone whether a district court has discretion to order such an outline and, if so, when it is appropriate to do so. Rather, as noted in the Motion, (ECF No. 160 at 8 n.2), those cases involved only an after-the-fact appellate assessment of whether certain aggravation should have been excluded based on allegedly inadequate notice of the government's *specific evidence* – when the defendant apparently had *never sought an informational outline* or the like before trial, as Payton Gendron is doing here. *See United States v. LeCroy*, 441 F.3d 914, 929-30 (11th Cir. 2006); *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003); *United States v. Lee*, 274 F.3d 485, 495 (8th Cir. 2001); *see also United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999).[5]

Next, the government invokes several district court decisions that it says entitle it to do "nothing more" than list the aggravating factors in the death-penalty notice. (ECF No. 167 at

penalty that the Department of Justice has decried. Memorandum from Attorney General Merrick Garland, *Moratorium on Federal Executions*, July 1, 2021.

[5] Similarly inapposite is *Gray v. Netherland*, 518 U.S. 152 (1996), which the government invokes as the foundation for those decisions. (ECF No. 167 at 7). *Gray* involved an unsuccessful habeas claim that certain testimony and exhibits should have been excluded from a state capital sentencing because the defendant had received advance notice of some but not all of the specific evidence on a certain aggravating factor. *See id.* at 166-70.

11). Those cases comprise a minority view, however, and one that has been rejected in the Second Circuit – as several of them acknowledge. *See, e.g.*, *United States v. Montgomery*, 10 F. Supp. 3d 801, 830 (W.D. Tenn. 2014) (declining to follow "a trend among the federal courts . . . of requiring the Government to provide additional information related to the victim-impact factor").

Furthermore, even those decisions largely do not support – and a number affirmatively cut against – the government's complete refusal to particularize those aggravators that are broadly and summarily stated in its /Notice of Intent, like victim impact. The government's own quotations confirm that almost all of those decisions denied previews of the government's "specific evidence" or "specific proof" – rather than the more modest outline of the basic facts comprising certain aggravating factors, which most other courts have ordered and Payton Gendron is requesting.[6] (ECF No. 167 at 9-15). Indeed, in many of those cases the government *did* provide the equivalent of an informational outline for certain aggravating factors that required particularization.[7]

[6] The government also notes that requests for informational outlines were refused by district courts in two "capital mass murder cases," from other circuits, *United States v. Tsarnaev*, and *United States v. Bowers*. (ECF No. 167 at 11-12). But those decisions (each of which consisted of just a one-word denial) are also inapposite. In *Tsarnaev*, the defendant did not even ask for an outline on victim impact or survivor impact. And he tried to justify his request for an outline on other factors by claiming it would help determine whether they should be struck as impermissibly duplicative; he said nothing about needing it to prepare for the sentencing hearing. *See Tsarnaev*, No. 13-cr-10200, ECF No. 290 (D. Mass. May 7, 2014). Similarly, the government's reliance on the decision in *Bowers* denying (shortly before the sentencing phase) the defense request for a hearing on the admissibility of victim-and survivor-impact evidence is misplaced because that motion was entirely separate and distinct from the issue of pretrial notice of the government's case on those factors. *See Bowers*, No. 18-cr-292, ECF No. 1156, at 1 (W.D. Pa. Apr. 24, 2023).

[7] *See* ECF No. 167, at 9-10, 12-13 (citing *United States v. Burkhalter*, 2021 WL 3519281, at *9-10 (W.D. Mo. Aug. 10, 2021) (ordering government to provide informational outline for victim-impact aggravator); *United States v. George*, 2020 WL 2812864, at *3-4 (E.D. La. May 29, 2020) (government's presentation at recent trial of two codefendants provided capital defendant

Finally, the government also mistakenly casts the Second Circuit's decision in *United States v. Fell* as contrary to the view of a number of district courts (*see* ECF No. 160 at 6-7), that an informational outline assists the trial judge in performing his or her gatekeeping function of determining in limine the admissibility of the aggravation – particularly victim impact, much of which is highly prejudicial and arguably inadmissible. (ECF No. 167 at 19-21). In rejecting a claim that the Federal Rules of Evidence should apply to a capital-sentencing trial, *Fell* simply noted the Supreme Court had recognized "the importance of allowing the sentencing body to have full and complete information about the defendant," beyond the limited "matters relevant to guilt for a particular crime" presented at the guilt stage. (Thus, the reference in *Fell* to admitting "more evidence, not less," which the government quotes out of context).

