IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                                                    22-CR-109-V

PAYTON GENDRON,

                  Defendant.

---

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR AN ORDER CATEGORICALLY EXEMPTING PAYTON GENDRON FROM THE DEATH PENALTY BECAUSE HE WAS EIGHTEEN YEARS OLD AT THE TIME OF THE ALLEGED CAPITAL CRIMES (DOCKET NO. 182)

The United States of America, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Kristen M. Clarke, Assistant Attorney General, Civil Rights Division, and Joseph M. Tripi and Brett A. Harvey, Assistant United States Attorneys, Laura Gilson, Trial Attorney, Civil Rights Division, and Michael Warbel, Trial Attorney, Criminal Division, of counsel, respectfully submits this response in opposition to the defendant's Motion For An Order Categorically Exempting Payton Gendron From The Death Penalty Because He Was Eighteen Years Old At The Time Of The Alleged Capital Crimes [Docket No. 182].

The defendant moves the Court for extraordinary relief: to create a categorical exemption to capital punishment for those adults who are 18 years of age at the time they commit a capital murder. Relying on social and scientific studies, he suggests such persons,

because only of their age, are "insufficient[ly] culpab[le]" to warrant a sentence of death.[1] Docket No. 182 at 1. In so moving, the defendant asks this Court to "extend" the holding of *Roper v. Simmons*, 543 U.S. 551 (2005), in which the Supreme Court created a categorical exemption from the death penalty for juveniles, that is, offenders *below* the age of 18, and strike the death notice against him. *Id*. at 2-3, 21. As set forth below, this Court is prohibited from granting such relief. Moreover, other courts that have considered the same request have resoundingly held that the Supreme Court's decision in *Roper* remains binding. Accordingly, this Court must deny the defendant's motion and request for an evidentiary hearing.

## LAW AND ARGUMENT

### A. This Court Lacks Authority to Extend Binding Supreme Court Precedent from *Roper*.

When the Supreme Court has directly decided an issue, lower federal courts *must* follow the case that directly controls, leaving to the Supreme Court the prerogative of overruling or altering its own decisions. *See, e.g., Agostini v. Felton*, 521 U.S. 203, 237 (1997) (requiring the Courts of Appeals to adhere to directly controlling Supreme Court precedents, even those that rest on reasons rejected in other decisions); *United States v. Aquart*, 912 F.3d 1, 49 (2d Cir. 2018) ("Whatever the merits of Aquart's argument, only the Supreme Court can overrule *Gregg* [*v. Georgia*, 428 U.S. 153 (1976)] or recognize exceptions thereto."). Because the Supreme Court has directly decided the issue of whether the Eighth and Fourteenth Amendments forbids the death penalty for offenders over the age of 18, this Court lacks any authority to alter binding Supreme Court precedent.

---

[1] As described below, the law permits that the defendant's arguments regarding his age and any purported deficits in brain development are more properly to be presented for the jury's consideration as mitigation information at a potential capital sentencing hearing.

2

In *Roper*, the Supreme Court, referring to its "evolving standards of decency" jurisprudence, 543 U.S. at 560-61, held that the "Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." *Id*. at 578.  The Court reasoned that "objective indicia of consensus" against executing juveniles dictated a finding that juveniles are "categorically less culpable than the average criminal." *Id*. at 567 (internal quotation marks and citation omitted), 567-68 (citing state laws forbidding juvenile executions, the infrequency of juvenile executions, and the consistency of the movement away from juvenile executions).  Exercising its independent judgment, the Court also found that "general differences between juveniles under 18 and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders." *Id*. at 569; *see also id.* at 569-70 (explaining that juveniles demonstrate a "lack of maturity and underdeveloped sense of responsibility," "are more vulnerable or susceptible to negative influences and outside pressure," and that their "character . . . is not as well formed as that of an adult") (internal quotation marks and citations omitted).

