UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

PAYTON GENDRON,

        Defendant.

22-CR-109-LJV
DECISION & ORDER

---

Before this Court is Payton Gendron's motion for a bill of particulars. *See* Docket Item 161. After the government responded to Gendron's motion, Docket Item 168, Gendron replied, Docket Item 178.[1] This Court grants Gendron's motion in part and denies it in part. More specifically, because Gendron has demonstrated that some of the requests are necessary to advise him about the specific acts of which he is accused, this Court grants those requests. But this Court denies the remaining requests because the indictment and other records that the government has produced sufficiently answer those questions.

## **BACKGROUND**

A federal indictment charged Gendron with twenty-seven felony counts in connection with a shooting that killed ten people and injured three at a Tops grocery store in Buffalo, New York, on May 14, 2022. Docket Item 6.

---

[1] At a hearing on May 21, 2024, this Court asked the parties about scheduling oral argument on this motion and Gendron's motion for an informational outline. Docket Item 183 at 23-24. The government called the briefing "comprehensive" and said that it would defer to the Court about whether argument was necessary. *Id.* at 24. Gendron agreed that oral argument might be unnecessary. *Id.* Given the extensive briefing and the parties' agreement that oral argument may not be necessary, this Court decides the motions without oral argument.

The indictment begins with an introduction, which each count explicitly incorporates:

1. On or about May 14, 2022, the defendant, **PAYTON GENDRON**, an eighteen-year-old white male, drove to the Tops grocery store located at 1275 Jefferson Avenue, Buffalo, New York 14208 (Tops).

2. When the defendant, **PAYTON GENDRON**, arrived at Tops, he got out of his car wearing a tactical-style helmet, camouflage clothing, body armor, and a GoPro video camera, and carrying a loaded Bushmaster XM-15 .223 caliber rifle and multiple loaded magazines.

3. The defendant, **PAYTON GENDRON**, shot four Black people in front of Tops, killing Roberta Drury, Pearl Young, and Heyward Patterson, and injuring Z.G., a person whose identity is known to the Grand Jury.

4. The defendant, **PAYTON GENDRON**, entered Tops and shot multiple people, killing seven more Black people:  Ruth Whitfield, Celestine Chaney, Aaron W. Salter, Jr., Andre Mackniel, Margus Morrison, Katherine Massey, and Geraldine Talley; and injuring two white people:  C.B., and J.W., persons whose identities are known to the Grand Jury.

*Id.* at 1-2.  The indictment then turns to the counts, most of which follow the language of the relevant statutes and identify the date, location, and victims.  *Id.* at 2-7.

Counts one through 20 involve the killings.  Counts one through ten allege that Gendron committed hate crimes resulting in death under 18 U.S.C. § 249(a)(1)(B)(i).  Docket Item 6 at 2-3.  Counts 11 through 20, the counts carrying a potential death sentence, allege that he discharged a firearm to commit murder under 18 U.S.C. § 924(c)(1)(A)(i), (c)(1)(A)(iii), (j)(1).  Docket Item 6 at 3-4.

Counts 21 through 26 involve the non-fatal injuries.  Counts 21 through 23 allege that Gendron committed hate crimes involving an attempt to kill.  18 U.S.C. § 249(a)(1)(B)(ii).  Docket Item 6 at 5-6.  Counts 24 through 26 allege that he used and discharged a firearm during a crime of violence.  18 U.S.C. § 924(c)(1)(A)(i), (c)(1)(A)(iii).  Docket Item 6 at 6-7.

Count 27 alleges another hate crime: "On or about May 14, 2022, in the Western District of New York, the defendant, **PAYTON GENDRON**, through the use of a firearm attempted to cause bodily injury to Black people, other than the victims identified in Counts One through Ten and Twenty-One, in and around the Tops grocery store, located at 1275 Jefferson Avenue, Buffalo, New York 14208, because of their actual and perceived race and color. The offense included an attempt to kill Black people in and around Tops." *Id.* at 7.

In addition to requesting particulars about the charges, Gendron requests particulars about three special findings in the indictment.[2] Docket Item 161 at 6-7.

