IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                                  22-CR-109-V

PAYTON GENDRON,

                Defendant.

## BILL OF PARTICULARS

The United States of America, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Kristen M. Clarke, Assistant Attorney General, Civil Rights Division, and Joseph M. Tripi and Brett A. Harvey, Assistant United States Attorneys, Laura Gilson, Trial Attorney, Civil Rights Division, and Michael Warbel, Trial Attorney, Department of Justice Capital Case Section, of counsel, respectfully submits this bill of particulars.

On August 2, 2024, this Court granted in part Defendant PAYTON GENDRON's request for a bill of particulars. Docket No. 198 at 1. Specifically, the Court ordered the United States to provide additional information regarding: (1) whom the Defendant was targeting when he shot C.B. and J.W., as charged, respectively, in Counts 22 and 23 of the indictment, (2) whether the United States alleges that the Defendant caused his victims' deaths in such a manner as to constitute first or second degree murder under 18 U.S.C. § 1111, and if first degree whether it was premeditated or in the course of a felony, as charged in Counts 11 through 20, and (3) with respect to Count 27, whom the United States alleges the Defendant attempted to willfully injure, whom it alleges he attempted to kill, and each act by which it

alleges he attempted to injure or kill them. (*Id.* at 8-9). The United States provides the below bill of particulars to comply with the Court's Order and to enable the Defendant "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." Docket No. 198 at 4 (quoting *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)).[1]

**A. The Elements of a Violation of the Matthew Shepard and James Byrd Jr. Hate Crimes Prevention Act as Codified at Title 18, United States Code, Section 249.**

The elements of a Shepard-Byrd Act violation, as relevant here, require that the United States prove that the Defendant (1) willfully, (2) caused bodily injury to any person, or through the use of a firearm attempted to cause bodily injury to any person, (3) because of the actual or perceived race or color of any person, to wit, Black people, and (4) that the offense included an attempt to kill Black people. *See* 18 U.S.C. § 249(a)(1)(B)(iii); Docket No. 6.

In its Order, the Court noted that Counts 1 through 10 of the Indictment identify each victim and specify that the victim was Black, and that the Defendant willfully caused bodily injury to each victim "because of *their* actual and perceived race and color." Docket No. 198 at 7. The Court further noted that these counts thus identify both "the 'any person' and the person's race for the hate crimes counts involving the named Black victims" and that the Defendant had not established "the need for anything more." *Id.* at 7-8. In specifically identifying who the "any person" is in Counts 1 through 10, the United States provided a

---

[1] The United States respectfully requests leave from the Court to supplement this bill of particulars based on the evidence developed in preparation for trial. Such a request is well supported by law. *See* Fed. R. Crim. P. 7(f) (stating that "[t]he government may amend a bill of particulars subject to such conditions as justice requires"); *United States v. Mulder*, 273 F.3d 91, 100 (2d Cir. 2001) (court did not abuse its discretion in allowing government to amend bill of particulars during trial, where defendant was not prejudiced).

more particularized description of the offense than required by statute, specifically connecting each named victim with the theory that they were targeted because of their *individual* race. The Shephard-Byrd Act requires only that a defendant act because of the actual or perceived race of "any person," not a particular person. *See* 18 U.S.C. § 249(a)(1)(B)(iii). Indeed, the term "any person" as used the second time in Section 249(a)(1) refers to the defendant's subjective ("because of") motivation for committing the crime. It is thus not uncommon for defendants to harbor bias against any and all persons with a particular characteristic and not to have in mind a particular individual victim who exhibits that characteristic when they embark on, for example, a mass shooting or other campaign of violence targeting that group. *See, e.g.*, Plea Agreement, *United States v. Aldrich*, No. 1:24-cr-00006-CNS (D. Colo. June 18, 2024), Docket No. 34 (defendant pled guilty to death-resulting violations of 18 U.S.C. § 249(a) for firing into a nightclub crowd because of the sexual orientation or gender identity of individuals in the crowd); *United States v. Genco*, No. 1:21-CR-85, 2024 WL 618419, at *1-*4 (S.D. Ohio Feb. 14, 2024) (defendant pled guilty to attempted violation of 18 U.S.C. § 249(a) for planning to kill women at an Ohio university because of their gender); Statement of Offense, *United States v. Fields*, No. 3:18-cr-00011-MFU (W.D. Va. March 27, 2019), Docket No. 44 (defendant pled guilty to violations of 18 U.S.C. § 249(a), including hate crimes resulting in death and involving an attempt to kill, where defendant drove his car into a crowd because of the race, color, or national origin of individuals in the crowd); Indictment, *United States v. Joseph*, No. 3:19-cr-00048-JZ (N.D. Ohio Jan. 29, 2019), Docket No. 16 (defendant indicted and pled guilty to violation of 18 U.S.C. § 249(a) for attempting to injure and kill members of the Toledo Jewish community at Location A, because of the religion of the people at that location).

