UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

     v.                                    22-CR-109 (LJV-HKS)

PAYTON GENDRON,

               Defendant.

_____

**REPLY IN SUPPORT OF**
**MOTION TO DISMISS COUNTS 11-20 OF THE INDICTMENT FOR**
**<u>FAILURE TO STATE AN OFFENSE UNDER 18 U.S.C. § 924(c)</u>**

## I.    INTRODUCTION

Defendant, Payton Gendron, through undersigned counsel, submits this Reply to the government's Opposition (ECF No. 201) ("Opp."), and in further support of his Motion to Dismiss Counts 11 through 20, the capital 18 U.S.C. §§ 924(c)/924(j) counts, for failure to state an offense (ECF No. 180) ("Mot.").[1] As the defense has shown, 18 U.S.C § 249(a)(1)(B)(i) is not a categorical "crime of violence" under 18 U.S.C. § 924(c)(3)(A)'s elements clause for three independent reasons: (i) § 249(a)(1) criminalizes injuring "any person," including oneself, but the elements clause requires using force "against the person . . . of another"; (ii) § 249(a)(1) criminalizes causing minor injuries through *de minimis* force, but the elements clause requires

_____

[1] The government observes, correctly, that the defense "does not seek to dismiss the Section 924(c) charges in Counts 24 to 26, where the predicate offenses are violations of [18 U.S.C. § 249(a)(1)(B)(ii)] involving an attempt to kill." Opp. 2 n.1. That is because Counts 24–26 carry a maximum sentence of life imprisonment, *see* 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(A)(iii), and Payton Gendron has already pleaded guilty and been sentenced to life without the possibility of parole in New York State, *see* Mot. 1. As the defense has made clear—including by offering to plead guilty to the indictment if the government deauthorizes a capital prosecution—its focus in this case is to defend against the death penalty.

violent force capable of causing serious injury; and (iii) § 249(a)(1) can be violated by culpable omission, but the elements clause requires affirmative action. *See* Mot. 3.

The government's sole answer for the first point is that "any person" in § 249(a)(1) really means "any other person" and thus excludes the defendant. That argument disregards the statute's plain text and violates controlling interpretive precedents. "This Court may not narrow a provision's reach by inserting words Congress chose to omit." *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020). And where, as here "'Congress did not add any language limiting the breadth of [the] word,' the term 'any' must be given literal effect." *Deravin v. Kerik*, 335 F.3d 195, 204 (2d Cir. 2003) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). As for the second point, the government argues that any force capable of causing any injury suffices, but that position runs afoul of *Villanueva v. United States*, 893 F.3d 123, 130 n.6 (2d Cir. 2018), which demands more—the intentional causation of "serious physical injury." On the third point, the government makes a significant, potentially outcome-determinative concession. According to the government, the result in *United States v. Bowers*, 2022 WL 17718686 (W.D. Pa. Dec. 15, 2022) (dismissing §§ 924(c)/924(j) counts to the extent predicated on § 249(a)(1)(B)(i) because latter offense can be accomplished by omission) was "compelled" by the Third Circuit's there-controlling decision in *United States v. Mayo*, 901 F.3d 218, 230 (2018), which holds that omissions do not satisfy the elements clause. Opp. 11 n.6. The question whether omissions satisfy the elements clause is pending before the Supreme Court in *Delligatti v. United States*, No. 23–825 (cert. granted June 3, 2024). Thus, if *Delligatti* adopts *Mayo*'s holding, that result, the government effectively concedes, would "compel" dismissal here as well.

II.     **ARGUMENT**

**This Court Must Dismiss Counts 11–20 For Failure To State An Offense Because The § 249(a)(1) Violations Alleged As Predicate Crimes Of Violence Do Not Satisfy § 924(c)(3)(A)'s Elements Clause.**

A.  Legal Framework

The parties mostly agree on the legal framework, but a few points bear mention. At the outset, the government errs in contending that this Motion "must meet a 'high standard.'" Opp. 2 (quoting *United States v. Beardsley*, 2022 WL 7706943, at \*2 (W.D.N.Y. Sept. 23, 2022)). *Beardsley*'s deferential approach is inapplicable to the pure question of law presented here. In *Beardsley*, the defendant "ha[d] not challenged the facial validity" of the indictment, but instead asserted that "the evidence presented to the grand jury was insufficient." *Id.* Such a claim must await resolution at trial. Here, in contrast, the defense "accepts as true the facts alleged in the [i]ndictment," Opp. 2 (quoting *Beardsley*, 2022 WL 7706943, at \*2), but contends that the indictment, on its face, fails as a matter of law to state an offense because it does not allege the necessary predicate crime of violence. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). Whether an offense is a § 924(c) crime of violence is a pure legal question fit for pretrial resolution. *See* Mot. 9 (collecting cases). And because it is a pure legal question requiring nothing more than a side-by-side comparison of the text of two federal statutes—§§ 249(a)(1)(B)(i) and 924(c)(3)(A)—there is no reason for this Court to do anything other than the ordinary work of statutory construction, without placing a thumb on the scale. *See, e.g.*, *Bowers*, 2022 WL 17718686, at \*4–9.

