UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                                                  22-CR-109 (LJV)

PAYTON GENDRON,

                  Defendant.

---

### RESPONSE TO GOVERNMENT'S MOTION FOR DISCLOSURE OF THE DEFENDANT'S PRETRIAL DETENTION RECORDS (ECF NO. 208)

Defendant, Payton Gendron, through undersigned counsel, respectfully submits this Response to the Government's Motion for Disclosure of the Defendant's Pretrial Detention Records (ECF No. 208.) Although the government agreed to the joint proposed scheduling order adopted by the Court for adjudicating its access to Payton Gendron's pretrial detention records, including the first step requiring the defense to provide a "log of materials [it] contends should not be disclosed…with a brief statement of the reasons therefor", the government spends much of its Motion objecting to the log and attempting to relitigate, for a third time, its previously rejected request to have Payton Gendron's records inspected by its own filter team.[1] To the extent it raises legal challenges to Payton Gendron's invocations of constitutional protection and privilege, the government's arguments are without merit. The Motion should, therefore, be denied.

    **I.**        **PROCEDURAL BACKGROUND**

On July 22, 2022, Payton Gendron filed a Motion for a Protective Order to Prohibit

---

[1] The Court previously rejected the government's request for a filter team in the Decision and Order entered April 29, 2024, ECF No. 156, and again by Text Order entered August 20, 2024. ECF No. 206.

Prosecution Access to Defendant's Pretrial Detention Records. (ECF No. 11.) Following briefing and oral argument, on April 29, 2024, the Court issued a Memorandum Opinion directing the two facilities in which Payton Gendron has been housed, the Erie County Holding Center ("ECHC") and the Livingston County Jail ("LCJ"), to first release the records requested by the government to defense counsel. (ECF No. 156 at 12.). The Court ordered defense counsel to "review the records and create a log of any records it wants to withhold, identifying the applicable privilege or right." *Id.* If there are any disputes regarding the disclosure of particular records, "the Court will review the disputed records in camera and will rule on whether a privilege or right applies." *Id.* Finally, the Court instructed the government to submit affidavits from the two facilities addressing privacy issues raised by the defense. *Id.* The Court also expressly denied the government's request that a filter team be used to review the records rather than the defense. *Id*. at 11 ("In fact, as between a government filter team and the defense, the defense is better suited to sort these records.")

Defense counsel duly received records from ECHC, on June 5, 2024, and LCJ, on June 14, 2024. As the government notes, the ECHC production was comprised of 73 pages of documents; the LCJ provided 108 pages along with two Excel files, 66 photographs, and 21 audio recordings. The government additionally filed with the Court, on May 20, 2024, an Affidavit of the Superintendent of LCJ, Dep. Aaron Galvin. (ECF No. 166.).

On July 26, 2024, the Court issued a scheduling order setting forth the timing of the remaining steps outlined by the Court in its previous Order. (ECF No. 208 at 2.) In accordance with that Order, following receipt of the records from the two institutions, defense counsel reviewed the documents, disclosed to the government those as to which no privilege or constitutional protection applies, disclosed redacted versions of others that contained some, but

not all, protected material, and provided the government with a log detailing each category. *See* (ECF No. 202.) On August 30, 2024, the government filed its Motion for Disclosure of the Defendant's Pretrial Detention Records (ECF No. 208.)

I.  **LEGAL ARGUMENT**

   A. **DEFENSE COUNSEL'S LOG IDENTIFIES ALL DOCUMENTS DISCLOSED, WITHHELD, AND DISCLOSED WITH REDACTIONS AND IS MANIFESTLY SUFFICIENT TO ALLOW THE GOVERNMENT TO EVALUATE THE CLAIMS OF PRIVILEGE AND CONSTITUTIONAL PROTECTION.**

