UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

        v.                                                                                                          22-CR-109 (LJV)

PAYTON GENDRON,

        Defendant.
_____

**REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS COUNT 27 OF THE INDICTMENT**

Payton Gendron, by and through his attorneys, respectfully submits this Reply to the government's Response in Opposition, (ECF No. 239), to his Motion to Dismiss Count 27 of the Indictment, (ECF No. 234). The Motion raises an issue not of notice, but of the fundamental inadequacy of the government's pleading of Count 27. To be valid, an indictment must include, *inter alia*, every element of the offense that it purports to charge. The existence of an identifiable victim is an essential element of the crime of attempt to commit a hate crime under 18 U.S.C. § 249(a)(1). Count 27 fails to identify a victim that Payton Gendron attempted to injure. Therefore, it is invalid and must be dismissed. The government's lengthy descriptions of the events of May 14, 2022, the materials it has provided in discovery, and the information it included in its Bill of Particulars cannot remedy this deficiency and are thus irrelevant to this issue.

    **I.**    **A Valid Indictment Must Include All Elements of the Charged Offense**

As it must, the government appears to agree that a valid indictment must include the elements of the offense that it purports to charge. *See* ECF No. 239 at 4 (quoting *United States v. Benjamin*, 95 F.4th 60, 66-67 (2d Cir. 2024)). *See also Hamling v. United States*, 418 U.S. 87, 117-18 (1974) (holding that indictment must "contain the elements of the offense charged" in

terms that "fully, directly, and expressly, without any uncertainty or ambiguity, set forth" those elements) (internal quotations omitted).

The failure of an indictment to satisfy this basic requirement requires dismissal; it cannot be remedied by providing information to the defendant about the crime with which he is charged in the form of a bill of particulars, or via the discovery process. "[I]t is a settled rule that a bill of particulars cannot save an invalid indictment." *Russell v. United States*, 369 U.S. 749, 770 (1962); *United States v. Agone,* 302 F. Supp. 1258, 1260 (S.D.N.Y. 1969) (same, quoting *Russell*); *see also United States v. Loayza*, 107 F.3d 257, 260 (4th Cir. 1997) ("If the indictment does not contain every essential element of the offense, it is invalid; and, a bill of particulars cannot cure the defect."); *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (noting that "discovery cannot save a defective indictment") (citing *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999)). Consequently, the government's extended discussion of information provided in discovery, its Informational Outline, and in its Bill of Particulars, (ECF No 239 at 1-2, 3-4, 7, 11), is irrelevant to the question before the Court.

## II.     An Identifiable Victim is an Essential Element of Attempt to Commit a Hate Crime

The offense of attempt to commit a hate crime under 18 U.S.C. § 249(a)(1) is defined in part by a requirement that the defendant intend to cause a specific result, namely bodily injury to another person. Therefore, the existence of an identified victim whom the defendant intended to injure is an essential element of that offense.

### A.  The Substantive Offense

In addition to an act (or omission) and an accompanying culpable mental state, the definitions of some crimes include the causation of a specific result. *See* LaFave and Ohlin's Criminal Law, 7th (Hornbook Series) ("the definition of a particular crime may require, in

2

addition to an act or omission and a state of mind, something in the way of specified attendant circumstances; and with some crimes the definition also requires a specified result of the act or omission"); 1 Wharton's Criminal Law § 3:1 (16th ed.) ("[t]he possible elements of an offense . . . may . . . require a result"); *United States v. Kilmartin*, 944 F.3d 315, 330 (1st Cir. 2019) (noting that offense of witness tampering under 18 U.S.C. § 1512 is a crime that "specifies both conduct and result as elements"). A hate crime under 18 U.S.C. § 249(a)(1) is one such offense, i.e., its definition includes the causation of a specific result.

