UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────

UNITED STATES OF AMERICA,

    v.                                                   22-CR-109 (LJV-HKS)

PAYTON GENDRON,

            Defendant.
───────────────────────────────────

### SUPPLEMENTAL BRIEF IN SUPPORT OF
### MOTION TO DISMISS COUNTS 11-20 OF THE INDICTMENT FOR
### FAILURE TO STATE AN OFFENSE UNDER 18 U.S.C. § 924(c)

Defendant Payton Gendron, through undersigned counsel, submits this supplemental brief in response to the Court's question: "How, if at all, does the word 'willfully' in 18 U.S.C. § 249(a)(1) affect the Court's analysis of whether an act of self-harm, such as self-immolation, can violate that statute?" As the defense has shown, an act of self-harm—for example, intentionally setting oneself on fire in a public place out of racist animus, with the unintended result that a first responder or bystander dies—can violate § 249(a)(1)(B)(i), and "willfully" does not alter that conclusion.[1]

*First*, "willfully" in § 249(a)(1) just means "intentional, purposeful, and voluntary, as distinguished from accidental or negligent," and does not further require "bad purpose" to violate the law. *See United States v. Temple*, 447 F.3d 130, 137 (2d Cir. 2006). "[I]n criminal statutes the word 'means no more than that the person charged with the duty knows what he is doing. It does

---

[1] The defense's motion to dismiss (ECF No. 180) is cited "Mot." The government's response (ECF No. 201) is cited "Opp." The defense's reply (ECF No. 215) is cited "Reply." The transcripts of the oral arguments on the motion are cited "11/15/24 Tr." and "2/7/25 Tr."

not mean that, in addition, he must suppose that he is breaking the law.'" *United States v. George*, 386 F.3d 383, 393 (2d Cir. 2004) (Sotomayor, J.) (quoting *Am. Surety Co. of New York v. Sullivan*, 7 F.2d 605, 606 (2d Cir. 1925) (Hand, J.)). On this interpretation, the answer to the Court's question is straightforward. As long as one who harms himself acts intentionally rather than inadvertently, he acts "willfully" for purposes of § 249(a)(1). And virtually any case of bias-motivated public self-immolation would involve intentional, not accidental, behavior.

*Second*, if this Court instead reads "willfully" in § 249(a)(1) to require a heightened *mens rea*—"'with a bad purpose'" and "with knowledge that [one's] conduct is unlawful," *see Bryan v. United States*, 524 U.S. 184, 191–92 (1998)—the defense's hypothetical act of self-harm would satisfy that standard as well. Under this construction, "a person who acts willfully need not be aware of the *specific* law that his conduct may be violating. Rather, 'knowledge that the conduct is unlawful is all that is required.'" *United States v. Henry*, 888 F.3d 589, 599 (2d Cir. 2018) (quoting *Bryan*, 524 U.S. at 196). No person who intentionally ignites a public conflagration—for any reason, let alone to announce and galvanize racial hatred—could reasonably believe that he was engaging in "innocent behavior," *George*, 386 F.3d at 394, or "socially beneficial conduct," *United States ex rel. Hart v. McKesson Corp.*, 96 F.4th 145, 155 (2d Cir. 2024). On the contrary, such a person would know that his conduct at the very least violated common criminal prohibitions on setting public fires; disorderly conduct and public nuisances; and endangering persons and property. As real-world examples reflect, people who set themselves on fire in public and survive regularly face arrest and prosecution.

*Third*, even if this Court disagrees with all of the above—indeed, even if this Court applies the strictest definition of "willfully" and concludes that the HCPA demands proof of a defendant's specific intent to break that law in particular, *see Bryan*, 524 U.S. at 194 (discussing

*Cheek v. United States*, 498 U.S. 192, 201 (1991))—an act of self-harm could still violate § 249(a)(1)(B)(i) and establish categorical overbreadth. Willfulness is a mental state, and there is no reason why a person who carries out an act of public self-immolation would be unable to possess that mental state. As the government has conceded, the question here is whether any "hypothetical" conduct that would make out a § 249(a)(1)(B)(i) offense sweeps more broadly than 18 U.S.C. § 924(c)(3)(A)'s elements clause. Opp. 4; 11/15/24 Tr. 5. So, take the defendant who intentionally sets himself on fire in a public place to stoke racial bias, and add to that hypothetical the fact that the defendant believes his conduct to be generally unlawful (or even violative of the HCPA in particular) but has chosen to go forward anyway. No clearer evidence of willfulness could be imagined. That conduct would establish every element needed to violate § 249(a)(1)(B)(i), however this Court interprets "willfully," and doctrinally, that hypothetical is a perfectly proper way to demonstrate a categorical mismatch.

