UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

UNITED STATES OF AMERICA,

       v.                                                                                             22-CR-109 (LJV)

PAYTON GENDRON,

                Defendant.

———————————————————————

### RESPONSE TO GOVERNMENT'S MOTION TO ESTABLISH PROCEDURES FOR 12.2 PROCEEDINGS

Payton Gendron, by and through his attorneys, respectfully submits this Response to the government's Motion to Establish Procedures for 12.2 Proceedings, (ECF No. 270). The parties are in substantial agreement regarding the procedures that should be followed pursuant to Fed. R. Crim. P. 12.2(b). The defense notes and addresses the areas of disagreement herein and urges the Court to adopt the government's procedures with the proposed modifications.[1]

### APPLICABLE CONSTITUTIONAL PRINCIPLES

If Payton Gendron wishes to introduce expert evidence of his mental condition during the penalty phase of his capital trial, he is required to first give notice of that fact to the government. Fed. R. Crim. P. 12.2(b). The filing of such notice then allows the government to move the Court for an opportunity to conduct its own involuntary, compelled examination of him by its own retained expert for the purpose of developing expert rebuttal evidence. Fed. R. Crim. P. 12.2(c). A court order directing Payton Gendron to submit to an examination by a mental health professional retained by the government directly implicates his constitutional rights under both

---

[1] Notably, these procedures will only become relevant if the defense elects to introduce evidence of Payton Gendron's mental condition during the potential penalty phase of his trial and, as a result, files notice pursuant to Fed. R. Crim. P. 12.2 (b).

the Fifth and Sixth Amendments. "The Fifth Amendment . . . commands that no person shall be compelled in any criminal case to be a witness against himself." *Estelle v. Smith*, 451 U.S. 454, 462 (1981) (internal alterations omitted). The availability of the Fifth Amendment privilege depends not on the setting in which the statements are compelled, but on the nature of those statements and the consequences that may flow from making them. *Id.* In *Smith*, as would be the case here, the statements the defendant made during an examination by the prosecution's expert were used against him in the penalty phase of his capital trial. *Id.* The potential consequence of what he told the examiner was thus "the ultimate penalty of death." *Id.* The Fifth Amendment thus applies with equal force to a compelled mental health evaluation as to testimony by the defendant at trial, *id.* at 463, and custodial interrogation by police, *id.* at 467.

To be sure, a defendant can be deemed to have at least partially waived his Fifth Amendment privilege under some circumstances. One such circumstance is when he asserts and exercises his right to present expert mental health evidence on his own behalf. *Kansas v. Cheever*, 571 U.S. 87, 94 (2013); *Buchanan v. Kentucky*, 483 U.S. 402, 423-24 (1987). In such a case, the Fifth Amendment is not violated by the use of a compelled government examination for "the limited purpose of rebutting the defendant's evidence." *Cheever*, 571 U.S. at 97; *see also Buchanan*, 483 U.S. at 424 (finding no Fifth Amendment violation where excerpts of report were used for "limited rebuttal purpose").

The scope of the defendant's waiver, and therefore what constitutes appropriately limited rebuttal, is determined in the same way that courts determine the scope of the waiver when a defendant elects to take the stand at trial and testify on his own behalf. *Powell v. Texas*, 492 U.S. 680, 684 (1989) (per curiam) (holding that "defendant's use of psychiatric testimony might constitute a waiver of the Fifth Amendment privilege, just as the privilege would be waived if the

defendant himself took the stand"); *Cheever*, 571 U.S. at 94 (permitting government to present limited rebuttal testimony "harmonizes with the principle that when a defendant chooses to testify in a criminal case, the Fifth Amendment does not allow him to refuse to answer related questions on cross-examination").

Accordingly, a defendant waives the privilege "as to matters he himself has put in dispute." *Brown v. United States*, 356 U.S. 148, 156 (1958). The defendant "determines the area of disclosure and therefore of inquiry." *Id.* at 155. The "breadth of his waiver is determined by the scope of the relevant cross-examination." *Id.* at 154-55. In the case of psychiatric testimony, a defendant waives his Fifth Amendment privilege with respect to those issues that his own experts' testimony put in dispute. The Constitution then permits the government to use statements made by the defendant to its own expert witness to the extent necessary to rebut those issues.

