UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

PAYTON GENDRON,

        Defendant.

22-CR-109-LJV
DECISION & ORDER

---

      Before this Court are Payton Gendron's requests for grand jury records under the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861-1878 ("JSSA"). *See* Docket Items 10 and 262. This Court previously granted many of Gendron's requests. *See United States v. Gendron*, 2024 WL 3439502 (W.D.N.Y. July 17, 2024); Docket Items 211 and 214. At issue now is Gendron's letter dated December 20, 2024, with "further JSSA requests." *See* Docket Item 262 at 1.[1] Having considered the parties' earlier briefing and oral argument on these issues, *see* Docket Items 10, 17, 18, and 212, this Court grants Gendron's requests in part and denies them in part for the following reasons.

## **BACKGROUND**

      On July 14, 2022, a grand jury impaneled on March 25, 2022 (the "March 2022 grand jury"), returned an indictment against Gendron. Docket Item 6. A week later, Gendron requested access to grand jury records so that he could bring a motion under the JSSA. Docket Item 10. Gendron originally made 27 requests for records. Docket

---

[1] Page numbers in docket citations refer to ECF pagination.

Item 10-1 at 4-6. Since then, he has submitted written questions to the Jury Administrator, *see* Docket Items 155 and 261, who has provided written responses, *see* Docket Items 169, 184, and 261-1.

On October 17, 2024, after this Court granted many of Gendron's record requests, the Jury Administrator met with the parties and the Chief Deputy Clerk of the Court to answer outstanding questions. *See* Docket Item 262 at 1. For some of Gendron's questions, the Jury Administrator explained that a vendor who creates the Jury Wheel may have the answers. *See* Docket Item 261-1 at 2, 4; Docket Item 262 at 2-3. On November 18 and 19, 2024, defense counsel and a defense jury pool consultant inspected juror questionnaires at the courthouse under this Court's order. *See* Docket Item 214; Docket Item 262 at 1.

In light of the October meeting and the November inspection, on December 20, 2024, Gendron wrote a letter to this Court with "additional requests for disclosure" related to some of the original 27 requests. *See* Docket Item 262. On December 31, 2024, in response to questions from the Court, Gendron informally provided an update about requests that were not addressed in the letter. Based on his letter and the informal update, it appears that requests 9 and 22 are now resolved. *See id.* at 3. The remaining requests fit into two categories: (1) follow-up questions about items that this Court ordered to be produced and (2) requests on which this Court has not yet ruled.

## **DISCUSSION**

Under the JSSA, a defendant may "move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand . . . jury." 28 U.S.C. § 1867(a). "The parties

2

in a case shall be allowed to inspect, reproduce, and copy . . . records or papers [used in connection with the jury selection process] at all reasonable times during the preparation and pendency of such a motion." *Id.* § 1867(f).  Litigants have "essentially an unqualified right to inspect jury lists." *Test v. United States*, 420 U.S. 28, 30 (1975). But this "unqualified right to records or papers encompasses only such data as a defendant needs to challenge the jury selection process." *United States v. Pirk*, 281 F. Supp. 3d 342, 344 (W.D.N.Y. 2017) (alteration, citation, and internal quotation marks omitted).

I.     **FOLLOW-UP REQUESTS**

   A.     **AO-12s (pertaining to original requests 6 and 7)**

Gendron previously raised an issue about the census numbers in the AO-12 forms, and the Jury Administrator provided three updated AO-12 forms.  *See* Docket Item 262 at 1-2.  But Gendron "believe[s] that [the three forms] still contain incorrect census numbers"; more specifically, he says that the "form calls for the numbers for United States citizens only," but the current numbers are for the total population, including noncitizens.  *Id.*

Order:  Gendron's request for additional information is GRANTED.  The Jury Administrator shall address this issue and provide a response and explanation.  If the Jury Administrator determines that the census numbers are incorrect, he shall disclose updated AO-12 forms with correct census data.

