IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA,

          v.                                    22-CR-109-V

PAYTON GENDRON,

                Defendant.

───────────────────────────────

## UNITED STATES' MEMORANDUM OF LAW
## REGARDING CAPITAL CASE JURY SELECTION

The United States of America, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, and Mac Warner, Deputy Assistant Attorney General, Civil Rights Division, and Joseph M. Tripi, Brett A. Harvey, and Caitlin Higgins, Assistant United States Attorneys, Daniel Grunert, Trial Attorney, Civil Rights Division, and Michael Warbel, Trial Attorney, Criminal Division, of counsel, respectfully submits this memorandum of law regarding capital case jury selection.

### A. Standard of Judicial Review

A venire member may be properly challenged for cause and excluded from capital jury service when the trial judge is left with a "definite impression" that the juror would not be able to faithfully and impartially follow the law applicable to capital trials. *Wainwright v. Witt*, 469 U.S. 412, 425-26 (1985). The trial court's determination that a potential juror would be unqualified to serve in a fair and impartial manner on a capital jury based on juror bias is a

finding of fact entitled to great deference or a presumption of correctness, *id.*, 469 U.S. at 428-29, and juror bias need not be proven with "unmistakable clarity," *id.*, 469 U.S. at 424.

Trial judges' decisions to excuse prospective jurors based upon their death penalty views expressed during in-court voir dire are generally given considerable deference on appeal because such decisions are based in large part on face-to-face credibility assessments of the prospective jurors. *See Witt*, 469 U.S. at 426-29 (noting that the trial court's determination of juror bias "is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province," therefore "deference must be paid to the trial judge who sees and hears the jurors"); *United States v. Chanthadara*, 230 F.3d 1237, 1269 (10th Cir. 2000) (noting "the trial judge's unique ability to observe demeanor and assess credibility"). Less deference, however, is afforded to circumstances in which the trial court excuses jurors prior to voir dire based upon answers in written juror questionnaires. *See United States v. Quinones*, 511 F.3d 289, 300 (2d Cir. 2007) (holding that removals for cause based solely on the results of written questionnaires are subject to abuse of discretion review); *United States v. Purkey*, 428 F.3d 738, 750 (8th Cir. 2005) (same); *Cf., Chanthadara*, 230 F.3d at 1270 (holding district court's decision to remove prospective juror for cause based on her death penalty views expressed in answer to questionnaire was entitled to no deference and subject to de novo review because the court had no opportunity to observe the prospective juror's demeanor).

### B. Standard for Juror Qualification

The Court may properly excuse a prospective juror for cause because of his or her death penalty views if those views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Witt*, 469 U.S. at 424; *Morgan v. Illinois*, 504 U.S. 719, 728 (1992). This legal standard applies equally to jurors who strongly favor and jurors who strongly oppose capital punishment. *See Morgan*, 504 U.S. at 734 n.7. This standard is based on the defendant's right to a fair and impartial jury and the legitimate state interest in administering constitutional capital sentencing schemes. *Witt*, 469 U.S. at 418- 423.

A juror's views would "prevent" impartial performance when the juror would "automatically" or "always" vote against—or for—the death penalty, regardless of the facts and the law. *Witt*, 469 U.S. at 422; *Morgan*, 504 U.S. at 733. A juror's views would "substantially impair" impartial performance when those views would interfere with or create an obstacle to impartial consideration of the law and the facts. *See Witt*, 469 U.S. at 433-34 (noting that relevant voir dire questions on this issue "need not be framed exclusively in the language of the controlling appellate opinion"). The Court should not excuse prospective jurors "simply because they expressed general objections to the death penalty or voiced conscientious or religious scruples against its infliction." *Witherspoon v. Illinois*, 391 U.S. 510, 522 (1968). Likewise, a juror is not partial merely because he or she states personal support or even preference for capital punishment, so long as the juror can distinguish between his personal views and what the law requires. *See Miniel v. Cockrell*, 339 F.3d 331, 340 (5th Cir. 2003), *cert. denied*, 540 U.S. 1179 (2004).

The burden for proving bias rests on the party seeking to excuse the venire member for cause. *Chanthadara*, 230 F.3d at 1270 (citing *Witt*, 469 U.S. at 423). The crucial inquiry is whether the venire person could follow the court's instructions and obey his oath, notwithstanding his views on capital punishment. *Id.*

In sum, four leading principles guide jury selection in a capital case: (1) defendants have the right to an impartial jury drawn from a venire that is not biased toward the death penalty; (2) the government has a strong interest in having jurors who can apply capital punishment within the framework provided by governing law; (3) a juror who is substantially impaired may be removed for cause; and (4) in determining whether removal for cause is appropriate, the trial court may make judgments based on the demeanor of the juror, and those judgments are entitled to deference on appellate and post-conviction review. *Uttecht v. Brown*, 551 U.S. 1, 9 (2007).

## C. Juror Responses Justifying Exclusion for Cause

Jurors are properly excused when they express a categorical unwillingness to impose the death penalty, *see Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992), or where they would make the decision based solely on their own values and not follow the law, see *United States v. Brown*, 441 F.3d 1330, 1357 (11th Cir. 2006), cert. denied, 127 S. Ct. 1149 (2007). Jurors should also be struck for cause as "substantially impaired" if they would consider the death penalty only in limited or extreme situations, such as the following:

1. Mass murders/Multiple murders. *See, e.g.*, *United States v. Moore*, 149 F.3d 773, 780 (8th Cir. 1998) (holding juror properly excluded based on his response that he would consider the death penalty "if a person murdered like maybe 100 or 200 people," but not for "one or two"); *Fuller v. Johnson*, 114 F.3d 491, 499-501 (5th Cir. 1997) (holding juror properly excluded who would only consider the death penalty for serial murderers or those who murder "more than one"); *United States v. Tipton*, 90 F.3d 861, 880 (4th Cir. 1996) (holding juror properly excused who showed opposition to death penalty, but affirmatively answered questions saying he could impose death for multiple murders).

2. Extreme hypothetical situations. *See, e.g.*, *Antwine v. Delo*, 54 F.3d 1357, 1369 (8th Cir. 1995) (holding jurors' "willingness to consider the death penalty in extreme hypothetical situations did not 'render either of them immune from exclusion from the jury for cause'"); *Riles v. McCotter*, 799 F.2d 947, 949-50 (5th Cir. 1986) (holding juror properly excluded for cause where juror said she could not impose the death penalty unless the murder involved mutilation).

3. Benchmark personalities. *See, e.g.*, *United States v. Tsarnaev*, 968 F.3d 24, 49-50 (1st Cir. 2020) (finding prospective juror properly removed for cause where the juror used Slobodan Milosevic and genocide as rare examples in which he thought he could impose the death penalty; trial court found the juror's "zone of possibility . . . so narrow" that the juror was "substantially impaired"), *overruled on other grounds by* 596 U.S. 302 (2022); *United States v. Mitchell*, 502 F.3d 931, 956 (9th Cir. 2007) (finding prospective juror properly removed even though she said she could possibly have sentenced Charles Manson or Ted Bundy to death);

*Stewart v. Dugger*, 877 F.2d 851, 855-57 (11th Cir. 1989)(finding prospective juror properly excused when he said he would have to think hard about imposing death for a person such as Charles Manson); *Antwine*, 54 F.3d at 1369 (finding prospective juror properly excused when he expressed doubts as to whether he could impose death penalty, but wavered when asked if he could impose it against Adolf Hitler).

