UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

    v.                                                             22-CR-109 (LJV-HKS)

PAYTON GENDRON,

                Defendant.
_____

## SUPPLEMENTAL BRIEF REGARDING *DELLIGATTI V. UNITED STATES* AND *UNITED STATES V. COOPER* IN SUPPORT OF MOTION TO DISMISS COUNTS 11-20 OF THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE UNDER 18 U.S.C. § 924(c)

Defendant Payton Gendron, through undersigned counsel, submits this supplemental brief pursuant to this Court's text order of March 24, 2025 (ECF No. 299) and email of March 31, 2025 to address the impact of *Delligatti v. United States*, No. 23–825 (U.S. March 21, 2025), and *United States v. Cooper*, No. 23–6911 (2d Cir. March 14, 2025), on the defense's Motion to Dismiss Counts 11–20 for failure to state an offense under 18 U.S.C. § 924(c).[1]

The defense concedes that *Delligatti* forecloses its third argument for dismissal (omission). Mot. 24–25; Reply 19–20. However, neither *Delligatti* nor *Cooper* forecloses the defense's second argument (*de minimis* force). Mot. 18–23; Reply 15–19. Neither decision concerns a predicate statute, such as the Hate Crimes Prevention Act ("HCPA"), that defines "bodily injury" in the most expansive terms, to include, for example, "bruise[s]," fleeting "physical pain," transitory "impairment of the function of a bodily member," and "any ... injury

---

[1] The defense's Motion to Dismiss (ECF No. 180) is cited "Mot." The government's Opposition (ECF No. 201) is cited "Opp." The defense's Reply (ECF No. 215) is cited "Reply." The transcripts of the oral arguments on the Motion are cited "11/15/24 Tr." and "2/7/25 Tr."

to the body, no matter how temporary." *See* 18 U.S.C. §§ 249(a)(1), 249(c)(1), and 1365(h)(4). Rather, *Delligatti* dealt with a statute that required "'caus[ing] ... death.'" *See* slip op. 3 (quoting N.Y. Penal Law § 125.25(1)). And *Cooper* dealt with a statute that required "'caus[ing] ... physical injury,'" a phrase defined by State law to exclude "'petty slaps, shoves, kicks[,] and the like.'" Slip op. 10, 13 (quoting N.Y. Penal Law § 120.05(7), then *People v. Chiddick*, 8 N.Y.3d 445, 448 (2007)). In sharp contrast, causing "bodily injury" for purposes of the HCPA entails far lesser harm inflicted through far milder force. As the government accepts, the HCPA's definition of "bodily injury" encompasses grabbing someone's arm, poking him in the chest, spitting in his eye, or shouting in his face. *See* Mot. 21–22; Reply 15; 11/15/24 Tr. 15–16. That low-level conduct does not categorically involve the use of "violent force," only the kind of "offensive touching" held insufficient to satisfy the elements clause in *Johnson v. United States*, 559 U.S. 133, 139–40 (2010). Consequently, the defense's *de minimis* force argument remains live, and this Court should dismiss Counts 11–20 on that ground.

**I.        *Delligatti* Forecloses The Defense's Argument Concerning Omissions.**

The defense has argued for dismissal on the ground that the HCPA can be violated not just by action but by omission, whereas 18 U.S.C. § 924(c)(3)(A)'s "use of force" prong requires an affirmative act. Mot. 24–25; Reply 19–20. *Delligatti* rejected that interpretation of the elements clause, holding that "causing bodily injury by omission requires the use of force." Slip op. 4. The defense concedes that *Delligatti* forecloses its omissions argument.

**II.       Neither *Delligatti* Nor *Cooper* Forecloses The Defense's Argument Concerning *De Minimis* Force.**

The defense has also argued for dismissal on the ground that the HCPA can be violated by causing trivial "bodily injury" through *de minimis* force, whereas the elements clause requires

2

causing serious physical injury through violent force. Mot. 18–23; Reply 15–19; 11/15/24 Tr. 13–18. Neither *Delligatti* nor *Cooper* forecloses that argument because neither concerns an asserted predicate crime of violence that defines injury as broadly or as idiosyncratically as the HCPA does. On the contrary, *Cooper* in particular relies for its holding on a rule of New York State law excluding "petty slaps, shoves, kicks, and the like" from the scope of the assault statute at issue there—conduct that, the government acknowledges, falls squarely within the HCPA's scope. The minimum conduct sufficient to commit an HCPA violation is akin to mere offensive touching and is not categorically violent.

