# FEDERAL PUBLIC DEFENDER'S OFFICE
## WESTERN DISTRICT OF NEW YORK

MARIANNE MARIANO
**FEDERAL PUBLIC DEFENDER**
marianne_mariano@fd.org

ANNE M. BURGER
**SUPERVISORY ASST. FEDERAL PUBLIC DEFENDER**
anne_burger@fd.org

28 EAST MAIN STREET
FIRST FEDERAL PLAZA, SUITE 400
ROCHESTER, NEW YORK 14614

585-263-6201
FAX: 585-263-5871

BUFFALO OFFICE
300 PEARL STREET, SUITE 200
BUFFALO, NEW YORK 14202
716-551-3341
716-551-3346-FAX

REPLY TO: ROCHESTER

April 16, 2025

**VIA E-MAIL**

Hon. Lawrence J. Vilardo
United States District Judge
United States Courthouse
2 Niagara Square
Buffalo, New York 14202

      Re: *United States v. Gendron*, 22-cr-109, Requests for Disclosure, JSSA Grand Jury Motion

Dear Judge Vilardo,

      In conjunction with the Jury Selection and Service Act litigation (ECF Nos. 10, 17 and 18), and the Court's March 12, 2025, Decision and Order (ECF No. 286), the Court has ordered the disclosure of several categories of information. The Court ordered the Jury Administrator to provide the materials to it by April 2, 2025, whereupon the Court would file the materials under seal and give the parties access to them. The Court also ordered that, no later than two weeks after receiving the records, the defense was to notify the Court of any pending or follow-up record requests and to confer with the government and provide a joint proposed briefing schedule for any JSSA grand jury motion. On April 2nd and 3rd, the parties were provided with access to JSSA materials under the Court's March 12, 2025, Decision and Order.

      We respectfully submit the proposed briefing schedule in conjunction with the defense's substantive JSSA grand jury motion.

| | |
|---|---|
| 5/15/2025 | All outstanding materials produced to the parties |
| 6/26/2025 | Defense JSSA motion filed |
| 7/17/2025 | Government response filed |
| 7/31/2025 | Defense reply filed |

      In relation to the May 15, 2025, deadline, we respectfully request the Court order that the following outstanding materials be disclosed by the Jury Administrator so that the defense has sufficient time to file its motion by June 26, 2025.

**Item 6**

The Court should direct the Jury Administrator to communicate with the Administrative Office of the United States Court's Judiciary Data and Analysis Office about this issue to ensure that accurate AO-12 forms are produced.

The census numbers are still incorrect.  We will use the correct and updated census numbers in our analysis.  The AO-12 is used by Courts to understand the representativeness of their jury lists.  Without correct information that review is skewed.

**Items 8, 10, 20, and 21**

The Court should order the Jury Administrator to produce the Rochester Division data or, in the alternative, order the Jury Administrator to provide clarification on this issue. Unless the resulting information clearly establishes that the records did not begin as one master list the Court should order the Jury Administrator to produce the Rochester Division data.

**Items 11, 19 and 23**

The Court should order the Jury Administrator to produce the instructions or specifications actually used to merge the datasets to create the Master Jury Wheel. The Court should also order the Jury Administrator to produce the source data used to create the Master Jury Wheel. If, as appears to be the case, the datasets have been destroyed, the Court should order the Jury Administrator to reproduce the datasets and disclose them to the parties.

The supplied instructions or specifications used to merge the datasets is superficial, incomplete, and includes phrases such as "usually", "may have", "there are many questions I could not answer", "I believe", and "do not know." It appears that no detailed specifications exist or were retained.  The supplied information does not contain detail that would allow another vendor or internal department to recreate the Master Jury Wheel or create a future Master Jury Wheel.  The best practice for any computer process is for a written set of instructions or specifications to be produced.  In this way, the process can be vetted for its effectiveness, communicated to internal staff or vendors, maintained to answer questions about the results, and available for future use of the same process.

The supplied information includes some elements about how the various source lists were merged, but does not include the details of what is included in the source lists (for instance active and inactive voters, expired licenses, duplications caused by license and ID cards, etc.), whether corrections were made for data issues (for instance married and unmarried surnames, hyphenated and multiple surnames, initials versus full first names, etc.), and other important specifics of the merging process.

Further, the description of the source data does not describe which persons are included, the number of persons, the provider of the data, what the fields represent, or the source of the data.  The voter data information does not include the number of voters received, the type of voters, what is contained in the fields (fields are described as F1, LF, Delflg, Indexno, proc, update without any

explanation), and says "the input file may have contained additional fields which were ignored." The DMV data information does not include the number of records received, the type of records (valid license, expired license, personal id card, multiple records for the same person), what is contained in the fields (fields are described as E, N, F, F2, X without any explanation) and says "the input file may have contained additional fields which were ignored." There are similar problems with the Tax, Disabled, or Unemployment sources.

