UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

PAYTON GENDRON,

Defendant.

22-CR-109-LJV
DECISION & ORDER

---

Before this Court is Payton Gendron's motion to dismiss the government's Notice of Intent to Seek the Death Penalty based on the alleged abuse of the grand jury process. *See* Docket Item 235. The government opposed the motion, Docket Item 245, and Gendron replied, Docket Item 257. The Court has carefully reviewed the parties' briefing and the grand jury testimony at issue. For the reasons explained below, Gendron's motion is denied.

The Court assumes the parties' familiarity with the relevant facts.[1] Gendron argues that the government used the grand jury process to compel irrelevant evidence. Docket Item 235 at 6-11. More specifically, he argues that the government's grand jury questions covered "a wide range of topics having no relationship to the charges under consideration by the grand jury or the special findings it was asked to make." *Id.* at 1. He cites many areas of questioning that he says were improper, including "[w]hether he

---

[1] In any event, because Gendron's motion pertains to grand jury testimony that is subject to a protective order, *see* Docket Item 27 at ¶ 4, this Court will refer to the challenged testimony only to the extent necessary to explain its decision. Gendron also filed more than 300 pages of grand jury transcripts and two grand jury exhibits as sealed exhibits to his briefing. *See* Docket Items 235-1, 257-1, and 257-2. The briefing for this motion shall remain under seal because it extensively refers to and includes excerpts of confidential grand jury testimony. *See* Docket Items 235, 245, and 257.

had learning, physical, emotional, or mental disabilities," and "[w]hether . . . he seemed to be racist." *Id.* at 2. Gendron contends that such questioning "was designed to explore and preemptively rebut some common categories of mitigation." *Id.* at 6. The proper remedy, he says, is to "dismiss the Notice of Intent to Seek the Death Penalty . . . [or a]t a minimum, . . . preclude the government from using the impermissibly obtained information for any purpose at trial." *Id.* at 11.

The government responds that it probed only "legitimate areas of inquiry," and that "[t]o the extent the witnesses' testimony also related to mitigation evidence . . . [Gendron] has not shown any prejudice and has not demonstrated that he is entitled to any relief from this Court." Docket Item 245 at 1-2.

The grand jury is "an investigatory body charged with the responsibility of determining whether or not a crime has been committed." *United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991). It is tasked with "inquir[ing] into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *Id.* And "[a]s a necessary consequence of its investigatory function, the grand jury paints with a broad brush." *Id.* "[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *Id.* at 300.

Some of the challenged testimony, such as questioning about whether witnesses had observed Gendron exhibiting racial animus, *see, e.g.*, Docket Item 235-1 at 178, was plainly relevant to the hate crime charges in this case. And even if the questioning exceeded the scope of the government's authority, Gendron's proposed remedy of

2

dismissing the Notice of Intent to Seek the Death Penalty is inapt. Gendron cited no precedent for this remedy, *see generally* Docket Item 235, nor has this Court found any.

Gendron cites *United States v. Friend*, 2000 WL 36751464 (E.D. Va. Apr. 5, 2000), which reinforces this Court's decision to deny his request to dismiss the Notice of Intent. The court in *Friend* found "no authority that discusses whether abuse of the grand jury process on any occasion warrants dismissal of a notice of intent to seek a sentence of death during a capital proceeding." *Id.* at *7. The court concluded that to merit dismissal of the Notice of Intent, a defendant would need to make "some showing that the violations that occurred during the grand jury proceeding substantially influenced the decision by the United States' Attorney General to authorize the death penalty or that there is 'grave doubt' that the decision to authorize the death penalty was substantially influenced by the testimony which was inappropriately elicited." *Id.* As in *Friend*, "[a]bsolutely no showing of this kind has been made here" and, having reviewed the testimony at issue, "it is difficult to conceive that such a showing could be made." *See id.*

As for Gendron's alternative request to preclude the government from using "any of this information at trial for any purpose," Docket Item 235 at 3, Gendron again has cited no precedent for this remedy, *see generally* Docket Item 235, nor has this Court found any. *See Friend*, 2000 WL 36751464, at *6 ("The [c]ourt has found no statutory or decisional authority for the alternative relief . . . of completely precluding the United States from using [the challenged grand jury] testimony during any phase of the trial for

any purpose.").[2]  The proper method for challenging the admissibility of such evidence is by a motion in limine.  Gendron's request therefore is denied without prejudice.

## CONCLUSION

For the reasons stated above, Gendron's motion to dismiss the government's Notice of Intent to Seek the Death Penalty based on the alleged abuse of the grand jury process is DENIED.  Gendron may challenge the admissibility of the grand jury testimony by a motion in limine.

SO ORDERED.

Dated: April 22, 2025
       Buffalo, New York

          */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

[2] The government concedes that it "w[ill] not seek to affirmatively introduce the grand jury transcripts for [the relevant] witnesses at trial, absent an exception to the hearsay rule," but it "reserves its right to use the grand jury transcripts for impeachment purposes."  Docket Item 245 at 16.  The government in *Friend* agreed "not to affirmatively use [the challenged] testimony," and the district court held that the government could not "affirmatively us[e] any of [the challenged] testimony" but could use it "for impeachment should the occasion arise."  2000 WL 36751464, at *8.  *Friend* therefore does not support Gendron's request for the broad remedy of forbidding the government from using the contested "information for any purpose at trial."  *See* Docket Item 235 at 11.