UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

PAYTON GENDRON,

        Defendant.

22-CR-109-LJV
DECISION & ORDER

---

      The defendant, Payton Gendron, has made several requests for grand jury records under the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861-1878 ("JSSA"). *See* Docket Items 10, 187, and 262. This Court previously granted many of those requests, *see United States v. Gendron*, 2025 WL 778748 (W.D.N.Y. Mar. 12, 2025); *United States v. Gendron*, 2024 WL 3439502 (W.D.N.Y. July 17, 2024); Docket Items 190 and 214, and the Jury Administrator produced several rounds of records, *see* Docket Items 199, 217, 218, 240, 310, and 311. After this Court's most recent JSSA decision, Gendron submitted follow-up requests and proposed deadlines for his forthcoming substantive JSSA motion, Docket Item 325, the government responded, Docket Item 332, and Gendron replied, Docket Item 344.

      Gendron's follow-up requests are granted in part and denied in part for the following reasons. The Court also sets deadlines as provided below.

I.  **FOLLOW-UP REQUESTS**[1]

    A.  **AO-12s (pertaining to original requests 6 and 7)**

Gendron believes that the census data used as a comparator on the AO-12 forms incorrectly includes noncitizens.  Docket Item 262 at 1-2.  Those forms compare demographic data from a sample of jurors in the jury wheel with demographic data for the citizen population.  *See, e.g.*, Docket Item 199 at 3-4.  Gendron's request is not about the court's data from the sample but about the population data to which the court's data is compared.  Gendron asks the Court to "direct the Jury Administrator to communicate" with the office that provides this data—the Administrative Office of the United States Court's Judiciary Data and Analysis Office ("the Administrative Office")— "about this issue to ensure that accurate AO-12 forms are produced."  Docket Item 325 at 2; *see* Docket Item 310 at 1 (Jury Administrator's explanation that "[t]he Census data on the previously provided . . . forms matches the data provided by the Administrative Office.").

Gendron's request is GRANTED.  The Jury Administrator shall ask the Administrative Office whether the data set it provided is correct and shall report the response to the Court and the parties.[2]

---

[1] Given the extensive briefing and rulings thus far, the Court assumes the parties' familiarity with the relevant facts and issues.

[2] Gendron may, as he proposes, "use [what he believes are] the correct and updated census numbers in [his] analysis," Docket 325 at 2, and he shall explain the source of those numbers.

B.     **Rochester Data (pertaining to original requests 8, 10, 20, and 21)**

Gendron requested certain data from both the Buffalo and Rochester divisions because he believes that the district has "a master list . . . from [which] each division's list is created" and that the Rochester data could help uncover any issues that occur "at the splitting of the two lists." Docket Item 212 at 10. The Court previously ordered the Jury Administrator to ask the vendor who creates the Jury Wheel about whether the data begins with one list that is split. *See Gendron*, 2025 WL 778748 at *7. The vendor said that "*[u]sually*, [he] receive[s] two files for each [data] source[,] i.e.[,] one for Rochester and one for Buffalo," and he "separate[s] each file into [the Buffalo or Rochester] division by county." Docket Item 310 at 4 (emphasis added). Based on that answer, it seems that the vendor sometimes splits data sets into the two divisions. The government nevertheless objects to releasing Rochester data on relevance grounds. Docket Item 332 at 2.

Gendron's request is GRANTED. The Jury Administrator shall produce the records for requests 8, 10, 20, and 21 for the Rochester division.

C.     **Written Instructions (pertaining to original requests 11 and 19)**

Gendron asks the Court to "order the Jury Administrator to produce the instructions or specifications actually used to merge the datasets to create the Master Jury Wheel." Docket Item 325 at 2. The Court ordered the Jury Administrator to produce answers from the vendor about this process, and the Jury Administrator did so. *See Gendron*, 2025 WL 778748 at *3-5; Docket Item 310 at 3-10. Gendron complains that the vendor's responses do not include "important specifics [about] the merging

3

process" and "the best practice for any computer process is for a written set of instructions or specifications to be produced." Docket Item 325 at 2.

