IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                            22-CR-109-V

PAYTON GENDRON,

                Defendant.

---

## GOVERNMENT'S SUR REPLY TO THE DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR AN ADJOURNMENT OF THE TRIAL DATE

The United States of America, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, and Mac Warner, Deputy Assistant Attorney General, Civil Rights Division, and Joseph M. Tripi, Brett A. Harvey, Caitlin M. Higgins, and Maeve Huggins, Assistant United States Attorneys, Sanjay Patel, Trial Attorney, Civil Rights Division, and Michael Warbel, Trial Attorney, Department of Justice Capital Case Section, of counsel, respectfully submits this sur reply in further opposition to the defendant's supplement in support of his motion to adjourn the trial (*see* Docket Nos. 334, 360).

## PRELIMINARY STATEMENT

On May 15, 2025, the defense filed a reply in further support of their supplement to the motion to adjourn the trial. *See* Docket No. 360. The defendant's reply largely repeats and emphasizes their prior arguments, but also advances an argument that the Court should grant their motion to adjourn because they recently learned of a serious illness which will force them to lose one of their team members, Ms. Monica Foster. While the

1

government is sensitive to the defense team's plight, having itself lost and replaced four different prosecution attorneys during the pendency of this case (including as recently as May 16, 2025), with the government's consent the Court has already made significant accommodations for the defense because of Ms. Foster's unavailability.  For example, with the government's consent, and because of the defense's description of Ms. Foster's role on the defense team, the Court adjourned and delayed rescheduling the *Roper*-extension hearing, which was scheduled to commence and be completed in May of 2025.  Indeed, the defense is due to report back on their efforts to replace Ms. Foster on May 21, 2025, and the hearing will not proceed such that the entire month of May has essentially been lost.  Additionally, again with the government's consent, the Court deferred scheduling a date for the defense to finalize and file its change of venue motion.  These accommodations are not insignificant, but they also should not serve as a basis to delay a trial that has already been rescheduled at the defendant's request and is not set to commence for approximately eight months.[1]

Importantly, the defendant has at least two learned counsels, including Ms. Zoghlin and Ms. Burger, since the day he committed his attack on May 14, 2022.  His defense team has only grown since then.  While there is undoubtedly a lot of work to do, both the defendant and the government have multiple experienced attorneys assigned to the case such that the work that needs to be done to provide effective assistance of counsel can be accomplished without further delaying the start of trial.

---

[1] The eight-month estimate is measured from the date of the May 2, 2025, status conference wherein the defense reported to the Court that Ms. Foster would need to withdraw from the case.  Trial is scheduled to commence on January 5, 2026, which is 248 days away, or in a little over eight months.

I.   **The Withdrawal of a Defense Team Member does not Warrant an Additional Adjournment of the Trial Date**

On May 14, 2022, United States Magistrate Judge H. Kenneth Schroeder, Jr., assigned learned counsel Sonya Zoghlin and Anne Burger to represent the defendant. At that time, Magistrate Judge Schroeder also assigned MaryBeth Covert, who is a highly regarded and experienced federal practitioner with extensive appellate experience. Thus, from the day the defendant committed the mass shooting at Tops, and before he was ever charged in federal court, he has had at least two learned counsels assigned to his case even though the law only requires one. *See* 18 U.S.C. § 3005 ("Whoever is indicted for treason or other capital crime […] the court before which the defendant is to be tried, or a judge thereof, shall promptly, upon the defendant's request, assign 2 such counsel, of whom *at least 1* shall be learned in the law applicable to capital cases[.]") (emphasis added).

On January 12, 2024, after the government filed notice that it would seek the death penalty, the parties appeared for a status conference. *See* Docket Nos. 125-26. During the status conference, the government attempted to flag any issues related to representation and stated:

> [I]t's my understanding that in these cases, typically attorneys get added to the defense team […]. We would ask that if that is going to happen, that it happen expeditiously so that it doesn't build delay later on in the case, because you inject new attorneys and they need to get up to speed. So I just wanted to flag that.

*See* Docket 127 at 6:2-11.  In response, counsel for the defendant stated, "I respectfully suggest that the defense team will organize ourselves as we see appropriate." *Id.* at 6:13-15.

3

On or about February 2, 2024, attorney Julie Brain who, upon information and belief has appeared as learned counsel in multiple federal capital cases, was added to the defendant's capital defense team. *See* Docket Nos. 135, 151, 153, 154. That made three attorneys qualified as learned counsel part of the Gendron capital defense team.