Of course, this in no way casts doubt on the Second Circuit's recognition of significant limits on the government's aggravation at the sentencing stage, which a district court must police. *Fell*, 360 F.3d at 143; *see also United States v. Pepin*, 514 F.3d 193, 204 (2d Cir. 2008) (recognizing district court's special role, under § 3593(c), as evidentiary "gatekeeper" at capital-sentencing hearing). Indeed, other district courts have cited that responsibility as a reason to require informative outlines. (*See* ECF No. 160 at 6). And, contrary to the government's prediction that the defense will file meritless, boilerplate motions that can quickly be dispatched

---

equivalent of outline on grave-risk-of-death and substantial-planning factors); *United States v. Mills*, 2019 WL 1915762, at *9-10 (E.D. Mich. Apr. 30, 2019) (noting government had provided or promised to provide particulars for several aggravating factors); *United States v. Christensen*, No. 17-cr-20037, ECF No. 91, at 10, 21-22 (C.D. Ill. Aug. 15, 2018) (per court's order, government had "disclosed a reasonably detailed outline . . . of the evidence it intends to introduce in support of each of the listed aggravating factors"); *United States v. Gooch*, 2006 WL 3780781, at *23 (D.D.C. Dec. 20, 2006) (ordering government to provide informational outline on victim-impact factor); *United States v. Mayhew*, 380 F. Supp. 2d 936, 947, 950 & n.15 (S.D. Ohio 2005) (noting government had provided particulars for grave-risk-of-death and future-dangerousness aggravating factors); *United States v. Cisneros*, 363 F. Supp. 2d 827, 837 (E.D Va. 2005) (noting government had provided particulars for other-crimes aggravating factor)).

(*see* ECF No. 167 at 55), a plethora of difficult legal issues about the validity and scope of the government's aggravation case are especially likely to confront the Court here because this will be the first modern federal capital trial in this district, and there is minimal precedent from the Second Circuit, which has decided just two appeals from death sentences under the FDPA.

**C. Rather than substituting for an informational outline, the discovery demonstrates that the government can readily provide one.**

The government has furnished defense counsel with discovery that extends to tens of thousands if not hundreds of thousands of documents, as well as countless gigabytes of electronic material. Defense counsel and their staff have spent extensive time organizing and reviewing the discovery, but a great deal of work remains to be done. Moreover, the government is continuing to provide further, sizable discovery productions (including two in the last month), with more anticipated.

According to the government, no informational outline is needed by the defense because it can sift through the voluminous, evolving discovery to figure out what facts the government will seek to prove at a sentencing trial to establish its alleged aggravators. Furthermore, says the government, the defense can distill from all that discovery exactly what it wishes to challenge and specify that in motions *in limine*, thus fully equipping the Court to perform any gatekeeping role for aggravating factors and evidence.[8] (ECF No. 167 at 21).

As multiple district courts that have found, however, extensive discovery does not substitute for an informational outline. (ECF No. 160 at 7; *see also United States v. Lujan*, 530

[8] Alternatively, the government suggests that the defense can just wait to object, and the Court can wait to set the critical, difficult boundaries on the government's aggravation, until the sentencing phase is ongoing, as each of the scores of government witnesses takes the stand and starts testifying and each of the hundreds of accompanying exhibits is offered into evidence in front of the jury. (ECF No. 167 at 20). Obviously, that would be unworkable and a recipe for serious delay and potential error. (*See* ECF No. 160 at 13).