Importantly, the *Roper* Court recognized its careful consideration of the nuances presented in "drawing a line" at 18 years of age:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules.  The qualities that distinguish juveniles from adults do not disappear when an individual turns 18.  By the same token, some under 18 have already attained a level of maturity some adults will never reach.  For the reasons we have discussed, however, a line must be drawn. . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood.  It is, we conclude, the age at which the line for death eligibility ought to rest.

*Id*. at 574.

The defendant acknowledges the hard line set for categorical exemption in *Roper* at 18 years of age and expressly asks this Court to "extend" *Roper's* holding to those age 18, if not 18-21. *See* Docket No. 182 at 2-3, 12. The defendant cites no statutory or legal authority in support of his categorical exemption to the death penalty, and the Supreme Court has rendered the defendant's reliance upon any such studies moot. Simply put, the defendant asks this Court to do something it simply cannot. *See Aquart*, 912 F.3d at 49.

Applying this rule, circuit courts hearing appeals in the prosecutions of Dzokhar Tsarnaev (a 19 year-old male who perpetrated the 2013 bombing upon the Boston Marathon that resulted in the deaths of three persons and injury to 264 others, as well as the subsequent shooting-murder of a police officer) and Dylan Roof (a 21 year-old male who committed a 2015 racial hate crime attack upon Black parishioners at a Charleston, South Carolina church that resulted in the deaths of nine persons) rejected claims to expand *Roper* nearly identical to the one made by this defendant. *See United States v. Roof*, 10 F.4th 314, 378-80 (4th Cir. 2021); *United States v. Tsarnaev*, 968 F.3d 24, 96-97 (1st Cir. 2020).[2] In both cases, the appellants submitted studies similar, if not the same, to those cited by the defendant here, to argue that the cut-off age for the death penalty should be raised because younger adults' brains continue to develop. *See Roof*, 10 F.4th at 378 (noting that Roof argued that studies "eroded the justification relied upon in *Roper* for drawing the line for capital punishment at 18") (internal quotation marks and citation omitted); *Tsarnaev*, 968 F.3d at 96 ("Looking for support, [Tsarnaev] argues that 'scientific research' since *Roper* 'has explained the effects of brain

---

[2] Just as the defendant failed to recognize in his arbitrariness motion, *see* Docket No. 181, the binding negative authority from the Second Circuit in *Aquart*, he has failed here to acknowledge these persuasive opinions from *Tsarnaev* and *Roof*, which directly refute his claims.

4

maturation, or the lack thereof, on the behavioral and decision-making abilities of late adolescents in their late teens and early twenties.'"). The opinions from the Fourth and First Circuits are directly on point and highly persuasive.

The First Circuit noted in *Tsarnaev* that the appellant had conceded, "as he must – that the Supreme Court has 'drawn a bright line' for death eligibility 'at age 18.' He just thinks that the factors *Roper* considered relevant in granting death-penalty immunity to persons under 18 . . . apply equally to persons under 21." 968 F.3d at 96 (citing and quoting *Roper*, 543 U.S. at 569-79). The court held that Tsarnaev could not show error, "given *Roper's* square holding that 18 is 'the age at which the line for death eligibility ought to rest.'" *Id*. at 97 (citation omitted). The court concluded that, though the change Tsarnaev proposed was "worthy of careful consideration," as an "'inferior' court," "we simply note that whether a change should occur is for the Supreme Court to say – not us." *Id*.

In *Roof*, the Fourth Circuit reached the same conclusion when considering the defendant's same argument:

> Roof argues that we should read *Roper* expansively. But *Roper's* holding is a *categorical* ban on executing juveniles in the same way that *Atkins* is a *categorical* ban on executing the intellectually disabled. And if a Supreme Court precedent has direct application in a case, as *Roper* clearly does, then we must follow it. The Supreme Court chose to draw a line at the generally accepted age of majority, 18, and did so acknowledging that age and culpability were not perfectly linear. We have no authority to hold that executing those who are older than 18 violates the Eighth Amendment because . . . whether a change to *Roper* should occur is for the Supreme Court to say.