The government says that it has produced many rounds of discovery as well as a discovery index. Docket Item 167 at 3-4. Gendron has not disputed this representation. Indeed, as of May 1, 2024, Gendron had some pending discovery requests, but the government had not yet refused to provide anything he requested. Docket Item 157 at 1. And while Gendron moved for an informational outline on the same day that he filed his motion for a bill of particulars, *see* Docket Item 160, he has not made any recent discovery requests. Nevertheless, this Court finds that a bill of particulars is appropriate in at least some respects for the following reasons.

## DISCUSSION

"Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the

---

[2] The relevant special findings are grave risk of death to others, substantial planning and premeditation, and vulnerable victims. See Docket Item 161 at 6-7; *see also* Docket Item 6 at 11.

3

charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). A defendant has the burden of showing that a bill of particulars is necessary. *United States v. Pirk*, 282 F. Supp. 3d 603, 614 (W.D.N.Y. 2017).

A bill of particulars seeks not what actually happened but what the government claims happened. *United States v. J.M. Huber Corp.*, 179 F. Supp. 570, 573 (S.D.N.Y. 1959). And while revealing the government's evidence or theories is not the purpose of a bill of particulars, revealing such information is a permissible effect of a bill of particulars when a defendant needs more information about the charges to prepare a defense. *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998).

In deciding whether to order a bill of particulars, courts consider the nature of the charge, the clarity of the indictment, and the amount of discovery available to the defendant. *United States v. Walker*, 922 F. Supp. 732, 739 (N.D.N.Y. 1996). The decision to order a bill of particulars and the determination of its scope and specificity is left primarily to the trial court's discretion. *United States v. Tramunti*, 513 F.2d 1087, 1113-14 (2d Cir. 1975). A bill of particulars is required, however, when the charges are so general that they do not advise the defendant of the specific acts of which he is accused. *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). On the other hand, a bill of particulars is generally not required when the defendant seeks only information that is in the indictment or in an "acceptable alternate form." *Bortnovsky*, 820 F.2d at 574.

Gendron asks for a bill of particulars because the indictment did not allege his "conduct and . . . other essential facts comprising the charged offenses and special findings." Docket Item 161 at 1. He contends that he needs a bill of particulars because the indictment is "barebones, essentially just tracking the statutory language and adding in the names of the victims" and the date and location of the alleged crimes. *Id.* Similarly, he says, the special findings "largely just track the language of the [Federal Death Penalty Act]." *Id.* at 2.

The government responds that the indictment is sufficient and that even if it were not, the government's extensive and organized discovery productions make the request for particulars unnecessary. Docket Item 168 at 7-8, 11.

In support of its first point, the government argues that it did not need to do much more than track the language of the statute and list the approximate time and place. Docket Item 168 at 8; *see id.* at 5. To support that proposition, the government cites two cases that address the standard for dismissing an indictment. *See id.* (citing *United States v. Mansouri*, 2023 WL 9100641 (W.D.N.Y. June 29, 2023), *report and recommendation adopted*, 2023 WL 8430239 (W.D.N.Y. Dec. 5, 2023); *United States v. Benjamin*, 95 F.4th 60, 66-67 (2d Cir. 2024)). Meeting that low bar means that an indictment survives a motion to dismiss, but it does not mean that a bill of particulars is unnecessary.

The government is correct that it is appropriate to consider the discovery available to the defendant when determining whether to order a bill of particulars. *See, e.g.*, *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004); *Walker*, 922 F. Supp. at 739. As Gendron argues, though, the government's production of voluminous discovery

5

does not necessarily exempt it from providing additional particulars about the charges. Docket Item 161 at 3; *see, e.g.*, *United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988) (explaining that discovery "may not be automatically relied on by the [g]overnment as an adequate substitute for a straightforward identification in a bill of particulars of the identity of victims of offenses that the prosecution intends to prove"); *Bortnovsky*, 820 F.2d at 575.  This Court therefore considers the discovery available to Gendron not as dispositive but as a factor in its analysis.