B.  **Information Relevant to Counts 22 and 23 of the Indictment**

Tracking the statutory language of 18 U.S.C. § 249(a)(1)(B)(iii), Counts 22 and 23 allege that the Defendant willfully caused bodily injury to C.B. and J.W., and through the use of a firearm attempted to cause bodily injury to C.B. and J.W., because of the actual and perceived race and color of any person, to wit, Black people. The Counts further allege that the offenses included an attempt to kill Black people. *See* Docket No. 6 at 5-6.

The Court has ordered that, with respect to these counts, the United States provide particulars as to who it alleges the Defendant was targeting when he shot C.B. and J.W. Docket No. 198 at 8. Here, the United States responds that the Defendant was targeting any Black person he could find in and around the Tops Friendly Market, located at 1275 Jefferson Avenue, Buffalo, New York ("Tops"), on May 14, 2022, because of the actual and perceived race of the Black people in that vicinity. To prove this theory at trial, the United States will rely, in part, on the Defendant's own words that his goal was "to kill as many blacks as possible." *See* Manifesto of Payton Gendron, GOV-00000593. Indeed, to achieve this stated goal, the Defendant selected Tops, because, among other things, he concluded that "Buffalo has the highest black percentage" and Tops was in a zip code "where a high percentage and high density of blacks people c[ould] be found" and thus offered him a greater chance of succeeding at his goal of murdering as many Black people as possible. *Id.* at GOV-00000594. To assure himself that Tops was the right location for attempting to kill as many Black people as possible, the Defendant, among other things, conducted multiple scouting trips to Tops, where he specifically counted the number of Black people in and around Tops. *See, e.g.*, Discord Journal of Payton Gendron, GOV-00009594-GOV-00009598 and GOV-00010016-GOV-00010017. Therefore, like many other defendants who violate Section 249(a)(1), the

4

Defendant did not have particular Black people in mind to injure and kill. Instead, because he harbored bias against all Black people, he simply wanted to kill as many of them as possible and concluded that Tops was the best location for his mass shooting to achieve that goal. Thus, by willfully causing bodily injury to C.B. and J.W., and by attempting to cause bodily injury to these victims through the use of a firearm, because of the actual perceived race and color of any person, to wit, Black people, the Defendant violated the statute as charged.

Notwithstanding that the United States does not need to prove that the Defendant was targeting any specific Black person at the time he committed the violations of the Shepard-Byrd Act charged in Counts 22 and 23, the United States offers the following as additional factual guidance on these counts. At the time the Defendant shot C.B. and J.W., the Defendant was engaged in shooting repeated rounds of ammunition at victim Aaron W. Salter, Jr., and C.B. and J.W were in the nearby vicinity inside Tops. *See, e.g.*, GoPro Video of Tops Mass Shooting, GOV-00000519 at 00:5:07-00:5.57; FD-302s, GOV-00077203-GOV-00077205, GOV-00077298-GOV-00077299, and GOV-00077220-GOV-00077222. In addition to Mr. Salter, several other Black people were also in the nearby vicinity inside Tops at the time the Defendant shot C.B. and J.W. *See, e.g.*, GoPro Video of Tops Mass Shooting, GOV-00000519 at 00:5:07-00:5.57; Tops Surveillance Footage - Vestibule, GOV-00020843 at 15:28:57-15:29:10; Tops Surveillance Footage - Produce, GOV-00020771 at 15:28:57-15:29:25. As stated above, the Defendant was attempting to kill all Black people in the Tops vicinity at this time, thus including Mr. Salter, the other nearby Black individuals, and other Black people in and around Tops.