In its discussion of the legal framework, the government makes an important—and correct—concession: Under the applicable categorical approach, this Court "assesses whether the 'least culpable' conduct that could satisfy the offense elements *in a hypothetical case* would 'necessarily' involve the 'use, attempted use, or threatened use of physical force against the

person of another.'" Opp. 3–4 (quoting *Borden v. United States*, 593 U.S. 420, 424 (2021) (plurality op.)) (emphasis added). That is, the government has waived any argument that the defense must show a "realistic probability" based on an actual case, that § 249(a)(1)(B)(i) could be applied to conduct falling outside § 924(c)(3)(A)'s scope. *See* Mot. 7–9, 17–18 (explaining that "realistic probability" test did not survive *United States v. Taylor*, 596 U.S. 845 (2022), which made extensive use of a "hypothetical" scenario to analyze whether attempted Hobbs Act robbery satisfies § 924(c)(3)(A)). Rather, the question is whether any conduct that could, hypothetically, violate § 249(a)(1)(B)(i) qualifies as a § 924(c)(3)(A) crime of violence. The defense's hypotheticals (Mot. 11–12 & n.8, 17, 21–23) are the proper focus of inquiry.

The government also largely accepts the defense's framing of the statutory question. The parties agree on the elements of the § 249(a)(1)(B)(i) violations alleged as predicates here: (i) "willfully" (ii) "caus[ing] bodily injury to any person" (iii) "because of the actual or perceived race, color, religion, or national origin of any person" (iv) with "death result[ing]." *Compare* Mot. 17 *with* Opp. 5, 11–12. The government accepts that "bodily injury" includes *de minimis* harm such as "bruises." Opp. 13. It also acknowledges that there is "'no *mens rea* attendant to the 'death resulting' element,'" so that the unintentional causation of death suffices to violate § 249(a)(1)(B)(i). Opp. 12 (quoting *United States v. Earnest*, 536 F. Supp. 3d 688, 722 (S.D. Cal. 2021); *see* Mot. 14–17. And the government doesn't dispute that the "death results" element demands only but-for causation, such that a defendant can be liable for the enhancement even if he doesn't personally inflict the fatal injury—indeed, even if he is far removed from the injury-causing event—as long as he has set in motion a chain of events that results in death. *See* Mot. 14–17. Consequently, this Motion turns on a narrow statutory question: Does willfully causing

*de minimis* bodily injury to "any person" categorically involve using violent physical force against "the person . . . of another"? The answer to that question is no, so dismissal is warranted.

    B. <u>Section 249(a)(1)(B)(i) Reaches The Use Of Force Against "Any Person"—Including Oneself—But The Elements Clause Requires The Use Of Force Against "The Person . . . Of Another."</u>

The plain text of §§ 249(a)(1)(B)(i) and 924(c)(3)(A) control. The former reaches willfully causing bodily injury to "any person," but the latter requires using force "against the person . . . of another." That categorical overbreadth means that § 249(a)(1)(B)(i) sweeps more broadly than the elements clause, and thus cannot serve as a § 924(c) predicate. Mot. 9–18.

The government's response boils down to a single, make-or-break contention: "any person" in § 249(a)(1) means "any *other* person." Opp. 13–21. "The problem with this approach is the one that inheres in most incorrect interpretations of statutes: It asks [this Court] to add words to the law to produce what is thought to be a desirable result. That is Congress's province." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015). *See also, e.g.*, *Muldrow v. City of St. Louis*, 601 U.S. 346, 358 (2024); *Lomax*, 140 S. Ct. at 1725; *Knight First Amendment Inst. at Columbia Univ. v. U.S. Citizenship & Immigr. Servs.*, 30 F.4th 318, 331 (2d Cir. 2022). This Court "cannot add to the statute what Congress did not provide." *United States v. Plaza Health Labs., Inc.*, 3 F.3d 643, 649 (2d Cir. 1993). "In this, as in any field of statutory interpretation, it is [this Court's] duty to respect not only what Congress wrote but, as importantly, what it didn't write." *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 765 (2019).