The government's complaint that the Log prepared by defense counsel is "[b]arebones and [c]onclusory" and thus "insufficient to allow meaningful litigation," (ECF No. 208 at 4-7), is baseless. The purpose of a privilege log is to raise claims of privilege and other protections "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).[2] *See also S.E.C. v. Thrasher*, No. 92 CIV. 6987 (JFK), 1996 WL 125661 at *1 (E.D.N.Y. Mar. 20, 1996) (noting that party withholding documents must "identify the withheld documents and the basis for withholding them . . . with sufficient specificity to permit the adversary to determine whether it wishes to challenge the privilege claims in court"). Information may be withheld from the log "if detailed disclosure would, in effect, reveal the very information that may be privileged." *Id.* Additionally, courts decline to require the disclosure of additional information that "would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded." *Id.* The onus is on the party seeking additional information to show why that information is necessary. *Id.* at *2 (denying movant's request for detailed privilege log where it

---

[2] The Federal Rules of Civil Procedure are not, of course, binding in this criminal prosecution. However, given that questions of privilege and protection requiring the use of privilege logs arise frequently in civil litigation, defense counsel submit that the Rules, and case law applying them, are instructive.

3

made "no effort to explain what benefit it will gain" therefrom, holding that demand cannot be justified "[i]n the absence of any articulated showing of need").

The government first complains that it is "unclear from the log what time periods the records cover." (ECF No. 208 at 4.) However, the covered time periods are obvious. As the government knows, Payton Gendron was incarcerated in ECHC from May 14, 2022, until February 16, 2023. (ECF No. 144 at 1.) On February 16, 2023 he was transferred into the custody of LCJ, where he has remained ever since. *Id.* at 1-2. Both institutions were directed to produce all records in their possession responsive to the government's requests, without time limitation. *See* (ECF Nos. 174, 175.) Defense counsel are thus at a loss to understand what additional information the government seeks regarding the time period covered by the records or, more importantly, how it could possibly be of "material benefit . . . in assessing whether the privilege claim is well grounded," *Thrasher*, 1996 WL 125661 at *1.[3]

The government's assertion that "the volume of . . . materials withheld by defense is unclear" is similarly without merit. ECF No. 208 at 5 n.2 & n.3. As the government concedes, undersigned counsel clearly stated that they received 108 pages of documents, two Excel spreadsheets, 66 photographs, and 21 audio recordings from LCJ and 73 pages of documents from ECHC. *Id.* Counsel disclosed 92 of 108 pages of documents from LCJ; thus, 16 pages were withheld as protected, along with the spreadsheets, photographs and audio files. Similarly, of the 73 pages of ECHC material, counsel disclosed 71 pages - two, therefore, were withheld. Again, the government does not explain what additional information it needs, much less how it relates to

---

[3] How, for example, would the government's ability to challenge Payton Gendron's assertion of First and Fourth Amendment and attorney work product protection for a "list of mail and visitors" maintained by LCJ, (ECF No. 202 at 2), be legitimately enhanced by knowing the dates on which mail and/or visitors were received? The government does not say.

the validity of the privileges and protections asserted by Payton Gendron.

The government also accuses defense counsel of providing "no specific identification of records," *id.* at 4, but in the very next paragraph it belies that claim by setting forth the detailed information the Log provides about all records as to which exemption from disclosure is asserted:

> (1) all commissary records (including commissary activity and deposits) and tablet information (including photographs of contacts, login photographs, depositors, messages, photographs, contacts, video visits, and a list of funds added to the account) . . . (2) all wave [sic] audio files of recorded phone calls . . . (3) lists of mail and visitors and a list of phone calls . . . (4) a spreadsheet of jail visits . . . redacted copies of his kiosk requests, Player application extensions and related files,[4] incident reports, incident summaries, schedule (for the period from February 1, 2023, through March 3, 2024), inmate property inventory, and inmate property release.

*Id.* at 4-5. With respect to the records produced by ECHC, the government correctly notes that defense counsel disclosed everything they received with the exception of commissary records and visitor logs. *Id.* at 5.