The substantive crime proscribed by the statute is defined, in relevant part, as: "willfully . . . caus[ing] bodily injury to any person, because of the actual or perceived race . . . of any person." *Id.* The elements of the offense are thus: (1) the willful (2) causation of (3) bodily injury to (4) another person, i.e., the victim, because of (5) the perceived race of another person. *See* Leonard B. Sand et al., 3 *Modern Federal Jury Instructions – Criminal*, ¶ 17-39 (2024) ("In order to find a defendant guilty of committing a hate crime, the government must prove beyond a reasonable doubt each of the following elements: . . . that the defendant . . . caused bodily injury to [name of victim] . . . because of the actual or perceived race . . . of [name of victim] . . . and . . . that the defendant acted knowingly and willfully"). The offense therefore requires a specific result – bodily injury suffered by a person – in addition to the intention to cause that result. Just as in *United States v. Solovey*, No. 04-cr-244S, 2005 WL 1279228, at *2 (W.D.N.Y. May 31, 2005), then, "[t]he nature of [the] offense charged requires the existence of a victim in order for a crime to have been committed" and so that victim must be identified in the indictment.[1] The

---

[1] Were it not for crimes such as this one that have as an element causing a particular result to a particular person, there would be no need for the well-established doctrine of transferred intent. The transferred intent principle holds, "a defendant who planned to murder one person and, in so attempting, killed another is guilty of the murder of the unplanned victim." *United States v. Concepcion*, 983 F.2d 369,381 (2d Cir. 1992); *see also* LaFave, *supra*, at § 6.4(d) (transferred

government's decision to charge Counts 1-10 and 21-23 of the Indictment in the way it did reflects a recognition of this principle. Counts 1-10 charge the commission of a hate crime resulting in death, and each Count refers to a single deceased victim. Indeed, had the government attempted to include all 10 hate crimes resulting in the deaths of all 10 victims in a single count, that count would obviously have been impermissibly duplicitous. *See, e.g., United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir, 1992) ("An indictment is duplicitous if it joins two or more distinct crimes in a single count.") The same is true regarding Counts 21-23, which charge commission of hate crimes against surviving victims; a separate count is charged for each victim who suffered bodily injury, which again was necessary to avoid duplicity. The government's charging decisions, for Counts 1-10 and 21-23 versus 27, cannot both be right — unless the fact that Count 27 involves an attempt, rather than the completed offense, alters the elements in a way that obviates the requirement of specific intent to injure a particular person. It does not, as explained below.

It is the identity of the intended victim that is an essential element of the crime and thus critical. This does not, however, necessarily require him or her to be identified by name. There are multiple ways in which an indictment can identify an intended victim without using the person's name, including by his or her initials, as was done in this case with regards to the surviving victims. (ECF No. 6 at 6-7.) In *State v. Grube*, 744 S.E.2d 1, 3 (Ga. 2013), for example, the defendant was charged with arranging over the internet to have sex with a person he believed to be a 14-year-old girl. The person with whom he had been communicating was in fact

---

intent doctrine means "that when one person (A) acts (or omits to act) with intent to harm another person (B), but because of a bad aim he instead harms a third person (C) whom he did not intend to harm, the law considers him (as it ought) just as guilty as if he had actually harmed the intended victim").

an undercover police officer. *Id.* The indictment, which specified that the target of the defendant's conduct was "Tiffany,' a person [the defendant] believed to be a 14-year-old girl," was held to sufficiently identify the intended victim of the offense to satisfy the requirement that all essential elements be included, notwithstanding the fact that no such person existed. *Id. See also Lewis v. Weiss*, No. 12-cv-07242, 2016 WL 1718251, at *6 (S.D.N.Y. Apr. 27, 2027) (noting that criminal complaint against defendant charged with threatening to kill federal judge under 18 U.S.C. § 115(a)(1)(B) adequately identified victim without using name where it included title, name of court, fact that he had just closed defendant's lawsuit, as well as details and date of alleged threats).