## ARGUMENT

**Section 249(a)(1)'s "Willfully" *Mens Rea* Does Not Alter The Conclusion That An Act Of Self-Harm Can Violate The Statute.**

A. <u>In § 249(a)(1), "Willfully" Means Intentionally As Opposed To Accidentally, And Virtually Any Bias-Motivated Act Of Self-Immolation Would Be Intentional.</u>

"The word 'willfully' is sometimes said to be 'a word of many meanings' whose construction is often dependent on the context in which it appears." *Bryan*, 524 U.S. at 191 (quoting *Spies v. United States*, 317 U.S. 492, 497 (1943)). In § 249(a)(1), "willfully" requires only that the defendant act "intentional[ly] as distinguished from accidental[ly]," *Browder v. United States*, 312 U.S. 335, 342 (1941), not that he also know that his conduct was unlawful.

3

"'Willful' repeatedly has been defined in the criminal context as intentional, purposeful, and voluntary, as distinguished from accidental or negligent. Evil intent or bad purpose are not implicit in this definition." *Temple*, 447 F.3d at 137. As then-Judge Sotomayor, quoting Judge Hand, put it, "willful" in criminal statutes means only that the defendant "'knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law.'" *George*, 386 F.3d at 393 (quoting *Am. Surety Co.*, 7 F.2d at 606). *See also, e.g.*, Model Penal Code § 2.02(8) ("A requirement that an offense be committed wil[l]fully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements appears."). Accordingly, the government does not "have to prove a knowing violation of the law every time a statute use[s] the term 'willful.'" *United States v. Gabriel*, 125 F.3d 89, 101 (2d Cir. 1997). On the contrary, "[t]he general rule in criminal cases is that the government need not prove a knowing violation of the law." *Id.*

"Only in exceptional cases has the Supreme Court interpreted the term 'willfully' in criminal statutory *mens rea* provisions to require proof of the defendant's specific purpose to violate the law." *George*, 386 F.3d at 390. "The Court has read 'willfully' to require such specific intent only when those activities classified as illegal do not on their own provide notice of their criminality, either because of the difficulty of comprehending the legally acceptable parameters of the activity or because the criminal *actus reus* can often be undertaken with a lawful purpose." *Id. George* gave three examples of such cases: *Cheek* (concerning provisions of "the labyrinthine tax code and regulations"); *Ratzlaf v. United States*, 510 U.S. 135 (1994) (prohibitions on currency structuring, activity that was not "inevitably nefarious"); and *Bryan* (dealing in firearms, a legitimate commercial activity, without a license). 386 F.3d at 390–92. Describing these cases as "atypical[]" "exceptions to the fundamental canon of criminal law that ignorance

4

of the law is no excuse," *George* stated this interpretive rule: "[W]illfully" should be read "to require only the minimum *mens rea* necessary to separate innocent from wrongful conduct." *Id.* at 394; *see also id.* at 393 n.12. Applying that rule, *George* held that "willfully" in 18 U.S.C. § 1542 (making false statements in passport applications) "only requires that a defendant provide in a passport application information he or she knows to be false and does not mandate that the defendant act with a specific purpose to make false statements or to violate the law, either generally or § 1542 specifically." *Id.* at 389. That is because "a reasonable person knowingly making false statements in a passport application should be on notice that he or she is likely not engaging in lawful conduct." *Id.* at 394. And "because no conceivable meritorious reason exists for knowingly submitting false information on a passport application, conviction under § 1542 does not require a finding that the defendant acted with an awareness of the generally unlawful nature of his or her conduct, an improper purpose, or an 'evil-meaning' mind." *Id.* at 395.