A compelled examination by a government expert must also separately comport with the strictures imposed by the Sixth Amendment right to counsel. It is well-established that a criminal defendant has "a Sixth Amendment right to the assistance of counsel before submitting to [a] pretrial psychiatric interview." *Smith*, 451 U.S. at 469. He is entitled to counsel's assistance "in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed." *Id.* at 471. The Supreme Court recognizes that, in a capital case, this decision "is literally a life or death matter [that] is difficult even for an attorney, because it requires a knowledge of what other evidence is available, of the particular psychiatrist's biases and predilections and of possible alternative strategies at the sentencing hearing." *Id.* (internal quotations and alterations omitted). A defendant may therefore

"not be forced to resolve such an important issue without 'the guiding hand of counsel.'" *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 69 (1932)).

The right to the assistance of counsel in this context means that a defendant has the right to discuss the examination and its scope with his lawyers prior to deciding whether to submit to the procedure. *Buchanan*, 483 U.S. at 424. Additionally, in order to ensure that counsel's advice is effective, it must be "based on counsel's being informed about the scope and nature of the proceeding . . . [and] counsel's awareness of the possible uses to which [defendant's] statements in the proceeding could be put." *Id.* at 424-25. *See Powell*, 287 U.S. at 685-86 (finding Sixth Amendment violation where prosecution used defendant's statements from a psychiatric evaluation addressing future dangerousness when neither defendant nor his counsel were informed that the evaluation would encompass the topic).

## THE GOVERNMENT'S PROPOSALS

### A.   The Required Contents of Payton Gendron's R. 12.2 Notice

As noted above, if the defense intends to present expert evidence of mental condition, it is required to file written notice. Fed. R. Crim. P. 12.2(b). Rule 12.2 does not, however, require that the notice include any information other than the phase of the trial at which the evidence may be introduced. The government relies on *United States v. Sampson*, 335 F. Supp. 2d 166, 241-43 (D. Mass. 2004), in support of its request that Payton Gendon be required to include in his notice "the type(s) of expert(s) that have or will examine the defendant, as well as the type(s) of examination(s) that were or will be conducted." (ECF No. 270 at 4.)

In *Sampson*, the district court ultimately approved an agreement between the parties pursuant to which the defense voluntarily consented to supplement its notice to include "the kinds of mental health professionals who have evaluated [the defendant] . . . as well as the

4

specific nature of any testing that these experts have performed." *Id.* at 242. Prior to that agreement, however, the court held that the original notice filed by the defendant, which merely repeated the language of the Rule and stated that "he may introduce, at the penalty phase of this capital case, expert evidence relating to a mental disease or defect or any other mental condition bearing on the issue of punishment," was sufficient to satisfy the notice requirement. *Id.* at 241-42.

Payton Gendron nevertheless agrees that, in this case, imposing a requirement that he file notice that includes the types of experts that have examined him and the types of examinations that were conducted will promote efficient resolution of issues that may arise in connection with the Rule 12.2 process and he therefore has no objection thereto.

### B. The Required Contents of the Government's Motion for Rebuttal Examination

If the defense files notice, the government may then move the Court to exercise its discretion to grant permission to conduct a rebuttal examination of Payton Gendron by its own retained expert. R. 12.2(c)(2) ("the court *may*, upon the government's motion, order the defendant to be examined under procedures ordered by the court") (emphasis added). The government proposes that its motion for leave to conduct such an examination be required to specify: (1) the names and qualifications of its proposed expert; (2) a description of the general nature of the examination to be conducted; (3) the time and location of the proposed examination; (4) a request, if any, for permission to record the examination; and (5) a request for discovery of items such as medical records, raw testing data and any imaging/scans relied upon by defense experts. (ECF No. 270 at 5-7.) The defense will address each proposal in turn below.