B.     **Juror Questionnaire Information (pertaining to original requests 24 and 25)**

Gendron requests 14 juror questionnaire forms that he identified as missing when inspecting jury records at the courthouse. *Id.* at 4. The Jury Administrator produced the questionnaire associated with one form that Gendron still identifies as missing (100904194), and he explained that there were no questionnaires for some others because, for example, two people are deceased. *See* Docket Item 261-3 at 1.

But it seems that there still may be some missing questionnaires. The Jury Administrator did not immediately search for these during the inspection because the defense consultant said that it might be unnecessary. Defense counsel now requests them. Docket Item 262 at 4.

Gendron also asks for "questionnaire forms and associated Juror identification numbers" for several "missing pool sequence numbers." *Id.* During the inspection, the Jury Administrator explained that each of these numbers was associated with someone who deferred juror service, *see* Docket Item 261-3 at 1, and that he had no questionnaire or juror identification number for any of them.

Order: Gendron's request for additional information is GRANTED in part and DENIED in part. The Jury Administrator shall attempt to locate outstanding questionnaires, but Gendron's request is denied to the extent that, for some requests, it appears that no questionnaires exist. If the Jury Administrator locates outstanding questionnaires, he shall provide copies with personal identifying information redacted.[2]

---

[2] Personal identifying information includes names, addresses, and birth days and months but not birth years. Because this order involves a small subset of records, this Court finds that it would not be burdensome to redact personal identifying information

4

Additionally, the Jury Administrator shall provide an answer to Gendron's questions: "Are people being deferred into the master jury wheel for the grand jury? If so, who?" *See* Docket Item 262 at 4. And if there are questionnaires of "deferred individuals[]" that were not yet disclosed and that the Jury Administrator can identify, he shall provide them with personal identifying information redacted. *See id.*

If the Jury Administrator does not locate any or all outstanding records, he shall provide a written description of the search that he completed and any other relevant explanation.

## II.    PENDING REQUESTS

### A.    Written Instructions (pertaining to original request 11)

Gendron originally requested "[a]ny additional written instructions as provided by the Court as described in the Jury Selection Plan section titled Method and Manner of Random Selection." Docket Item 10-1 at 4. The Jury Plan says that "the operator of the computer" that provides random selection of grand jurors "shall comply" with "such additional written instructions as provided by the [c]ourt." *U.S. District Court for the Western District of New York Jury Plan* 3-4 (Apr. 2018) ("*Jury Plan*"). Gendron is seeking those "additional written instructions." *See* Docket Item 10-1 at 4.

In response to specific inquiries from defense counsel, the Jury Administrator confirmed that there may be relevant documents, some of which involve the vendor who creates the Master Jury Wheel. *See* Docket Item 261-1 at 1-2. Gendron now seeks those items. *See* Docket Item 262 at 2. Specifically, he requests "disclosure of

---

for any missing questionnaires and that redaction is more prudent than inspection at the courthouse.

documents, including communications and attachments between the vendor and the Jury Administrator/Clerk that are responsive to our requests under Item 11"; written instructions from the vendor about the process used to create the Master Jury Wheel; and information about changes to the process of creating the jury wheel. *Id.*

### 1. Documents and Vendor Instructions

Because it is typical for courts to disclose information about how jury wheels are created, and because this information is relevant and necessary to a potential JSSA motion, the Clerk's Office shall provide it to Gendron. *See, e.g.*, *United States v. Warshak*, 2007 WL 3406998, at *4 (S.D. Ohio Nov. 13, 2007) ("[T]he interests of justice mandate the disclosure" of "[a]ll policies, rules, regulations, procedures, manuals, or other written instructions created or maintained by the Clerk's Office for selecting and compiling jury wheels and juries."); *see also United States v. Miller*, 116 F.3d 641, 657 (2d Cir. 1997) (explaining that jury administrator had testified in district court about creation of jury wheel).