4. Special victims/family members.  *See, e.g.*, *United States v. Flores*, 63 F.3d 1342, 1356 (5th Cir. 1995) (holding juror who would impose death penalty only if the defendant had abused and murdered a small child was properly excused for cause); *Antwine*, 54 F.3d at 1369 (holding juror who expressed doubt as to whether she could impose the death penalty, but hesitated when asked if she could consider imposing it if a small child had been brutally murdered was properly excluded for cause); *Bell v. Lynaugh*, 828 F.2d 1085, 1092 (5th Cir. 1985) (holding juror properly excused when, after unambiguously stating that she could never impose the death penalty, she qualified her answer by stating that she could impose the death penalty on the killer of a family member); *Larette v. Delo*, 44 F.3d 681, 689 (8th Cir. 1995) (holding juror who stated she would vote against the death penalty unless the victim "was extremely close to" her was properly excused for cause).

5. Drug and alcohol-related murders.  *See, e.g.*, *Flores*, 63 F.3d at 1356 (holding juror who stated he could never vote for the death penalty in a case in which the victim was involved in drugs was properly excused for cause); *Davis v. Exec. Director of Dep't of Corrections*, 100 F.3d 750, 778 (10th Cir. 1996) (holding juror who stated personal experiences would

prevent him from imposing the death penalty in an alcohol-related crime was properly excused for cause).

6. Arbitrary burdens of proof.  *See, e.g.*, *Flores*, 63 F.3d at 1355-56 (holding it was proper to excuse juror who would impose the death penalty only if the defendant confessed or juror witnessed murder); *Drew v. Collins*, 964 F.2d 411, 416-17 (5th Cir. 1992) (proper to excuse juror who would hold government to higher standard than reasonable doubt).

Moreover, the Court may exclude a juror for substantial impairment of his/her ability to fairly and impartially apply the law when answers to key voir dire questions are equivocal, uncertain, ambiguous, contradictory, or conflicting.  For example, in *Uttecht*, a prospective juror ("Juror Z") expressed general support for the death penalty and stated that he could "consider" it.  551 U.S. at 14-15.  However, he also expressed contradictory answers and "confus(ion) about the conditions under which the death penalty could be imposed."  *Id*. at 15.  The Supreme Court held that the trial court did not abuse its discretion in excluding the juror.  *Id*. at 17.  The Court explained that Juror Z's assurances that he would consider imposing the death penalty and would follow the law do not overcome the reasonable inferences from his other statements."  *Id*. at 18.[1]

---

[1] In *Uttecht*, another juror ("Juror Y") who provided "equivocal statements" was also excused for cause despite defense objections that the "equivocal statements reflected careful thinking and responsibility, not substantial impairment."  *See* 551 U.S. at 11.  Juror Y's excusal was not the subject of appeal.

Similarly, in *United States v. Mitchell*, 502 F.3d 931, 955-56 (9th Cir. 2007), the Ninth Circuit affirmed the excusal for cause of a juror ("Juror #39") whose answers to the questionnaire and in-court voir dire were equivocal and ambiguous. The court found that Juror #39's answers to the written questionnaire showed that her beliefs against the death penalty would have substantially impaired her ability to perform her duties. *Mitchell*, 502 F.3d at 955 (noting Juror #39 checked the box indicating she "could never, under any circumstances, return a verdict which recommended a sentence of death," and answered several other questions indicating she would not follow the court's instructions and would automatically vote for life sentence). The court further recognized, however, that Juror #39's oral responses at voir dire were "more nuanced." *Id*. at 956 (noting Juror #39 made statements such as she would have a "difficult time" imposing the death penalty; she would "probably" vote for a life sentence, but wouldn't automatically; and, in response to court's question if she "could set aside her views and listen to the facts and law," the juror responded, "I could only try").

Ultimately, the *Mitchell* court concluded that the trial court did not abuse its discretion in excusing Juror #39. *Id*. (crediting trial court's ruling that the court "was left with the 'firm impression, based on [Juror #39's] demeanor here in court, that she would struggle to the point that I don't think she would honestly consider the death penalty in accordance with the instruction and her duty as an oath'"). *See also Tipton*, 90 F.3d 861, 880-81 (4th Cir. 1996) (holding trial court properly excluded for cause three jurors who, after first expressing strong opposition to the death penalty, gave equivocal, ambiguous, and contradictory responses to questions during in-court voir dire); *United States v. Webster*, 162 F.3d 308, 340-41 (5th Cir.

1998) (finding equivocal juror who could not offer consistent opinion as to whether he could follow the law was properly excused); *Morales v. Mitchell*, 507 F.3d 916, 942 (6th Cir. 2007) (finding case similar to *Uttecht* and holding that venireman was properly removed where he stated that he was generally opposed to the death penalty but that he might be able to impose it in limited circumstances); *Riley v. Taylor*, 277 F.3d 261 (3d Cir. 2001) (en banc) (finding juror properly excused for cause when she said "I would say yes, I think so" when asked whether she had conscientious scruples against the death penalty, then was unable to say for certain whether she would be able to find capital defendant guilty based on the evidence).

## D. Appropriate Scope of Questioning

Voir dire must be adequate to assure jury members are able to impartially follow the Court's instructions and evaluate the evidence. *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981); *see also Hodges v. Colson*, 727 F.3d 517, 526-27 (6th Cir. 2013). Generally, the exact nature and scope of the voir dire questioning is committed to the broad discretion of the district court and is subject to review only for abuse of that discretion. *Tipton*, 90 F.3d at 877, (citing *Rosales-Lopez*, 451 U.S. at 188 and *Ham v. South Carolina,* 409 U.S. 524, 525 n.2, 527 (1973)); *accord* Fed. R. Crim. P., Rule 24(a). Thus, subject to limited exceptions,[2] no particular questions are constitutionally required, unless a failure to ask them would "render the trial fundamentally unfair." *See Mu'Min v. Virginia*, 500 U.S. 415, 425-26 (1991) (rejecting

---

[2] For example, questions regarding racial bias may be required in certain cases. *See Ham*, 409 U.S. at 526-27.

any requirement to ask questions about the content of pretrial publicity to which prospective jurors were exposed).

As discussed below, in this case, the Court should permit questions directed at determining whether jurors would automatically vote for or against the death penalty.  Then, the Court should generally permit only open-ended questions pertaining to prospective jurors' basic beliefs and core values.  *See United States v. McVeigh*, 153 F.3d 1166, 1208 (10th Cir. 1998); *Tipton*, 90 F.3d at 878-79.  Case-specific questions regarding how jurors would weigh certain aggravating or mitigating factors or how they would vote when presented the facts and evidence of this case, or similar hypothetical situations, should be prohibited.