    A.    *Delligatti* addressed a challenge to attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5), itself predicated on attempted second-degree murder under New York State law, N.Y. Penal Law §§ 110.00 and 125.25(1), as a § 924(c)(3)(A) crime of violence. Slip op. 3.[2] Section 125.25(1) has as an element the intentional causation of death. *See id.* ("'with intent to cause the death of another person, ... causes the death of such person'"). The Supreme Court held that § 125.25(1) fit the elements clause even though one could violate it by omission. Slip op. 4. To decide *Delligatti*, the Court did not have to decide what degree of injury or quantum of force satisfies § 924(c)(3)(A), because the predicate statute at issue there required the intentional causation of death, and intentionally causing death always involves "violent" force. *See Johnson*, 559 U.S. at 140 (force is "violent" if it is "capable of causing physical ...

---

[2] The Supreme Court proceeded on the premise that "the status of [the defendant's] VICAR offense turns on whether the underlying state offense is a crime of violence," and further assumed that "New York attempted second-degree murder is a crime of violence if the completed offense is a crime of violence." Slip op. 4 nn.1–2. Thus, the question in *Delligatti* was "whether an individual who knowingly or intentionally causes bodily injury or death by failing to take action uses physical force within the meaning of the elements clause." Slip op. 4.

injury"). Rather, the defendant's argument was that intentionally causing death by omission did not amount to the "use" of force. That was the proposition rejected by the Supreme Court. (Likewise, to decide *United States v. Scott*, 990 F.3d 94 (2d Cir. 2021) (*en banc*)—whose reasoning *Delligatti* affirmed, slip op. 4—the Second Circuit did not have to decide the quantum-of-force question because the predicate statute at issue there required the intentional causation of serious bodily injury, and the defendant conceded that this constituted "violence." *See* Reply 18.) Neither *Delligatti* nor *Scott* confronted the minor degrees of injury or *de minimis* uses of force that meet § 1365(h)(4)'s atypical definition.

Granted, certain language in *Delligatti* suggests that intentionally causing any degree of injury categorically involves the use of violent physical force. *E.g.*, slip op. 7 ("Thus, although 'the merest touching' is not violent force, any force that actually causes injury or death is.'") (quoting *Stokeling v. United States*, 586 U.S. 73, 83 (2019)); slip op. 9 ("Deliberately causing injury necessarily involves the use of force in the sense relevant here."). But "'general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent case when the very point is presented for decision.'" *Arkansas Fish & Game Comm'n v. United States*, 568 U.S. 23, 35 (2012) (quoting *Cohens v. Virginia*, 19 U.S. 264, 399 (1821) (Marshall, C.J.)). Under this principle, the above-cited language from *Delligatti* does not bind this Court because, as just shown, the quantum-of-force question wasn't at issue there. *Delligatti* made that plain in Footnote 3, which said: "We have never addressed the meaning of 'physical force' in § 924(c)(3)'s elements clause. The parties, however, agree that the term refers to '*violent* force' as defined by [*Johnson*], rather than the battery-level force at issue

4

in [*United States v. Castleman*, 572 U.S. 157 (2014)]. ... We assume without deciding that interpretation." If *Delligatti* meant to hold that any injury, no matter how minor—inflicted by any force, no matter how mild—met § 924(c)(3)(A)'s definition, the Court would have had to construe the phrase "physical force," not just "assume" its meaning.