From the information supplied, the Western District of New York uses five sources of names to create the Master Jury Wheel (voter registration lists, DMV information, tax records, home relief and AFDC information, and unemployment insurance information).  People may be included in multiple lists resulting in duplicates on the Master Jury Wheel as it was compiled from the five sources.  Unresolved duplicates impact the representativeness of the Master Jury Wheel as the actual demographic statistics are skewed by the presence of duplicates. Unresolved duplicates destroy the randomness of the draw of jurors from the jury wheel because persons included on all five source lists potentially could be listed five times and, as a result, are five times more likely to be drawn as a person listed once.

By way of background, many federal courts use only voter registration lists to create the Master Jury Wheel as required by the Jury Service and Selection Act.  The issue of duplicate records in the Master Jury Wheel is limited in such cases as only one source is used. The use of five sources by the Western District of New York is uncommon.

For those federal courts that supplement the voter registration list, DMV data is the most-used supplemental list. As part of voter identification efforts, the voter registration list often contains the drivers' license or personal identification card numbers which can then be matched to the identification number on the DMV list to reduce the risk of duplication. The match is direct and benefits from the work of election authorities to verify the match.

The information supplied here suggests that duplicates are identified for removal, in general, based on a simple match of County Code, Last Name, First Name, and Date of Birth. This type of matching relies on certain assumptions such as whether the name on one source matches the name on other sources (married versus unmarried names, initials versus full names, nicknames, hyphenated and composite last names), that no typographical errors exist (transposition of month and day, missing month and day), that there is no change in county (especially if expired licenses are included in the DMV data), the choice of voter registration as the most current address data (as indicated in this case), and other specifics of the data. No agency or independent authority verifies the match. Because of the effects of duplicates on representativeness and randomness, the National Center for State Courts recommends that jury lists do not have more than 5% identifiable duplicated records.

To analyze the effect of duplicates and the implications of the duplicate matching process used here, unredacted source data from the five sources including Name, Address, and Date of Birth is required. The most direct data would be the data used to create the Master Jury Wheel used to select Grand Jurors in this case.

If the data used to create the Master Jury Wheel has been destroyed and the Court declines

to order the Jury Administrator to reproduce the datasets and disclose them to the parties, the Court should order the Jury Administrator to provide the data currently being used to create the Master Jury Wheel if the Jury Administrator confirms that the current merging process was identical to the one used to create the Master Jury Wheel in this case.

**Item 26**

The Court should order the Jury Administrator to identify the dates (not the data) when the case was evaluated and disclose this information.

The Jury Administrator had previously confirmed that attendance records existed for the entire March 2022 grand jury term and all attendance records from 3/31/2022 through 3/23 have been produced. Information about the dates when the case was evaluated will allow the defense to analyze the attendance records in the context of this case.

**Item 27**

The Court should direct the Jury Administrator to either provide the email referenced or verify that no such email exists.

**Additional Requests**

The following relates to juror questionnaire forms missing based on JID numbers we provided and Juror questionnaire forms and associated JID numbers for missing pool sequence numbers:

We do not believe that the Jury Administrator produced the juror numbers for the missing summons sequence (sequence numbers 6, 7, 51, 203, 280, 381, 544, 560). The Court should direct the Jury Administrator to produce this information. If we are in error and the information was previously produced, please identify the date and method of production by docket number.

The following relates to juror deferrals:

The Court should direct the Jury Administrator to disclose whether people were deferred into the master jury wheel for the grand jury and, if so, who. Further, if these deferred individuals' questionnaires are not within those we reviewed, the Court should authorize the Jury Administrator to provide them to us, in redacted format, for inspection.

Respectfully,

/s/Anne M. Burger
Anne M. Burger
Supervisory Asst. Federal Public Defender

/s/Sonya A. Zoghlin
Sonya A. Zoghlin
Assistant Federal Public Defender

/s/MaryBeth Covert
MaryBeth Covert
Senior Litigator, Federal Public Defender's Office

/s/Julie Brain
Julie Brain
Attorney at Law

/s/Monica Foster
Monica Foster
Indiana Federal Community Defenders, Inc.

cc: (all by E-Mail)
Brett A. Harvey, AUSA
Joseph M. Tripi, AUSA
Maeve Eileen Huggins, AUSA
Caitlin M. Higgins, AUSA
Michael S. Warbel, Trial Attorney
Daniel E. Grunert, Trial Attorney