The government objects to requiring the Jury Administrator to provide more information. It notes that the JSSA only "contemplates the production of 'records and papers already in existence.'" Docket Item 332 at 3 (quoting *United States v. Eldarir*, 2020 WL 6545894, at *4 (E.D.N.Y. Nov. 6, 2020)). And it argues that "the Court has ordered production beyond this scope—for example, by ordering that the Jury Administrator/vendor provide written responses to questions from the defendant—to ensure the defendant has the materials necessary to make his motion." Docket Item 332 at 3.

This Court agrees with the government. It should go without saying that this Court cannot order the Jury Administrator to produce "actually used" instructions and specifications that do not exist. *See* Docket Item 184 at 1-2 (Jury Administrator's response that there was "[n]o additional document available" relating to request 11 and "[n]o documents or data available" relating to request 19). The Jury Administrator searched for written communications and emails and produced a responsive email. *See* Docket Item 310 at 2. The Jury Administrator sought answers from the vendor to Gendron's questions and asked follow-up questions as well. *See* Docket Item 310 at 3-10; Docket Item 311. And this Court's orders already went beyond records "already in existence." *See United States v. Miller*, 116 F.3d 641, 658 (2d Cir. 1997).

Gendron's request for additional written instructions therefore is DENIED. To avoid any doubt, however, and at Gendron's request, Docket Item 344 at 2, the Jury Administrator shall state whether there are any "complete [written] instructions or

4

specifications actually used here" other than what is in the Jury Plan and has already been produced.

### D.     Source Data (pertaining to original request 23)

Gendron makes a series of requests in the alternative regarding source data. He asks the Court to order the Jury Administrator to (1) "produce the source data used to create the Master Jury Wheel," (2) "reproduce the datasets" if any have been destroyed, or (3) "provide the data currently being used to create the Master Jury Wheel if . . . the current merging process was identical to the one used to create the Master Jury Wheel in this case." Docket Item 325 at 2-5. Gendron argues that the source data constitutes a "record[] . . . compiled and maintained by the jury commission or clerk" that the Clerk of the Court needed to preserve for four years. Docket Item 344 at 2 (quoting 28 U.S.C. § 1868). Gendron says that he needs the source data "[t]o analyze the effect of duplicates and the implications of the duplicate matching process," and that "[n]ame[s], [a]ddress[es], and [d]ate[s] of [b]irth [are] required" and cannot be redacted. *Id.* at 3-5.

The government objects to the release of any unredacted information. Docket Item 332 at 4. It also argues that, as to Gendron's third request, current data would "ha[ve] no bearing on his motion." *Id.*

As the Jury Administrator told the parties in June of 2024, "[i]ndividual data sources are deleted after the wheel has been created and accepted." Docket Item 184 at 2; *see* Docket Item 262 at 3. And the vendor said that "all data . . . is removed from the system[] once the Master Jury Wheel is put into production." Docket Item 310 at 4; *see* Docket Item 311 at 1. So according to the Jury Administrator and the vendor, they

have not retained any source data, and this Court therefore denies the first request because the Jury Administrator has no responsive records.

The Court also denies Gendron's second and third requests. The request to reproduce data sets goes beyond "records and papers already in existence." *Miller*, 116 F.3d at 658. And current data would have no bearing on Gendron's motion about a jury wheel from several years ago.

This Court previously ordered the Jury Administrator to ask the vendor for source data and to redact and disclose that data if the vendor had any. *Gendron*, 2025 WL 778748, at *5. But it is notable that several courts have outright denied requests for source data. *See, e.g.*, *United States v. Oldham*, 995 F. Supp. 2d 789, 800 (E.D. Mich. 2014); *United States v. Rice*, 489 F. Supp. 2d 1312, 1318 (S.D. Ala. 2007); *United States v. Diaz*, 236 F.R.D. 470, 483-84 (N.D. Cal. 2006) ("The raw data contained in the original source list is not *necessary* to the preparation of defendants' fair cross-section challenge.")