On October 29, 2024, ten months after the government filed its notice of intent and eight months after adding Ms. Brain to Gendron's capital defense team, attorney Monica Foster filed a notice of appearance joining the defendant's capital defense team. *See* Docket No. 232.[2] Ms. Foster was the fourth qualified learned counsel to join Gendron's capital defense team.

The government acknowledges Ms. Foster's credentials and experience. However, by the time Ms. Foster filed her notice of appearance, Gendron's capital defense team, led by attorneys Zoghlin, Burger, and Covert from the beginning (and which added another qualified learned counsel, Ms. Brain, along the way), had been defending the case for approximately 29 months. Preceding Ms. Foster's involvement, Gendron's capital defense team engaged in critical defense work, which included: (i) navigating dual state and federal prosecutions; (ii) presenting death penalty mitigation evidence to the Department of Justice's Capital Review Committee; (iii) filing at least 27 motions, responses, appeals, or memoranda in support of the defendant's various motions[3] (which included, among other things, multiple motions to dismiss based upon constitutional and statutory grounds,

---

[2] The defense also later added attorney Daniel George Habib, *see* Docket No. 236, on November 14, 2024, and the Federal Public Defender, Marianne Mariano is an attorney to be noticed on the docket.

[3] Excluding motions to seal, for extensions of time, letters, and joint memoranda.

challenges to the grand jury proceedings and for disclosure, requests for a bill of particulars and an informational outline, to strike death penalty aggravating factors, to exempt Gendron from capital punishment, etc.); and, (iv) appearing and arguing on behalf of the defendant during at least fifteen court appearances in federal court. Indeed, while capital cases do "implicate[] unique procedural and constitutional requirements," *see* Docket 360 at 5, as set forth above, and considering the substantive and procedural positions the defense has advanced on the defendant's behalf, all of those "unique procedural and constitutional requirements" have and were being met by the defense in this case even before Ms. Foster's addition to the defense team. In that vein, many critical steps in the defense team's work occurred well before Ms. Foster joined the defense team, and the record is clear before Ms. Foster's involvement the defense was already operating as part of a "multi-disciplinary team, guided and overseen by attorneys who, by virtue of experience, understand this specialized endeavor and what it takes." *Id.* at 6.

Although the government does not have access to *ex parte* filings or orders authorizing defense team members, as set forth above and consistent with the ABA Guidelines, the defendant always has been represented by at least three experienced attorneys, including at least two who qualify as learned counsel even though the law only requires one. *See* 18 U.S.C. § 3500 (requiring assignment of at least one learned counsel in capital cases). Moreover, the defense filings and in-court statements indicate that Gendron's capital attorneys are supported by investigators, at least one mitigation specialist, and multiple mental health experts—in other words since the beginning the defendant has had, and continues to have, a "multi-disciplinary team, guided and overseen by attorneys who, by virtue of experience, understand this specialized endeavor and what

5

it takes." *Id.* at 6. Based upon the record, this Court should find that Gendron's defense team has adhered to the ABA Guideline standards cited in their motion to adjourn; that they have met and exceeded their obligations on behalf of their client to provide effective assistance of counsel and they are providing the defendant a defense that is consistent with the highest levels of the profession; and, that based upon their collective experience, expertise, and present makeup, there is sufficient time before trial for the defense to be prepared to proceed to trial on the schedule which has already been revised at their request.[4]

Specifically, during a conference on May 2, 2025, the defense indicated that Ms. Foster was the lead for the Gendron defense on two matters: (1) the *Roper*-extension hearing, which was scheduled to occur in May; and (2) the change of venue motion. *See* Status Conf., Tr. at 5, 10, 14 (May 2, 2025) (under seal). The Court, without objection from the government, agreed to adjourn and hold in abeyance both the *Roper*-extension hearing and the defendant's deadline to file its change of venue to account for Ms. Foster's unexpected and unfortunate unavailability. Nevertheless, the unfortunate circumstances

---

[4] Nevertheless, the ABA Guidelines are guides, not law. *See Bobby v. Van Hook*, 558 U.S. 4, 17 (2009) ("*Strickland* stressed, however, that 'American Bar Association standards and the like' are 'only guides' to what reasonableness means, not its definition. 466 U.S., at 688, 104 S.Ct. 2052. We have since regarded them as such."). The Court has not set forth a heightened test for assessing effective assistance in capital cases. Indeed, *Strickland v. Washington*, 466 U.S. 668 (1970), which set forth a two-part standard for assessing ineffective assistance claims, was a capital case. Under *Strickland*, "[A] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." 466 U.S. 668, 687.

necessitating Ms. Foster's withdrawal do not warrant an additional adjournment of the trial. Gendron's capital defense team has been more than appropriately staffed since May 14, 2022, has expanded since then, and is litigating the case with the expertise and diligence that meets and exceeds Constitutional requirements and the ABA Guidelines.