F. Supp. 2d 1224, 1267-68 (D.N.M. 2008) (ordering informational outlines despite government having produced a "plethora of material, even outside the scope of Rule 16"); *United States v. Gooch*, 2006 WL 3780781, at *23 (D.D.C. Dec. 20, 2006) (holding that discovery could not substitute for informational outline). That includes the most recent capital trial in this circuit, which also involved a mass-killing and purported open-file discovery, *United States v. Saipov*. Voluminous disclosures make it exceedingly difficult for counsel to ascertain which discovery will in fact be used against the defendant. They also increase the burden on the Court, who must to be asked to review and rule on the admissibility of all the potential aggravation mentioned in the discovery.[9] Furthermore, the government has offered no assurance that it has reduced to writing all of the testimony it intends to introduce to establish the aggravating factors. This means that, even if counsel scrutinized every word and byte of the discovery, they would remain in the dark about essential facts underlying the government's aggravating factors. All of this seriously constrains the usefulness of the discovery here as a means from which the defense can either gain notice of the basic aggravating facts or flag objectionable areas for the Court prior to trial.

If anything, the extensive discovery the government has generated – from what it acknowledges is a massive investigation of the case it has been conducting for more than two years – supports the defense's Motion because it equips the prosecutors to readily furnish an informational outline for the government's aggravating factors, including victim impact. Nor would providing such an outline now prejudice the government by prematurely and unfairly

---

[9] Indeed, on information and belief, when defense counsel in *Bowers* made a version of such a request to the district court, the government chided them for casting too wide a net, saying it did not intend to present most of the challenged evidence in the discovery but rather would offer only a narrowly selected portion.

freezing its sentencing case in amber, as it fears. (ECF No. 167 at 27, 54). *See United States v. Con-Ui*, 2016 WL 9331115, at *19 (M.D. Pa. Jan. 28, 2016) ("The Government can supplement the outline upon a showing of good cause and adequate notice to Defendant") (*citing United States v. Hammer*, 2011 WL 6020157, at *3 n.2 (M.D. Pa. 2011)).

### D. The government's specific arguments against an outline for each aggravator also do not bear up.

#### 1. "Grave Risk of Death to Additional Persons"

Payton Gendron's Motion seeks not a preview of the government's specific evidence but rather just the basic facts underlying this statutory aggravating factor, such as who are the "persons" to whom he knowingly created a grave risk of death, and by what acts he did so. The government's Response only underscores both the need for such an outline and the government's ability to readily provide one now. (ECF No. 167 at 23-27).

The government essentially beckons defense counsel to wade through the discovery and try to figure out those facts for itself. That is inadequate for the reasons discussed above (including because the government's Response suggests that its proof will cover more people than even those identified in the discovery). In addition, on this aggravator, the discovery raises more questions than it answers. As the government's Response indicates, not only were there dozens of people inside the Tops Friendly Market at the time of the shootings, there were also scores more in the area outside the store. While some of the latter people identified in the discovery were near the entrance or in the parking lot, others seem to have been blocks away and in no apparent danger. Does the government intend to try to prove this aggravating factor applies to all of them? If so, what conduct by Payton Gendron will it present to prove he created a grave risk of death to the more distant bystanders? And what about law enforcement officers

who responded to the scene and engaged with Payton Gendron before arresting him; will they be shoehorned into this aggravating factor and, if so, based on what conduct by Payton Gendron?

These are important questions, for the issue at a sentencing trial would be not just whether or not this aggravator applies, but how broadly it reaches, what facts it embraces, and what weight it carries.[10]  The Indictment, Notice of Intent, and the government's Response leave defense counsel, and the Court, to simply guess at the answers to these questions.  And for no good reason, as it is apparent from the government's Response it has fully investigated the facts underlying this aggravator and is readily able to provide an outline of the basic ones.