10 F.4th at 379 (internal quotation marks and citations omitted; emphasis in original).

5

Further, recognizing that the Supreme Court had granted certiorari in *Tsarnaev* to determine whether the First Circuit properly set aside Tsarnaev's death sentence on other grounds, the *Roof* court stated: "Given the parallel arguments that Tsarnaev and Roof make, the Court may decide whether to modify *Roper*. Until then, *Roper* is the controlling precedent." *Id*. at 380. However, the Supreme Court did not address the *Roper* holding when it reviewed and reversed the First Circuit's *Tsarnaev* opinion, reinstating Tsarnaev's death sentence. *See United States v. Tsarnaev*, 595 U.S. 302 (2022).

Here, this Court is constrained by Supreme Court precedent, just as the appellate courts were in *Tsarnaev* and *Roof*. The Supreme Court set a "categorical" rule in *Roper*, and it is only for that Court to revisit such holding and expand it. Alternatively, Congress may decide to raise the statutory limit for capital punishment. *See Roper*, 543 U.S. at 567 (noting "Congress considered the issue when enacting the Federal Death Penalty Act in 1994, and determined that the death penalty should not extend to juveniles"). In contrast to 18-year-olds, "juveniles are not trusted with the privileges and responsibilities of an adult," and as such, "their irresponsible conduct is not as morally reprehensible as that of an adult," *Id*. at 561 (internal quotation marks omitted, citing *Thompson v. Oklahoma*, 487 U.S. 815, 835 (1988)). *Roper* clearly established the line for a categorical exemption from the death penalty at 18. This Court has no role in expanding such line. Only the Supreme Court (or Congress) can now change that. Accordingly, this Court must deny the defendant's motion.[3]

---

[3] Given that the defendant's motion fails as a matter of law, it is not for this Court to assess whether there is national consensus on exempting 18-year-olds from capital punishment, though it is worth noting that the defendant does not cite to a single jurisdiction that specifically exempts this group from capital punishment (setting aside those jurisdictions that have abolished the death penalty altogether). And, though the defendant highlights a decline in imposition of the death penalty for younger adults, this overlooks the fact that two of the

We find further support for this conclusion in *United States v. Sierra*, 933 F.3d 95 (2d Cir. 2019), a case cited by the defendant. In *Sierra*, the Second Circuit rejected an invitation to expand the Supreme Court's categorical exemption on mandatory life sentences for juveniles to those who were between the ages of 18 and 22: "Since the Supreme Court has chosen to draw the constitutional line at the age of 18 for mandatory minimum life sentences, the defendant's age-based Eighth Amendment challenges to their sentences must fail." 933

---

last seven persons sentenced to death under the FDPA were 21 or younger at the times of their crimes – Tsarnaev and Roof.

Further, though the Supreme Court has, at times, exercised its "independent judgment" when determining whether evolving standards of decency should determine whether eligibility exemptions should be made for capital punishment, *see Roper* 543 U.S. at 570-74, it is certainly not for *this* Court to use *its* independent judgment to expand *Roper*. As reflected in *Roper*, the Supreme Court has struggled with whether it is even appropriate for the high court to, *itself*, insert its independent views on this subject. *Compare*, 543 U.S. at 561 (noting the Court exercised independent judgment in *Thompson*) and 570-71 (exercising independent judgment in *Roper*, itself) *with id*. at 562 (noting the Court had "'emphatically rejected' the suggestion that the Court should bring its own judgment to bear on the acceptability of the juvenile death penalty" in *Stanford v. Kentucky*, 492 U.S. 361 (1989), where the Court refused to extend the cut-off for exemption for the death penalty from 16 to 18 years of age); see *also id*. at 574-75 (discussing inconsistency in exercising independent judgment). Thus, this Court must also not delve into the studies cited by the defendant or the merit, if any, to his arguments that younger adults (e.g., persons ages 18-21) exhibit the type of immaturity, susceptibility to peer pressure, and transitory belief systems that led the *Roper* Court to expand the constitutional eligibility limit for capital punishment from 16 to 18.