This Court turns now to Gendron's specific requests.  Although he organizes his requests by count, this Court analyzes them by topic.

**I.    ACTS AND INJURIES**

As to the 13 named victims, which cover the first 26 counts, Gendron asks for the following particulars about his acts and the injuries those acts caused:

- each act by which he used, carried, and discharged a firearm, and how such use, carrying, and discharge were "during and in relation" to the corresponding crime of violence;

- each act by which he caused or attempted to cause bodily injury and/or death to each victim;

- the bodily injury he willfully caused or attempted to cause; and

- for the ten victims who were killed, how bodily injury to the victim resulted in the victim's death.

Docket Item 161 at 4-6.

The indictment outlines the shooting and names the 13 victims who were shot. Docket Item 6 at 1-2.  Moreover, the government has provided Gendron with his own

6

video recordings of the attack, as well as surveillance videos, body camera recordings from the responding officers, crime scene images, and autopsy and medical records of the victims.  *See* Docket Item 167 at 4-5 n.2.  Gendron does not explain how the government's allegations about his actions at the Tops grocery store, the injuries the victims suffered, and the way the injuries caused the ten deaths are not apparent from all that.  There is no risk of surprise at trial on these issues because the indictment and discovery fully inform Gendron about these particulars.  Therefore, Gendron has not established that additional particulars are necessary, and his request for particulars on these topics is denied.

**II.    HATE CRIME TARGETS**

Gendron also asks for particulars about the targets of the alleged hate crimes in counts one through ten and 21-23.  Docket Item 161 at 4-5.  As relevant to this issue, the hate crimes statute applies to one who causes bodily injury "because of the actual or perceived race [or] color . . . of any person."  18 U.S.C. § 249(a)(1).  Gendron seeks the identity of the "any person" part of the statute for each relevant charge, as well as that person's actual and perceived race.  Docket Item 161 at 4-5.

As to counts one through ten, the indictment names each victim and specifies that each victim was Black and that Gendron willfully caused bodily injury to each of them "because of *their* actual and perceived race and color."  *See* Docket Item 6 at 2-3 (emphasis added).  The same is true for count 21:  The indictment names the victim, specifies that he is Black, and says that Gendron willfully caused bodily injury to him "because of *his* actual and perceived race and color."  *See id.* at 2, 5 (emphasis added).  The indictment therefore directly identifies the "any person" and the person's race for

7

the hate crime counts involving the named Black victims.  Again, Gendron has not established the need for anything more.

Gendron makes a similar request with respect to counts 22 and 23, which involve two white victims, *see id.* at 2, 5-6.  The indictment says that Gendron willfully caused them bodily injury "because of the actual and perceived race and color of any person, to wit, Black people."  *Id.* at 5.  Gendron asks to whom, specifically, the government is referring when it says "Black people," and asks for those people's actual and perceived race.  *See* Docket Item 161 at 5.  The indictment also says that "[t]he offenses included an attempt to kill Black people."  Docket Item 6 at 6.  Gendron in turn asks whom he attempted to kill and each act by which he attempted to kill them as applied to these two counts.  Docket Item 161 at 5.  The actual and perceived race of each of Gendron's targets is clear from this part of the indictment, which alleges that he acted because of the actual and perceived race of "Black people."  Docket Item 6 at 5.  It is not clear, however, how the defense could learn through the indictment or the discovery whom, specifically, the government alleges that he was targeting.  The government therefore shall provide particulars about whom it alleges Gendron was targeting when he shot the two white victims.

### III.  DEGREE OF MURDER

For each of counts 11 through 20, discharge of a firearm to commit murder, Gendron asks whether the government alleges that he "caused the victim's death in such a manner as to constitute murder in the first or murder in the second degree under 18 U.S.C. § 1111 and, if murder in the first degree, whether it was premeditated or in the course of a felony."  Docket Item 161 at 4.  The government says that this request is

"obviated by the indictment and the government's disclosures to date."  Docket Item 168 at 12.  But the indictment does not directly answer Gendron's question, nor does the government say where in discovery Gendron could find the answer.  Gendron has established that these particulars are necessary to apprise him of the nature of the crime for which the government says he is eligible for the death penalty, and the government therefore shall provide these particulars.