### C. Information Relevant to Count 27 of the Indictment

Again, tracking the statutory language of 18 U.S.C. § 249(a)(1)(B)(iii), Count 27 alleges that the Defendant, through the use of a firearm, attempted to cause bodily injury to Black people, other than the victims identified in Counts 1 through 10 and 21, in and around Tops because of their actual and perceived race and color. The Count further alleges that the offense included an attempt to kill Black people in and around Tops. *See* Docket No. 6 at 7.

The Court has ordered that, with respect to Count 27, the United States provide particulars as to whom it alleges the Defendant attempted to willfully injure, whom it alleges the Defendant attempted to kill, and each act by which the United States alleges the Defendant attempted to injure or kill the victims. Docket No. 198 at 9. The United States responds that, as with the allegations in Counts 22 and 23, the Defendant was targeting – attempting to willfully injure and attempting to kill – any Black person he could find in and around Tops on May 14, 2022, because of the actual and perceived race of those Black people. To prove this theory at trial, the United States will rely, in part, on the non-exhaustive evidence provided above, *see supra* pp. 4-5, which demonstrates that Defendant did not have particular Black people in mind to injure and kill and instead, because he harbored bias against all Black people, wanted to injure and kill as many of them as possible. Thus, the Defendant violated the statute as charged by, through the use of a firearm, attempting to cause bodily injury to Black people, other than the victims identified in Counts 1 through 10 and 21, in and around Tops because of these additional victims' actual and perceived race and color. The Defendant further violated the statute when he attempted to kill these additional victims because of their actual and perceived race and color.

Notwithstanding that the United States does not need to prove that the Defendant was targeting any specific Black person at the time he committed the violation of the Shepard-Byrd Act charged in Count 27, the United States offers the following as additional factual guidance on Count 27. During the Defendant's mass shooting, there were approximately 69 people (not including the victims who the Defendant murdered) in and around Tops, the majority of whom were Black. *See, e.g.*, GoPro Video of Tops Mass Shooting, GOV-00000519; Victim and Witness Interviews, GOV-00076857-00079859. The Defendant took numerous substantial steps in his attempt to kill as many of these Black people as possible during the attack. For example, among other things, the Defendant meticulously researched and planned his attack at Tops in order to "to kill as many blacks as possible." *See* Manifesto of Payton Gendron at GOV-00000537-GOV-00000716; Discord Journal of Payton Gendron, GOV-00009267-GOV-00010827. After conducting extensive research, he acquired particular weapons and tactical gear, practiced shooting, and conducted multiple scouting trips to Tops. On May 14, 2022, the Defendant drove to the Tops, parked his car directly in front of the store, exited his car wearing a tactical-style helmet, camouflage clothing, body armor, and a GoPro video camera, and carrying a loaded Bushmaster XM-15 .223 caliber rifle and multiple loaded magazines. The Defendant then began shooting Black people who were in front of the Tops, including Roberta Drury, Pearl Young, Heyward Patterson, and Z.G. Afterwards, the Defendant entered Tops where he proceeded to shoot and kill seven more Black people, including Ruth Whitfield, Celestine Chaney, Aaron W. Salter, Jr., Andre Mackniel, Margus Morrison, Katherine Massey, and Geraldine Talley. Docket No. 6 ¶¶ 1-4.

Further, during his attack, the Defendant did not limit himself to just firing bullets at these eleven Black victims. In addition to apparently inadvertently shooting two white

7

victims, C.B. and J.W., the Defendant fired his Bushmaster XM-15 .223 numerous additional times while targeting Black victims. Indeed, ballistics evidence recovered at Tops indicates that the Defendant fired approximately 60 shots during his mass shooting. *See* Docket No. 1 ¶ 13; FD-302s, GOV-00000185-00000192 and GOV-00057567-00057589. Thus, as stated above, the Defendant was attempting to kill all Black people in the Tops' vicinity at the time of his mass shooting, and he took several substantial steps in his attempt to achieve his goal.

D. **Information Relevant to Counts 11 Through 20 of the Indictment**

Tracking the statutory language of 18 U.S.C. § 924(c)(1)(A)(i), (c)(1)(A)(iii), (j)(1), Counts 11 through 20 allege that the Defendant discharged a firearm during a crime of violence (specifically, a violation of 18 U.S.C. § 249), causing the death of the listed victims. Docket No. 6 at 4. Specifically, these counts allege the Defendant "caused the death of each [listed victim] . . . in such a manner as to constitute murder as defined in Title 18, United States Code, Section 1111," because the Defendant, "with malice aforethought, did unlawfully kill each [listed victim] with a firearm." *Id.*

With respect to these counts, the Court has ordered that the United States clarify "whether Gendron caused the victim's death in such a manner as to constitute murder in the first or murder in the second degree under 18 U.S.C. § 1111 and, if murder in the first degree, whether it was premeditated or in the course of a felony." Docket No. 198 at 11. The United States responds that the Defendant's conduct constituted first degree murder under both theories of premeditated murder and felony-murder included in Section 1111(a). *See* 18 U.S.C. § 1111(a) (murder in the first degree includes "willful, deliberate, malicious, and premeditated killing" and murder "committed in the perpetration of, or attempt to perpetrate

8

. . . murder . . ."). The United States will present evidence at trial in support of both theories, either of which is sufficient. This Court can address as needed at trial any issues of jury unanimity with jury instructions and a special verdict form.[2]

Respectfully submitted,

| TRINI E. ROSS | KRISTEN M. CLARKE |
|---|---|
| United States Attorney | Assistant Attorney General |
| Western District of New York | Civil Rights Division |

| BY: | s/JOSEPH M. TRIPI | BY: | s/LAURA B. GILSON |
|---|---|---|---|
| | s/BRETT A. HARVEY | | Trial Attorney |
| | Assistant United States Attorney's | | Civil Rights Division |
| | United States Attorney's Office | | U.S. Department of Justice |
| | Western District of New York | | 150 M Street NE |
| | 138 Delaware Avenue | | Washington, DC 20530 |
| | Buffalo, New York 14202 | | |

| | | BY: | s/MICHAEL S. WARBEL |
|---|---|---|---|
| | | | Trial Attorney |
| | | | Criminal Division |
| | | | U.S. Department of Justice |
| | | | 1331 F. St. NW, Ste. 623 |
| | | | Washington, DC 20004 |

---

[2] Courts have found second-degree murder to be a lesser-included offense of first-degree murder. *See, e.g.*, *United States v. Warren*, 984 F.2d 325, 331 (9th Cir. 1993) ("We agree the court should have informed the jury it could consider a lesser included offense [of murder in the second degree] if it disagreed on murder in the first degree, or should have referred the jury to [an additional jury instruction] . . ."); *United States v. Chagra*, 638 F. Supp. 1389, 1400-01 (W.D. Tex.), *aff'd*, 807 F.2d 398 (5th Cir. 1986) ("A defendant on trial for first degree murder is automatically on trial for second degree murder because it is a 'lesser included offense' of first degree murder. . . ."); *see also* 2A Fed. Jury Prac. & Instr. § 45:06 (6th ed.) ("Second degree murder can be a lesser-included offense under a charge of first degree murder [under Section 1111(a)].") (quoting 8th Circuit pattern jury instruction comments). As such, if appropriate at trial, this Court may instruct the jury on such a charge. *See* Federal Rule of Criminal Procedure 31(c)(1) ("A defendant may be found guilty of . . . an offense necessarily included in the offense charged.").