That is the general rule of statutory construction. When that rule is applied to the particular adjective at issue here—"any"—binding precedent could not be clearer: "As the Supreme Court has noted, '[r]ead naturally, the word 'any' has an expansive meaning,' and thus, so long as 'Congress did not add any language limiting the breadth of that word,' the term 'any'

*must be given literal effect.*" *Deravin*, 335 F.3d at 204 (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)) (emphasis added). *See also, e.g.*, *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 174 (2d Cir. 2005) (same). And when it comes to the exact phrase at issue here—"any person"—the defense has adduced numerous decisions interpreting that phrase, consistent with the settled principles of construction just discussed, to mean literally any person, including the defendant/actor himself. *E.g.*, *United States v. Dean*, 591 F. App'x 11, 15 (2d Cir. 2014); *United States v. Weisinger*, 586 F. App'x 733, 738–39 (2d Cir. 2014); Mot. 10 (collecting cases). The defense has even cited a concession by the Department of Justice itself that this exact phrase—"any person"—prevents a federal criminal statute from satisfying § 924(c)(3)(A)'s elements clause because the phrase "could in fact mean any person—including even the defendant himself." Supp. Br. of U.S. 16–17, *United States v. Barrett*, No. 21–1379 (2d Cir. Feb. 15, 2023) (discussing 18 U.S.C. § 1951(a)), ECF No. 119.

Against that wall of authority, the government can muster no case, from any court anywhere, interpreting the statutory phrase "any person" to mean "any other person."

1.     The government acknowledges that "courts and dictionaries define the word 'any' to include 'every' or 'all,'" and agrees that "ordinarily, a word's usage will follow its dictionary definition." Opp. 14. So the government's position is suspect from the outset, because it asks this Court to deviate from plain meaning and ordinary usage. The argument gets no better upon examination of the supporting authorities, none of which counsel a departure from plain meaning and ordinary usage. *Yates v. United States*, 574 U.S. 528 (2015) (plurality op.) (cited at Opp. 14), concerned the proper construction of the statutory phrase "tangible object," not the adjective "any," in an obstruction of justice statute, 18 U.S.C. § 1519. Yates prevailed not because the Court gave "any" a limiting construction—the opinion nowhere addresses the meaning of the

word "any"—but because the objects he destroyed (fish) did not qualify as "tangible object[s]." *Id.* at 536. Here, no one disputes that a defendant is a "person" within the sense of § 249(a)(1)(B)(i). Likewise, in *Martin v. Hadix*, 527 U.S. 343 (1999) (cited at Opp. 14), the Court did not cabin the scope of "any" in a provision of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(d)(3). In the phrase at issue there—"any action brought by a prisoner"—the statutory adjective "any" did apply to "all" such "actions," including the lawsuits before the Court. *Martin* held that "any" did not have the additional effect of making the PLRA retroactively applicable to "award[s]" of attorney's fees—a term not modified by "any"—for services done prior to the PLRA's effective date. 527 U.S. at 353–54.

2.      The government argues five contextual points, but none persuades. Opp. 15–17.

First, the government points to 18 U.S.C. § 249(c)(1), which provides: "the term 'bodily injury' has the meaning given such term in [18 U.S.C. § 1365(h)(4)], but does not include solely emotional or psychological harm to the victim." From this, the government tries to extract the rule that "[§] 249(a)(1)'s bodily-injury element thus requires the government to show that the defendant willfully caused bodily injury to another person—'the victim.'" Opp. 15. But that is not what § 249(c)(1) says. Section 249(c)(1) refers to "the victim" only in the course of explaining what *doesn't* satisfy the statute—"solely emotional or psychological harm to the victim." Section 249(c)(1)'s definition of "bodily injury" clarifies § 249(a)(1) by specifying what *types* of injuries can violate the statute, but says nothing about *who* must suffer those injuries. Section 249(a)(1) answers the "who" question: "any person." Congress could have limited § 249(a)(1) to injuring "victims," as it has done in other provisions. *E.g.*, 18 U.S.C. §§ 2261(b)(2) and (3) (interstate domestic violence statute, setting sentencing ranges for "life threatening bodily injury to the victim" and "serious bodily injury to the victim"). Instead, Congress gave §

249(a)(1) broader coverage, capturing injury to "any person." That linguistic choice merits respect. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004).

Second, the government notes that § 249(a)(1) prohibits causing bodily injury to "any person" "because of the actual or perceived race . . . of any person," and argues, with no analysis, that these phrases "can be understood only to reach conduct that willfully causes bodily injury to *another person* 'because of the actual or perceived race' of *another person*." Opp. 15–16. This is *ipse dixit*, and in any case, there is a ready alternative explanation for Congress's repetition of the phrase "any person." Specifically, Congress wanted to make clear that the person who is injured need not be the same as the person whose race motivated the defendant to cause injury. As the defense has explained (Mot. 11), the indictment in this very case reflects this explanation: Counts 22 and 23 allege that Payton Gendron injured C.B. and J.W., who were "white people," "because of the actual and perceived race of color of any person, to wit, Black people." Dkt. No. 6 ¶ 4 & pp.5–6. So the repetition of "any person" doesn't advance the government's argument. One can injure oneself ("any person") on account of someone else's race ("the actual or perceived race . . . of any person"), as Aaron Bushnell can be said to have done. Mot. 11–12. Nor must the person whose race motivates the offense be another person: A defendant can act because of his own race, for example, to proclaim "white pride" or otherwise announce his own racial dominance. *See, e.g.*, *United States v. Hatch*, 722 F.3d 1193, 1206 (10th Cir. 2013) (§ 249(a)(1) covers actions motivated by "a desire to assert [racial] superiority").

Third, the government notes that § 249's title is "Hate crime acts," and contends, again without analysis, that "[h]ate crimes quintessentially target other people." Opp. 16. "'[T]he title of a statute . . . cannot limit the plain meaning of the text.'" *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998) (quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519,

528–29 (1947)). So § 249's title cannot "limit" the "plain meaning" of § 249(a)(1)'s key phrase, "any person," to the government's preferred subclass ("any other person"). Moreover, the government's characterization of "quintessential[]" hate crimes begs the question. Many saw Bushnell's self-immolation or Bobby Sands's hunger strike as expressions of religious or national-origin animus even though those actions were self-directed. Likewise, if a protestor set himself on fire in a high-profile setting to call attention to his race-war manifesto—as a protestor set himself on fire outside Donald Trump's trial to publicize his own online writings, *see* Newsweek, Read Maxwell Azzarello Manifesto About Lighting Himself on Fire at Trump Trial (Apr. 19, 2024), https://www.newsweek.com/read-max-azzarello-manifesto-about-lighting-himself-fire-trump-trial-1892368—it would not be unnatural to call that a "hate crime act."

Fourth, the government points to § 249(b)(1)(C), which provides that a prosecution may proceed only if the Attorney General certifies that any one of several conditions has been met, including that "the verdict or sentence obtained pursuant to State charges left demonstratively unvindicated the Federal interest in eradicating bias-motivated violence," which, the government says, must be "directed at others." Opp. 16. Satisfaction of that condition is not necessary to prosecute. The Attorney General could instead certify that "the State does not have jurisdiction," that "the State has requested that the Federal Government assume jurisdiction," or that "a prosecution by the United States is in the public interest and necessary to secure substantial justice." §§ 249(b)(1)(A), (B), (D). Even on the government's reading, none of those scenarios would entail "bias-motivated violence" "directed at others." Opp. 16. So the certification provision offers no basis to conclude that a § 249(a)(1)(B)(i) violation categorically (*i.e.*, "in every case," *see United States v. Beardsley*, 691 F.3d 252, 270 (2d Cir. 2012)) involves the use of force against "the person . . . of another," § 924(c)(3)(A). Nor does the government offer any

basis for the assertion that "a defendant who causes physical injury only to himself almost certainly would not fall under the narrow circumstances when federal prosecutions are permitted." Opp. 16. A State can always "request[]" a federal prosecution. § 249(b)(1)(B). Likewise, the Attorney General can invoke the "public interest" for a range of policy reasons, § 249(b)(1)(D), but how the executive branch exercises enforcement discretion has no bearing on the proper judicial construction of a federal criminal statute. *See United States v. Stevens*, 559 U.S. 460, 480 (2010).

Fifth, the government cites examples of other federal criminal statutes where, it argues, "any person" means "any other person." Opp. 16–17. The defense can counter with statutes where "any person" must mean "any person including the defendant." *E.g.*, 18 U.S.C. § 2246(2)(D) (defining "sexual act" as "the intentional touching, not through the clothing, of the genitalia of *another person* who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of *any person*" (emphases added)). In fact, the defense has identified a federal criminal statute where the government concedes that this is the meaning of "any person." § 1951(a); *see* Mot. 13–14. In the government's examples, the contextual key is the transitive verb that takes "any person" as its object. In the government's view, one cannot "resist," "extort," or "bribe" oneself. *See* Opp. 17 (citing 18 U.S.C. §§ 111, 201, and 875). But one can "injur[e]" oneself, so the government's examples have no bearing on the interpretation of § 249(a)(1).

Moreover, the government ignores that countless Title 18 offenses do use phrases such as "any other person" or "another person," confirming that Congress could have—but didn't—use those phrases here. *E.g.*, 18 U.S.C. § 594 ("intimidates, threatens, coerces, or attempts to intimidate, threaten, or coerce, any other person"); 18 U.S.C. § 1203(a) ("seizes or detains and

threatens to kill, to injure, or to continue to detain another person"); 18 U.S.C. § 1583(a)(1)

("kidnaps or carries away any other person"). Congress has even used the phrases "any other

person" or "another person" in the precise context at issue here—as objects of "injury." *E.g.*, 18

U.S.C. § 1365(a) ("tampers with any consumer product" "with reckless disregard for the risk that

*another person* will be placed in danger of death or *bodily injury*"); 18 U.S.C. § 2261A(1)

("travels in interstate or foreign commerce . . .  with the intent to kill, *injure*, harass, intimidate,

or place under surveillance . . .  *another person*"); 18 U.S.C. § 2332b(a)(1)(B) ("creates a

substantial risk of *serious bodily injury to any other person*") (all emphases added). These

examples demonstrate that Congress is capable of specifying when federal crimes, including

crimes involving the causation of injury, must target "any other person" or "another person."

Congress simply chose a different, broader formulation in § 249(a)(1) ("any person").

      3.     Straying farther from § 249(a)(1)'s text, the government turns to the asserted

statutory "purpose," namely, its "prohibition on racially motivated violence," which is said to

"reinforce[]" the contention "that one cannot violate the law solely by injuring oneself." Opp. 17.

"[V]ague notions of a statute's 'basic purpose' are . . .  inadequate to overcome the words of its

text regarding the specific issue under consideration." *Montanile v. Bd. of Trs. of the Nat'l

Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 150 (2016) (quoting *Mertens v. Hewitt

Assocs.*, 508 U.S. 248, 261 (1993)). *See also, e.g.*, *United States v. Zahavi*, 2012 WL 5288743, at

*2 (S.D.N.Y. Oct. 26, 2012) ("[P]urpose rarely trumps plain text, especially in the criminal

context." (citing *Williams v. United States*, 458 U.S. 279 (1982))).

      Moreover, "the quoted statement[s] of congressional findings [are] a rather thin reed upon

which to base a requirement"—that a defendant injure "another person"—"neither expressed nor

. . .  fairly implied in the operative sections of the Act." *National Organization for Women, Inc. v.*

*Scheidler*, 510 U.S. 249, 260 (1994). The government identifies two findings that refer to the problem of racial violence against "victims," Opp. 17–18 (quoting 34 U.S.C. §§ 30501(1) and 30501(5)), but Congress regularly enacts criminal statutes that reach more broadly than the specific evils that prompted their enactment. *E.g.*, *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 248  (1989). In this vein, the government neglects that when Congress drafted § 249(a)(1), the law's operative provision, it used language that differed from the findings. Instead of prohibiting "willfully caus[ing] bodily injury to any *victim*," Congress wrote more broadly and prohibited injuring "any *person*." *See supra* § I.B.2. As for 34 U.S.C. § 30501(7)'s reference to historical "violence directed at persons because of their race" (Opp. 18), that is a description of how "slavery and involuntary servitude were enforced" in the past, not how § 249(a)(1) functions today. Finally, 34 U.S.C. § 30506(4) (cited at Opp. 18) is irrelevant. That rule of construction bars "prosecution based solely upon an individual's expression of racial . . . beliefs," and aims to avoid the First Amendment problems that would arise from criminalizing hate speech. Section 249(a)(1)'s causation-of-injury element narrows the statute and excludes pure speech. Criminalizing the bias-motivated action of self-injury, as § 249(a)(1) does, does not implicate First Amendment concerns.

   4. Recognizing that the defense has identified multiple authorities interpreting the statutory phrase "any person" to include the defendant himself (Mot. 10–11), the government tries to distinguish these authorities on the ground that "[t]he crux of the crime[s] [involved] is . . .  not the self-harm alone, but the resulting effect that the harm has or risks having on a separate victim." Opp. 19–21. That distinction, the government says, was the true rationale for cases such as *Dean* and *United States v. Pawlowski*, 682 F.3d 205 (3d Cir. 2012). Opp. 19. But that is not right. These cases were decided as a matter of plain text, not based on the

government's "risk-of-harm" theory, which doesn't appear in these decisions. *See Dean*, 591 F. App'x at 15 ("text" of 18 U.S.C. § 2246(3), which covers "the touching 'of *any* person,'" "unambiguously encompasses 'the touching of oneself' (citing *Pawlowski*, 682 F.3d at 212–13)); *Pawlowski*, 682 F.3d at 212 ("'[A]ny' means 'every.' . . . Pawlowski is, of course, a person and thus 'of any person' would include him. . . . Indeed, the language of the statute is unambiguous: it is clear that 'of any person' includes a defendant himself"). *Weisinger* is most direct in its reliance on the plain text. *Weisinger* expressly rejected the defendant's argument that, to reach self-touching, "the statutory definition would have needed to reference the touching of 'any person or oneself,'" reasoning: "[C]anons of construction do not require redundancy where Congress has used the all-encompassing word 'any.'" 586 F. App'x at 739. The government does not cite *Weisinger* and does not acknowledge its own argument, in the appellate briefing in that case, that plain meaning controlled: "Weisinger points out that Congress could have said 'any person . . . or one's self.' Such a qualifier, however, would have been surplusage, *since the plain meaning of 'any person' includes one's self.*" Br. of U.S. 74, *United States v. Weisinger*, No. 13–3655 (2d Cir. May 23, 2014) (emphasis added), ECF No. 43.

The government's attempt to blunt its concession as to § 1951(a) fails for similar reasons. Opp. 19–20. Recall that this is an extraordinary concession, one which all but resolves this Motion. According to the government, "commit[ting] or threaten[ing] physical violence to any person" in furtherance of a plan to rob or extort, § 1951(a), does not satisfy the elements clause because "one can threaten to harm himself," Opp. 20—that is, because "any person" includes the defendant himself. This concession offers powerful support for the defense position.

Nonetheless, the government says, § 1951(a) is different because that statute's focus is not threatened or actual "self-harm," but "the defendant's use of those threats or acts of self-harm

to rob or extort another person." Opp. 20; *see also* Opp. 19 ("The crux of the crime is thus not the self-harm alone, but the resulting effect that the harm has or risks having on a separate victim."). But the acts of bias-motivated self-injury that would violate § 249(a)(1)(B)(i) have just such harmful effects on others—and not "solely emotional or psychological" effects. § 249(c)(1). When Bushnell set himself on fire, many (including a United States Senator) saw his "horrific act of violence" as "support [for] terrorist group[s]," galvanizing "antisemitic" organizations that treated him as a "martyr." Mot. 11–12. Using violent means to incite further acts of terrorism and antisemitism affects and endangers "separate victim[s]"—Jewish people and Israelis. More directly, setting oneself on fire endangers bystanders and first responders—more "separate victims" who face "risk[s]" of injury or death. Section 249(a)(1) injury, even if self-inflicted, can have as its purpose and its effect real, harmful consequences on others.

The government's distinction of *Portee v. United States*, 941 F.3d 263 (7th Cir. 2019), also misses the mark. The state statute at issue there was not just an "extortion statute," Opp. 20, but also encompassed threatening self-harm to "place[]" "another person . . . in fear of retaliation for a prior lawful act." *Id.* at 269–70 (quoting Ind. Code § 35–45–2–1(a)(2)). Moreover, the Seventh Circuit's analysis was not cabined to the context of that intimidation statute, but rather rested upon Indiana's general definition of "forcible felony"—"a felony that involves the use or threat of force against a human being." *Id.* at 271 (quoting Ind. Code § 35– 41–1–11 (2006 ed.)). That language—not any language in the intimidation statute—is what took the offense outside the scope of the elements clause: "The [elements clause] requires physical force against the person of another, but an Indiana forcible felony could involve force against or danger to a human being, any human being. . . .  [T]he human being facing force or danger could be the defendant himself, so far as Indiana's elements are concerned." *Id.*

14

Finally, the government addresses the defense's arson cases (Mot. 13) with the contention that 18 U.S.C. § 844(i)'s reference to "any . . . personal property" "unambiguously includes a defendant's own possessions." Opp. 20. Congress did not use the adjective "personal" to show that the "property" destroyed can belong to the defendant "personally," but rather to clarify that both "real" and "personal" property fall within the arson statute's scope. *See id.* With that understanding, § 844(i) buttresses the defense's position. If "any . . . personal property" in § 844(i) "unambiguously includes" the defendant's own property (Opp. 20), then "any person" in § 249(a)(1) likewise "unambiguously includes" the defendant. The latter statute's "bias motivation" (Opp. 20–21) is immaterial. The question, as to both §§ 249(a)(1) and 844(i), is the target of the defendant's force. In both cases, force can be self-directed, so both statutes sweep more broadly than the elements clause, which is limited to other-directed violence.

C.   Section 249(a)(1)(B)(i) Reaches Willfully Causing Bodily Injury Simpliciter Through De Minimis Force, But The Elements Clause Requires Intentionally Causing Serious Physical Injury Through Violent Force.

There is a second, independent ground for dismissal. One can violate § 249(a)(1) by willfully causing the most trivial of injuries through the use of *de minimis* force: grabbing someone's arm and causing a bruise; poking someone in the chest and causing him fleeting pain; spitting in someone's eye and causing him to lose vision for an instant; or shouting in someone's face and causing his ears to ring. *See* Mot. 21–22. But the elements clause demands "*violent force*," *Johnson v. United States*, 559 U.S. 133, 140 (2010), capable of causing "serious physical injury," *Villanueva v. United States*, 893 F.3d 123, 130 n.6 (2d Cir. 2018). The government does not dispute that this hypothetical conduct violates § 249(a)(1) and affirmatively agrees that the categorical analysis focuses on such hypotheticals. Instead, the government responds that any use of force with the potential to cause any injury, no matter how slight, suffices. Opp. 6–10, 11–12.

15

That position conflicts with *Villanueva*—a decision that the government, not the defense, has misconstrued—and otherwise rests on inapposite or non-binding law.

Start with *Villanueva*. That decision establishes that intentionally causing "*serious* physical injury," not just "physical injury" *simpliciter*, is "necessary" to satisfy the elements clause. 893 F.3d at 130 n.6. The only decision that the parties have cited analyzing *Villanueva* agrees with the defense's interpretation. *United States v. Dobey*, 2019 WL 5205475, at *5 (S.D.N.Y. Oct. 16, 2019). So does Judge Pooler's dissent in *Villanueva* itself. Addressing Footnote 6, she wrote: "My colleagues . . .  posit[] that the severity of the consequence is what demonstrates that the force is sufficiently violent. In their view, the Connecticut statute's requirement that the 'substance' be 'capable of causing death or serious physical injury' suffices to show violent force." 893 F.3d at 135 (citing 893 F.3d at 130 n.6).

The government offers a different take, contending that Footnote 6's reference to "serious physical injury" "simply conveyed that 'serious' physical injury was one of the distinctions required to elevate Villanueva's conduct from a *misdemeanor* to a *first*[-]*degree felony* under Connecticut law." Opp. 8–9. For clarity, here is the footnote:

> The holding of [*Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003)] has not been disturbed. First, the defendant's prior offense, which our Court assumed to be third[-] degree assault in violation of Conn. Gen. Stat. § 53a–61(a)(1), *see* 327 F.3d at 192, was a misdemeanor and could not for that reason have qualified as a "violent felony" under [the Armed Career Criminal Act]. Second, the misdemeanor offense required intent to cause only "physical injury," not "serious physical injury," as required for Villanueva's first[-] degree assault conviction. That latter element is necessary to make his offense a "violent felony."

893 F.3d at 130 n.6. The government's reading suffers from a fatal flaw: The misdemeanor/felony distinction was the first of two distinct reasons that *Villanueva* gave for distinguishing *Chrzanoski*. The physical injury/serious physical injury distinction was the

second, and it had nothing to do with the classification of the offense under Connecticut State law. The footnote is explicit. "First," the third-degree assault offense at issue in *Chrzanoski* was not an ACCA predicate because it was a misdemeanor. "Second," and separately, the *Chrzanoski* offense required only intent to cause physical injury, not serious physical injury. That is how Judges Schofield (in *Dobey*) and Pooler (dissenting in *Villanueva*) understood the footnote, and the government has located no different judicial interpretation.

Next, the government responds that if *Villanueva* does impose a "serious physical injury" requirement, "it would no longer be good law" in light of *Stokeling v. United States*, 586 U.S. 73 (2019). Opp. 9. Citing dictum in *Stokeling*, the government says that "relatively minor forms of injury" such as "'hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling' satisf[y] *Johnson*'s definition." Opp. 9 (quoting *Stokeling*, 586 U.S. at 85, in turn quoting *United States v. Castleman*, 572 U.S. 157, 182 (2014) (Scalia, J., concurring)); *see also* Opp. 6–7. That is not *Stokeling*'s holding. *Stokeling* holds only that "minor uses of force" can satisfy the elements clause where such force is "sufficient to overcome a [robbery] victim's resistance." 586 U.S. at 85. *Stokeling* was limited to the context of robbery offenses, as reflected in the Court's rationale: "[R]obbery that must overpower a victim's will . . . necessarily involves a physical confrontation and struggle," and "it is the physical contest between the criminal and the victim that is itself 'capable of causing physical pain or injury.'" *Id.* at 83 (quoting *Johnson*, 559 U.S. at 140). Justice Sotomayor made this point in dissent, critiquing the majority for "constru[ing] 'physical force' . . . to bear two different meanings . . . depending on the crime to which it is applied"). *Id.* at 95. *Stokeling* is inapplicable here because § 249(a)(1) has no overcoming-resistance element.

Even if the *Stokeling* dictum might prompt the Second Circuit to revisit *Villanueva*, that has not occurred, and this Court is "'required to follow' a Second Circuit decision, even if it is in

17

'tension' with subsequent Supreme Court precedent, 'unless and until that case is reconsidered by [the Second Circuit] sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision." *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015) (quoting *Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003)). To depart from *Villanueva*, this Court would have to conclude that the Second Circuit or the Supreme Court "is all but certain to overrule it." *United States v. Emmenegger*, 329 F. Supp. 2d 416, 429 (S.D.N.Y. 2004)). That is far from clear.

The government does attempt to enlist several Second Circuit precedents for the proposition that any degree of force capable of causing any type of injury suffices, but none controls. The citation to *United States v. Scott*, 990 F.3d 94, 111 (2d Cir. 2021) (*en banc*) (at Opp. 7) is misleading. *Scott* quoted *Castleman*'s holding that the intentional causation of bodily injury necessarily involves the use of *common-law* force; *Castleman* twice reserved the question whether intentionally causing injury necessarily involves *violent* force. 572 U.S. at 167, 170. *Scott* had no occasion to decide the latter question because the first-degree manslaughter offense at issue there involved at least the intentional causation of serious bodily injury, and the defendant conceded that the offense involved violent force. *See* 990 F.3d at 105, 107. The cited portion of *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018) (at Opp. 7–8) concerned the "fear of injury" to property, not persons; on that latter point, *Villanueva* is authoritative. *United States v. Evans*, 924 F.3d 21, 31 n.7 (2d Cir. 2019) (cited at Opp. 9), like *Stokeling*, concerned a robbery offense with an overcoming-resistance element. And *Gray v. United States*, 980 F.3d 264, 267 (2d Cir. 2020), as the government acknowledges (Opp. 12 & n.7), involved not "causing" injury, as in § 249(a)(1), but the "more restrictive" element of "inflict[ing]" injury. So the government has still not mustered a single Second Circuit case holding that the intentional causation of bodily injury *simpliciter*—and certainly not "bodily injury" under § 1356(h)(4)'s far-reaching

18

definition—categorically involves the use of violent physical force. In contrast, the defense has identified many decisions confirming that this heightened consequence is necessary. Mot. 19–20.

Nor is § 249(a)(1)(B)(i)'s "causes-death" element material. Opp. 12. That element has no *mens rea* and requires only but-for causation, which means that the defendant need not perform, and may be distant from, the injury-causing event. Mot. 15–17; *see supra* § II.A. Moreover, the defense has posited several hypotheticals where "death could result from the defendant's offense" even if his conduct "did not include more than *de minimis* force." Opp. 12. *See* Mot. 23 (shoving a victim, accidentally, into the path of a car, killing victim; poking a victim in the chest and knocking him to the ground, causing fatal head injury); *see also, e.g.*, Maria Sole Campinoti, *Woman Who Fatally Shoved 87-Year-Old Vocal Coach To The Ground In New York Sentenced To 8½ Years In Prison*, CNN.com (Oct. 2, 2023) (defendant shoved elderly woman, causing fatal brain hemorrhage), https://www.cnn.com/2023/10/02/us/lauren-pazienza-sentenced-vocal-coach-barbara-gustern/index.html. The contrary holding in *United States v. Roof*, 10 F.4th 314, 400–02 (4th Cir. 2021) (cited at Opp. 12), is not binding here. For one thing, *Roof* relied on the realistic probability test that, the government accepts, the subsequent decision in *Taylor* abrogated. *See* 10 F.4th at 402. For another, *Roof* relies on Fourth Circuit precedent holding that the intentional causation of bodily injury categorically involves violent force. *See id.* at 401 (citing *United States v. Allred*, 942 F.3d 641, 654 (4th Cir. 2019), and *United States v. Battle*, 927 F.3d 160, 166 (4th Cir. 2019)). Second Circuit precedent is to the contrary. *Villanueva*, 893 F.3d at 130 n.6.

D.   Section 249(a)(1)(B)(i) Can Be Violated By Omission, But The Elements Clause Requires Affirmative Action.

Finally, for purposes of preservation, and in light of the grant of certiorari in *Delligatti*, the defense contends that an offense such as § 249(a)(1)(B)(i) that can be violated not by

affirmative action but by culpable omission does not satisfy § 924(c)(3)(A)'s elements clause. Mot. 6 & n.6, 24–25; *see Bowers*, 2022 WL 17718686, at *5–9. The defense acknowledges the contrary holding in *Scott*, but maintains that *Scott* is wrongly decided and that the correct analysis is set forth in *Mayo* and *United States v. Martinez-Rodriguez*, 857 F.3d 282, 286 (5th Cir. 2017). In response, the government does not disagree that § 249(a)(1)(B)(i) can be violated by omission but relies on *Scott* to argue that omissions can nonetheless qualify as crimes of violence. Opp. 10–11. In doing so, however, the government makes another critical and potentially case-dispositive concession: "[T]he Third Circuit's decision regarding omissions in [*Mayo*] *compelled the conclusion* in [*Bowers*] that Section 249(a)(1) is not a crime of violence." Opp. 11 n.6 (emphasis added). Put differently, if the Supreme Court in *Delligatti* adopts *Mayo*'s reasoning and holds that statutes criminalizing "acts of omission" do "sweep[] more broadly" than § 924(c)(3)(A), *see* 901 F.3d at 230, then that holding would here "compel[] the conclusion," just as in *Bowers*, that § 249(a)(1)(B)(i) is not a § 924(c)(3)(A) predicate. Thus, the government has now agreed that if the defendant prevails in *Delligatti*, this Court would be "compelled" to dismiss Counts 11–20.

## III.   CONCLUSION

This Court should dismiss Counts 11–20 for failure to state an offense.

Dated:          September 19, 2024
                Buffalo, New York

                            *s/Sonya A. Zoghlin*
                            Sonya A. Zoghlin
                            Assistant Federal Public Defender

*s/Anne M. Burger*
Anne M. Burger
Supervisory Assistant Federal Public Defender

*s/MaryBeth Covert*
MaryBeth Covert
Senior Litigator

*s/Julie Brain*
Julie Brain
Attorney at Law