Finally, the government faults defense counsel for failing to include "legal authority" in the Log. *Id.* at 3, 7. First, the government already has the benefit of the argument and authority set forth in prior pleadings. *See* (ECF No. 144 at 3-5). Counsel included no additional legal authority – beyond citing the applicable privilege doctrines and constitutional amendments in accordance with the agreed-upon Scheduling Order – because the Log is just that, a log, and not a brief. The Scheduling Order contemplates that, after reviewing the Log, the government would raise its challenges to Payton Gendron's particular invocations of privilege and protection and any necessary briefing relevant to those challenges would then occur. Instead, as noted, the

---

[4] The folders of the audio file Player, associated applications and instructions were in fact disclosed in their entirety and unredacted. *See* ECF No. 202 at 2.

government's Motion is largely an attempt to relitigate that procedure. To the extent it raises cognizable challenges to documents withheld and/or redacted, defense counsel responds below.

In all, the government's claim that the Log "lacks the requisite detail to assess the defendant's assertions of constitutional protections and legal privileges," (ECF No. 208 at 5), is baseless and its request that the Court order defense counsel to provide more information should be denied.

B.  **PAYTON GENDRON HAS ASSERTED VALID CLAIMS OF CONSTITUTIONAL PROTECTION AND PRIVILEGE FOR THE WITHHELD RECORDS AND THE GOVERNMENT'S ARGUMENTS TO THE CONTRARY SHOULD BE REJECTED.**

The limited attempts the government makes to challenge Payton Gendron's invocations of privilege and constitutional protection fail on their merits. As previously noted, (*see* ECF No. 144 at 3-5), a pretrial criminal defendant is not automatically divested of his constitutional rights as he passes through the jailhouse door. Even "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979); see also *United States v. Cohen*, 796 F.2d 20, 22 (2d Cir. 1986) ("[w]hile those provisions of the Constitution that are applicable in general to all citizens must be accommodated to institutional needs and objectives, no wall separates the constitution from prison inmates"); *United States v. Felipe*, 148 F.3d 101, 107 (2d Cir. 1998) ("it may truly be said that prison walls are not a barrier between a prisoner and protections guaranteed him under the Constitution").

Specifically, pretrial detainees "retain some Fourth Amendment rights upon commitment to a corrections facility." *Wolfish,* 441 U.S. at 558; *see also United States v. Willoughby,* 860 F.2d 15, 21 (2d Cir. 1988) (noting that pretrial detainees maintain "some residual privacy interests that are protected by the Fourth Amendment"); *United States v. Feaster*, 2017 U.S. Dist.

LEXIS 207651, *7 (W.D.N.Y. Nov. 6, 2017) (Payson, M.J.), *report and recommendation adopted,* 2017 U.S. Dist. LEXIS 206686 (W.D.N.Y. Dec. 15, 2017) (same); *United States v. Bing Tang Vo*, 78 F. Supp. 3d 171 (D.D.C. 2015) (recognizing a defendant's privacy interest in visitation logs, call logs, and recorded telephone calls). Inmates also retain the "right to communicate with people outside the prison walls" protected by the First Amendment. *United States v. Colbert,* 2011 WL 3360112, *8 (W.D. Pa. 2011); *see also United States v. Simmons*, No. 13-CR-6025CJS, 2016 WL 285176, *24-26 (W.D.N.Y. Jan. 22, 2016) (Payson, M.J.), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 37493 (W.D.N.Y. March 23, 2016) (interception of inmate correspondence and telephone calls analyzed under the First and Fourth Amendments).

The residual rights retained by pretrial detainees under the First and Fourth Amendments may be infringed only insofar as they "contravene prison regulations 'reasonably related to legitimate penological interests.'" *Felipe*, 148 F.3d at 108 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Official action that burdens or interferes with the exercise of these rights is permissible only "if prison officials ha[ve] good or reasonable cause" related to such legitimate penological interests." *Id*.; *see also Simmons*, 2016 U.S. Dist. LEXIS at *76-77 (same); *United States v. Workman*, 80 F.3d 688, 699 (2d Cir. 1996) (finding no First or Fourth Amendment violation where inmate's mail was only "inspected after an individualized decision was made that the monitoring was necessary" based upon "reasonable suspicion that [the inmate] in particular might be engaging in criminal conduct").

In accordance with the above principles, the Fourth Amendment protects an inmate's privacy interest in: visitation records; phone and video call logs and contact lists; recorded telephone and video calls; correspondence, whether paper or digital, including photographs, and

7

logs thereof; records of commissary expenditures and deposits and the identity of depositors; and information related to use of a tablet including log-in photographs that are a precondition of accessing the device.

Additionally, visitation records; phone and video call logs and contact lists; recorded telephone and video calls; correspondence, whether paper or digital, including photographs, and logs thereof; and records of commissary expenditures and deposits and the identity of depositors are also shielded by the First Amendment right to communicate with people outside of the institution. The First Amendment also protects an inmate's right to access reading materials. *See Lamont v. Postmaster Gen. of U.S.*, 381 U.S. 301, 305 (1965) (invalidating burden on receipt via mail of published materials deemed to be communist political propaganda as unconstitutional "limitation on the unfettered exercise of the addressee's First Amendment rights"); *id.* at 308 (Brennan & Goldberg, JJ., concurring) (noting that right to receive publications is "a fundamental right" protected by the First Amendment). Accordingly, disclosure to the government of the content, titles or authors of books, magazines or other published material received by Payton Gendron by granting it access to his property records, ECF No. 202 at 2, Items 15-16),[5] would also impermissibly burden that right.

The government has failed to allege any penological interest that would be served by burdening, infringing, or interfering with the exercise of these rights, including by granting the prosecution team access to Payton Gendron's pretrial detention records for use against him in his

---

[5] The government erroneously suggests that defense counsel have asserted "blanket protection to the property in a defendant's inventory from disclosure." (ECF No. 208 at 8.) As the Log clearly indicates, however, defense counsel disclosed both the Inmate Property Inventory and the Inmate Property Release documents to the government, redacting only those portions that implicate Payton Gendron's First and Fourth Amendment rights and/or the work product doctrine. (ECF No. 202 at 2, Items 15-16).

pending capital case. The only reference to institutional interests in the government's pleadings is the general assertion (from Chief Deputy Aaron Galvin's affidavit) that:

> All inmate phone calls placed through the hardline telephones are monitored and recorded. In addition, all inmate phone calls, video visits, and text-based messages placed through the tablets are monitored and recorded. The purpose of the monitoring and recording policy is to ensure the safety, security, and good order of the facility.

(ECF No. 166 at 2.)

This vague invocation of "safety, security, and good order" is wholly insufficient to establish a legitimate penological interest in the wholesale monitoring and recording of all these communications. And, as a factual matter, it strains credulity to accept that LCJ staff monitor every landline telephone call, every telephone call made using a tablet, and every piece of digital correspondence sent or received by every inmate, every day. The reality surely is that, at most, only a small subset of these communications is ever reviewed by any staff member.[6] To the extent the purpose of selective culling when it occurs is to gather evidence on behalf of the prosecution, rather than to protect the interests of the institution, this practice is unconstitutional under binding Second Circuit precedent. *See e.g., Felipe*, 148 F.3d at 108; *supra* at 6-7.

Additionally, with respect to digital correspondence, the government fails to allege any legitimate penological interest in treating such communications differently than paper correspondence. If anything, digital correspondence poses even less of a threat to institutional safety, security, and good order than does incoming paper mail. While the latter can conceivably contain contraband of various types, electronic messages eliminate that possibility. And yet, in contrast to the claimed universal monitoring of text messages, etc., LCJ's policy regarding

---

[6] To the extent the government continues to press its claim that every telephone and tablet call, video visit and piece of digital correspondence for every inmate is monitored and recorded for institutional security purposes, an evidentiary hearing would be required to test that assertion.

incoming non-privileged paper mail is that it "will be opened and inspected to ensure the absence of contraband. These mailings will then be photocopied along with the envelope and the photocopies will be delivered to the inmate. Incoming mail may be read or censored if pursuant to NYS Minimum Standards it is considered a security risk. *Inmate will be notified in writing if their mail was read and the reason why.*" (ECF No. 166-1 at 16.) (emphasis in original). Outgoing mail is not inspected. *Id.* at 16-17. The government has failed to show good cause to circumvent this procedure by intercepting all of an inmate's electronic communications and providing copies to the prosecution.

In addition to these constitutional protections, to the extent any of those records document visits to Payton Gendron by members of the defense team, including counsel, experts, investigators or other agents of defense counsel, or receipt of mail from counsel or the defense team, those records are exempt from disclosure under the work product doctrine. That the records were created by the jail, rather than by defense counsel or their agents personally, *see* ECF No. 208 at 11, is irrelevant. "In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). The work product doctrine protects counsel's mental impressions, whether or not reduced to writing. *Id.* at 509. The government is simply not entitled to know, for example, a lawyer's judgment about how often an incarcerated client should receive visits from members of the defense team, when counsel decide to deploy expert witnesses to conduct assessments and who they retain, or whether the exchange of written materials is an effective method of communicating with a particular client. *Cf.* 18 U.S.C. § 3006A(e)(1) (providing that indigent defendants who require expert services "may request them in an ex parte application"); *United States v. Christensen*, No. 17-cr-20037 ECF No. 138 (C.D.

Il. Oct. 11, 2018) (granting motion for protective order forbidding jail personnel from disclosing any information about meetings between defendant and any defense mental health professional).

Finally, in one instance, the LCJ records contain the actual content of communication between Payton Gendron and counsel. *See* ECF No. 202 at 1, Item 6. Accordingly, attorney client privilege is asserted as to that item.

**2.     The Memorandum Opinion in *United States v. Bowers* Offers No Support for the Government's Position.**

In its Motion, the government first makes the broad assertion that there is "no constitutional protection or privilege shielding detention logs containing notations of the defendant's readily observable behavior, voluntary statements made by a defendant during those observations,[7] commissary transactions, visitation logs documenting non-legal visits and non-legal correspondence, and phone calls from the government." (ECF No. 208 at 8.) (citing *United States v. Bowers*, 18-CR-292, ECF No. 141 (W.D. Pa. Nov. 26, 2019)). However, the two-and-a-half-page memorandum opinion relied upon – of which only a single page addresses the defendant's motion to withhold categories of jail records from disclosure – contains no analysis and merely concludes that the defense in that case failed to show good cause for its request. *Id.* at 2.

Moreover, the request at issue in *Bowers* was limited to "information about the length, frequency and dates of legal visits, names and affiliation of legal visitors, mental health observations, other medical assessments, and almost hourly observations of activity (e.g., 'sleeping')." *Bowers*, 18-CR-292, ECF No. 101 at 1. The defense neither argued nor provided

---

[7] As the Log makes clear, the materials produced by ECHC and LCJ contain no records comparable to the "almost hourly observations of activity (e.g., 'sleeping')" that were apparently kept by the jail in *Bowers*.

legal authority for an exemption for commissary transactions, visitation logs of non-legal visits, or non-legal correspondence and phone calls. *Id.* In its response to the defense motion, the government nevertheless pressed for permission to access those materials, *see Bowers*, 18-CR-292, ECF No. 113 at 2, 4-13, and the court's resulting opinion nominally encompassed that request, albeit, as noted, without analysis.[8] That opinion thus offers no support for the government's position here where, in contrast, Payton Gendron has unequivocally asserted that his commissary records, visitation logs of non-legal visits, and non-legal correspondence and phone calls are exempt from disclosure. (ECF No. 202 at 2-5.)

   3.   **The Constitutional Protections and Privileges Pertaining to Payton Gendron's Telephone Calls and Tablet Use Are Not Defeated By Implied Consent.**

With respect to Payton Gendron's recorded telephone calls and the records of his use of a tablet at LCJ, the government argues that all constitutional protections are overcome by its purported showing that he "impliedly consent[ed]" to the government obtaining those materials and using them however they see fit when he "received notice that his tablet and phone calls are subject to monitoring and recording at LCJ." (ECF No. 208 at 10.) No such sweeping exemption from the Constitution may be claimed.

---

[8] Notably, even the government's pleading in *Bowers* set forth no legal basis or authority for its naked assertion that it should be permitted to access the defendant's commissary records. Indeed, in the introductory paragraphs of its response, it summarized the categories of records it sought as "observations of the defendant's conduct, non-legal visitation logs, and non-legal correspondence." ECF No. 113 at 2. Only later did it insert a bare reference to commissary records. *Id.* at 3 ("The United States has obtained, and continues to seek, certain records generated and maintained by the Prison . . . (1) logs containing notations of the defendant's readily observable behavior, voluntary statements made during those observations, and commissary transactions; (2) visitation logs documenting non-legal visits; and (3) non-legal correspondence and phone calls"). Although the court's subsequent opinion in turn included that reference, ECF No. 141 at 1, 2, it is thus singularly unpersuasive on that point.

12

          a.        **Telephone Calls**

Under some circumstances, courts have found implied consent and waiver of First and Fourth Amendment protections applicable to telephone calls where inmates are placed on actual notice that their conversations will be monitored and/or recorded. *See, e.g., United States v. Amen*, 831 F.2d at 373, 378-79 (2d Cir. 1987) (finding implied consent to interception of telephone calls where inmate handbook stated that "[t]hese phones utilized by the inmates are MONITORED and TAPED as well as having the capability [sic] for VISUAL TAPING" and a sign on each phone read "[t]he Bureau of Prisons reserves the authority to monitor conversations on this telephone. Your use of institutional telephones constitutes consent to this monitoring") (emphasis in original); *United States v. Workman*, 80 F.3d 688, 693-94 (2d Cir. 1996) (finding implied consent where sign near each telephone stated "ALL INMATE TELEPHONE CONVERSATIONS ARE SUBJECT TO ELECTRONIC MONITORING BY DEPARTMENTAL PERSONNEL" and inmate orientation handbook contained "further notice of the telephone monitoring program") (emphasis in original); *Simmons*, 2016 WL 285176, at *6-9, 24-25 (finding implied consent based on recorded announcement at beginning of each call that it "may be recorded or monitored" and, in some instances, additional notification included in inmate handbook).

According to the government, an automated message is played at the beginning of each inmate telephone call placed at LCJ on either landline or tablet to the effect that "this call is from a corrections facility and is subject to monitoring and recording." Aff. of Dep. Aaron Galvin (ECF No. 166.) There is, however, nothing in the Inmate Handbook that addresses the possible interception of telephone calls, *see* ECF No. 166-1, and no allegation is made that there is any type of sign placed on the telephones themselves to inform inmates of possible monitoring or

recording.[9] Nor are inmates given notice that recordings of their telephone conversations may be transferred outside of the institution and given to their prosecutors for use against them at their criminal trials.

### b. Video Visits

To the extent caselaw finding implied consent to monitoring and recording of inmate telephone calls based upon actual notice applies also to inmate video visits using a tablet, the notice provided to inmates at LCJ regarding such visits is woefully insufficient to justify such a finding here. No notice is given on the tablet itself that any use of the device will be monitored or recorded in any way. When first logging on to a tablet, according to the government, a screen is displayed that contains a link to the Inmate Handbook and a message is displayed stating: "Must open and view the attachment to proceed." ECF No. 166-2. It appears that, when the inmate clicks the link to the attachment, a digital copy of the Inmate Handbook opens and the first page is displayed. ECF No. 166-3. All he or she must do to proceed to use the tablet is check a box next to an acknowledgement that the inmate has "seen this message" and click the button labeled "Confirm." *Id.* There is no requirement that the inmate actually open or read any of the contents of the 32-page Inmate Handbook, nor is any attention drawn to any particular passage or section of the Handbook.

Were the inmate to locate and read the relevant portion of the Handbook, he or she would see only the following:

- Tablets are monitored by staff and the company providing the tablet service. Any video visits or pictures showing the following may be denied or flagged as inappropriate"

---

[9] In fact, as Chief Dep. Galvin and Captain Hammond confirmed during a meeting with government lawyers and defense counsel at LCJ, there are no signs anywhere in the facility to that effect.

14

> > o   *Drug Activity*
> > o   *Illegal acts, - crimes*
> > o   *Nudity, Sexual Activity*
>
> ** Any video visit that has been flagged, the inmate will receive a warning letter to alert them to notify the visitor that that activity is not allowed. Any subsequent activity may result in the visitor being banned from the system, or the inmate losing tablet privileges.
>
> *Family and friends can schedule a video visit thought [sic]* www.gettingout.com
>
> > ** Any illegal acts or crimes caught on video will be turned over to the appropriate law enforcement agency for investigation.
> >
> > ** Any violation of these rules are subject to a class D facility rule violation and loss of tablet use may be a sanction of facility hearing [sic].**

(ECF No. 166-1 at 19.)

A common-sense reading of this information conveys only that video visits may be monitored for visible drug, criminal, or sexual activity and that such conduct is disallowed and may result in sanctions. No notice is provided that the audio content of such visits may be monitored or recorded or the identity of the participants logged, or that any other activity engaged in on the tablet may be intercepted.

### c. Digital Mail

For the same reasons, no implied consent to interception of digital correspondence can be found here. Especially in light of the policy with regard to paper mail, no inmate would understand from the section of the Inmate Handbook reproduced above, *see* p. 9 *supra*, that his written communications made using the tablet would be read, collected, and provided to anyone, let alone to his prosecutors for use against him in his criminal case.

15

C.  **THE COURT SHOULD ORDER LCJ TO DISCLOSE ADDITIONAL RECORDS TO DEFENSE COUNSEL NO MORE FREQUENTLY THAN EVERY 120 DAYS.**

After spending the bulk of its Motion complaining about the procedure for assessing Payton Gendron's claims of constitutional protection and privilege, the government then asks the Court to order the parties to repeat the process every 30 days until trial. (ECF No. 208 at 3-4, 12.) In light of the relatively small amount of material generated by LCJ regarding Payton Gendron, if the Court is inclined to grant the government's request, defense counsel ask that they be required to disclose non-privileged, non-protected records and a log no more frequently than every 120 days.

II.  **CONCLUSION**

For the foregoing reasons, this Court should deny the government's Motion for disclosure of the disputed pretrial detention records. In the alternative, the Court should permit the defense to submit any withheld records sought by the government for *in camera* review as contemplated by the Court's Decision and Order (ECF No. 156 at 2). Furthermore, to the extent the government continues to press its claim that every telephone and tablet call, video visit and piece of digital correspondence for every inmate is monitored and recorded for institutional security purposes, the Court should conduct an evidentiary hearing to address those disputed factual claims. Lastly, if the Court is inclined to grant the government's request for ongoing disclosure of records from LCJ, the Court should order that defense counsel be required to disclose non-privileged, non-protected records and a log no more frequently that every 120 days.

Dated:      September 27, 2024
            Buffalo, New York

*s/Sonya A. Zoghlin*
Sonya A. Zoghlin
Assistant Federal Public Defender

*s/Anne M. Burger*
Anne M. Burger
Supervisory Assistant Federal Public Defender

*s/MaryBeth Covert*
MaryBeth Covert
Senior Litigator

*s/Julie Brain*
Julie Brain
Julie Brain, Attorney at Law