In *United States v. John-Baptiste*, 747 F.3d 186 (3d Cir. 2014), cited by the government, the Third Circuit upheld a count in an indictment charging former police officers with racketeering extortion based on "unlawfully *requiring an individual* to pay money in order for the individual to recover a vehicle that had been towed." *Id.* at 196 (emphasis in original). Although the victim's name was not included, the charge otherwise made clear that it referred to a particular act directed towards a particular person, namely the unlawful detention of a taxi driver and her taxi until a ransom was paid, by describing the offensive conduct and the time period during which it was alleged to have occurred. *Id.* The court therefore found that the indictment sufficiently set forth the elements of the crime. *Id. See also Agone,* 302 F. Supp. at 1259 (finding defect in indictment that failed to "name or otherwise identify the alleged victim").[2] Here, in contrast, Count 27 states only that the defendant attempted to injure "Black

---

[2] In its Response, the government suggests that by the use of the phrase "otherwise identify," the court in *Agone* countenanced the possibility that the target of the offense could properly be a porously identified group of people rather than a specific individual. (ECF No. 239 at 8.) Read in context, it is clear that the court meant no such thing. Its principal concern was that "the alleged

5

people . . . in and around the Tops grocery store." (ECF No. 6 at 7.) The defect in Count 27, then, is not the absence of a victim's name; it is the fact that there is no identifiable victim of the offense it purports to charge.

The cases cited by the government in support of its argument that an indictment need not identify the victims, ECF No. 239 at 5-7, 9, involve different offenses that are not defined by the causation of a particular result. Consequently, in none of those cases was the identity of a victim an essential element of the charged offense. That was the basis of each decision and not, as the government claims, *id.* at 5, that the indictments included other specific information about the criminal conduct alleged. In *United States v. Loayza*, 107 F.3d 257, 259 (4th Cir. 1997), the defendant was convicted of mail fraud under 18 U.S.C. § 1341 for running a Ponzi-type scheme. On appeal, he challenged the denial of his pretrial motion to dismiss the indictment as legally insufficient for failure to include the names of the individuals he defrauded. *Id.* at 260. The court of appeals affirmed on the express ground that "[t]he identity of the fraud victims is not an essential element of the crime." *Id.* at 261. It explained that the statute focuses on the defendant's intent, not the victim's identity, and thus the crime requires proof only that the defendant intended to defraud "someone." *Id.*

In *United States v. Morlan*, 756 F.2d 1442, 1444 (9th Cir. 1985), the defendant challenged the failure of his indictment to specifically identify the victims of two counts of assaulting bank employees while committing armed bank robbery under 18 U.S.C. § 2113(d). Because the identity of a particular person assaulted during an armed robbery is not an element of the crime, the court found, there was no requirement that their names be included in the indictment. *Id.* at

---

victim might have been one of at least several people," which it found to be "a fatal departure from the definiteness required in an indictment." *Id.* at 1261.

6

1445.³ The same conclusion was reached by the court in *United States v. Rizzo*, 373 F. Supp. 204 (S.D.N.Y. 1973), a case involving a charge of conspiracy to use extortionate means to collect a loan. The district court held:

> Here a conspiracy to extort under 18 U.S.C. § 894 is charged and not the substantive crime of extortion under that section. A conviction may be had for conspiracy to extort whether or not the scheme has been carried out or extortion has actually occurred. Thus, the crime of conspiracy to extort can be committed whether or not extortionate means were ever used on a prospective victim. The essence of the offense is that the conspirators entered into a scheme or plan to extort and committed an overt act in furtherance of that scheme or plan. The name of the prospective victim against whom the planned extortion was to be carried out is not an essential element of the offense.

*Id.* at 206 (internal citation omitted). *See also United States v. Annoreno*, 460 F.2d 1303, 1310 (7th Cir. 1972) (holding that, where defendant was charged with conspiring to make extortionate credit extensions, "the essence of th[e] indictment was the intent to create an atmosphere of intimidation and fear with respect to the loans made, not the actual accomplishment of that intent in particular instances," therefore the understanding of specific borrowers was not an element of the charge).

The government also cites *United States v. Gay*, 577 F.2d 465 (8th Cir. 1978), a case involving a charge of assault with a dangerous weapon within Indian country under 18 U.S.C. §§ 1153 and 113(c). The defendant was convicted of firing a shotgun in the direction of a

---

³ 18 U.S.C. § 2113(d) provides: "Whoever, in committing, or attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both." For this purpose, assault is defined in terms of the defendant's intent to create the apprehension of harm, and not by the causation of any particular result such as injury or actual fear. *See* Leonard B. Sand et al., 3 *Modern Federal Jury Instructions – Criminal*, ¶ 53-02, Instr. 53-14 (2024) ("To assault another person is to inflict or attempt or threaten to inflict physical harm on that person by the immediate use of a dangerous weapon. An assault may be committed without actually striking or injuring another person. If the defendant threatened to injure another person and also had the apparent ability to carry out that threat, that is an assault for the purposes of this element.").

campground as he and his companions drove by it in a pickup truck. *Id.* The indictment charged him with assaulting "campers," without otherwise identifying any individual involved. *Id.* at 466. Given that felony assault under the statute requires proof of an intent to do bodily harm to a person, *id.*, the indictment as presented was invalid for the reasons discussed herein. Inexplicably, however, the defendant failed to point out that the identity of the individual victims who were alleged to have been assaulted was an essential element of the offense.[4] Instead, his challenge was based upon insufficient protection against subsequent prosecution in violation of double jeopardy. *Id.* The court rejected that argument, and never confronted the question currently before this Court.

The government's claim that its decision to charge Count 27 uses a "manner of identifying victims [that] is not uncommon for acts of mass violence under § 249(a)(1)," ECF No. 239 at 8-9, is seriously misleading. In support of that proposition, the government relies upon four cases that it cited in its Bill of Particulars, (ECF Doc. 209 at 3), and one additional matter from the District of Montana. Of those five cases, the defect in the charging instrument complained of here was present in only two of them, and the issue was neither raised by the defense nor addressed by the court in either instance. That the government has in earlier cases obtained faulty indictments that were never challenged is not a valid reason for this Court to countenance the practice.

In *United States v. Aldrich*, No. 24-cr-00006, ECF No. 34 (D. Colo. June 18, 2024), the defendant pled guilty to a 74-count indictment pursuant to a plea agreement that spared him the

---

[4] It is also difficult to understand how the evidence in the case established an intent to do bodily harm to *anyone*, given that only three or four shots were fired at a campground that contained approximately 120 or 130 units that evening. *Id.* at 465. As far as the opinion discloses, however, the defendant did not challenge this aspect of the case on appeal either.

8

death penalty. The defendant had opened fire in a nightclub catering to the LGBTQIA+ community, killing five people, wounding an additional 19, and traumatizing 26 others who were present in the nightclub at the time of the shooting. Far from exemplifying the unconstitutional pleading practice used in Count 27 in this case, the complaint and the plea agreement identified *each and every one* of the 50 hate crime victims, in separate counts, using their initials. *Id.* at ECF No. 1, pp. 3-8; ECF No. 14, pp. 11-14.

The government expressly recognized in the plea agreement that the elements of 18 U.S.C. § 249(a)(1) required same. *Id.* at ECF No. 14, pp. 5-8 ("The parties agree that the hate crimes charged in Counts 1 through 5 of the Information, in violation of 18 U.S.C. § 249(a)(2) . . . have the following elements: 1. The defendant willfully caused, or attempted to cause, bodily injury *to the person identified in the relevant Count of the Information* . . . The parties agree that the hate crimes charged in Counts 6 through 50 of the Information, in violation of 18 U.S.C. § 249(a)(2) . . . have the following elements: 1. The defendant willfully caused, or attempted to cause, bodily injury *to the person identified in the relevant count of the Information*") (emphases added) (citing Charge of the Hon. Brian M. Morris, *United States v. Howald,* 6:21-cr-00004-BMNI, ECF NO. 138 (D. Mt. Feb. 17, 2023) (modified); Charge of the Hon. Robert J. Colville, *United States v. Bowers,* 2:18-cr-002920RJC, ECF No. 1357 (W.D. Pa. June 19, 2023) (modified to reflect § 249(a)(2)(A)(ii)(II)); Tenth Circuit Pattern Jury Instruction No 1.38 (2021 ed.) (modified)).

*United States v. Genco*, No. 21-cr-85, 2024 WL 618419, at *1 (S.D. Ohio Feb. 14, 2024), is a case in which the defect in Count 27 was also present in the indictment. However, the defendant pled guilty and stipulated to facts including that he "attempted to willfully cause bodily injury to women because of their actual or perceived gender" and engaged in "conduct

includ[ing] an attempt to kill women." He never raised the fatal defect in the indictment and the court never considered the issue. The same is true of *United States v. Joseph*, No. 19-cr-48, ECF No. 16 (N.D. Ohio Jan 29, 2019), in which the defendant was charged with an attempted hate crime against "members of the Toledo Jewish community who were at Location A, which is known to the grand jury." The defendant pled guilty, *id.* at ECF No. 63, and the validity of the indictment went unaddressed.

In *United States v. Fields*, No. 18-cr-000111 (W.D. Va.), the defendant drove his car into a crowd of counterdemonstrators at the Unite the Right rally in Charlottesville, Virginia, killing one person and injuring or attempting to injure 28 more. As in *Aldrich*, the indictment in that case charged 29 separate hate crime counts, each of which identified one of the victims by their initials. *Id.* at ECF No. 1, pp. 4-6; *see also* ECF No. 44 (Statement of Offense) (same). And in *United States v. Howald*, No. 21-cr-00004, ECF No. 73 (D. Mont. Dec. 8, 2022), the victim of the charged hate crime was also specifically identified; she was referred to in the indictment as "Individual 1," who the defendant "believe[ed] . . . to be a person who identified as lesbian," and her residence was specified as the location at which the defendant discharged a firearm and from which spent shell casings were recovered; and in other court filings by her initials, K.J. *Id.* at ECF No. 83.[5]

The government additionally cites five cases in a footnote, (ECF No. 239 at 9 n.5), that involve statutes other than 18 U.S.C. § 249(a)(2). In none of those cases, however, was the issue before this Court litigated, and thus they at best support the proposition that the government has

---

[5] The defendant in *Howald* ultimately went to trial. The trial judge's charge to the jury regarding the elements of 18 U.S.C. § 249(a)(2) included the requirement of proof that the defendant "willfully caused, or attempted to cause, bodily injury *to the person identified in the relevant count of the Information.*" This charge was cited by the parties, including the government, in the plea agreement in *Aldrich*, above, as correctly stating the elements of the offense.

10

gotten away with filing invalid indictments in the past, and not that the pleading practice comports with constitutional standards. *United States v. Cromitie*, 727 F.3d 194 (2d Cir. 2013) was an attempted bombing case involving charges under 18 U.S.C. § 2332a and 2332g. As the government notes, the defendants were also charged with one count of attempting to kill "officers and employees of the United States" under 18 U.S.C. § 1114, based upon a plot to launch missiles at military airplanes at an Air National Guard Base. *See United States v. Cromitie et al.,* No. 09-Cr-558, ECF No. 14 at 14 (S.D.N.Y. June 2, 2009). Neither the district court nor the Second Circuit ever addressed the validity of that count of the indictment, and it appears the issue was never raised by any defendant. In fact, the count was indeed invalid for the same reasons that Count 27 is invalid here.

The same is true of the 18 U.S.C. § 1114 count in *Tatar v. United States*, No. 13-3317, 2016 WL 589671 (D.N.J. Feb. 11, 2016). The opinion the government cites is the district court's order denying the defendant's *pro se* petition for post-conviction relief on other counts under 28 U.S.C. § 2255. *Id.* The defendant was acquitted of the § 1114 count by the jury and it played no part in the § 2255 litigation. The defect in the indictment also went unchallenged pretrial, and so the case has no persuasive value here.

The charge at issue in *United States v. Daoud*, 12-cr-723, ECF No. 16 (N.D. Ill. Sep. 20, 2012) was attempt to use a weapon of mass destruction against people and property under 18 U.S.C. § 2232a(a)(2)(D). Neither a specific result nor an identified victim is an element of that charge[6] the issue before the Court here was absent and never raised there. Both *United States v.*

---

[6] 18 U.S.C. § 2232a(a)(2) provides, in relevant part:

"A person who, without lawful authority, uses, threatens, or attempts or conspires to use, a weapon of mass destruction . . . against any person or property within the United States . . . shall

*Hari*, 18-cr-150, ECF No. 14 (D. Minn. June 20, 2018), and *United States v. Hernandez*, 19-cr-42, ECF No. 14 (D. Or. Feb. 5, 2019), involved charges of religious obstruction under 18 U.S.C. § 247(a)(2). In *Hari*, the offense was alleged to have been committed against "members and other attendees of the Dar al Farooq Islamic Center;" in *Hernandez*, the alleged target was "persons at St. Mary Catholic Church." *Id.* In *Hari*, two defendants pled guilty and one went to trial, *id.* at ECF Nos. 504, 545, 547; none challenged the invalid count of the indictment. The defendant in *Hernandez* also pled guilty, less than three months after the initial information was filed, *id.* at ECF No. 18, and raised no challenges to the charge. In contrast, when the government charged religious obstruction in *United States v. Dylan Roof*, No. 15-cr-472, ECF No. 2, pp. 6-8 (D.S.C. July 22, 2015), it did so in 12 separate counts, one for each victim, each identified by name with the exception of the one minor victim who was identified by his initials.

### B. Attempt

Where a substantive offense is defined by the causation of a specific result, it necessarily follows that an attempt to commit that offense requires the specific intent to cause that result. Accordingly, the intent to cause bodily injury to a particular person is no less a required element of an attempt to commit a hate crime than causing such injury is of the completed crime. To be found guilty of an attempt under federal law, "the defendant must have been acting with the kind of culpability otherwise required for the commission of the crime he is charged with attempting. Then, the defendant must have engaged in conduct which constitutes a substantial step toward

---

be imprisoned for any term of years or for life, and if death results, shall be punished by death or imprisoned for any term of years or for life."

*See* 1 Wayne R. LaFave, *Criminal Law* § 6.4(a) (5th ed. 2010) ("some crimes are so defined that conduct accompanied by an intention to cause a harmful result may constitute the crime without regard to whether that result actually occurs").

12

commission of the crime." *United States v. Stallworth*, 543 F.2d 1038, 1040 (2d Cir. 1976) (citing *United States v. Mandujano*, 499 F.2d 370 (5th Cir. 1974)); *see also United States v. Castillo*, 36 F.4th 431, 442 (2d Cir. 2022) (noting that "'[t]he crime of attempt requires that the defendant have intended to commit each of the essential elements of the substantive crime'") (quoting *Collier v. United States*, 989 F.3d 212, 221 (2d Cir. 2021)). Because of that intent requirement, "crimes that are 'defined in terms of acts causing a particular result' cannot be attempted unless the defendant specifically intended to bring about that result.'" *Id.* at 442 (quoting LaFave, *Substantive Criminal Law* § 11.3(a)). The hate crime statute itself specifies the elements of the attempt crime in this instance and makes this point clear. The statute proscribes: "willfully . . . through the use of . . . a firearm . . . attempt[ing] to cause bodily injury to any person, because of the actual or perceived race . . . of any person." 18 U.S.C. § 249(a)(1).

      The government's assertion that "where the count at issue alleges an attempt . . . the identity of a victim cannot be an essential element of an indictment," ECF No. 239 at 10, is simply wrong with respect to the crime at issue here. It is correct that an attempt offense may not require an "*action* involving a victim," *id.*, for it is possible to engage in conduct that constitutes a substantial step towards committing a crime that does not affect the intended victim of that crime. However, at least where a specific result is an element of the intended offense, an attempt assuredly does require the *intent* to bring about that result. As shown above, with respect to attempt to commit a hate crime under § 249(a)(1), the intent required is the intent to cause bodily injury to an identified victim.

      Once again, the cases that the government relies upon offer no support for its argument, principally because neither involves an offense of attempt. The government again cites *Rizzo*, 373 F. Supp. at 206, the case in which the defendants were charged with conspiracy to use

13

extortionate means to collect a loan. Unlike in the case of attempt, the essence of the crime of conspiracy is "the unlawful agreement between the defendants," and the crime is complete when that agreement has been reached and an overt act in furtherance thereof has been committed. *Id.* The identity of a prospective victim is thus not an element of the offense of conspiracy, but *Rizzo* says nothing about cases like this one in which the charge at issue is attempt.

*United States v. Hill*, No. 09-cr-199, 2010 WL 128314, *7-8 (N.D. Ga. Jan 13, 2010), similarly does not involve an attempt offense, but rather solicitation to commit a crime of violence under 18 U.S.C. § 373. Solicitation, also, does not have as an element the causation of a particular result or, consequently, the intent to cause a particular result. *See* Leonard B. Sand, 1 *Modern Federal Jury Instructions-Criminal* ¶ 19A.01 (2024) ("In order to convict the defendant of the offense charged, the government must prove beyond a reasonable doubt that the defendant: First, solicited, commanded, induced or otherwise tried to persuade another person [specify if possible] to commit [specify the federal felony, e.g., murder]; and Second, that the defendant intended that another person [specify if possible] would commit the crime of [e.g., murder], that has as an element the use, attempted use, or threatened use of physical force against the person or property of another under circumstances that are strongly corroborative of that intent. The surrounding circumstances must indicate that the defendant was serious when he solicited the criminal conduct."). *Hill* also, then, is inapplicable to the offense of attempt to commit a hate crime in violation of 18 U.S.C. § 249(a)(1) alleged in Count 27.

The government additionally argues that the identity of the victim cannot be an essential element of an attempt crime because "attempt charges are often used in cases where law enforcement interrupted the crime before anyone was harmed, or even where the victims could be known." ECF No. 239 at 10. Again, the attempt at issue here is an attempt to commit a crime

14

that is defined by a particular result, specifically an attempt to cause bodily injury to a person. A defendant may certainly be guilty of attempt to commit such a crime even when the victim was uninjured, as noted above. He may not, however, be guilty of an attempt to cause bodily injury to an unknown, unidentifiable person. That is so because it is impossible to intend to injure someone without knowing or believing that the person exists.

The three cases relied upon by the government here, ECF No. 239 at 11, offer no persuasive basis for a different conclusion. The charge at issue in *United States v. Rahmani*, 794 Fed. App'x. 4 (2d Cir. 2019), was an attempt to violate 18 U.S.C. § 2332a, the same as in *Daoud*, *supra*, which proscribes the use of weapons of mass destruction against persons or property. No particular result need be caused or intended as a consequence of such use under the statute; a violation occurs without regard to whether harm comes to any person or property. The elements of the offense are simply that the defendant use, or conspire, threaten or attempt to use, a prohibited weapon without lawful authority. 18 U.S.C. § 2332a(a). An indictment alleging such an offense, therefore, need not identify a victim. *Cromitie*, 727 F.3d at 194, as noted, was another attempted bombing case that also included an invalid count (under 18 U.S.C. § 1114) that was never challenged, as did *Genco*, 2024 WL 618419, at *1.

### III.   CONCLUSION

For these reasons, Payton Gendron respectfully requests that his Motion be granted and that Count 27 be dismissed and stricken from the Indictment.

Dated: December 23, 2024
       Buffalo, New York

                    Respectfully submitted,

*s/Sonya A. Zoghlin*
Sonya A. Zoghlin
Assistant Federal Public Defender

*s/MaryBeth Covert*
MaryBeth Covert
Senior Litigator

*s/Julie Brain*
Julie Brain
Attorney at Law

*s/Monica Foster*
Monica Foster
Indiana Federal Community Defenders, Inc.