On this reasoning, the Second Circuit has many times held that "willfully" demands only knowingly or intentionally doing the acts constituting the offense, not knowledge that the acts are unlawful or a bad purpose to violate the law. The Circuit has so held in cases similar to *George*, where the prohibited conduct was "not innocent behavior" and "no conceivable meritorious reason exist[ed]" for engaging in it, such that general intent[2] served to "delineate the appropriate boundary between innocent and criminal conduct." 386 F.3d at 394–95. *E.g.*, *United States v. Melhuish*, 6 F.4th 380, 394–96 & n.6 (2d Cir. 2021) (holding that 18 U.S.C. § 111

---

[2] "[T]he Supreme Court has defined 'general intent' as 'proof of knowledge with respect to the *actus reus* of the crime.'" *George*, 386 F.3d at 389 n.6 (quoting *Carter v. United States*, 530 U.S. 255, 269 (2000)). Specific intent, in contrast, means "knowingly [doing] an act which the law forbids, ... purposely intending to violate the law." *See United States v. Durrani*, 835 F.2d 410, 423 (2d Cir. 1987) (approving this language in jury instruction).

(assaulting federal officers), is a general intent crime, and approving jury instruction defining "willfully" as "voluntarily and intentionally, and not by mistake or accident"); *Temple*, 447 F.3d at 137 (in discussion of 26 U.S.C. § 7214(a)(1) (willful oppression by revenue agent under color of law), stating that "willful" does not imply "[e]vil intent or bad purpose"); *Gabriel*, 125 F.3d at 101 (holding that 18 U.S.C. § 2(b) (willfully causing another person to do an act constituting a federal crime) does not require "prov[ing] a knowing violation of the law"); *United States v. Johnson*, 14 F.3d 766, 768–71 (2d Cir. 1994) (holding that 18 U.S.C. §§ 871 and 879 (willfully threatening presidents and former presidents) are general intent crimes requiring only proof that that the defendant knowingly made a statement "that a reasonable person would perceive as a threat," not specific intent to intimidate or threaten in violation of law).

In contrast, where the Second Circuit has read "willfully" to require proof of a bad purpose to break the law, it has typically done so to limit the scope of complex statutes that might otherwise capture "those ... who innocently and inadvertently engage in prohibited conduct." *Hart*, 96 F.4th at 157. *E.g.*, *id.* (Anti-Kickback Statute, prohibiting willfully paying remuneration to induce purchase of goods or services payable by federal health care programs); *United States v. Kukushkin*, 61 F.4th 327, 332–33 (2d Cir. 2023) (Federal Election Campaign Act, prohibiting willfully making political contributions by foreign nationals or making contributions in another's name); *Henry*, 888 F.3d at 600 (Arms Export Control Act, prohibiting willfully importing or exporting defense articles or services without a license). In these cases, the Circuit applied a more demanding definition of willfulness to avoid "ensnaring individuals who make honest mistakes" in negotiating complex regulatory regimes, *Henry*, 888 F.3d at 600; or because "[a] more expansive interpretation would risk creating a trap for the unwary and deter socially beneficial conduct." *Hart*, 96 F.4th at 155. So too in *Liparota v. United States*, 471 U.S.

6

419, 426, 433 (1985), which held that 7 U.S.C. § 2024(b) (unauthorized acquisition or possession of food stamps) requires proof that the defendant "knew that his acquisition or possession of food stamps was in a manner unauthorized by statute or regulations" because "to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct."

Section 249(a)(1) belongs to the first group of statutes because causing bodily injury on the basis of race is akin to lying, assaulting, oppressing, and threatening. It is "not innocent behavior" and "no conceivable meritorious reason exists" for doing it. *George*, 386 F.3d at 394–95. Consequently, requiring proof that a defendant intentionally caused bodily injury for race-motivated reasons more than suffices to "separate innocent from wrongful conduct." *George*, 386 F.3d at 394. It is not "difficult[] ... to comprehend[] the legally acceptable parameters of the activity" proscribed by the HCPA, nor can "the criminal *actus reus* ... often be undertaken with a lawful purpose." *Id.* at 390. This is not the kind of "exceptional" or "atypical" case where a heightened *mens rea* is necessary to avoid "criminaliz[ing] a broad range of apparently innocent conduct." *See Ratzlaf*, 510 U.S. at 155 n.6 (Blackmun, J., dissenting) (discussing *Liparota*). In this respect, § 249(a)(1)'s closest analogue is the assault statute in *Melhuish*, which punished willful attempts or threats to inflict injury and, *Melhuish* held, required only general intent. 6 F.4th at 395 (citing *United States v. Chestaro*, 197 F.3d 600, 605 (2d Cir. 1999)).

Numerous authorities adopt this interpretation of "willfully" in § 249(a)(1). The Sand charge provides: "[T]he government must establish beyond a reasonable doubt ... that the defendant acted knowingly and willfully. To satisfy this element, the government must prove that the defendant acted voluntarily and purposely with the intent to cause bodily injury." Sand, Modern Fed. Jury Instructions—Criminal, Instruction 17–42. The comment explains that "the term has been interpreted to require proof that the defendant sought to commit the required act,

7

but does not require proof that the defendant knew that he or she was violating a federal statute." At least one district court trying an HCPA case has charged the jury this way. Jury Instructions 11, Instruction No. 17, *United States v. Mason*, 13 Cr. 298 (D. Or. Feb. 3, 2014), ECF No. 149 ("[T]he defendant acted willfully if he acted voluntarily and deliberately. The government is not required to prove that the defendant knew that his acts or omissions were unlawful."). And two of the government's cases recite this definition. *United States v. Roof*, 10 F.4th 314, 401 (4th Cir. 2021) ("'intentional and purposeful'" (quoting *RSM, Inc. v. Hebert*, 466 F.3d 316, 320–21 (4th Cir. 2006))); *Earnest*, 536 F. Supp. 3d at 720 ("'a synonym for intentionally'" (quoting *United States v. Lauricio-Yeno*, 590 F.3d 818, 821 (9th Cir. 2010))) (both cited at Opp. 6).

"Willfully" in § 249(a)(1) merely means intentionally rather than accidentally. Any defendant who sets himself on fire in a public place to stoke racial animus acts intentionally, so such an act of self-harm can satisfy the HCPA's "willfully" element and violate the statute.

B. <u>If "Willfully" Means With A Bad Purpose And With Knowledge That One's Conduct Is Unlawful, Any Person Who Sets Himself On Fire In Public To Stoke Racial Animus Must Know That His Actions Violate Common Laws Concerning Fire Prevention, Public Order, And Endangering Persons Or Property.</u>

If this Court instead reads "willfully" in § 249(a)(1) to require a heightened *mens rea*—"with a bad purpose'" and "with knowledge that [one's] conduct is unlawful," *Bryan*, 524 U.S. at 191–92—the hypothesized act of self-immolation would still violate the statute. Under this definition, "'a person who acts willfully need not be aware of the *specific* law that his conduct may be violating. Rather, knowledge that the conduct is unlawful is all that is required.'" *Hart*, 96 F.4th at 154 (quoting *Henry*, 888 F.3d at 599)).[3] A reasonable jury could find that a

---

[3] The strictest definition of "willfully"—which "requir[es] not only that a defendant understand that her conduct is unlawful but also that she 'have knowledge of the law' that she is alleged to have violated"—only applies to "highly technical statutes" such as the tax code provisions at

person who set himself on fire in public, especially one who did so to advance a racist ideology, knew that he was breaking any number of common, well-known criminal prohibitions, and was thus acting willfully. That is, his "contravention of generally understood norms about legal conduct ... put [him] on notice of the wrongfulness of his ... conduct." *George*, 386 F.3d at 394. *See also, e.g.*, *Bryan*, 524 U.S. at 202 (Scalia, J., dissenting) (under decision's rationale, defendant "would also be 'act[ing] with an evil-meaning mind,' and hence presumably be guilty of 'willfully' dealing in firearms without a license, if he knew that his street-corner transactions violated New York City's business licensing or sales tax ordinances").

For example, the Buffalo City Code provides: "No person shall make or assist in making or knowingly permit any bonfire without the permission of the Police Captain of the precinct within which such bonfire is proposed to be made; nor shall any person carry fire through any street or lot unless the same is placed or carried in some safe, closed or secure container." Buffalo City Code § 119–1. *See also id.* § 1–15 (criminal penalties for City Code violations). So too in New York City. There, one violates the Fire Code by "[k]indling, building, maintaining or using an open fire." N.Y.C. Fire Code § 307.1. *See also id.* § 109.2; N.Y.C. Admin. Code § 15–216 (criminal penalties for Fire Code violations). Such restrictions on public fires are standard, ubiquitous public safety measures whose breach is obviously unlawful—especially where, as here, the person setting the fire has disabled himself from controlling its spread.

Setting a fire in public would also contravene equally common criminal laws against public-order offenses such as disorderly conduct, public nuisance, and the like. For example, a

---

issue in *Cheek* and the currency structuring provisions at issue in *Ratzlaf*. *Hart*, 96 F.4th at 154 n.5; *see also Kukushkin*, 61 F.4th at 332–33. The HCPA does not implicate this strict definition of "willfully" because § 249(a)(1) is "facially clear." *See George*, 386 F.3d at 395.

person commits disorderly conduct, a New York State criminal violation, "when, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof," he takes any of several prohibited actions, including "engag[ing] in violent, tumultuous, or threatening behavior," "obstruct[ing] vehicular or pedestrian traffic," or "creat[ing] a hazardous or physically offensive condition by any act which serves no legitimate purpose." N.Y. Penal Law §§ 240.20(1), (5), and (7). *See also id.* § 70.15(4) (criminal penalties for violations).

A person who immolates himself to make an ideological point seeks to generate public attention, and where his ideology traffics in racial hatred, his intent to cause (or his recklessness as to the possibility that his actions will cause) public "annoyance[] or alarm" is evident. A burning body that carries a message of racial bias is "violent" and "tumultuous." New York State cases uphold § 240.20(1) convictions for far less. *E.g.*, *People v. Lee*, 55 N.Y.S.3d 693 (App. Term 2017) (table) ("shouting obscene and abusive language at a court officer who was stationed at a security checkpoint in the lobby of the Manhattan Family Court, causing a commotion that the whole lobby could hear and that required the intervention of two additional court officers"); *People v. O'Neill*, 26 N.Y.S.3d 215 (App. Term 2015) (table) ("[A]t the Yonkers City Hall, defendant engaged in conduct that included loud and obscene verbal abuse directed at several of the employees, which had caused a crowd to gather."). More mundanely, a person who immolates himself on a sidewalk in front of a busy public building—an embassy, say, as Aaron Bushnell did, or a courthouse, or a city hall—intends or is at least reckless with respect to the risk of public "inconvenience," and the crowd of bystanders and first responders he is likely to attract would "obstruct[] pedestrian or vehicle traffic." Again, cases recognize that less obstructive conduct suffices. *E.g.*, *People v. Carty*, 49 N.Y.S.3d 600, 601 (App. Term 2016) ("[D]efendant obstructed pedestrian traffic by laying down on a busy Wall Street sidewalk at

4:00 PM on a trading day, side-by-side with other ... protestors"). In addition, a person on fire is both "hazardous" and "physically offensive," and cases once more acknowledge less dangerous or disturbing displays as violative of § 240.20(7). *E.g.*, *People v. Om*, 984 N.Y.S.2d 533 (City Ct. 2013) (jumping into water and creating hazard for boaters); *People v. Thomas*, 967 N.Y.S.2d 869 (App. Term 2012) (riding bicycle wrong way on street, nearly colliding with oncoming traffic); *People v. Cooke*, 578 N.Y.S.2d 76 (Justice Ct. 1991) (public urination).

Finally, burning oneself in a public fire would run afoul of statutes designed to protect persons and property from the risk of harm. *E.g.*, N.Y. Penal Law § 240.25(1) (misdemeanor second-degree criminal nuisance, applicable "when ... [b]y conduct either unlawful in itself or unreasonable under all the circumstances, [one] knowingly or recklessly creates or maintains a condition which endangers the safety or health of a considerable number of persons"); N.Y. Penal Law § 120.20 (misdemeanor second-degree reckless endangerment, applicable "when [one] recklessly engages in conduct which creates a substantial risk of serious physical injury to another person"); N.Y. Penal Law § 145.25 (misdemeanor reckless endangerment of property, applicable "when [one] recklessly engages in conduct which creates a substantial risk of damage to the property of another in an amount exceeding two hundred fifty dollars").[4]

That is why people who light themselves on fire, even if they intend to hurt only themselves, quickly find themselves arrested, convicted, and sentenced. In 2024, a

---

[4] Although the hypothetical defendant who immolates himself intentionally causes bodily injury to himself, he could, in doing so, also violate statutes with a *mens rea* of recklessness. Under New York law, a defendant can intend one result (bodily injury to himself) while simultaneously acting recklessly with respect to a different result (injury to another or damage to another's property). *See People v. Trappier*, 87 N.Y.2d 55, 59 (1995) (jury verdict convicting defendant of both (i) attempted first-degree assault, requiring specific intent to cause serious physical injury; and (ii) first-degree reckless endangerment, requiring recklessly creating grave risk of death; was not repugnant because proscribed results were "distinct").

photojournalist, Samuel Mena, "set himself on fire during an anti-Israel protest in Washington, D.C." and "was arrested following his failed self-immolation." Willig, *Man Sets Himself On Fire At D.C. Anti-Israel Protest*, Israeli National News (Oct. 6, 2024), https://www.israelnationalnews.com/news/397142. In 2018, a "suicidal" man, Tyler Ivison, doused himself with gasoline at a Utah gas station and lit himself on fire, injuring several police officers who were trying to intervene. *Fugitive Apprehension Team Arrests Man Who Set Himself On Fire At Kaysville Gas Station*, Deseret News (Sept. 5, 2018), https://www.deseret.com/2018/9/6/20652810/fugitive-apprehension-team-arrests-man-who-set-himself-on-fire-at-kaysville-gas-station/. He pleaded guilty to several offenses and was sentenced to five years' imprisonment to life, even though, as his wife told the court at sentencing: "[H]e did not want to hurt anyone, he only wanted to harm himself." Scholl, *"He's Not A Monster": Man Who Set Fire To Himself And Injured Officers In Kaysville Gas Station Sent To Prison*, Ogden Standard-Examiner (Aug. 15, 2019), https://www.standard.net/entertainment/movies-tv/2019/aug/15/hes-not-a-monster-man-who-set-fire-to-himself-and-injured-officers-in-kaysville-gas-station-sent-to-prison/. *See also Man Arrested After Allegedly Trying To Set Himself On Fire In Lower Manhattan: Officials*, NBC New York (Oct. 22, 2019) (reporting that "[a] man was arrested in Lower Manhattan after claiming he was going to light himself on fire" and was seen "pouring flammable liquid on himself ... near the World Trade Center"), https://www.nbcnewyork.com/news/local/man-arrested-after-allegedly-trying-to-set-himself-on-fire-in-lower-manhattan/1992868/.

  Even if "willfully" in § 249(a)(1) requires proof of a bad purpose or knowledge that one's conduct is unlawful, an act of self-immolation can meet that test and violate the statute. Someone who immolates himself in public to promote his racist ideology violates numerous criminal laws

12

concerning fire safety, public order, and the endangerment of persons and property, and therefore has ample grounds to know that his conduct is "generally unlawful." *George*, 386 F.3d at 393.

### C. However "Willfully" Is Defined, A Defendant Could Always Commit An Act Of Self-Harm With That *Mens Rea* And Therefore Violate the HCPA.

Finally, however this Court reads "willfully"—even if this Court adopts the *Cheek* formulation requiring specific intent to violate the HCPA, *see supra* n.3—it would always be possible for a hypothetical defendant immolating himself to possess that *mens rea*.

As controlling Supreme Court precedent establishes, the categorical approach governs the question whether a federal criminal offense satisfies § 924(c)(3)(A)'s elements clause. *United States v. Taylor*, 596 U.S. 845, 850 (2022). That same controlling precedent also establishes that in answering that question, it is appropriate—indeed, necessary—to consider "hypothetical" conduct that would violate the predicate statute, then evaluate whether those "hypothetical" actions categorically involve using violent physical force "against the person or property of another." *Id.* at 851–52. "When [*Taylor*] applied the categorical approach, the Supreme Court rejected the applicability of the proviso ... that proposed conduct must be 'more than the application of legal imagination to [the] ... statute's language' but have a 'realistic probability' that was based on the facts of a defendant's case or other existing cases. ... Instead, the Supreme Court applied its own hypothetical in its categorical approach." *United States v. Morrison*, 2024 WL 4601457, at *1 (2d Cir. Oct. 29, 2024) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)); *see also* 11/15/24 Tr. 5 (government conceding that "the realistic probability test doesn't apply here"). Thus, *Taylor* held, because one could "hypothetically" attempt Hobbs Act robbery through conduct that "fall[s] short of the use, attempted use, or threatened use of force against another person or his property," that offense doesn't categorically match § 924(c)(3)(A).

13

*United States v. McCoy*, 58 F.4th 72, 74 (2d Cir. 2023). *See also Taylor*, 596 U.S. at 860–61 (Thomas, J., dissenting) ("[T]he Court holds that Taylor did not actually commit a 'crime of violence' because a hypothetical defendant—the Court calls him 'Adam'—could have been convicted of attempting to commit Hobbs Act robbery without using, attempting to use, or threatening to use physical force."). *Taylor* did all this in the face of a strident government argument that "application of the categorical approach does not turn on unlikely hypotheticals." Br. for United States 36, *United States v. Taylor*, No. 20–1459 (U.S. Sept. 7, 2021), *available at* 2021 WL 4121414. The Supreme Court heard that argument and not only rejected it 7–2, but devised its own hypothetical to reach that holding. *Taylor* binds this Court, and that decision's example (deploying a hypothetical to establish categorical overbreadth) leads the way here.

Here, the defense has identified hypothetical conduct that would satisfy § 249(a)(1)(B)(i) but not § 924(c)(3)(A): A person sets himself on fire ("causes bodily injury to any person"), to express his racist ideology or stoke racial hatred in society ("because of the ... race of any person"), and a firefighter responding to the scene catches fire and dies ("death results"). Mot. 11–12, 17. Now, add to that hypothetical conduct one more fact: The person who immolates himself believes that his conduct is unlawful. Indeed, take the hypothetical further still and posit that the person who immolates himself with racist motives not only grasps the general illegality of his actions, but has read the HCPA and believes that his conduct violates that very statute.

There is no doctrinal reason why this scenario cannot be employed to identify conduct that could "hypothetically" violate § 249(a)(1)(B)(i), including the statute's "willfully" element, yet "fall short of the use, attempted use, or threatened use of force against another person or his property." *McCoy*, 58 F.4th at 74. *Taylor* requires the use of the categorical approach, and that decision itself expressly uses a hypothetical to illustrate overbreadth. The government not only

14

concedes that the realistic probability test is inapplicable, but also concedes that a defense win in *Delligatti v. United States*, No. 23–825 (U.S.), would require dismissal here. 11/15/24 Tr. 19. The culpable omission hypothetical that would drive that outcome—presumably, a parent refusing to provide food or medical care to a dependent child out of racial antipathy toward the child, resulting in the child's death—is just as plausible as the one that the defense has proposed here. Thus, as the government accepts, consideration of the defense's hypotheticals is proper. And a faithful application of controlling precedent compels dismissal of the capital counts.

## CONCLUSION

Section 249's "willfully" *mens rea* does not alter the conclusion that an act of self-harm can violate the statute. Section 249(a)(1)(B)(i) is therefore categorically broader than § 924(c)(3)(A)'s elements clause, which requires violence against the person or property "of another." Accordingly, this Court should dismiss Counts 11–20 for failure to state an offense.

Dated:     February 28, 2025
           Buffalo, New York

                                        *s/Daniel Habib*
                                        Daniel Habib
                                        Attorney-in-Charge, Appeals Bureau
                                        Federal Defenders of New York, Inc.

                                        *s/Sonya A. Zoghlin*
                                        Sonya A. Zoghlin
                                        Assistant Federal Public Defender

                                        *s/MaryBeth Covert*
                                        MaryBeth Covert
                                        Senior Litigator

                                        *s/Julie Brain*
                                        Julie Brain
                                        Julie Brain, Attorney at Law

*s/Monica Foster*
Monica Foster
Executive Director
Indiana Federal Community Defenders Inc.