      **1.**      **The Motion Should Provide the Proposed Expert's Name and Qualifications.**

The defense agrees with the government's proposal that it be required to include in its motion for rebuttal examination the name and qualifications of the mental health professional that it has retained to conduct the examination. (ECF No. 270 at 5.) The government also asserts a "right" to have more than one individual examine Payton Gendron. *Id.* at 5. The government should be required to provide detailed justification for each examination it seeks and for any request to use multiple examiners, to ensure that its proposed examinations are reasonably necessary to rebut the defense expert evidence of mental condition and are neither beyond that limited scope nor duplicative. *See, e.g., United States v. Fell*, 372 F. Supp. 2d 753, 761 (D. Vt. 2005) ("Rule 12.2 gives the government the ability to select one expert, not three"). If the government seeks multiple rebuttal examinations, the defense will address the request as appropriate in its response to the motion after the identities and qualifications of the proposed examiners have been disclosed.

      **2.**      **The Motion Should Include the Referral Question Posed to Each Proposed Expert, a Description of the General Nature of the Examination, and a Complete List of Any Tests its Experts Propose to Administer No Later than Two Weeks Prior to the Evaluation.**

The government proposes that its motion for rebuttal examination be required to include "[a] description of the general nature of examination(s) to be conducted by the government expert(s)." (ECF No. 270 at 5-6.) It adds that it may also include a list of the tests that its experts propose to administer, but that it may not be possible to compile such a list before filing the motion. *Id.* at 5. It does commit to furnishing the defense with a list of tests "at least five days prior to examination," but proposes that the list be provisional only, leaving its examiners free to administer tests for which notice has not been given at their sole discretion. *Id.* at 5-6.

The defense is sympathetic to the government's request that it not be required to provide a list of tests to be administered in its motion for rebuttal examination and is agreeable to receiving the list at a later date which is at least 14 days prior to the examination, should one be ordered. A minimum of 14 days' advance notice is required in order to allow defense counsel to review the list with their experts, assess the appropriateness of the proposed examination procedures, raise and receive rulings on any appropriate objections and fully discuss the resulting scope of the examination with their client in accordance with the Sixth Amendment. *See, e.g., Ciancia*, 2015 WL 13798684 at *1 (ordering government to provide list of "any tests to be administered at least two weeks in advance of the proposed examination").

The defense objects, however, to the government's request to leave the scope of the examination open-ended by permitting its examiners the option to administer tests for which notice has not been provided. As discussed above, the Sixth Amendment right to the effective assistance of counsel requires that Payton Gendron be afforded the opportunity to consult with counsel who has been fully informed of the nature and scope of the proposed government examination before deciding whether to waive his Fifth Amendment privilege and submit to it. Counsel must therefore be apprised in advance of all testing instruments that the government examiner is authorized to administer. The government cites no authority for its proposal, and the defense is unaware of any case in which such a procedure has been followed.[2] To the contrary, courts routinely order that defense counsel be provided in advance with a list of tests on Sixth Amendment grounds. *See also, e.g., United States v. Christensen*, No. 17-cr-20037, 2019 WL

---

[2] The government cites *Bowers*, 2023 WL 3309432, at *9, and *Sampson*, 335 F. Supp. 2d at 246, in its Motion, (ECF No. 270 at 6), but correctly notes that, in both cases, it was ordered to furnish the defense in advance with the list of tests its rebuttal experts proposed to administer.

1272912, *2 (C.D. Ill. Apr. 11, 2019); *United States v. Richardson*, No. 08-CR-139, 2010 WL 11665018, *8 (N.D. Ga. July 12, 2020); *United States v. Johnson*, 362 F. Supp. 2d 1043, 1085 (N. D. Iowa 2005); *United States v. Taylor*, 320 F. Fupp. 2d 790, 791 (N.D. Ind. 2004).

In the unlikely event that the rebuttal examiner concludes during his or her examination that use of a previously unidentified testing instrument is necessary, (ECF No. 270 at 5-6), he or she can seek permission to schedule a second interview of Payton Gendron for that purpose. *See Bowers*, 2023 WL 3309432 at 9 (ordering that if government's expert "determines that additional testing is necessary, he may request the Court's leave to conduct such testing"). The Court should order that the rebuttal examiner submit any such request directly to the Court, in writing, without consulting or communicating any information to counsel for the government.[3] The defense should be given an opportunity to respond and the examiner prohibited from administering the test until such time as the Court has issued a ruling on the matter.

The defense also requests that the government be directed to include in its motion for rebuttal examination the referral question that it will ask its examiner to answer. *See Christensen*, 2019 WL 1272912 at *2 (ordering advance disclosure of nature and scope of rebuttal examination including "the referral question"). A carefully defined referral question is a vital component of a competent and ethical forensic mental health examination. *See, e.g.,* Karen C. Kalmbach and Phillip M. Lyons, *Ethical Issues in Conducting Forensic Evaluations*, 2 Applied Psychol. in Crim. Just. 261, 285, 287 (2006) (recommending that forensic examiners "upon

---

[3] The rebuttal examiner should be ordered to follow this procedure because the issue will arise, if at all, only after the examiner has already conducted the bulk of his or her examination of Payton Gendron and extracted extensive statements from him that are subject to Fifth Amendment protections. His or her request for permission to administer a particular instrument will likely convey information about the examination to which the government is not entitled until after the entry of a guilty verdict and reaffirmance of the intent to offer expert mental condition evidence by the defense. *See* Fed. R. Crim. P. 12.2(c)(3).

acceptance of a case, immediately seek to . . . clarify the referral questions from the requesting party" and noting "[t]he importance of clarifying roles and defining the referral question at the beginning of the process is paramount and can reduce the likelihood of subsequent problems"); American Academy of Child and Adolescent Psychiatry, *Practice Parameter for Child and Adolescent Forensic Evaluations,* 50 J. of Am. Acad. Of Child & Adol. Psychiatry 1299, 1305, 1309 (2011) (noting that report of forensic evaluation "should document . . . the forensic question being addressed . . . the forensic opinion on the questions asked; and the reasoning used in moving from the data to the opinion," and that "only the questions asked within the court order or in the letter from the referring attorney should be addressed"); Shane S. Bush, Mary A. Connell, and Robert L. Denney, *Ethical Practice in Forensic Psychology: A Systematic Model for Decision Making*, 95 (APA 2009) ("psychological evaluations conducted in criminal settings often have quite specific referral questions . . . it is prudent to limit the scope of documented opinions regarding such matters to the referral question, as well as the underlying clinical basis for the opinion"); *Roybal v. Davis*, 148 F. Supp. 3d 958, 1068 (S.D. Cal. 2015) (discussing expert testimony regarding role of referral question in forensic mental health assessment in capital case).

Requiring a clearly stated referral question is therefore consistent with professional practice in forensic settings and will further protect Payton Gendron's Sixth Amendment rights by helping to ensure that defense counsel have meaningful notice of the scope and nature of the proposed examination.

### 3. The Motion Should Include the Time and Location of the Requested Rebuttal Examination of Payton Gendron.

The defense agrees with the government's proposal that it be required to include in its motion for rebuttal examination the time and location of the proposed examination. (ECF No.

9

270 at 6.) If, as the government anticipates, its request is for the examination to take place "in a closed room at the location the defendant is detained," *id.*, the defense would have no objection. In the event that an alternative location is proposed, the defense will address the request in response to the motion.

### 4.   The Motion Should Include a Request, if Any, for Video And/Or Audio Recording of the Evaluations

The defense agrees with the government's proposal that it be required to include in its motion for rebuttal examination any request for permission to video and/or audio record the examination. (ECF No. 270 at 7.) The defense objects to any video or audio recording of the rebuttal examination if such an examination is ordered. In the event that the government were to make such a request, the defense would address the matter in response to the motion.

### 5.   A Request, if Any, for Discovery of Medical Records, Raw Data and Imaging/Scans

The government proposes to include in its motion "[a] request, if any, for medical records, raw data from psychological testing by defense experts, and any imaging/scans created by or relied upon by defense experts (e.g., CT, MRI, PET, etc.). (ECF No. 270 at 7.) In the event that the government's motion includes such a request, we will address the matter in response to the motion.

## B.   Procedures for Disclosure of Reports and Results of Government and Defense Examinations

The defense agrees with the government's proposals regarding the procedures for disclosure of expert reports and results, (ECF No. 270 at 7-9), with two exceptions. First, the government's proposal imposes no time frame in which the rebuttal expert's report must be filed under seal with the Court. *Id.* at 7, ¶ 1. The defense requests that the Court order the report of the rebuttal expert to be filed with the Clerk of Court, according to the procedure outlined by the

government, *id.* at 7, ¶ 1, within 14 days of the completion of the rebuttal examination of Payton Gendron. *See, e.g., United States v. O'Reilly*, No. 05-80025, 2010 WL 653188, *3 (E.D. Mich. Feb. 19, 2010) (ordering that "[r]ebuttal experts must file their results, incorporated into reports . . . within 15 days after completion of the rebuttal examination(s)"); *United States v. Ciancia,* No. CR13-902 PSG, 2015 WL13798684, *1 (C.D. Cal. May 13, 2015) (same); *United States v. Smith*, No. 16-cr-86-SLG, 2019 WL 11863700, *2 (D. Alaska July 31, 2019) (requiring rebuttal expert reports to be sealed and filed with court within 35 days after completion of rebuttal examination of defendant).

Second, the defense objects to the government's proposal that, if the defense reaffirms its intent to introduce expert evidence regarding mental condition at the penalty phase within 24 hours of a guilty verdict, the Court will release the previously sealed reports of the government experts "to counsel for the defense *and* government as soon as practicable." *Id.* at 8, ¶ 2 (emphasis added). This proposed course of action is contrary to the terms of Rule 12.2, which affords the defense an opportunity to withdraw its reaffirmed intent to offer expert mental condition evidence after it receives the government expert's report and before being required to disclose the reports of its own experts. *See* Fed. R. Crim. P. 12.2(c)(3) ("*After* disclosure under Rule 12.2(c)(2) of the results and reports of the government's examination, the defendant must disclose to the government the results and reports . . . [of] the defendant's expert") (emphasis added). In light of this provision, it would make little sense under the framework of the Rule and the constitutional interests it is designed to protect to permit the government to access the report of its expert at the same time that the report is disclosed to the defense. For, if the defense decides to withdraw its intent after reviewing the government's report, as it is fully entitled to do, the government will have had unjustified access to the information in its expert's report. The

11

government's proposal thus runs an unnecessary risk of triggering a *Kastigar*-type inquiry, i.e., that because of its "early access to the accused's statements, [the government] will be required to show that it has not made any derivative use of that evidence," a process that "can consume time and resources." *Id*. Committee Notes on Rules – 2002 Amendment (citing *United States v. Hall*, 152 F.3d 381, 398 (5th Cir. 1998)).

Instead, the Court should adopt the procedure utilized by the district court in *Smith,* 2019 WL11863700. There, the court ordered:

> If the defendant is found guilty of one or more capital crimes, defendant shall, **within 24 hours** of the verdict, file notice confirming or withdrawing his intent to introduce expert evidence relating to mental condition during sentencing proceedings. If defendant confirms his intent to introduce expert evidence relating to mental condition at sentencing, the reports of any examination by government experts shall be released to counsel for the defendant immediately, that same business day . . . The defendant shall have **five (5)** business days after receiving the government experts' report(s) to either re-confirm his intent to present mental health evidence, or to withdraw his notice . . . If the defendant re-confirms his intent to present mental health evidence, the government reports shall then be turned over to counsel for the government . . . [and] the defendant shall provide to the government any report from any examination on mental condition conducted by a defense expert about which the defense intends to introduce expert evidence . . .

*Id.* at *2 (emphases in original) (internal citations omitted). The same procedure was adopted by the district courts in *Ciancia*, 2015 WL 13798684 at *2 (requiring disclosure of rebuttal expert's report first to defense only and then, if the defense reaffirms its intent to present expert evidence, to government along with defense experts' reports within 24 hours), and *United States v. Bowers*, No. 18-292-RJC, 2023 WL 4359465, *2 (W.D. Pa. May 8, 2023) (requiring disclosure of rebuttal expert's report to defense only immediately upon return of a guilty verdict and then, if defense thereafter reaffirms its intent to present expert evidence within 24 hours, to government along with defense experts' reports within 48 hours of verdict). This Court should follow suit and order disclosure of the rebuttal expert's report only to defense counsel upon their reaffirmance of intent

12

to present expert mental condition evidence following a guilty verdict. Thereafter, unless the defense withdraws its notice of intent within 48 hours after reviewing the rebuttal expert's report, that report will be disclosed to the government along with the reports of the defense experts.

### **ADDITIONAL DEFENSE PROPOSALS**

The Court should order that defense counsel be permitted to be on the premises and available for consultation during the government's rebuttal examination in the event that Payton Gendron requests the opportunity to speak with them. The Court should further direct that defense counsel be provided with the ability to monitor the government's rebuttal examination as it occurs via live, unrecorded audio and visual feed.

Defense counsel request permission to be present on the premises of the rebuttal examination while it is being conducted so that they are available to Payton Gendron if he wishes to consult with them. This accommodation was granted both in the non-capital context in *Holmes*, 2020 WL 5414786, at *3 (citing *Hess v. Macaskill*, 67 F.3d 307 (9th Cir. 1995)), and in the most recently tried federal capital case, *United States v. Bowers*, No. 18-292-RJC, 2023 WL 4359690, * 4 (W.D. Pa. May 16, 2023) (permitting counsel's presence in order to consult with defendant during breaks).

The Court should also direct that counsel be permitted to observe the examination from outside the examination room via a live, unrecorded visual and audio feed. A live feed such as that requested here was ordered by the district court in *United States v. Kaczynski*, No. CR-S-96-259GEB, 2003 WL 2737559, *4 n.5 (E.D. Cal. June 4, 2003) ("The government is directed to provide defense counsel or their representatives a live audio feed of the examination. If requested by Kaczynski, the government shall also provide defense counsel or their representatives a live visual feed of the examination, which will not be recorded by either party."). The defense

submits that this solution strikes an appropriate balance between the government's desire for its expert to conduct an examination outside the presence of defense counsel, (ECF No. 270 at 21-22), and the important defense interest in effectively litigating any challenges to the admissibility of portions of the rebuttal examination after the fact. *See, e.g., United States v. Holmes*, No. 18-cr-258-EJD, 2020 WL 5414786, *4 (N.D. Cal. Sept. 9, 2020) (noting that observing the examination (there, via video recording) "'provides the defense with the tools necessary to act if a government evaluation intrudes upon [the defendant's] rights,'" and "facilitate[s] bringing any such issues to the Court, as well as an efficient and fair adjudication of those issues") (quoting *United States v. Fell*, 2015 WL 13781291, at *2 (D. Vt. Oct. 9, 2015)). The provision of a live feed appropriately evens the playing field for litigation by affording defense counsel access to information about the examination process that otherwise only the government's expert has. And it does so without exposing Payton Gendron to the risk that the government will gain an outsize and unjustified advantage by playing for the jury portions of the recording that show him making any statements that it deems particularly prejudicial and supportive of its case for death. *See, e.g., United States v. Coonce*, 923 F.3d 623, 636-37 (8th Cir. 2019) (describing government's use at penalty phase of portions of videorecording of defendant's examination by Dr. Park Dietz in which defendant discussed his involvement in the charged homicide).

      Courts who have rejected defense requests for access to a live feed of the government's rebuttal examination have done so on the ground that affording counsel the opportunity to interrupt the examination and object to particular lines of questioning would be unfairly disruptive. *See, e.g., Bowers*, 2023 WL 3309432, at *10 (denying defense request for access to live feed because proposal "'still leaves us with the problem that the defense might pose objections, and that those objections . . . would interfere with the examinations'") (quoting

*United States v. Wilson*, 920 F. Supp. 2d 287, 305-06 (E.D.N.Y. 2012)). Here, counsel for Payton Gendron make no request for the opportunity to contemporaneously object and agree to observe the live feed in silence and remain outside of the examination room at all times.

## **CONCLUSION**

For the foregoing reasons, Payton Gendron respectfully requests that the Court enter an order adopting the government's proposed procedures for Rule 12.2 proceedings with the requested modifications and additions.

Dated: March 3, 2025
Buffalo, New York

>
> Respectfully submitted,
>
> *s/Sonya A. Zoghlin*
> Sonya A. Zoghlin
> Assistant Federal Public Defender
>
> *s/MaryBeth Covert*
> MaryBeth Covert
> Senior Litigator
>
> *s/Julie Brain*
> Julie Brain
> Attorney at Law
>
> *s/Monica Foster*
> Monica Foster
> Indiana Federal Community Defenders, Inc.