Furthermore, when outside vendors have created the jury wheel, courts have ordered disclosure of communications with the vendors and descriptions of the work that the vendors had completed. *See, e.g.*, *United States v. Todd*, 2020 WL 5981673, at *3 (E.D.N.Y. Oct. 8, 2020) (granting request for "[a] description of work done . . . and communications with any vendors in the creation of the Master . . . Jury Wheel[] used to summon grand jurors in this case" to the extent that the documents were retained for the particular grand jury that returned the defendant's indictment); *United States v. Corbett*, 2020 WL 5803243, at *4-5 (E.D.N.Y. Aug. 21, 2020) (ordering similar disclosure). Therefore, Gendron's requests for documents about the creation of the

Master Jury Wheel, including written instructions from the vendor, are granted, as explained in detail at the end of Section II.A, *infra*.

### 2. Changes to the Process of Creating Jury Wheel

The Jury Administrator previously said that in making the wheel used to create the March 2022 grand jury, there were "[n]o changes from [the] previous year," Docket Item 261-1 at 2. When meeting with the Jury Administrator, defense counsel asked whether that response applied to "other years" as well, and the Jury Administrator was unsure. *See* Docket Item 262 at 2. Gendron now requests an answer to his question about whether there were changes in other years.[3] *Id.* He also wants to know—"in connection with" his request for a description of "any changes in the construction of the Master Jury Wheel from previous Master Jury Wheels"—"whether [the vendor] has information relating to the process he used to create the Master Jury Wheel." *Id.*

As for historic data generally, Gendron has argued that information about other years is relevant to the issue of whether any exclusion of groups from the jury venire was "systematic." Docket Item 18 at 3-4. To make a fair cross-section claim under the JSSA, a defendant must—among other requirements—prove that a group's "underrepresentation [in jury venires] is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364 (1979); *see also United States v. LaChance*, 788 F.2d 856, 864 (2d Cir. 1986) ("[T]he *Duren* test governs fair cross[-]section challenges under both the [JSSA] and the [S]ixth [A]mendment.").

---

[3] Gendron's letter does not suggest a time frame for his questions about changes to procedures. In the meeting with the Jury Administrator, however, defense counsel requested an answer for six years, aligning with this Court's order that the Jury Administrator release six years of AO-12s. *See* Docket Item 214.

"[P]ersistent disparities over a significant period of time may 'indicate that the cause of the underrepresentation is systematic,'" although the "persistence of disparities by itself" does not prove systematic exclusion. *United States v. Slaughter*, 110 F.4th 569, 583 (2d Cir. 2024) (alterations and emphasis omitted) (quoting *Duren*, 439 U.S. at 366). Gendron therefore suggests that information about changes to the construction of the Master Jury Wheel are relevant and necessary to prove any systematic exclusion. Docket Item 18 at 3-4.

There is little relevant precedent about the disclosure of broad information about procedural changes. The closest cases that this Court has found were limited to particular juries and topics. For example, in *United States v. Crider*, 2021 WL 4226149 (S.D. Cal. Sept. 15, 2021), the district court held that a defendant was "entitled to any and all information concerning any procedural changes provided to [one g]rand [j]ury as a result of the [COVID-19] pandemic." *Id.* at *9. Indeed, this Court already granted Gendron's request for records about changes to procedures "because of the Covid-19 pandemic." *See* Docket Item 10-1 at 4; *Gendron*, 2024 WL 3439502, at *2; Docket Item 214.

Nevertheless, and despite the lack of precedent, this Court will grant Gendron's request. Because persistent disparities are relevant to fair cross-section claims, and because changes over six years may help the parties interpret trends in the six AO-12s already disclosed, those records are relevant to any argument Gendron might raise regarding systematic exclusion.

Order: Gendron's request for additional information is GRANTED. The Jury Administrator shall provide all records of communications, including written

communications such as emails and attachments, between the Clerk's Office and the vendor that are responsive to Gendron's request for "[a]ny additional written instructions as provided by the Court as described in the Jury Selection Plan section titled Method and Manner of Random Selection." Docket Item 10-1 at 4; *see* Docket Item 262 at 2.

To complete this response, Clerk's Office staff who communicate with the vendor about the creation of the jury wheel (1) shall review all retained written communications with the vendor that pertain to the creation of the Master Jury Wheel used for the March 2022 grand jury, and (2) shall disclose those documents that constitute "instructions" from the court about how that Master Jury Wheel should be created as well as descriptions and specifications from the vendor about how the Master Jury Wheel was created. If the instructions were to follow instructions given in earlier years, then to the extent that the earlier instructions were retained, those records shall be produced as well. If there are no such documents, the Jury Administrator shall provide a description of the search that was completed.

Additionally, the Jury Administrator shall answer, to his knowledge, whether, and if so how, the process of creating the Master Jury Wheel has changed within a six-year period—that is, beginning four wheels before the wheel used to create the March 2022 grand jury and ending one wheel after that wheel.

Finally, the Jury Administrator shall seek a written response from the vendor that (1) describes or specifies how the Master Jury Wheel that was used for the March 2022 grand jury was created and (2) states, to the vendor's knowledge, whether, and if so how, the process of creating the Master Jury Wheel has changed within the period

beginning four wheels before the wheel used to create the March 2022 grand jury and ending one wheel after that wheel.

> **B.    Specifications for Merging Sources (pertaining to original request 19)**

Gendron's original motion requested "[a]ny specifications, description, or statistics related to the merging of source lists and creation of the combined source list as described in the Jury Selection Plan section titled Sources of Names of Prospective Jurors." Docket Item 10-1 at 5. Gendron later submitted 15 follow-up questions for the Jury Administrator, Docket Item 261 at 2, who said that the vendor would have the answers, Docket Item 261-1 at 2-3. Gendron now requests "disclosure of responsive materials under this item including materials in the [vendor's] custody." Docket Item 262 at 3.

Order: Gendron's request for additional information is GRANTED. The Jury Administrator shall seek written answers from the vendor to the 15 questions about merging sources, Docket Item 261 at 2, and "[a]ny specifications, description, or statistics related to the merging of source lists and creation of the combined source list" that are not otherwise covered by the responses to the 15 questions, Docket Item 10-1 at 5.

> **C.    Source Data (pertaining to original request 23)**

Gendron's original motion also requested "[t]he raw source list of data in electronic form for the Master Jury Wheel used to summon grand jurors in this case as described in the Jury Selection Plan section titled Sources of Names of Prospective Jurors (voter registration lists plus supplemental lists)." Docket Item 10-1 at 5-6. The request specified that the data should not include "information that could be used to

identify any individual such as Name or Street Address." *Id.* at 6.  Gendron later provided several specific questions about each data source, including whether the original source data was available, the "as of date of the data," and other questions. Docket Item 261 at 3-4.  The Jury Administrator has explained that the court deletes the source data after the wheel is created and that he is unsure whether the vendor retained the source data.  *See* Docket Item 184 at 2; Docket Item 262 at 3.

Now, Gendron asks for "information relating to whether [the vendor] retained any of the source data."  Docket Item 262 at 3.  If the vendor retained such data, Gendron asks for "the opportunity to inspect it."  *Id.*  He also asks for "communications between the data sources" and the Jury Administrator and the vendor, "including cover letters," because if the vendor deleted the data, "these communications [would] assist us in reconstructing the source data."  *Id.*

Several courts have ordered the release of source data with personal identifying information redacted.  *See, e.g.*, *United States v. Shader*, 472 F. Supp. 3d 1, 5-6 (E.D.N.Y. 2020); *United States v. Holmes*, 2020 WL 5408163, at *3, *5 (N.D. Cal. Sept. 9, 2020); *Crider*, 2021 WL 4226149, at *7.  This Court agrees that source data "qualifies as a record used by the Clerk in connection with the jury selection process that may be necessary for the preparation of a motion challenging the creation of the master wheel." *See Crider*, 2021 WL 4226149, at *7.

Order:  Gendron's request for additional information is GRANTED in part and DENIED in part without prejudice.  The Jury Administrator shall ask the vendor about whether the vendor has retained source data for DMV data, tax data, voter data, disability data, and unemployment data for the the Master Jury Wheel used for the

March 2022 grand jury.  *See* Docket Item 261 at 3-4.  If the answer is yes for any source, the vendor shall share the source data with the Jury Administrator, who must redact personal identifying information and disclose the source data to the parties.  If the answer is no, the Jury Administrator shall seek written answers to the specific questions that Gendron asked about each data source from the vendor.  *See id.*  To the extent that Gendron requests communications, that request is denied without prejudice because the vendor's responses may directly provide this information and thereby make this request moot.

### D.     Attendance Data (pertaining to original request 26)

Gendron has requested "[a]ny document or data detailing the attendance record and reason for absence by date for each grand juror."  Docket Item 10-1 at 6.  The Jury Administrator said that the United States Attorney's Office "retains the grand jurors['] weekly check in sheets"; it therefore appears that the Jury Administrator may not have this information.  Docket Item 184 at 2.  But the Jury Administrator also said that he has two monthly reports related to attendance.  *See id.*

If there is attendance data, the government says that it "is not related to whether the grand jury . . . was selected at random from a fair cross section of the community."  Docket Item 17 at 12.  The government then argues that unless there is a fact-based reason for the defense to obtain such information, release of attendance information would be "a fishing expedition into the inner workings of the grand jury."  Docket Item 212 at 26.

Gendron counters that attendance records could help reveal an internal flaw in the selection system after the grand jury is selected.  *Id.* at 23-26.  Defense counsel

theorizes that a "representative jury" could be selected, but then court policies, such as COVID-19 procedures, could cause certain groups to become underrepresented. *Id.* at 25-26; *see* Docket Item 10-1 at 3. Counsel also gave an anecdotal example of prosecutors bringing "a certain type of case" to the grand jury only when one grand juror was absent. Docket Item 212 at 23-24. But defense counsel did not suggest that either of these issues applied to Gendron's case; in fact, counsel said that they were "not suggesting that we have [any] reason to believe there's any issue like" the practice of selectively bringing cases based on grand jurors' attendance. *Id.* at 24.

The caselaw about attendance is split. Several district courts have ordered the release of attendance information with redactions of personal identifying information. *See, e.g.*, *Corbett*, 2020 WL 5803243, at *7; *Todd*, 2020 WL 5981673, at *6; *United States v. Ramirez-Ortiz*, 2021 WL 1662441, at *6 (S.D. Cal. Apr. 28, 2021); *Crider*, 2021 WL 4226149, at *7-8. In *Ramirez-Ortiz*, for example, the court explained that "attendance records that are redacted for personal identifying information—such that [d]efense counsel can track whether a particular juror was excused and substituted but not discern her actual identity—would not appear to run afoul of the policies underlying the grand jury secrecy doctrine." 2021 WL 1662441, at *6. And in *Todd*, the court explained that the argument that these records would not advance a fair cross section challenge is "better raised in opposition, should [the] defendant . . . choose to lodge a 'fair cross section' challenge after a review of the grand jury data." 2020 WL 5981673, at *2 (footnote omitted).

Other district courts have denied the release of attendance records. *See, e.g.*, *United States v. Braxton*, 2020 WL 6083649, at *4 (E.D.N.Y. Oct. 15, 2020); *United*

*States v. Alshahhi*, 2022 WL 2239624, at *23 (E.D.N.Y. June 22, 2022); *United States v. McClellon*, 2023 WL 9002855, at *5 (W.D. Wash. Dec. 28, 2023). In *Alshahhi*, the court concluded that "attendance records . . . are not relevant to the selection of the grand jurors." 2022 WL 2239624, at *23. In *Braxton*, the court cited *United States v. Jackman*, 46 F.3d 1240, (2d Cir. 1995), which said that "the Sixth Amendment guarantees the *opportunity* for a representative jury venire, not a representative venire itself." *Id.* at 1244. According to the *Braxton* court, "it should be obvious that once a grand jury is empaneled, the attendance of grand jurors is . . . irrelevant." 2020 WL 6083649, at *4.

After carefully considering this close issue, this Court agrees with the courts that have ordered production. Because systematic issues after a grand jury is selected might give rise to a fair cross-section challenge, the Jury Administrator shall produce attendance data with personal identifying information redacted. *See Ramirez-Ortiz*, 2021 WL 1662441, at *6. If Gendron raises a JSSA challenge based on attendance data, the government may raise its opposition as to whether this information proves a fair cross-section claim at that time. *See Todd*, 2020 WL 5981673, at *2.

Order: Gendron's request for additional information is GRANTED. The Jury Administrator shall produce attendance data for the entire length of the March 2022 grand jury to the extent that the Court retains such records. The Jury Administrator shall provide the attendance reports for the full period of the March 2022 grand jury as well. For all attendance records, personal identifying information shall be redacted.

### E. Rochester Records (pertaining to original requests 8, 10, 20, and 21)

Gendron received records for the Buffalo division for four requests, but he seeks these records for the Rochester division as well. He says that information from Rochester is relevant because he believes that the district has a master list from which each division's list is created and that seeing the Rochester data could help uncover any issues that occur "at the splitting of the two lists" such as "problems with overlap where some jurors that should fall within the jurisdiction of one division end up in another division." Docket Item 212 at 10.

ORDER: Gendron's request for additional information is CONDITIONALLY GRANTED. The Jury Administrator shall determine whether it is correct that the records begin from one master list and shall request information from the vendor, if necessary, to make that determination. If it is correct that the records begin from one master list, then the records responsive to requests 8, 10, 20, and 21 for Rochester shall be produced without further order from the Court. If the records do not originate from one master list, there is no apparent relevance to these records, and the request is denied.

### F. Public Records (pertaining to original request 27)

Request 27 is a catch-all request for additional documents. *See* Docket Item 10-1 at 6. Gendron requested "[a]ny records described in the Jury Selection Plan section titled Records to be Maintained by the Clerk and made Public upon Request that are not included in any of the preceding items requested." Docket Item 10-1 at 6. According to the Jury Selection Plan, the Clerk of Court must "retain all jury records and papers comp[il]ed and maintained by the Clerk of Court, including . . . [j]ury memos from the

15

Administrative Office and internal memos." *Jury Plan*, *supra* at 8.  In response, the Jury Administrator said he has "[e]mails with chambers about the details of Grand Jury selection."  Docket Item 261-1 at 6.  Gendron now requests six years of "emails with chambers about the details of grand jury selection."[4]  Docket Item 262 at 3.

This Court appreciates the Jury Administrator's thorough responses to Gendron's questions.  But the Jury Plan's reference to "[j]ury memos from the Administrative Office and internal memos" is not so broad as to include all emails between the Jury Administrator and chambers about "the details of grand jury selection."  On its face, the words "internal memos" do not include emails, nor does this Court think that the drafters of the Jury Plan intended such an expansive reading.  Gendron did not identify, nor has this Court found, an example of a court granting disclosure like this.  What is more, considering this Court's grant or partial grant of nearly every other request that Gendron has made, it is hard to fathom how these emails are necessary to a JSSA motion.

Order:  Gendron's request for additional information is DENIED except to the extent that an email includes a memo addressing the details of grand jury selection.

## **CONCLUSION**

The record requests in Docket Item 10 and 262 are GRANTED IN PART and DENIED IN PART for the reasons explained above.

The documents produced pursuant to this decision and order are subject to the amended protective order governing jury records.  *See* Docket Item 213.

---

[4] At the meeting with the Jury Administrator, the government requested the opportunity to brief this issue while defense counsel said that the Court should decide it without briefing.

The Jury Administrator shall provide this Court with the records listed above by April 2, 2025. When it receives the records, this Court will file them under seal and give defense counsel and the government access to them.

As soon as possible, and no later than two weeks after they receive the records, defense counsel shall (1) notify this Court if they have any pending or follow-up JSSA record requests and (2) confer with the government and provide this Court with joint proposed briefing deadlines for any JSSA grand jury motion.

SO ORDERED.

Dated:   March 12, 2025
         Buffalo, New York

                                           */s/ Lawrence J. Vilardo*
                                           LAWRENCE J. VILARDO
                                           UNITED STATES DISTRICT JUDGE