### 1.  *Morgan v. Illinois* requires certain inquiries

Despite a trial court's generally broad discretion in conducting voir dire, the Supreme Court established in *Morgan* that certain areas of inquiry are required in capital cases.  First, the voir dire must consist of more than general fairness and "follow the law" questions.  *Morgan*, 504 U.S. at 734-35.  Such inquiries are inadequate to determine if a prospective juror has personal views for or against the death penalty that would prevent him or her from following the law (i.e., considering all aggravating and mitigating evidence).  *See id*. at 735.

Further, upon request of a capital defendant, the trial court must inquire into whether a prospective juror would automatically vote for the death penalty regardless of the facts of the case if the defendant is convicted of a capital offense.  *Id*. at 726-27.  In essence, this is the

reverse of the *Witherspoon/Witt* inquiries, discussed above, which questions whether a prospective juror's views against the death penalty would compel him/her to automatically vote against it, regardless of the facts and circumstances of the case. Thus, the government submits that the Court should permit direct questions aimed at determining whether a prospective juror would vote for or against the death penalty if the defendant is convicted of a capital offense. *See Morgan*, 504 U.S. at 733-34, 738; *Tipton*, 90 F.3d at 878 (stating that the best method for determining whether a prospective juror would automatically vote for the death penalty is to ask the question directly).

### 2.  This Court should reject case-specific questions

Relying on *Morgan*, capital defendants commonly claim that they are constitutionally entitled to inquire about prospective jurors' views regarding the specific aggravating and mitigating evidence that may be presented in a case. However, such questions are not, in fact, constitutionally required. Rather, such questioning has a deleterious effect on the deliberative process by forcing jurors, who have yet to be instructed on the law that will guide their deliberations, to stake out or forecast positions on the evidence before actually hearing it. Similarly, allowing the defendant to question jurors as to how they might react or weigh certain types of evidence will necessarily invite confusion among jurors about the scope of their duty to consider evidence during the penalty phase.

To be sure, the Supreme Court has never held that case-specific questions are required. In fact, in *Witherspoon*, the Court noted:

> [A] prospective juror cannot be expected to say in advance of trial whether he would in fact vote for the extreme penalty in the case before him. The most that can be demanded of a venireman in this regard is that he be willing to *consider* all of the penalties provided by . . . law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings.

391 U.S. at 522 n.21 (emphasis in original).

While the *Morgan* Court held that general fairness or follow-the-law questions are insufficient, the Court did not hold that capital defendants have a right to inquire regarding specific facts or circumstances. Rather, the Court held only that a capital defendant has the constitutional right to determine if a prospective juror would automatically vote for the death penalty upon conviction. *See Morgan*, 504 U.S. at 736-38. This is so because "[a]ny juror who states that he or she will automatically vote for the death penalty without regard to the mitigating evidence is announcing an intention not to follow the instructions to *consider* the mitigating evidence and to decide if it is *sufficient* to preclude imposition of the death penalty." *Id.* at 738 (emphasis added to "consider," otherwise in original).

Likewise, while the Court has held that jurors must be willing to generally "consider" mitigation evidence, *see Buchanan v. Angelone*, 522 U.S. 269, 276 (1998); *Eddings v. Oklahoma*, 455 U.S. 104, 114-15 (1982), these cases do not require any inquiries into the specific mitigating evidence that may be presented in a case. The Constitution does not require that jurors be willing to give a particular mitigating factor any particular amount of weight; it only requires that the juror manifest an ability to consider any such factors in determining whether death is an appropriate punishment. *See United States v. Hall*, 152 F.3d 381, 409 (5th Cir.

1998), abrogated on other grounds by *United States v. Martinez-Salazar*, 528 U.S. 304, 310-311

(2000), (quoting *Eddings*, 455 U.S. at 114-15).

The Sixth Circuit has repeatedly held that voir dire questions about how a potential

juror would vote if given specific examples of aggravating or mitigating evidence are not

constitutionally compelled under *Morgan*.  *See Hodges v. Colson*, 727 F.3d 517, 527-29 (6th Cir.

2013) (holding trial court did not act contrary to Supreme Court precedent in restricting

defense counsel from questioning prospective juror whether he could impose a life sentence

on a defendant who had a prior first-degree murder conviction); *Dennis v. Mitchell*, 354 F.3d

511, 523-26 (6th Cir. 2003) (holding trial court did not violate petitioner's constitutional rights

by restricting defense counsel from asking prospective jurors about specific mitigating factors,

including age, lack of prior criminal history, and environment); *Bedford v. Collins*, 567 F.3d

225, 232 (6th Cir. 2009) (rejecting petitioner's claim that trial court improperly limited the

scope of voir dire by prohibiting counsel from asking questions that sought to elicit prospective

jurors views on the petitioner's specific case).  In *Bedford*, the court explained that it would be

"understandabl[e]" and "proper[]" to "prevent lawyers from previewing their case through

voir dire."  567 F.3d at 232.  Likewise, in *Hodges*, the court stated:

> When defense counsel asks questions about the specific aggravating and/or
> mitigating factors actually at issue in a case, defense counsel is no longer
> attempting to identify members of the venire who would always vote for the
> death penalty; rather, defense counsel is attempting to preview how prospective
> jurors will vote given the specific facts of the individual case, and *Morgan* does
> not require a trial court to allow such previews.

*Hodges*, 727 F.3d at 529.

The other federal courts of appeals to have considered this issue have unanimously agreed with the Sixth Circuit and ruled that case-specific questioning is not required. *See McVeigh*, 153 F.3d at 1207-08 (discussed in detail below); *United States v. McCullah*, 76 F.3d 1087, 1114 (10th Cir. 1996) (holding under *Morgan* that the trial court was not required to allow inquiry into each juror's views as to specific mitigating factors as long as the voir dire was adequate to detect those in the venire who would automatically vote for the death penalty); *Tipton*, 90 F.3d at 879 (holding that the district court's refusal to allow questioning on specific mitigating factors was not an abuse of discretion); *Richmond v. Polk*, 375 F.3d 309, 329-331 (4th Cir. 2004) (finding "*Morgan* does not require that a capital defendant be able to determine at voir dire what prospective juror's sentencing decision will be if presented with specific state of evidence or circumstances" and precluding questioning of jurors regarding the effect defendant's prior murder conviction would have on their deliberations);[3] *Trevino v. Johnson*, 168 F.3d 173, 182-83 (5th Cir. 1999) (denying habeas petition where defendant claimed he was not permitted to question potential jurors' views on youth as a mitigating factor).[4] *But see United States v. Johnson*, 366 F. Supp.2d 822 (N.D. Iowa 2005) (explaining

---

[3] In *Hodges*, the Sixth Circuit expressly adopted the Fourth Circuit's reasoning from *Richmond*. *See Hodges*, 727 F.3d at 528.

[4] State supreme courts have also routinely ruled that case-specific questioning about aggravating and mitigating factors is not required. *See, e.g., State v. Wilson*, 659 N.E.2d 292, 300-303 (Ohio 1996) (" Realistically, jurors cannot be asked to weight specific factors until they have heard all the evidence and been fully instructed on the applicable law."); *Sellers v. State*, 809 P.2d 676, 682-83 (Okla. 1991) ("To permit such questioning would make voir dire an open forum for discussion of any circumstances accompanying the murder, both mitigating and aggravating.  The great potential to improperly influence the jury weighs strongly" in favor of precluding such questions.); *Evans v. State*, 637 A.2d 117, 124-25 (Md. 1994) (precluding questions designed to ask jurors "to provide advance clues as to how they would vote based on the facts of the case"); *Witter v. State*, 921 P.2d 886, 891-92 (Nev. 1996) (precluding questions geared at reading "how a potential juror would vote during the penalty phase"); *State v. Fletcher*, 500 S.E.2d 668, 679 (N.C. 1998) (holding defendant was

when case-specific questions may, in the district court's view, be appropriate); *United States v. Fell*, 372 F. Supp.2d 766 (D. Vt. 2005) (same).

In *McVeigh*, the Tenth Circuit affirmed the district court's decision that questions seeking to determine what prospective jurors think about imposing the death penalty in a particular case, or upon consideration of potential evidence, are broader than the scope of questioning required under *Morgan*.   The court stated:

> *Morgan* was written as a reciprocal case to *Witherspoon*, and is designed to identify potential jurors who would automatically impose the death penalty for conviction of a capital offense.   When a defendant asks a juror to speculate or pre-commit on how that juror might vote based on any particular facts, the question strays beyond the purpose and protection of *Morgan*.

*McVeigh*, 153 F.3d at 1207.

Thus, the *McVeigh* court held case-specific factual questions about the evidence to be presented in the guilt phase, or how a juror would vote if presented with specific aggravating or mitigating factors in the penalty phase, are broader than the scope of questioning required under *Morgan*.   *McVeigh*, 153 F.3d at 1207-09.   Additionally, case-specific predisposition questions, pre-commitment questions, and questions calling for speculation on the part of the juror are prohibited since *Morgan* does not allow defendants to pre-determine jurors' views of the appropriate punishment for the particular crime charged and does not require that the questions at issue be asked.   *Id*. at 1208.   Questions are also objectionable when predicated on

---

not entitled to ask juror what his or her position would be given a particular aggravating factor); *People v. Jackson*, 695 N.E.2d 391, 407 (Ill. 1998); *Holland v. State*, 705 So.2d 307, 338-39 (Miss. 1997).

facts specific to the case at issue or upon speculation as to what facts may or may not be proven at trial. *Id*. at 1207.

*Tsarnaev* is also instructive. In that case, the district court denied continuous requests from the defense to ask case-specific questions. *See* 968 F.3d at 47. These included questions about whether jurors would automatically vote for the death penalty or if the death penalty was the only appropriate punishment for someone convicted of specific acts present in that case, such as the murder of a child using a weapon of mass destruction, using a weapon of mass destruction to commit an act of terrorism, the commission of an act of terrorism that resulted in multiple killings, and the murder of a police officer.. *See id*. at 45, 47. In rejecting such questions, the district court reasoned that the jurors knew the basic facts of the case (from the court's instructions and the juror questionnaire) and had those facts in their minds when responding to questions. The judge thought, too, that "detailed questioning" could create the "wrong emphasis" and might inadvertently create bias where none existed before. *Id*. at 47-48.

On appeal, Tsarnaev claimed that "a faithful application of *Morgan*, required the judge to ask prospective jurors 'whether they could take into account mitigating evidence and consider a sentence of life imprisonment, not just in the abstract, but in light of specific allegations in his case.'" *Id*. at 53-54 (citing appellant's brief). The government responded that 1) the proposed case-specific questions were properly excluded as "stakeout questions" that asked the potential jurors to prejudge the appropriateness of the death penalty in that case without regard to mitigation or the court's instructions; and 2) that, even if *Morgan* required

the court to advise jurors of "certain case-specific facts," the defendant's proposed case-specific questions were unnecessary because the jurors already knew about the case's key facts from the judge's instructions and a summary of facts included in the juror questionnaire.  *Id.* at 54.

The First Circuit held the voir dire was adequate. *Id.* at 63.   Recounting factual summaries provided in the indictment, pre-voir dire instructions, and the juror questionnaire, *id.* at 62-63, the court concluded, "even assuming without deciding that the judge had to inform prospective jurors of certain case-specific facts, he did so here." *Id.* at 62.  Specific questioning about how jurors would react to or weigh those facts was not required.

Based on the precedents set forth above, this Court should prohibit case-specific questioning that pertains to the weight prospective jurors would give certain mitigating or aggravating evidence, or questions that specifically stake-out how jurors would vote when faced with certain evidence or facts, particularly the evidence and facts expected to be presented in this case.  Such case-specific questions would improperly force jurors to voice positions on hypothetical scenarios before actually hearing the evidence in this case and before hearing the court's instructions.  They would confuse and mislead jurors regarding their duty to consider mitigating evidence, particularly given that jurors are not required to give any particular amount of weight to any mitigating evidence.  See *Fulks*, 454 F.3d at 414; *Hall*, 152 F.3d at 412.  Moreover, such questions would unfairly force jurors to speculate in a vacuum about how they might value a particular type of evidence or how they may make one of the most important decisions of their lives.

**E.  Questioning Regarding Unanimity**

The Court should not permit voir dire designed to inform jurors of a power to nullify or the consequences of a failure to reach a unanimous decision.  Such questions, or rather, statements, are not designed to ferret out whether potential jurors can be impartial and fairly consider whether the death penalty is an appropriate sanction.  Rather, such information is calculated to encourage a lack of unanimity and to advocate an unwillingness on the part of the potential juror to consider the death penalty as an appropriate punishment.

Moreover, any proposed voir dire discussing or informing the prospective jurors of the consequences of their failure to agree on a sentence is arguably inconsistent with the language of the Federal Death Penalty Act itself. 18 U.S.C. 3593(e) provides:

> [T]he jury, or if there is no jury, the court, shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. Based upon this consideration, the jury by unanimous vote, or if there is no jury, the court, shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence.

18 U.S.C. § 3593(e).  Accordingly, by its express terms, the FDPA requires unanimity for either a verdict of death or a non-capital sentence.

The United States Supreme Court considered this issue in *Jones v. United States*, 527 U.S. 373, 379 (1999).  In that case, the defendant argued that he was entitled to an instruction

as to the consequences of a jury deadlock on the issue of sentencing. The defendant asked

for, and did not receive, the following instruction:

> In the event, after due deliberation and reflection, the jury is unable to agree on a unanimous decision as to the sentence to be imposed, you should so advise me and I will impose a sentence of life imprisonment without possibility of release. . . .
>
> . . .
>
> In the event you are unable to agree on [a sentence of] Life Without Possibility of Release or Death, but you are unanimous that the sentence should not be less than Life Without Possibility of Release, you should report that vote to the Court and the Court will sentence the defendant to Life Without the Possibility of Release.

*Jones*, 527 U.S. at 379. The defendant argued alternatively that the Eighth Amendment

required the trial court to instruct the jury as to the effect of their inability to agree and that

the Supreme Court should invoke its supervisory power over the federal courts and require

that such an instruction be given.

In affirming the trial court's refusal to give the requested instruction, the *Jones* Court

held:

> The truth of the matter is that the proposed instruction has no bearing on the jury's role in the sentencing process. Rather, it speaks to what happens in the event that the jury is unable to fulfill its role—when deliberations break down and the jury is unable to produce a unanimous sentence recommendation. Petitioner's argument, although less than clear, appears to be that a death sentence is arbitrary within the meaning of the Eighth Amendment if the jury is not given any bit of information that might possibly influence an individual juror's voting behavior. That contention has no merit. We have never suggested, for example, that the Eighth Amendment requires a jury be instructed as to the consequences of a breakdown in the deliberative process. On the contrary, we have long been of the view that "the very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves." *Allen v. United States*, 164 U.S. 492, 501, 41 L. Ed. 528, 17 S. Ct. 154 (1896). We further have recognized that in a capital sentencing proceeding, the Government has "a strong interest in having the

jury express the conscience of the community on the ultimate question of life or death." *Lowenfield v. Phelps*, 484 U.S. 231, 238, 98 L. Ed. 2d 568, 108 S. Ct. 546 (1988) (citation omitted). We are of the view that a charge to the jury of the sort proposed by petitioner might well have the effect of undermining this strong governmental interest.

*Id.*, at 382.

In deciding *Jones*, the Supreme Court specifically cited *Allen v. United States*, 164 U.S. 492, 501, (1896), and reaffirmed the principle that "the very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves." That guiding principle is the very antithesis of what a defendant seeks when he argues for, or informs a jury of, the consequences of an inability to agree on a capital sentence or to hold out to preserve a defendant's life. In *Allen*, a capital defendant argued that it was error for the trial court to give a lengthy instruction to the jury after they announced difficulty in reaching agreement. That instruction was as follows:

[I]n a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

In affirming the correctness of the instruction, the Supreme Court held:

While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors

themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury-room with a blind determination that the verdict shall represent his opinion of the case at that moment; or, that he should close his ears to the arguments of men who are equally honest and intelligent as himself. There was no error in these instructions.

*Allen*, 164 U.S. at 501.

Indeed, the United States Supreme Court has approved the use of an *Allen* charge in the penalty phase of a post-*Furman* capital prosecution. *See Lowenfield v. Phelps*, 484 U.S. 231, 238-9 (1988). In that case, the defendant argued that the giving of an *Allen* charge in the penalty phase of a capital prosecution presented a particular danger of coercion in the case because the Louisiana statute at issue, like the FDPA, called for the imposition of a life sentence in the event of a deadlocked jury (i.e., there is no "hung jury" requiring retrial). In rejecting that challenge, the Court held:

> The difference between the division of function between the jury and judge in this case and the division in *Allen* obviously weighs in the constitutional calculus, but we do not find it dispositive. The State has in a capital sentencing proceeding a strong interest in having the jury "express the conscience of the community on the ultimate question of life or death." *Witherspoon v. Illinois*, 391 U.S. 510, 519, 88 S. Ct. 1770, 1775, 20 L. Ed. 2d 776 (1968). Surely if the jury had returned from its deliberations after only one hour and informed the court that it had failed to achieve unanimity on the first ballot, the court would incontestably have had the authority to insist that they deliberate further. This is true even in capital cases such as this one and *Allen*, even though we are naturally mindful in such cases that the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S. Ct. 2954, 2964, 57 L. Ed. 2d 973 (1978).

*Lowenfield*, 484 U.S. at 238-39.

Following *Jones*, Courts of Appeals, including the Second Circuit, have uniformly agreed that capital defendants are not entitled to a jury instruction on the effect of a penalty-phase deadlock.  *See United States v. Whitten*, 610 F.3d 168, 203 (2d Cir. 2010); *Tsarnaev*, 968 F.3d at 91-93; *United States v. Taylor*, 814 F.3d 340, 372 (6th Cir. 2016).  *See also United States v. Chandler*, 996 F.2d 1073, 1088-89 (11th Cir. 1993) (predating *Jones*, and reviewing a case under the former Anti-Drug Abuse Act, but reaching the same conclusion).  In *Whitten*, Defendant Ronnell Wilson contended that the district court's refusal to instruct the jury that if deadlocked, the court would impose a life sentence, left jurors to believe that if they failed to unanimously sentence Wilson to death, he may be sentenced to some other, lesser sentence, and ultimately released.  Stating a "capital defendant is not entitled to a jury instruction on the effect of a deadlock," 610 F.3d at 203, the Second Circuit disagreed.  The court found there was no "reasonable likelihood" that the jury misunderstood its charge.

Clearly then, even in the context of a capital proceeding, the government has a strong interest in unanimity in the penalty phase of a prosecution, and the defendant has no constitutional right to have the jury instructed on the consequences of non-unanimity.  A defendant's repeated and excessive identification of the consequences of a deadlock during capital voir dire undermines that principle.  Though the defense may indicate that some federal courts have ultimately instructed juries on the consequences of a failure to reach unanimity, *see, e.g.*, *United States v. Smith*, 481 F. Supp.2d 933 (D. Alaska 2020), such an instruction is not constitutionally required.  Whether the Court may elect to so instruct the jury in this case is an argument for another day (and something the government will surely advise against).  Regardless, during jury selection, the Court should limit the defense from

discussing this topic.  Doing so would permit the defense to indoctrinate jurors to its theories, undermine the government's strong interest in unanimity, and create likely confusion to potential jurors before they have been properly instructed (indeed, likely even before the Court decides how to instruct jurors on penalty phase issues).

## F.  Questioning Regarding Government's Burden of Proof

The defense should not be permitted to argue or inform the prospective jurors that the government must prove that the aggravators outweigh the mitigators beyond a reasonable doubt.  Seven circuits have decided this issue, and all seven have rejected capital defendants' claims that the "beyond a reasonable doubt" burden of proof applies to the weighing process. *See, e.g.*, *United States v. Gabrion*, 719 F.3d 511, 531-32 (6th Cir. 2013) (en banc) (citing cases). *See also United States v. Saipov*, 2023 WL 4199415, *9 (S.D.N.Y. Jun. 27, 2023) (granting government motion to preclude defense "from arguing or suggesting to the jury that the beyond-a-reasonable-doubt standard applies when determining what sentence is justified under the circumstances").

First, the Constitution does not require the beyond a reasonable doubt standard of proof, or any particular standard of proof for that matter, in the weighing process of a capital sentencing decision.  In *Zant v. Stephens*, 462 U.S. 862 (1983), the Supreme Court stated, "specific standards for balancing aggravating against mitigating circumstances are not constitutionally required." 462 U.S. at 875-76 n.13 (citing *Jurek v. Texas*, 428 U.S. 262 (1976)).

In *Gabrion*, the Sixth Circuit held that the *Apprendi* line of cases does not require proof beyond a reasonable doubt in the weighing stage because the weighing process is not a finding of fact. *See Gabrion*, 719 F.3d at 531-33. The court distinguished "binary" findings of fact, which under *Apprendi* and its progeny must be proved beyond a reasonable doubt, to the "moral judgment" a capital sentencing jury makes when it "consider[s] whether one type of factor sufficiently outweighs another so as to justify a particular sentence." *Id.* at 532 (internal quotations omitted). *See also United States v. Sampson*, 486 F.3d 13, 38 (1st Cir. 2007) ("This argument founders, however, because it assumes, without the slightest support, that the weighing of aggravating and mitigating factors is a fact. This assumption is incorrect. As other courts have recognized, the requisite weighing constitutes a process, not a fact to be found. . . The outcome of the weighing process is not an objective truth that is susceptible to (further) proof by either party. Hence, the weighing of aggravators and mitigators does not need to be 'found.' We hold, therefore, that the district court's instructions were free from *Apprendi* error."); *United States v. Fields*, 483 F.3d 313 (5th Cir. 2007) (declining to extend *Apprendi/Ring* rule to the ultimate decision in capital sentencing and holding that the Sixth Amendment does not require that a jury in a capital case be instructed that, in order to impose the death penalty, it must find that the aggravating factors outweigh the mitigating factors beyond a reasonable doubt).

Second, there is no language in the FDPA requiring the beyond a reasonable doubt standard of proof. The Act provides in pertinent part :

> the jury . . . shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigation factor or factors found to exist to justify a sentence of death, or in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death.

18 U.S.C. § 3593(e).

In *Sampson*, the First Circuit discussed this statutory interpretation in detail:

> Sampson also alleges that the weighing instructions failed to require jurors to find beyond a reasonable doubt that aggravating factors outweighed mitigating factors, and thus violated the FDPA and the Fifth and Sixth Amendments. We can readily dismiss the statutory argument. The FDPA makes no mention of the reasonable doubt standard in the context of weighing aggravating and mitigating factors, *see* 18 U.S.C. § 3593(e), but it does reference the reasonable doubt standard in two proximate sections, *see id*. §§ 3591(a)(2), 3593(c). Because the inclusion of a term in one part of statute is persuasive evidence that its omission elsewhere is deliberate, *see Green* 407 F.3d at 443, we hold that Congress did not intend the reasonable doubt standard to apply to the weighing process. That being so, Sampson cannot have been harmed by the instruction given.

486 F.3d at 31-34.  *See also United States v. Runyon*, 707 F.3d 475, 516 (4th Cir. 2013) (finding the jury instructions as to the weighing process "perfectly proper" where the district court "recited the governing standard from the FDPA virtually verbatim").

Based on the foregoing, it would be improper to inform the jury that they must find that the aggravating factors outweigh the mitigating factors beyond a reasonable doubt before imposing a sentence of death. Accordingly, this Court should prohibit any such questioning during voir dire.

### G. Questioning Regarding Mercy and the Weighing Process

Under the FDPA, the weighing decision is a single process and decision. The FDPA provides that a "defendant who has been found guilty of [a capital offense] *shall* be sentenced

to death if, after consideration of the factors set forth in section 3592 in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is justified." 18 U.S.C. § 3591(a) (emphasis added); see also TENTH CIRCUIT CRIMINAL PATTERN INSTRUCTION 3.02 ("If you determine that the factors do justify a death sentence, that sentence *must* be imposed.") (emphasis added). Thus, this Court should restrict any attempts by the defense to suggest the jury somehow retains discretion to choose an alternative sentence even if it finds in the weighing process that a sentence of death is justified.

In *United States v. Allen*, 247 F.3d 741 (8th Cir. 2001), *vacated on other grounds by Allen v. United States*, 536 U.S. 953 (2002), the defendant asserted that a capital sentencing jury is required to make two decisions: first, whether a sentence of death is justified and second, whether a sentence of death should actually be imposed. *Id*. at 780. The court found that this interpretation was inconsistent with the FDPA as a whole, *id*., and would allow jurors to disregard a unanimous determination that a sentence of death was justified. *Id*. at 781. The court also noted that the FDPA precludes the jurors from arbitrarily disregarding its unanimous determination that a sentence of death is justified. *Id*. While *Allen* has been vacated on other grounds, the Eighth Circuit has repeated its holding on this issue multiple times, most recently in *United States v. Montgomery*, 635 F.3d 1074, 1099 (8th Cir. 2011) (holding the FDPA "requires" imposition of the death penalty "once a jury makes a final unanimous determination that a sentence of death is justified").

Other courts have also followed this approach. In *United States v. Caro*, 483 F. Supp.2d 513, 517-18 (W.D. Va. 2007), the district court rejected the defendant's proposed "mercy

instruction." The court held the proposed instruction was "improper because it would have

told the jury that it could base its determination on factors not specified in the FDPA." *Id.*;

*see also United States v. Sampson*, 335 F Supp.2d 166, 239 (D. Mass. 2004) ("The statute does

not identify any other permissible considerations. To permit the jury to consider matters other

than the relative weight of aggravating and mitigating factors found during jury deliberations

risks the arbitrary and capricious imposition of death sentences based on unspecified

criteria.").[5]

     Additionally, in denying a motion for a new trial in *United States v. Rodriguez*, 2007

WL 466752, *60 (D.N.D. Feb. 12, 2007), the district court held there was no error in

prohibiting defense counsel from arguing that a death verdict is never required. To the

contrary, the court held:

> [I]f the jurors unanimously agree that the aggravating factors sufficiently
> outweigh the mitigating factors or the aggravating factors alone are sufficient,
> then the jury *must* recommend a sentence of death. The FDPA does not contain
> a second, substantive determination regarding a sentence of death once it
> decides that a sentence of death is indeed justified. The FDPA does not allow
> jurors to arbitrarily disregard its unanimous determination that a sentence of
> death is justified.

*Id.* (emphasis added). Accordingly, rather than instructing (or "educating" the prospective

jurors during voir dire) that the weighing process is a prerequisite to imposing the death

penalty based on some additional, undefined criteria, the Court should instruct (and limit the

---

[5] The *Sampson* court also tellingly pointed out that the FDPA is markedly different on this
issue than 18 U.S.C. § 848, the drug kingpin statute on which the FDPA was modeled and
which was the primary means of seeking the death penalty in federal court prior to the
passage of the FDPA in 1994. *See Sampson*, 335 F. Supp. 2d at 239. The court explained
that section 848(k) expressly stated that, "'The jury . . . regardless of its findings with respect
to aggravating and mitigating factors, is never required to impose a death sentence and the
jury shall be so instructed.'" *Id.* (quoting 18 U.S.C. § 848(k)).

parties to stating) that the weighing process is the criteria by which they are to determine if death is the appropriate sentence. *Sampson*, 335 F. Supp. 2d at 240.

Based on the above, this Court should prohibit any questioning during voir dire that suggests the jury retains discretion to decide the sentence even after it has found in the weighing process that a sentence of death is justified. This would include suggesting that the concept of "mercy" may alter the outcome after the weighing process is completed.[6] After the jury decides that a death sentence is justified, or should be imposed, the jury does not ask a second question of whether it will actually impose it. To do so would inject arbitrariness into the capital decision-making process.

### H. Scope of Mitigation

As explained above, case-specific questioning should be prohibited during voir dire. Thus, any questions regarding how a juror may receive and evaluate any specific mitigating factor would be objectionable. The government also recommends that defense counsel be limited in their characterization of the scope of mitigation. Importantly, the law limits the scope of mitigation to evidence concerning defendant's background, character, records, and the circumstances of the offense.

---

[6] The government is not suggesting that the concept of mercy may not be considered by a juror when personally conducting the weighing process. But, it would be improper and arbitrary for a juror, *after* the weighing process is complete and a decision is made that a death sentence is justified, to then elect not to impose a death sentence as a measure of mercy. It would, likewise, be improper for defense attorneys to urge this process, particularly during the jury selection stage.

The FDPA incorporates prior federal case law defining mitigating factors as "factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8). Similarly, the Supreme Court has defined "relevant mitigating evidence" as "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). *See also Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982); *Franklin v. Lynaugh*, 487 U.S. 164, 174 (1988). Thus, while capital defendants are granted broad discretion to introduce mitigating evidence, this discretion is not limitless.

In rejecting the defendant's claim that the State of Michigan's lack of the death penalty constituted a mitigating factor, the *Gabrion* court examined at length the appropriate scope of mitigation under the FDPA and Supreme Court precedent. *See Gabrion*, 719 F.3d at 520-24 (concluding that Michigan's lack of a state death penalty law was "irrelevant to a reasoned moral response to Gabrion's background, character, and crime" and was not mitigation under the Eighth Amendment).

The *Gabrion* court stated in pertinent part:

But the question is what counts as "constitutionally relevant mitigating evidence." [*Buchanan v. Angelone*, 522 U.S. 269, 276, 118 S. Ct. 757, 139 L. Ed. 2d 702 (1998)].

A capital defendant's "punishment must be tailored to his personal responsibility and moral guilt." *Enmund v. Florida*, 458 U.S. 782, 801, 102 S. Ct. 3368, 73 L.Ed. 2d 1140 (1982). Accordingly, the two seminal cases that require the admission of mitigation evidence—*Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L.Ed.2d 973 (1978) and *Eddings v. Oklahoma*, 455 U.S. 104, 112, 102 S. Ct. 869, 71 L.Ed. 2d 1 (1982)—are based upon "the principle that

29

punishment should be directly related to the personal culpability of the criminal defendant." *Penry v. Lynaugh*, 492 U.S. 302, 319, 109 S. Ct. 2934, 106 L.Ed. 2d 256 (1989), overruled on other grounds by *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L.Ed. 2d 335 (2002).

It comes as no surprise, therefore, that most of the evidence the Supreme Court has deemed mitigating was evidence relevant to the defendant's personal culpability for his crime. . . .  The admission of much of this evidence reflects "the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *Penry*, 492 U.S. at 319, 109 S. Ct. 2934 (quoting *California v. Brown*, 479 U.S. 538, 545, 107 S. Ct. 837, 93 L.Ed.2d 934 (1987) (O'Connor, J., concurring)).  Thus, to the extent relevant to the defendant's culpability, mitigation evidence includes evidence about the defendant's background and the circumstances of his crime.  *See Penry,* 492 U.S. at 327–28, 109 S. Ct. 2934.

In addition to evidence concerning the defendant's culpability, evidence of the defendant's character can be mitigating. . . .  Viewed as a whole, therefore, mitigation evidence encompasses both culpability and character, all to the extent relevant to the defendant's "personal responsibility and moral guilt." *Enmund*, 458 U.S. at 801, 102 S. Ct. 3368.  In summary: mitigation evidence is evidence relevant to "a reasoned moral response to the defendant's background, character, and crime." *Penry*, 492 U.S. at 319, 109 S. Ct. 2934 (emphasis omitted); *see also United States v. Johnson*, 223 F.3d 665, 675 (7th Cir. 2000) ("A mitigating factor is a factor arguing against sentencing *this* defendant to death; it is not an argument against the death penalty in general") (emphasis in original).

That Michigan lacks a death penalty has nothing to do with these things. It has nothing to do with Gabrion's background or character.  It has nothing to do with the reasons why he chose to kill Rachel Timmerman.  It has nothing to do with the utter depravity of the manner in which he killed her.  And above all it has nothing to do with his culpability for that offense or with any other consideration the Supreme Court has ever flagged as mitigating. Gabrion does not even argue the contrary.
. . .

 The dissent is mistaken, therefore, when it suggests that mitigation, for purposes of the Eighth Amendment, is not a moral concept.  Of course it is, as the plain terms of the Supreme Court's precedents make clear. *See, e.g., Penry*, 492 U.S. at 319, 109 S. Ct. 2934; *Enmund*, 458 U.S. at 801, 102 S. Ct. 3368. But that does not mean (as the dissent seems to fear) that judges must act as moral filters in determining whether evidence is mitigating for purposes of the Eighth Amendment.  The Supreme Court has spared us that task, by itself identifying certain categories of evidence—broadly stated, culpability and

character—that are morally significant and thus mitigating under the Eighth Amendment.  Our task, therefore, is not ourselves to determine the moral significance of a particular fact, but rather to determine whether the fact falls within one of the morally significant bins that the Supreme Court has already identified.  The geographic coordinates of Rachel Timmerman's murder fail that test.

*Id*. at 520-23.  This well-reasoned analysis regarding the appropriate scope of mitigation should continue to be applied in this case.

The Government also expects defense counsel to rely upon *Tennard v. Dretke*, 542 U.S. 274 (2004) for the proposition that mitigation may be almost anything the prospective juror believes supports a sentence less than death.  This would be a misinterpretation of *Tennard*.  The *Gabrion* court's opinion also expressly distinguished *Tennard* on this issue. The court stated:

Mitigation evidence, as shown above, is not an empty concept to be filled by whatever a lawyer or court thinks might persuade a single juror in a particular case.  It is true that the Supreme Court has said that mitigation evidence includes evidence that "the sentencer could reasonably find . . . warrants a sentence less than death." *Tennard v. Dretke*, 542 U.S. 274, 285, 124 S. Ct. 2562, 159 L.Ed. 2d 384 (2004) (quotation marks omitted). But the key word there is "reasonably"; and read in the context of the rest of the Supreme Court's mitigation-evidence caselaw, and *Penry* in particular, that passage simply refers to evidence relevant to "a reasoned moral response to the defendant's background, character, and crime." *Penry*, 492 U.S. at 319, 109 S. Ct. 2934. Otherwise, for example, the Eighth Amendment would compel admission of evidence regarding the positions of the planets and moons at the time of the defendant's offense—so long as he can show that at least one juror is a firm believer in astrology.  To read the *Tennard* passage (and others like it) in the manner that *Gabrion* suggests would be to transform mitigation from a moral concept to a predictive one, and make a caricature of the law.  We decline the suggestion.

. . .

And even in *Tennard*—upon which the dissent mistakenly relies here—the Court said that mitigation evidence does not include evidence of "the

circumstances of the crime [that] is unlikely to have any tendency to mitigate *the defendant's culpability*." 542 U.S. at 286, 124 S. Ct. 2562 (emphasis added).

The dissent's reliance on *Tennard* is misplaced for another reason. There, Tennard sought to admit evidence of his low IQ, which is a type of evidence that the Supreme Court has identified as mitigating. *See Smith v. Texas*, 543 U.S. 37, 44, 125 S. Ct. 400, 160 L.Ed.2d 303 (2004). The definition of mitigating, therefore, was not the issue in *Tennard*. The issue, rather, was the definition of relevance: the Fifth Circuit had upheld the exclusion of Tennard's evidence on grounds that it did not have a strong tendency (as opposed to any tendency, which is the usual relevance standard) to mitigate Tennard's culpability for his crime. The Supreme Court reversed, stating that the Fifth Circuit's test "is inconsistent with the standard we have adopted for relevance in the capital sentencing context." 542 U.S. at 287, 124 S. Ct. 2562. So the Court reiterated that standard: "the 'meaning of relevance is no different in the context of mitigating evidence introduced in a capital sentencing proceeding' than in any other context[.]" *Id.* at 284, 124 S. Ct. 2562 (quoting *McKoy v. North Carolina*, 494 U.S. 433, 440–41, 110 S. Ct. 1227, 108 L.Ed.2d 369 (1990)). That means the Eighth Amendment requires admission of evidence with "any tendency," not some stronger tendency, "to mitigate the defendant's culpability." 494 U.S. at 286, 110 S. Ct. 1056. And here—unlike Tennard's low IQ—Gabrion's decision to throw Rachel Timmerman overboard where he did, rather than 228 feet to the north, had no tendency to mitigate his culpability for that crime.

*Id.* at 522-23. The Government urges the Court to follow the reasoning of *Gabrion* throughout the trial of this case, including when evaluating the propriety of defense questions and statements during voir dire relating to the scope of mitigation.

## I. Peremptory Challenges

Peremptory challenges "allow parties to exclude a given number of persons who otherwise would satisfy the requirements for [jury] service." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991). They are "part of our common law heritage" and have long been used to "secure [the] constitutional guarantee of trial by an impartial jury." *United States v. Martinez-Salazar*, 528 U.S. 304, 311, 316 (2000).; *see also Swain v. Alabama*, 380 U.S.

202, 219 (1965) (noting that the function of peremptory challenges "is not only to eliminate extremes of partiality on both sides, but to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise").

The Supreme Court, however, has also consistently "recognized . . . that such challenges are auxiliary" to a defendant's right to trial by an impartial jury. *Martinez-Salazar*, 528 U.S. at 311. In other words, peremptory challenges themselves "are not of constitutional dimension," rather they are just one "means to achieve the end of an impartial jury." *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) (internal citations and quotation marks omitted); *see also Rivera v. Illinois*, 556 U.S. 148, 157 (2009) (recognizing there is no free-standing right to peremptory challenges); *Stilson v. United States*, 250 U.S. 583, 586 (1919) (same). Because the right to peremptory challenges is a statutory creation, "it is for the [legislature] to determine the number . . . and to define their purpose and the manner of their exercise." *Ross*, 487 U.S. at 89; *see also Frazier v. United States*, 335 U.S. 497, 506 n.11 (1948) ("The right is in the nature of a statutory privilege, variable in the number of challenges allowed."); *Stilson*, 250 U.S. at 586 ("The number of challenges is left to be regulated by the common law or the enactments of Congress.").

Federal Rule of Criminal Procedure 24(b) ("Rule 24") authorizes twenty peremptory challenges to each side in a federal capital case. Fed. R. Crim. P. 24(b)(1). Non-capital felony defendants received ten peremptory challenges to the Government's six. Fed. R. Crim. P. 24(b)(2). Rule 24 further provides that the "court may allow additional peremptory challenges

*to multiple defendants.*" Fed. R. Crim. P. 24(b) (emphasis added). The rule does not provide grounds for a court to grant a single defendant additional peremptory challenges.

In permitting the parties to exercise peremptory challenges in this single-defendant case, this Court should adhere strictly to Rule 24. Importantly, federal courts have recognized that both the defendant and the government have compelling, and arguably equal interests in exploring prospective jurors' views on the death penalty, exposure to pretrial publicity, and ability to follow the trial court's instructions. *See*, *e.g.*, *United States v. Johnson*, 495 F.3d 951, 963 (8th Cir. 2007) (affirming trial court's decision to apply rational basis review to capital defendant's equal protection challenge to Rule 24); *United States v. Mitchell*, 502 F.3d 931, 954 (9th Cir. 2007) (affirming jury selection procedures in capital case that allowed government to strike jurors with religious or cultural opposition to the death penalty that could not be set aside and explaining that the government has a "compelling interest" in selecting jurors in capital cases who can follow the law and apply the facts in an impartial way, including voting for the death penalty if justified). Thus, Rule 24 provides for an equal number of peremptory strikes for both parties.

While the defendant has not presented a motion for additional peremptory challenges, the government takes this opportunity to preview the issue to the Court well in advance of trial. The government respectfully requests that this Court follow the dictates of Rule 24. There simply is no provision in the rule granting this Court discretion to award Defendant additional peremptory challenges in this case. Likewise, due process is not

violated as long as the Defendant receives all of the peremptory challenges Rule 24 provides and receives a fair trial. *See Martinez-Salazar*, 528 U.S. at 317).

## **CONCLUSION**

The government requests that this Court apply the law and principles set forth above when presiding over the in-court voir dire process.

DATED:     Buffalo, New York, April 4, 2025

MICHAEL DIGIACOMO                          MAC WARNER
United States Attorney                           Deputy Assistant Attorney General
Western District of New York                   Civil Rights Division


BY:   s/JOSEPH M. TRIPI                     BY:   s/DANIEL GRUNERT
      s/BRETT A. HARVEY
      s/CAITLIN HIGGINS                            Trial Attorney
      Assistant United States Attorneys           Civil Rights Division
      United States Attorney's Office             U.S. Department of Justice
      Western District of New York               150 M Street NE
      138 Delaware Avenue                         Washington, DC 20530
      Buffalo, New York 14202                     202-532-3805
                                                  Daniel.Grunert@usdoj.gov


BY:   s/MICHAEL S. WARBEL
      Trial Attorney
      Criminal Division
      U.S. Department of Justice
      1331 F. St. NW, 6th Floor
      Washington, DC 20004
      (202) 514-5605
      Michael.Warbel@usdoj.gov