Moreover, *Delligatti* made these statements in the course of explaining why *Castleman* controlled. *Delligatti*, slip op. 5–8. Recall *Castleman*'s key holding: "the knowing or intentional causation of bodily injury necessarily involves the use of physical force." 572 U.S. at 169; *see Delligatti*, slip op. 1 (quoting this holding); *id.* at 5 ("*Castleman* establishes that ... it is impossible to deliberately cause physical harm without the use of physical force."). *Delligatti* extended *Castleman*'s holding—as well as that case's subsidiary conclusion that using force "encompasses even its indirect application, 572 U.S. at 170—to conclude that using force also includes causing injury through inaction. Slip op. 9. But *Castleman*'s holding was limited to common-law force, and the Supreme Court twice reserved the question whether causing injury categorically involves violent force. 572 U.S. at 167, 170. So *Castleman* did not bind *Delligatti* with respect to the quantum-of-force question. (Nor did *Stokeling*—also discussed in this section of *Delligatti*, *see* slip op. 7–8—as that case's holding was limited to the quantum of force sufficient to overcome a robbery victim's resistance. *See* 586 U.S. at 85.) Because *Delligatti* followed from *Castleman* (*e.g.*, slip op. 1, 5, 9), the latter limits the former's scope.

Finally, even if one reads this language in *Delligatti* for all that it's worth, there's still no reason to believe that *Delligatti* was using the word "injury" in the specialized sense reflected in § 1365(h)(4), such that one could apply *Delligatti*'s general language to the HCPA context. "'Congress, like Humpty Dumpty, has the power to give words unorthodox meanings.'" *Dubin v.*

*United States*, 599 U.S. 110, 124 (2023) (quoting *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 574 (2010)). Congress has done just that in § 1365(h)(4), defining "bodily injury" so capaciously as to reach, among other things, "bruise[s]," fleeting "physical pain," transitory "impairment of the function of a bodily member," and "any ... injury to the body, no matter how temporary." Thus, as the government admits, one can cause 'bodily injury" for purposes of the HCPA with actions so "slight" as poking someone in the chest and inflicting a second's worth of pain, spitting in someone's eye so that he blinks and loses his vision for an instant, or shouting in someone's face so that his ears ring and he loses his hearing for a moment. 11/25/14 Tr. 15–16. Ordinary English speakers would not call that "causing bodily injury," but Congress can, and does. Yet there is no indication that *Delligatti* was using the latter, uncommon, definition rather than the ordinary one. So this Court cannot pick up and apply *Delligatti*'s general language here. Rather, the *Johnson* standard governs. *See* 559 U.S. at 140.

      B.     *Cooper* addressed a challenge to the New York State offense of attempted second-degree assault, in violation of N.Y. Penal Law §§ 110.00 and 120.05(7), as a crime of violence under U.S.S.G. §§ 2K2.1(a), 4B1.2(a)(1), and 4B1.2 cmt. n.1 *Cooper*, slip op. at 2, 9–10. As relevant, § 120.05(7) has as an element the intentional causation of physical injury. *See id.* ("with intent to cause physical injury to another person, ... causes such injury"). New York State law defines "physical injury" as "impairment of physical condition or substantial pain." N.Y. Penal Law § 10.00(9). New York case law specifies that "'petty slaps, shoves, kicks[,] and the like' do not inflict 'physical injury' as defined by the New York assault statutes." *Cooper*, slip op. 13 (quoting *Chiddick*, 8 N.Y.3d at 448). In light of these definitions, *Cooper* held that § 120.05(7) is

6

a Guidelines crime of violence because it categorically involves "'force capable of causing physical pain or injury to another person.'" Slip op. 12 (quoting *Scott*, 990 F.3d at 111).

The defense acknowledges that *Cooper* rejected certain premises of its position. For example, *Cooper* disagreed with the argument that the elements clause demands "serious physical injury," reasoning that "'force as small as hitting, slapping, shoving, grabbing, pinching, biting and hairpulling' all qualify as physical force." Slip op. 11–13 (quoting *Stokeling*, 586 U.S. at 85). Likewise, *Cooper* rejected the defendant's reliance on *Villanueva v. United States*, 893 F.3d 123 (2d Cir. 2018), and *United States v. Dobey*, 2019 WL 5205475 (S.D.N.Y. Oct. 16, 2019), concluding that *Stokeling* abrogated those decisions. Slip op. 14 n.3. Instead, *Cooper* concluded that "'physical force means force capable of causing physical pain or injury.' Nothing more, and nothing less." Slip op. 15 (quoting *Stokeling*, 586 U.S. at 64).

Nonetheless, *Cooper* does not foreclose the defense's argument for dismissal here. The predicate statute at issue in *Cooper* defined "physical injury" far more narrowly than § 1365(h)(4) does, and the Second Circuit made a point of emphasizing that §§ 10.00(9) and 120.05(7) exclude such negligible uses of force as slaps, shoves, and kicks—conduct that the HCPA captures. Moreover, as suggested above, when cases such as *Johnson*, *Stokeling*, *Delligatti*, and *Cooper* speak of force capable of causing "physical ... injury," they use that phrase in the generic sense. Congress, however, has chosen to define "bodily injury" for purposes of the HCPA in a specialized sense, which encompasses all kinds of conduct that falls well short of the common understanding of "injury," such as poking, spitting, and shouting. Numerous decisions hold such conduct insufficient under the elements clause. *See, e.g.*, *United States v. Quinnones*, 16 F.4th 414, 419–20 & n.10 (3d Cir. 2021) (holding, post-*Stokeling*, that

"spitting or expelling fluid" does not involve violent physical force because "such acts are not capable of causing physical pain or injury," and collecting numerous cases); *Singh v. Ashcroft*, 386 F.3d 1228, 1232–33 (9th Cir. 2004) ("poking another with a stick" not categorically violent). Indeed, in its latest filing, the government goes farther still, arguing that "bodily injury" under the HCPA could be inflicted by getting a tattoo, chewing one's nails, or doing "extreme exercise." ECF No. 297, at 8. No one would use the term "injury" to describe the change in physical condition associated with a vigorous jog or bicycle ride—sweating, shortness of breath, soreness in underused muscles. But the government says that this is "injury" under the HCPA.

Applying the test set forth in *Johnson* (and reiterated in *Cooper*), an offense must involve "violent force" "capable of causing physical pain or injury," 559 U.S. at 140, as those terms are commonly understood. But the HCPA covers *de minimis* uses of force that cause the most insignificant and ephemeral effects on the body. It is not enough that the HCPA calls those effects "bodily injur[ies]," because the definition that Congress has supplied for that phrase is atypical and unusual, reaching conduct that no one—including the Courts of Appeals just cited—would characterize as "painful" or "injurious." *See Taylor v. United States*, 495 U.S. 575, 590–92 (1990) (rejecting proposition that term "burglary" in Armed Career Criminal Act includes any State offense denominated "burglary," regardless of State-law definition). A conviction under 18 U.S.C. § 249(a)(1)(B)(i) cannot serve as a § 924(c)(3)(A) predicate because the HCPA's expansive definition of "bodily injury" sweeps in non-qualifying conduct such as poking, spitting, shouting—and, the government now tells us, exercising—that does not rank as causing "injury" in the generic sense deployed by *Johnson* and *Cooper*. Rather, that conduct is akin to the mere "offensive touching" ruled out of the elements clause by *Johnson*.

## CONCLUSION

Although *Delligatti* forecloses the defense's third argument for dismissal (omission), neither *Delligatti* nor *Cooper* foreclose the defense's second argument (*de minimis* force). This Court should therefore dismiss Counts 11–20 on the latter ground.

Dated:        April 7, 2025
                 Buffalo, New York

*s/Daniel Habib*
Daniel Habib
Attorney-in-Charge, Appeals Bureau
Federal Defenders of New York, Inc.

*s/Sonya A. Zoghlin*
Sonya A. Zoghlin
Assistant Federal Public Defender

*s/MaryBeth Covert*
MaryBeth Covert
Senior Litigator

*s/Julie Brain*
Julie Brain
Julie Brain, Attorney at Law

*s/Monica Foster*
Monica Foster
Executive Director
Indiana Federal Community Defenders Inc.