What is more, Gendron's argument about why he needs the source data is premised on his receiving data without redactions. But even among the courts that have released this data, many have required redaction. *See, e.g.*, *United States v. Shader*, 472 F. Supp. 3d 1, 5-6 (E.D.N.Y. 2020); *United States v. Holmes*, 2020 WL 5408163, at *3, *5, *8 (N.D. Cal. Sept. 9, 2020); *United States v. Crider*, 2021 WL 4226149, at *7 (S.D. Cal. Sept. 15, 2021). The data sets at issue—such as voter rolls covering the entire district—have a massive amount of personal information that this Court would not release without redactions. In other words, this Court would not allow

Gendron to access the data in the way that he says is necessary to make the argument he wants to make.

In sum, the vendor does not have the source data, and the clerk's office does not or did not maintain it. There is precedent for denying the disclosure of source data, especially in unredacted form. For all these reasons, the Court will not order the Jury Administrator to attempt to reproduce the source data, and Gendron's requests about source data are DENIED.

### E.     Dates When Grand Jury Evaluated this Case (pertaining to original request 26)

Gendron wants to know "the date or dates when the grand jury evaluated the case." Docket Item 344 at 3; *see* Docket Item 325 at 4.

Over the government's objection, Docket Item 332 at 4, this request is GRANTED.

### F.     Public Records (pertaining to original request 27)

In its most recent JSSA decision and order, this Court denied Gendron's request for emails with chambers about the details of grand jury selection "except to the extent that an email includes a *memo* addressing the details of grand jury selection." *Gendron*, 2025 WL 778748 at *7-8 (emphasis added). Gendron now asks this Court to "direct the Jury Administrator to either provide the email referenced or verify that no such email exists." Docket Item 325 at 4.

Gendron's request is GRANTED.

### G. Additional Requests

Gendron requests that the Jury Administrator produce the "juror numbers" associated with eight "sequence numbers." Docket Item 325 at 4. The government believes that the Jury Administrator provided this information already. Docket Item 332 at 5. Therefore, the Jury Administrator shall either provide the juror numbers or advise Gendron exactly where this information is located within the records already produced.

Finally, Gendron asks this Court to "direct the Jury Administrator to disclose whether people were deferred into the master jury wheel for the grand jury and, if so, who" and to provide the associated questionnaires in redacted form if they were not within those that defense counsel reviewed. Docket Item 325 at 4. The Jury Administrator previously responded that "[t]he deferred jurors do not go directly back into the wheel as they are deferred to a later date." Docket 310 at 2. The Jury Administrator shall provide any additional information responsive to these requests and shall provide the associated questionnaires if such questionnaires exist and were not already produced.

The additional requests are GRANTED as explained above.

## II. JSSA BRIEFING SCHEDULE

The Jury Administrator shall produce any records covered by this decision no later than May 20, 2025. Gendron's JSSA motion is due by July 1, 2025; the government's response is due by July 17, 2025; and Gendron's reply is due by July 31, 2025.[3]

---

[3] This schedule largely tracks the one that Gendron proposed. See Docket Item 325 at 1. Gendron informally told the Court that the government did not object to those dates, but the government later suggested an abbreviated schedule without mentioning

8

**CONCLUSION**

For the reasons stated above, Gendron's request for additional JSSA records is GRANTED IN PART and DENIED IN PART.

The documents produced pursuant to this decision and order are subject to the amended protective order governing jury records. *See* Docket Item 213.

The Jury Administrator shall provide this Court with the records no later than May 20, 2025. When it receives the records, this Court will file them under seal and give defense counsel and the government access to them.

SO ORDERED.

Dated: May 15, 2025
Buffalo, New York

/s/ *Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

whether it had previously agreed to Gendron's proposed schedule or had changed its mind. *See* Docket Items 332 at 1; Docket Item 344 at 1.

The Court rejects most of the government's proposal as infeasible. For example, the government offered a deadline of May 7, 2025, for the Jury Administrator to produce records. *Id.* at 1. That deadline would have left three business days after the parties completed briefing for this Court to rule on Gendron's request *and* for the jury administrator to produce additional records. The government's new proposal also gave itself a shorter duration—two weeks—to respond to Gendron's JSSA motion, and the Court accepts that aspect of its proposal.