Jury selection is not scheduled to commence for approximately eight months. The government does not oppose an additional attorney being assigned to Gendron's defense team to replace Ms. Foster, and there is enough time for the defense to identify and add another attorney before trial. However, even if the defense does not replace Ms. Foster, the experience and ability of the other learned counsel and attorneys comprising Gendron's capital defense team are more than sufficient to provide constitutionally effective assistance of counsel, and for trial to begin as scheduled on January 5, 2026.[5,6,7]

---

[5] To the extent the defendant's Reply contains protestations related to the amount of other capital cases being reviewed by the Department of Justice (DOJ), the government submits that such concerns are generally speculative as to what the DOJ may do in other cases and, in any event, are irrelevant to the Court's determination of the appropriate schedule in this case.

[6] As the government has previously noted, the Court has already moved the start of trial from September 2025 until January 2026, which effectively granted the defendant's motion to adjourn the trial by 4 months (or 33% of the one-year adjournment the defense requested).

[7] To the extent the defense motion relies upon the *ex parte* and sealed Declaration from Susan Garvey, the National Mitigation Coordinator for the Administrative Office for the Administrative Office of the U.S. Courts' Habeas Assistance and Training ("HAT") Program in support of their adjournment request, the Court should reject it. *See* Docket No. 360 at 14 ("As additional support for the request [of an adjournment until September 8, 2026] counsel submits herewith, also ex parte and under seal, the Declaration of Susan Garvey[.]"). The defense has not even attempted to provide a basis for including and relying upon the *ex parte* submission of the Garvey Declaration in their reply brief. The *ex parte* Garvey Declaration should be rejected by the Court and disclosed to the government because *ex parte* communications are "disfavored" in the criminal context, and they are "the exception rather than the rule, and they require particular justification." *United States v. Rechnitz*, 75 F.4th 131, 147 (2d Cir. 2023). Moreover, inclusion of, and reliance upon, the Garvey Declaration in a reply brief is improper, and any arguments in support of the defense's adjournment request that are related to or predicated upon it, either in whole or in part, should be disregarded and rejected by this Court as waived. *United States v. Karimu*, 470 F. App'x 45, 46 (2d Cir. 2012) ("By failing to raise the argument until his reply brief, [the defendant] has waived the issue.") (Summary Order); *see also Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010).

**II.      The Court should not Delay the Start of the Trial due to Concerns about the Anniversary of the Crime**

The witnesses, victims, and victims' family members are anxious for this case to proceed to trial. This Court has acknowledged its concern for the victims, their need for closure, and its obligations to balance those concerns against the defense's need to have adequate time to provide a robust defense. *See* Status Conf., Tr. at 13-14 (May 2, 2025) (under seal); *see also* 18 U.S.C. § 3771(a)(7) (conferring upon crime victims "[t]he right to proceedings free from unreasonable delay."). The balance the Court has already struck, delaying jury selection and the start of trial from September 2025 until January 2026, strikes the appropriate balance and should remain intact. The Court should not further delay the trial to ensure that it will not be underway in May 2026 for at least four reasons.

First, it is speculative to project that a trial commencing on January 5, 2026, would still be underway in May 2026. The parties have estimated the length of jury selection conservatively, and jury selection in other similarly high-profile capital cases such as *Bowers*[8], *Tsarnaev*[9], and *Saipov*[10] took approximately twenty to thirty-five court days. If this case follows that trend, it is possible the case could be concluded before May 1, 2026.

---

[8] *United States v. Bowers*, 2:18-cr-00292-RJC (W.D. Pa.).

[9] *United States v. Tsarnaev*, 13-cr-10200-MBB (D. Mass.).

[10] *United States v. Saipov*, 1:17-cr-00722-VSB (S.D.N.Y.).

Second, review of the dockets in other similarly high-profile mass casualty capital cases, such as *Tsarnaev* and *Saipov*, reveals that courts have held trial on the anniversary date of, or in the same month, as the crimes.[11]

Third, the Supreme Court has made clear that "[p]rominence does not necessarily produce prejudice, and juror *impartiality,* we have reiterated, does not require *ignorance*." *Skilling v. United States*, 561 U.S. 358, 381 (2010) (emphasis in original). A presumption of prejudice "attends only the extreme case." *Id.* "It is the impartiality of the jurors—not the quantum of publicity—that determines whether the trial proceedings may be fairly conducted." *United States v. Gaggi,* 811 F.2d 47, 52 (2d Cir. 1987) (citing *Dobbert v. Florida,* 432 U.S. 282, 303 (1977)). Moreover, as the government explained in its response, this Court will select a fair and impartial jury and will provide instructions to avoid any media coverage of the case—there is a presumption that juries follow a court's instructions. *See United States v. Elfgeeh*, 515 F.3d 100, 129 (2d Cir. 2008) ("The court should of course give an instruction (even if one has been given earlier, for example, immediately after the jury has been sworn in) that the jurors should not read any news article about the trial or watch or listen to any item on television or radio about the trial. If this process is followed, we may presume, in the absence of any indication to the contrary, that the jurors have followed the court's instructions and have rendered their verdict solely on the basis of the evidence at trial."). In the event it is brought the trial court's attention that there has been publicity

---

[11] For example, in *Saipov*, the crime was committed on October 31, 2017, and jury trial was held on October 31, 2022, which was the fifth anniversary of the crime. In *Tsarnaev,* which was the Boston Marathon bombing, the crime was committed on April 15, 2013, the jury verdict on the guilt phase was on April 8, 2015, the 2015 Boston Marathon was held on April 20, 2015, and the penalty phase of the capital prosecution commenced on April 21, 2025.

9

about the case during trial, the Second Circuit has set forth a "simple three-step process [], first, to determine whether the coverage has a potential for unfair prejudice, second, to canvass the jury to find out if they have learned of the potentially prejudicial publicity and, third, to examine individually exposed jurors—outside the presence of the other jurors—to ascertain how much they know of the distracting publicity and what effect, if any, it has had on that juror's ability to decide the case fairly." *Id.* Furthermore, in *United States v. Tsarnaev*, the Supreme Court reversed the Court of Appeals and determined it improperly vacated Dzohkhar Tsarnaev's capital sentences related to the Boston Marathon Bombing wherein the district court declined to ask jurors questions about the extent of their prospective media consumption about the case because "[b]ased on 'years' of trial experience, the court concluded that jurors who came in with some prior knowledge would still be able to act impartially and 'hold the government to its proof.'" 595 U.S. 302, 314. The Supreme Court determined that "the District Court's decision was reasonable and well within its discretion, as our precedents make clear." *Id.* Just as Dzohkhar Tsarnaev received a fair trial in Boston during a trial that occurred and continued during the same month as the Boston Marathon, so too can this defendant receive a fair trial in Buffalo, New York—even if the trial spans into the month of May.

Fourth, as the government set forth in its response, if the trial does run up against the anniversary of the crime on May 14th, the Court could simply elect to be down from trial that day. Moreover, the Court could (and undoubtedly will many times) emphasize its prior instructions regarding the presumption of innocence and the need to avoid media coverage. Furthermore, the Court may consider giving a limiting instruction, if the defense

10

proposes one, after considering input from the parties. In sum, there are ways the Court could remediate any perceived issues stemming from the anniversary of the crime without avoiding the entire month of May, because delaying the trial further to avoid the entire month of May would run counter to concerns about the victims' need for closure and their "right to proceedings free from unreasonable delay." See 18 U.S.C. § 3771(a)(7).

Based upon the foregoing, the Court should proceed with the trial as scheduled and should not avoid the entire month of May 2026.

## CONCLUSION

For all the reasons stated above and set forth in the government's prior arguments, the Court should deny the defendant's motion to further adjourn the trial, which is scheduled to commence on January 5, 2026.

DATED:   May 20, 2025
         Buffalo, New York

                                    MICHAEL DIGIACOMO
                                    United States Attorney
                                    Western District of New York


                            BY:    s/JOSEPH M. TRIPI
                                   s/ BRETT A. HARVEY
                                   Assistant United States Attorney
                                   United States Attorney's Office
                                   Western District of New York
                                   138 Delaware Avenue
                                   Buffalo, New York 14202
                                   (716) 843-5839
                                   Joseph.Tripi@usdoj.gov