Nor is the government's refusal to do so supported by case law, as it claims.  In one of several decisions Payton Gendron relies on (*see* ECF No. 160 at 9-10), *United States v. Savage*, 2013 WL 1934531, at *12 (E.D. Pa. May 10, 2013), the court ordered an outline on this aggravating factor because, as here, "[n]owhere in the Revised Notice of Intent or in the Indictment does the Government allege any individuals, other than the victims, who were exposed to 'grave risk' during the commission of the charged murders."[11]  This, the court explained, prevented it from performing its gatekeeping function.  The government's Response is thus inaccurate in saying that *Savage* relied on the absence of information about the aggravator in the discovery provided to the defense.  (ECF No. 167 at 26).

---

[10] The government seems to miss this point when it declares the defense "cannot credibly contend that he does not have adequate notice that the government can prove he placed persons in addition to the 10 deceased victims in grave danger when he conducted his attack."  (ECF No. 167 at 27).

[11] *See also United States v. Glover*, 43 F. Supp. 2d 1217, 1222 (D. Kan.) (ordering government to "articulate its factual allegations by setting out what act or acts the government contends constitute the knowing creation of a grave risk of death").

As for the two decisions invoked by the government that denied informational outlines on this factor, one, *United States v. Mills*, 2019 WL 1915762, at *9 (E.D. Mich. Apr. 30, 2019), noted that the identities of the two people subjected to a grave risk of death and the defendant's acts that created the risk had, unlike here, already been particularized in the indictment's allegations. And in the other, *United States v. Ciancia*, 2015 WL 13798674, at *3-4 (C.D. Cal. Sept. 4, 2015), which involved the fatal shooting of a TSA officer inside a terminal at Los Angeles Airport crowded with hundreds of travelers, the court seems to have dismissed the decisions requiring outlines on this factor simply because they involved fewer bystanders. But that was illogical: If anything, the greater the number of potential victims the government will try to fold into the grave-risk aggravator at the sentencing trial, the *more* an outline is needed to provide adequate notice to the defense and to enable the Court to carry out its gatekeeping responsibilities.[12] *See Bin Laden*, 126 F. Supp. 2d at 304.

**2. "Substantial Planning and Premeditation"**

Here again, the government offers the same unpersuasive rationales for resisting an outline on this statutory aggravating factor. That includes that the *acts* of substantial planning and premeditation by Payton Gendron it intends to prove at a sentencing trial can supposedly be culled from the discovery – ignoring why, as discussed, this cannot substitute for an outline.

It also includes the government's claim that precedent only supports an outline when the evidence of substantial premeditation and planning was not "obvious." That is not an accurate

[12] In *Ciancia*, unlike here, it also appears from the government's filing that it intended at the sentencing stage to merely rely on the existence of the large crowd, without identifying particular individuals in it who had been subject to a grave risk. (*See id.*, No. 2:13-cr-902, ECF No. 203 at 14 (C.D. Cal. Aug. 17, 2015) (arguing the grave-risk aggravator "does not require such specificity")).

accounting of those decisions the government addresses.[13] *See United States v. Schlesinger*, 2021 WL 5578901, at *3 (D. Ariz. Nov. 30, 2021) (ordering outline on this factor not because of "daylight between [parties'] accounts" of crime, as portrayed by the government, ECF No. 167 at 32, but rather simply because of lack of particulars in indictment and death-penalty notice); *Con-Ui*, 2016 WL 9331115, at *8 (ordering outline on this factor not because defendant's planning was "not outwardly apparent," as portrayed by the government, ECF No. 167 at 31, but rather because evidence bearing on it was so voluminous and various); *Savage*, 2013 WL 1934531, at *9 (denying not a "similar request" as portrayed by the government, ECF No. 167 at 29, but rather a demand, made toward the end of the guilt-innocence trial, for an "offer of proof").

Even more important, the government's "obviousness" argument again overlooks that the issue at Payton Gendron's sentencing trial will be not just the binary one of whether or not this aggravator applies, but also how broadly it reaches, what facts it embraces, and what weight it should be accorded. And, as with the grave-risk aggravator, the allegedly extensive planning and premeditation here suggested by the discovery actually *increases* the defense's and Court's need for such an outline of what *conduct* by Payton Gendron the government will seek to prove.

**3. "Vulnerable Victims"**

The government's death-penalty Notice alleged the statutory aggravating factor that five of the slain victims were "particularly vulnerable due to *old age and infirmity*." (ECF No. 125 at 3 (quoting 18 U.S.C. § 3592(c)(11) (emphasis added)). In response to Payton Gendron's Motion for an informational outline on this factor, the government has switched gears. It "concede[d]" the portion of its Notice alleging each of the five victims' suffered from "infirmity," and declared

[13] Other such decisions the government simply dismisses as "contrary to the weight of authority." That includes ones the government elsewhere affirmatively touts for the portions that ruled against the defendant. (*See* ECF No. 167 at 32).

it would "proceed at trial only on the 'old age' prong." (ECF No. 167 at 34 n.15). The government also took the position that "this factor applies based solely on the advanced age of a victim." Noting that these five victims ranged in age from 65 to 88 years old, it declared that their "vulnerability due to old age is evident." (ECF No. 167 at 34).

Given the government's "conce[ssion] that these five victims' vulnerability based "infirmity" does not apply and will not be relied on, and its declared position that instead the factor will be proven based only on their ages, Mr. Gendron withdraws his request for an informational outline on this aggravator.

**4 & 5. "Victim Impact" and "Injury to Surviving Victims"**

The government does not deny that many (if not most) other district courts – including all those in this circuit to write on the issue – have ordered prosecutors to provide an informational outline of the FDPA aggravating factor of victim impact.[14] Instead, the government, here again, relies primarily on discovery it has recently furnished about victim impact – and the additional, non-statutory aggravating factor, "injury to surviving victims" – mistakenly claiming this can substitute for an outline. (ECF No. 167 at 41, 50).

That discovery (provided since Payton Gendron filed his Motion for an informational outline on May 2, 2024) includes summaries and notes of multiple interviews about such impacts it has conducted with a total of almost 30 relatives of the people killed in the Tops Friendly Market, as well as with the three injured survivors and several of their family members.

---

[14] The government claims those decisions are not "persuasive," instead recommending a Tennessee decision (in a case that never went to trial) that acknowledged but refused to follow the "trend among federal courts of requiring the Government to provide additional information to defendants related to the victim impact aggravating factor." (ECF No. 167 at 44) (internal citation and quotation omitted). The government also cites *Jones v. United States*, 527 U.S. 373, 378 & n.3 (1999), which involved a vagueness challenge to that factor, rather than any issue involving pretrial notice.

Apparently a large group of attorneys, investigators, and victim coordinators from the prosecution team has been assigned to develop this evidence; as many as 13 of them all sat in together on some of the interviews.[15]  These interview summaries and notes recount information from the interviewees about the personal characteristics of each victim and the impacts of the shootings on the deceased's relatives and the survivors.[16]

Here again, these summaries and notes, if anything, demonstrate that the government's investigation, and specifically its heavily-staffed outreach to the victims' families, has reached a point where it can readily provide an informational outline about its victim-impact and survivor-impact aggravating factors.  (ECF No. 167 at 55).  This is necessary because, as Payton Gendron's Motion noted, the government's Notice of Intent alleges victim impact in vague, empty terms, namely, the "victim's personal characteristics" and "the impact of the victim's death upon his or her family and friends."  (ECF No. 125 at 4).  So too the survivor-impact factor.  (ECF No. 125 at 4) (stating that crime caused unspecified "physical and emotional injury and severe psychological impact" to surviving victims).  Payton Gendron's Motion sought the basic facts, which other courts have ordered the government to furnish (*see* ECF No. 160 at 13-14): the "impacts" on each family member and survivor and each deceased victim's "personal characteristics" that the prosecutors intend to prove – *not* "the specifics of each witness's

---

[15] And these were hardly the first such interviews.  According to media reports from victims' family members, there have been numerous contacts between prosecutors and such witnesses, including pursuant to the Department of Justice protocol that requires considering victim impact in the decision whether to seek the death penalty, *see* Justice Manual, 9-10.140(B)(2)(v)).

[16] The summaries leave obvious gaps, most importantly discussions about victim-impact testimony that the summaries note occurred between the prosecutors and the witnesses before the "formal" interviews.  Payton Gendron will be seeking discovery of this information.

testimony" or the "specific pieces of evidence," as the government contends. (ECF No. 167 at 37, 40).

For the reasons already discussed, the discovery cannot substitute for an informational outline, and other courts, including in the Second Circuit, have recognized that for these factors especially – most recently in *United States v. Saipov*, No. 1:17-cr-722, ECF No. 482 (S.D.N.Y. Aug 11, 2022) (ordering informational outline in mass-killing prosecution despite government's claim that unprecedented, extensive discovery, including of victim-impact interviews, made it unnecessary).[17] It is conceivable, if not likely, that the government will try to wait until just before its impact witnesses testify to reduce to writing and disclose many of the essential facts it intends to prove for this aggravator – or, worse, it may seek to *never* reduce to writing many of those facts. Thus, the discovery may well end up revealing just a fraction of the "impacts" that the government intends to present. Accordingly, the discovery alone cannot sufficiently furnish notice to defense counsel of what it needs to prepare to rebut or explain, or enable the Court to carry out its gatekeeping responsibilities for these aggravating factors. Nor should defense counsel and the Court have to undertake a scavenger hunt through reams of discovery to try to guess at the basic contours of what the government plans to introduce.

Its minimization of such aggravation as run-of-the-mill evidence that requires no significant oversight, creates no unusual challenges, and merits no special attention from a

[17] It would be unwise for the Court to head down the path blazed by the district court in another circuit in *United States v. Bowers*, as the government recommends. (ECF No. 167 at 46). On information and belief, there, after the court denied an informational outline, it appears to have struggled to try to set boundaries on this aggravation in theoretical terms in a lengthy order (No. 2:18-cr-292, ECF No. 1318 (W.D. Pa. June 13, 2023)); then, when the sentencing hearing began, it confronted a slew of issues requiring last-minute filings, conferences, objections, mistrial motions, and numerous spontaneous rulings. Moreover, the defendant's resulting death sentence has been appealed, and the Third Circuit has not yet addressed whether the district court erred in its handling of these critical aggravating factors.

district court (ECF No. 167 at 38-39, 42) simply denies reality and runs contrary to how other courts have experienced and treated it (as Payton Gendron's Motion explained, see ECF No. 160 at 12-13).[18] That also includes cases cited by the government, such as the Oklahoma City Bombing prosecution (ECF No. 167 at 41 n.17) (citing *United States v. McVeigh*, 153 F.3d 1217-21 (10th Cir. 1998)), a mass-killing case in which the district court said of victim impact: "This is the most problematical of all the aggravating factors and may present the greatest difficulty in determining the nature and scope of the information to be considered." *United States v. McVeigh*, 944 F. Supp. 1478, 1491 (D. Colo. 1996). Another veteran district judge who presided over one defendant's capital trial expressed the same view, in more graphic terms, to explain the special procedures he imposed at the codefendant's trial:

> I can say, without hesitation, that the "victim impact" testimony . . . was the most forceful, emotionally powerful, and emotionally draining evidence that I have heard in any kind of proceeding in any case, civil or criminal, in my entire career as a practicing trial attorney and federal judge spanning nearly 30 years . . . It has now been over four months since I heard the testimony . . . and the juror's sobbing during the victim impact testimony still rings in my ears . . . To pretend that such evidence is not potentially unfairly prejudicial on issues to which it has little or no probative value is simply not realistic, even if the court were to give a careful limiting instructions. Rather, *such potent, emotional evidence is a quintessential example of information likely to cause a jury to make a determination on an unrelated issue on the improper basis of inflamed emotion and bias*.[19]

---

[18] The government also assures the Court that any concerns about its victim-impact case's exceeding permissible boundaries boil down to "appellate risks" that are up to the government alone to manage "without input from the defense," with the Court relegated to "refereeing" objections during the "presentation at trial, as it does with any evidence in its criminal trials." (ECF No. 167 at 43).

[19] The government sidesteps the issue, instead rebutting an argument Payton Gendron never made, by protesting that it "is not required to suppress all such emotion" and "[s]terile prosecution . . . cannot be expected," (ECF No. 167 at 42), and assuring that the victim-witnesses were able to "reasonably" control their emotions and "generally" stay within legal bounds during private interviews about victim impact, *id.* at 43.

*United States v. Johnson*, 362 F. Supp. 2d 1043, 1107 (N.D. Iowa 2005) (emphasis added).

Moreover, contrary to the government's suggestion that victim impact is legally constrained only by the "due process" prohibition on "fundamentally unfair" evidence, (ECF No. 167 at 39), there are actually numerous specific limitations on such evidence – which is also why *McVeigh* and other decisions recognize it as a minefield for trial judges. To name just a few examples of those limitations, "characterizations and opinions about the crime, the defendant, and the appropriate sentence" are prohibited. *Bosse v. Oklahoma*, 580 U.S. 1, 2 (2016) (*per curiam*) (internal quotation omitted). Also out of bounds as permissible "victim impact" is evidence about the impact of the trial proceedings or the defendant's exercise of other legal rights. *McVeigh*, 944 F. Supp. at 1491. Nor may the government present victim-impact testimony suggesting "defendants whose victims were assets to their community are more deserving of punishment." *Payne v. Tennessee*, 501 U.S. 808, 823 (1991). The law also forbids attributing to the defendant harms attenuated from the victim's death.[20] *See, e.g.*, *People v. Carrington*, 211 P.3d 617, 658 (Cal. 2009) (prosecutor could not argue victim's murder caused her mother to die prematurely and her father to suffer a stroke, because "such an inference would not be appropriate"). So too is testimony about "the grieving process" or "mourning process" prohibited. *United States v. McVeigh*, 153 F.3d 1166, 1221-22 (10th Cir. 1998) (also describing extensive limitations placed on victim impact in Oklahoma City Bombing trial that involved 168 slain victims, including keeping entire presentation to two days, sharp limits on photographs and exhibits, and exclusion of certain evidence).

[20] Psychological illness or treatment can be particularly difficult to trace directly to a crime. Government efforts to do so could also require it or the Court to intrude on witnesses' privacy by obtaining and providing the defense with records on such matters that might mitigate or rebut the government's claims or the witnesses' testimony.

Finally, it is difficult to understand the government's invocation of the Crime Victims' Rights Act, which requires respect for victims "dignity and privacy," or its suggestion that an informational outline (or at least one anytime in the next year) would require some supplemental questioning of victims that would inflict a "revictimization of the trauma these witnesses have endured." (ECF No. 167 at 48-49, 55). Payton Gendron pled guilty to all the state charges in this case and has offered to plead guilty to all the federal charges and accept life sentences – which would have obviated the need for any further interviews by teams of officials or any courtroom testimony from the victims, not to mention possibly untold numbers of appeals and court hearings stretching for decades into the future. The government, by pursuing a death sentence, holds responsibility for the path down which it has directed the case, including the burdens regrettably but necessarily placed on witnesses and others by the procedural protections that Payton Gendron is due because the government is trying kill him.[21]

**6. "Racially-Motivated Killings" and "Attempt to Incite Violence"**

The non-FDPA aggravating factor titled "racially-motivated killings" was crafted by the government in its Notice of Intent to include one prong involving verbal *acts*, that Payton Gendron "expressed bias, hatred, and contempt toward Black persons," and a second involving his *motivation*, that such "animus toward Black persons played a role in the killings." His Motion sought an informational outline on this factor because neither the Notice nor the Indictment say anything about the nature of the acts constituting the first prong or when and where they occurred. The Motion observed that an outline was especially necessary because the

[21] That includes those relatives of the deceased and injured survivors who, the discovery reveals, have told the prosecutors, in the course of multiple interviews, that they wish to get on with their lives, as well other family members who feel differently, some of whom have spoken about their trauma in media interviews and are also sharing it publicly in ongoing civil lawsuits.

government appears to intend to sweep in acts from a range of unspecified dates and times extending well before the day of the crime. (ECF No. 160 at 15-16).

The government's Response ignores the first prong of this aggravating factor and the nature of Payton Gendron's request for an outline, by arguing that the d Notice suffices simply because it alleges the second prong of his motivation, namely, "the defendant's animus towards Black persons."[22] (ECF No. 167 at 51). The government also resists providing any outline for another aggravating factor – that "in preparation for and in committing" the charged crimes, Payton Gendron "attempted to incite violent action by others" – while not denying it too embraces a range of acts by him (thus the phrase, "in preparation for") allegedly engaged in at unspecified places on unspecified dates ranging well before the day of the crime. (*Id.* at 52).

Furthermore, for the reasons discussed, the government is also unpersuasive in its additional argument that the discovery – from which it cites a few specific examples of support for these two aggravators – can substitute for an informational outline of the basic facts the government intends to prove to establish them. (ECF No. 167 at 51). No doubt this handful of examples reflects a tiny fraction of the presentation the government has in store on these factors.

**7. "Selection of Site"**

This aggravating factor, as alleged in the government's Notice, appears, on its face, limited to *the choice* Payton Gendron made, before the day of the offense, to target the Tops Friendly Market, and his *motivation for that choice*. (ECF No. 125 at 5: alleging he "selected the Tops Friendly Market . . . in order to maximize the number of Black victims of the offense"). Payton Gendron sought an informational outline, however, out of an excess of caution, fearing

[22] The government also notes a similar aggravating factor was alleged in *Bowers*, in which an informational outline was denied. But, as discussed, that case is distinguishable and, in any event, an outlier the Court should not follow.

that the government might intend to exceed the bounds of its notice with its sentencing presentation, as has happened in some other cases.

The government's Response to the Motion validates that concern.  The Response suggests that the prosecutors also intend to shoehorn in facts from the day of the crime, which are outside the scope of this aggravator as written, which is limited to his advance choice before the day of the offense.  (ECF No. 167 at 54: "a large number of Black persons were, in fact, present at the store, and the defendant specifically targeted only those persons.").  The notice of aggravating factors should not be fluid and change shape at the whim of the government. Clearly, an informational outline of what essential facts the government intends to prove is needed for this factor as well.

## III.   Conclusion

Even putting aside the government's mis-accounting of the law, it is disturbing that it consistently urges the Court to exercise its discretion by selectively following other district court decisions that have afforded federal capital defendants the *least* protections.  But no doubt the Court is mindful of the Supreme Court's warning a half century ago that "[d]eath, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two.  Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).  Thus, as most other district judges confronted with this awesome responsibility have recognized, the ultimate question with a motion like this, as with many other issues the Court will confront in this case, is not: What is the bare minimum to avoid appellate reversal?  Rather, it is: What kind of legal process is reliable enough to be trusted with a human life?

Accordingly, for the foregoing reasons and those discussed in Payton Gendron's original Motion for an Informational Outline and his Motion for a Bill of Particulars (*see* ECF No. 161 at 6-7), and pursuant to the Fifth, Sixth and Eighth Amendments to the United States Constitution, Federal Rule of Criminal Procedure 7, and the FDPA, the defendant requests that this Court grant the Motion.

Dated:         July 8, 2024
               Buffalo, New York

                              *s/Sonya A. Zoghlin*
                              Sonya A. Zoghlin
                              Assistant Federal Public Defender

                              *s/Anne M. Burger*
                              Anne M. Burger
                              Supervisory Assistant Federal Public Defender

                              *s/MaryBeth Covert*
                              MaryBeth Covert
                              Senior Litigator

                              *s/Julie Brain*
                              Julie Brain
                              Julie Brain, Attorney at Law