*Roper* shows that the Court will reconsider the age cut-off, if it deems that doing so is appropriate. In fact, that is exactly what the Court did in *Roper*, where the Court reconsidered its decision in *Stanford* (refusing to set the cut-off at age 18) and expanded the ruling from *Thompson* (which had previously set the cut-off at 16). *See* 543 U.S. at 561-63 (discussing *Thompson* and *Stanford*). Further, it is worth noting the extraordinary nature of the defendant's request and dangerous precedent the Court would set. As reflected throughout *Roper*, 18-years-old, the generally accepted age of majority in this country, is the age at which persons can, among other things, vote, marry, serve on juries, and serve in the armed forces. A decision to exempt younger adults from capital punishment on the grounds that they are immature, too vulnerable to peer pressure, or too transitory in their beliefs could call into question the ability of these same persons to exercise fundamental autonomy and participate in the most basic of our civic duties as Americans. Again, this is simply beyond the reach of this trial court.

F.3d at 97 (refusing to expand rule set by the Supreme Court in *Miller v. Alabama*, 567 U.S. 460 (2012)) (internal citation omitted).  Despite the fact that *Sierra* was not a capital case, the Second Circuit's rationale is highly persuasive, if not binding, on this Court.

The defendant's suggestion that *Sierra* should not apply here because it was not a capital case and "death is different," Docket No. 182 at 3 n. 2, is misplaced.  The government does not cite *Sierra* to argue that because the Second Circuit has found that life sentences are not cruel and unusual punishment for 18 to 22-year-olds, that death sentences must also not constitute cruel and unusual punishment.  Rather, *Sierra* supports the limited proposition that courts in this Circuit must adhere to the doctrine of *stare decisis*.  There is no basis in the Supreme Court's capital jurisprudence for the doctrine of *stare decisis* to operate differently in capital cases than in non-capital ones.  Just as the *Sierra* court was bound by the Supreme Court's holding in *Miller*, this Court is bound by the Supreme Court's holding in *Roper*.

Finally, the defendant's reliance on *Hall v. Florida*, 572 U.S. 701 (2014), and *Moore v. Texas*, 581 U.S. 1 (2017), is also without merit.  The defendant asserts that the Supreme Court decisions in those cases "require significant deference to the consensus of the scientific community when evaluating the Eighth Amendment's bar on cruel and unusual punishment."  Docket No. 182 at 2.  *Hall* and *Moore*, however, are inapposite here.  Neither case dealt with the propriety of a categorical exemption to the death penalty.  Rather, both dealt only with the technical assessment of intellectual disability, *i.e.*, how courts should determine whether a person is intellectually disabled.  Specifically, *Hall* held that scientific advancements indicated that it was not appropriate to require a defendant to demonstrate an IQ score of 70 or below as a prerequisite to establishing intellectual disability.  *See Hall*, 572

8

U.S. at 711-12, 723.  *Moore* dealt with how Texas courts determined if a person was intellectually disabled, and particularly, how they failed to give credit to views of the medical community.  581 U.S. at 5-7.

Here, the defendant wrongly conflates technical assessment of intellectual disability and the propriety of a categorical age-based exemption to the death penalty.  In *United States v. Gonzalez*, 981 F.3d 11, 20-21 (1st Cir. 2020), the First Circuit aptly distinguished *Moore* in denying a 20-year-old's Eighth Amendment challenge to multiple life sentences, explaining that the defendant improperly "elevate[d] scientific research about brain development from one of many factors to the sole determinant of where a line should be drawn between youthful offenders and more mature offenders."  In doing so, the court noted *Moore's* inapplicability.  *Id*. at 21 n.3 ("We add, moreover, that the defendant over-reads *Moore [ ]*, which did not revamp the Court's holistic approach to the Eighth Amendment.  *Moore* addressed only the isthmian question concerning how courts should determine if a defendant facing the death penalty 'qualified as an intellectually disabled.").  The same is true here.  Neither *Hall* nor *Moore* had any role in establishing that a categorical exemption from the death penalty applies for those who are intellectually disabled.  Their emphasis on the importance of scientific evidence is misplaced here, and therefore, this Court must not countenance either case.

### B. The Defendant may Present Information Regarding his Purported Youth as Mitigation at a Potential Capital Sentencing Hearing.

Though this Court may not grant the relief the defendant seeks, the law entitles the defendant to present evidence of his age, maturity, and other mitigating circumstances during the capital sentencing hearing.  The system is designed to consider both aggravating and

9

mitigating circumstances, including youth, in every case. *See Roper*, 543 U.S. at 572; *see also Eddings v. Oklahoma*, 455 U.S. 104, 110-12 (1982) (recognizing broad right of a capital defendant to present evidence relating to any mitigating factor, including his/her background, character, prior record, or the circumstances of the offense); 18 U.S.C. § 3592(a) (providing capital defendants broad ability to present any mitigating factor). Here, subject to evidentiary standards set forth in 18 U.S.C. § 3593(c), the defendant may present evidence regarding his age, purported immaturity or impressionability, and/or purported deficiencies in brain development, among other topics, as mitigation information at a potential capital sentencing hearing. Because an appropriate procedure exists for the presentation of such mitigating information — and more importantly, as the Court lacks the authority to do so — this Court need not feel obligated to follow the defendant's urging to extend existing Supreme Court precedent.

### C. An Evidentiary Hearing is not Warranted.

An evidentiary hearing is not warranted. Ordinarily, an evidentiary hearing is only required if "contested issues of fact . . . are in question." *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992). Moreover, if facts urged in support of a hearing would not entitle the moving party to relief as a matter of law, no evidentiary hearing is required. *See Gentile v. Cty. of Suffolk*, 926 F.2d 142, 148 (2d Cir.1991); *see also United States v. Fugate*, No. 121CR127LJVMJR, 2022 WL 18359077, at *1 n.1 (W.D.N.Y. July 13, 2022), *report & recommendation adopted*, No. 21-CR-127-LJV-MJR, 2023 WL 279815 (W.D.N.Y. Jan. 18, 2023) (denying evidentiary hearing where there are no contested issues of fact). The defendant proffers no contested facts to be determined at the hearing. And, more importantly,

this Court lacks the authority to grant the relief sought. Accordingly, the defendant's request for an evidentiary hearing should be likewise denied.

## CONCLUSION

For the reasons set forth above, this Court should deny the defendant's motion and request for an evidentiary hearing.

DATED:     Buffalo, New York, July 19, 2024

| | |
|---|---|
| TRINI E. ROSS<br>United States Attorney<br>Western District of New York | KRISTEN M. CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| BY:  s/JOSEPH M. TRIPI<br>        s/BRETT A. HARVEY<br>        Assistant United States Attorneys<br>        United States Attorney's Office<br>        Western District of New York<br>        138 Delaware Avenue<br>        Buffalo, New York 14202 | BY:  s/LAURA B. GILSON<br>        Trial Attorney<br>        Civil Rights Division<br>        U.S. Department of Justice<br>        150 M Street NE<br>        Washington, DC 20530<br>        202-598-1141<br>        Laura.Gilson2@usdoj.gov |
| BY:  s/MICHAEL S. WARBEL<br>        Trial Attorney<br>        Criminal Division<br>        U.S. Department of Justice<br>        1331 F. St. NW, Ste. 623<br>        Washington, DC 20004<br>        (202) 514-5605<br>        Michael.Warbel@usdoj.gov | |