## IV.     COUNT 27

Gendron requests seven particulars about count 27, Docket Item 161 at 6, which alleges a hate crime act against Black victims who were "in and around the Tops grocery store," Docket Item 6 at 7.  In its response, the government says that this count "encompass[es] the defendant's attempt to kill Black people not specifically listed as victims in the indictment."  Docket Item 168 at 2.  But that charge, and the government's response, are broad and vague, particularly as to the alleged victims, and Gendron is entitled to more specificity about what this count encompasses so that he may defend against it.  Therefore, the government shall provide Gendron with the following particulars: whom it alleges Gendron attempted to willfully injure, whom it alleges he attempted to kill, and each act it by which it alleges he attempted to injure or kill them.[3]

---

[3] Gendron also requests particulars about the bodily injury that he attempted to willfully cause to Black people; the person because of whose perceived race he willfully caused and attempted to cause bodily injury to Black people and the perceived race of that person; each act by which he willfully caused or attempted to cause bodily injury to Black people; and the time and place at which each act was committed.  Docket Item 161 at 6.  The Court believes that the indictment, discovery, and particulars ordered above should provide Gendron with this information.  If, after Gendron receives the particulars ordered above, he disagrees, he may reapply for additional particulars.

## V. SPECIAL FINDINGS FOR AGGRAVATING FACTORS

Earlier today, this Court issued a decision and order granting Gendron's motion for an informational outline. Because the notice of intent to seek the death penalty repeats several aggravating factors from the indictment, *see* Docket Item 6 at 11-12 and Docket Item 125 at 3, and because Gendron addressed the aggravating factors in both the motion for an informational outline and the motion for a bill of particulars, the two motions overlapped considerably.[4]

Gendron included most of the arguments involving the overlapping statutory factors in his motion for an informational outline, *see* Docket Item 178 at 3 n.4, and the government did the same in its responses, *see* Docket Item 167 at 23-36; Docket Item 168 at 8-10. This Court followed the parties' lead and addressed the aggravating factors in the earlier decision and order involving the informational outline. The outline that the Court ordered will cover, at a minimum, the requests for aggravating-factor information that Gendron made in his motion for a bill of particulars. Therefore the special findings portion of Gendron's request for a bill of particulars is denied as moot.

## CONCLUSION

For the reasons stated above, this Court GRANTS Gendron's motion for a bill of particulars as to the following items:

---

[4] The only substantive difference between the indictment and the notice of intent to seek the death penalty for the three factors on which Gendron requests particulars is that the notice says that Gendron created a grave risk of death to other people not only in the "commission" of the offenses but also "in escaping apprehension." *Compare* Docket Item 6 at 11, *with* Docket Item 125 at 3. This Court addressed the more broadly worded factor in its earlier decision and order.

Counts 11-20:

- whether Gendron caused the victim's death in such a manner as to constitute murder in the first or murder in the second degree under 18 U.S.C. § 1111 and, if murder in the first degree, whether it was premeditated or in the course of a felony.

Counts 22-23:

- the person (among the Black people to whom the indictment refers) because of whose actual race Gendron willfully caused and attempted to cause bodily injury to the victim;

- the person (among the Black people to whom the indictment refers) because of whose perceived race Gendron willfully caused and attempted to cause bodily injury to the victim; and

- the person (among the Black people to whom the indictment refers) whom Gendron attempted to kill, and each act by which Gendron attempted to kill that person.

Count 27:

- the Black people whom Gendron attempted to willfully injure; and

- the persons (among the Black people "in and around Tops," as stated in the indictment) whom Gendron attempted to kill, and each act by which Gendron attempted to kill each such person.

This Court DENIES Gendron's motion as to his remaining requests.

The government must provide a bill of particulars that contains the items listed above by September 3, 2024.

SO ORDERED.

Dated:   August 2, 2024
        Buffalo, New York


                                      ***/s/ Lawrence J. Vilardo***
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE