UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

      v.                                          22-CR-109 (LJV)

PAYTON GENDRON,

                Defendant.

_____

**REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO ESTABLISH PROCEDURES FOR ADMISSION OF VICTIM IMPACT EVIDENCE AND TO EXCLUDE CATEGORICALLY INADMISSIBLE EVIDENCE**

Defendant, Payton Gendron, through counsel, respectfully submits this Reply to the government's Response in Opposition to Defendant's Motion to Establish Procedures for Admission of Victim Impact Evidence and to Exclude Categorically Inadmissible Evidence (ECF No. 319), ECF No. 350. The thrust of the government's Response is that, by advocating that the Court and the parties be apprised of the content of victim impact testimony before its delivery in front of the jury, the defense is attempting to secure some unspoken tactical advantage to which it is not entitled. To the contrary, the defense seeks only to best enforce the Eighth Amendment mandate that no sentence of death be imposed except in a manner that avoids arbitrary and capricious application and allows for individualized sentencing based on reason and not on irrelevant considerations such as sympathy or passion.

"'[W]here discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.'" *Zant v. Stephens*, 462 U.S. 862, 874 (1983) (quoting *Gregg v. Georgia*, 428 U.S. 153, 189 (1976)

1

(opinion of Stewart, Powell and Stevens, JJ.)). It is "of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason, rather than caprice or emotion." *Gardner v. Florida*, 430 U.S. 349, 357-58 (1977). In particular, the sentencing process must ensure that the jurors are able to focus on the particular defendant whose life they are being asked to take. *See Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) ("the fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death") (alteration in original).

  The Supreme Court has sanctioned the use of victim impact evidence at capital sentencing proceedings. *Payne v. Tennessee*, 501 U.S. 808 (1991). Because it is so uniquely powerful and emotional, however, victim impact evidence threatens to overwhelm all other evidence in a case and propel towards a death sentence jurors who might otherwise decide that life without possibility of release is the appropriate sentence under the individual circumstances of a case, in violation of the above principles. It is thus incumbent on the Court in its constitutional and statutory role as gatekeeper to impose procedures that ensure a penalty phase proceeding that properly channels—and does not overwhelm—the jury's discretion and weighing of the aggravating and mitigating factors. With respect to victim impact testimony, the best way to do that whilst maintaining the utmost respect and sensitivity towards the witnesses is to adopt the defense proposal and direct the government to prepare written testimony in advance for the Court's review.

### The Court Should Adopt the Defense Proposed Procedures in Order to Most Effectively and Efficiently Exercise its Vital Gatekeeping Function and Prevent the Admission of Unduly Prejudicial Evidence

The defense proposal that the government be directed to prepare written testimony for the victim impact witnesses is a common-sense method of ensuring that the penalty phase comports with constitutional requirements and steers well clear of the need for a mistrial or appellate reversal. As recently as last January, in *Andrew v. White*, 604 U.S. __, 145 S. Ct. 75 (2025), the Supreme Court reaffirmed its holding in *Payne v. Tennessee*, 501 U.S. 808 (1991), that, while the Eighth Amendment imposes no per se bar on victim impact evidence, the Due Process Clause nevertheless precludes admission of such evidence when it is "so unduly prejudicial that it renders the trial fundamentally unfair." *Andrew*, 145 S. Ct. at 81. To ensure that this Due Process requirement is met, as well as its statutory corollary in the FDPA that evidence must be excluded at the penalty phase "if its probative value is outweighed by the danger of unfair prejudice," 18 U.S.C. § 3593(c), the trial court plays a vital role as gatekeeper.

In a case such as this one, where there are many dearly loved deceased victims, the danger that the penalty phase presentations will be engulfed by victim impact evidence is at its highest. It is imperative that the Court adjudicate the admissibility of this category of evidence as a whole, fully cognizant of the impact each piece will have not only because of its individual heart-rending content, but also in combination with the sheer magnitude of the government's presentation. *See* ECF No. 319 at 18. Otherwise, once the penalty phase is under way, events can quickly unfold before the jury such that, if error occurs, it cannot be corrected. In *United States v. Johnson*, 713 F. Supp. 2d 595, 625 (E.D. La. 2010), for example, the district court was compelled to order a retrial of the

penalty phase proceeding based on improper victim impact evidence. In so doing, the court wrote:

> The Court accepts the fundamental fact that permissible victim impact evidence is inherently emotional. Even in *Payne*, however, the Supreme Court acknowledged that while victim impact evidence is proper information for the jury to hear in assessing the penalty, such evidence may nonetheless be so unduly prejudicial that it renders the trial fundamentally unfair, in which case the Due Process Clause provides for a new sentencing hearing.
>
> This Court is not suggesting that the *bona fide* victim impact evidence that was introduced in this case reached that level, in and of itself. What the Court is saying, however, is that the highly charged emotional content of the victim impact testimony created an atmosphere of overwhelming sympathy for the victim and the victim's family, along with the attendant genuine danger that any other unharnessed appeal to passion, prejudice or sympathy was likely to tip the scales into a Due Process violation of fundamental fairness. That is what the Court firmly believes happened at this trial, and it began with the prosecution's *Payne* violation.

*Id.* at 624 (internal quotation omitted).

As noted in the Motion, ECF No. 319 at 18-20, numerous courts have determined that the ability to review written testimony in advance is the most efficient and effective way to avoid such an outcome. *See also United States v. Lawrence,* 735 F.3d 385, 404 (6th Cir. 2013) (noting that district court reviewed written victim impact statements in advance for admissibility then had witnesses read them verbatim without deviation). Notwithstanding the obvious utility of the opportunity for careful review of the testimony in advance, nowhere in its 45-page-long Response does the government identify a persuasive reason *not* to adopt that procedure.

Instead, the government dismisses the proposal as "unnecessary," ECF No. 350 at 33, 35, "not necessary," *id.* at 26, 29, 32, 33, "not needed," *id.* at 27, and "unwarranted, *id.* at 26. It further avers that the proposed procedure would be "unfair" to the witnesses, *id.* at 35, and would "create[e] significant hardship" for them by "requiring them to repeatedly relive their loss," *id.* at 31. But the government will be preparing the witnesses to testify anyway, or at least it says it

will. *Id.* at 34 (averring that "it will prepare *all* its witnesses to testify within the proper bounds of the law"). There will thus be no additional hardship imposed by requiring the government, after that preparation has occurred, to reduce to writing the testimony that they will then elicit on the witness stand. Similarly, a gentle reminder from the Court to try to maintain composure will impose no appreciable unpleasantness, especially given the government's avowed commitment to making the same point, *id.* at 34 ("the government will also advise its witnesses about the importance of maintaining reasonable decorum on the witness stand").[1]

The potential for inflicting significantly more hardship inheres in the government's proposed alternative, which is to require the defense to interrupt and object to any inadmissible testimony, in front of the jury, while the witness is on the stand trying to get through the process. *Id.* at 30-34. In addition to the interruption, requiring mid-trial objections as advocated by the government may require the Court to recess the proceedings, prolonging the ordeal for the witness, and to instruct the jury that the witness's testimony was inappropriate and should be disregarded. *See id.* at 30 (describing as "instructive" the proposal of the court in *United States v. Lujan*, No. 05-924, 2010 WL 11546103, at *5 (D.N.M. Nov. 30, 2010), to "'recess the proceedings in order to allow the witness to regain composure" if he or she "becomes overly emotional," and to "instruct the jury to disregard any inappropriate comments'").

Worse, the witness may be forced to sit, alone, on the stand while the parties address issues at sidebar. *See Johnson*, 713 F. Supp. 2d at 625 (noting that, during sidebar objection, decedent's widow remained alone on stand and "continue[d] to cry within feet" of jurors, leaving

---

[1] Such a reminder will, of course, contain no "accusation of incipient misconduct," *id* at 35, nor any "assum[ption] the witnesses will act improperly," *id.* at 33; nor will it convey that the witnesses are being "single[d] out," *id.* at 33. It is the government, not the witnesses, that is responsible for ensuring that its presentation complies with the law.

5

them "totally vested in her plight" and "feel[ing] her misery unattended by counsel and the Court"). It is the government's proposal, then, that would "only protract and exacerbate an already painful process," *id.* at 31, and it should be rejected in favor of allowing victim impact witnesses to testify secure in the knowledge that they will not be interrupted or forced to start and restart their testimony.

### The Indefensible Positions Taken by the Government in its Response Underscore the Need for the Court to Rigorously Perform its Role as Gatekeeper and Adopt the Procedures Proposed by the Defense

The positions taken by the government in its Response reveal a perception of the scope of permissible victim impact evidence that is inconsistent with the limitations imposed by the Fifth and Eighth Amendments. First, the government's statement that "it is hard to fathom undue prejudice" resulting from unrestrained victim impact testimony, *id.* at 21, is disturbing. To the extent it is suggesting that the horrific nature of the crime relieves it, or the Court, from the obligation to comply with the Constitution, its obvious misconception should be unequivocally rejected. Second, the government's reference to the testimony offered at Payton Gendron's state court sentencing proceeding as illustrative of the victim impact evidence it plans to introduce at the penalty phase in this case, *id.* at 3, 32, is also concerning.

The government apparently fails to recognize the massive and fundamental distinction between a non-capital sentencing hearing before the Court, and the selection phase of a bifurcated capital proceeding under the FDPA. At a judge-sentencing hearing, quite properly, a court has wide discretion to allow victims to express their pain in emotionally charged terms that may negatively characterize the crime and the defendant and even confront the defendant directly. Under the Constitution and 18 U.S.C. § 3593(c), however, the jury's role in determining whether death is the appropriate punishment requires that victim impact evidence be significantly

more constrained. The victim impact portion of the penalty phase of this trial should therefore bear no resemblance to Payton Gendron's state court sentencing hearing. For obvious reasons, the state sentencing proceeding featured extremely emotional presentations in which victims' family members addressed Payton Gendron directly, shouted and cursed at him, and even, in one instance, physically lunged at him.[2] While understandable, such presentations would be inappropriate for the selection phase of this capital case and would likely require the Court to declare a mistrial.

Third, the government's position that "courts have found important the consideration of comparative worth and community value" when making a capital sentencing determination, ECF No. 350 at 11, is flat wrong. In *Payne*, 501 U.S. at 823, the Supreme Court acknowledged that the allegation that victim impact evidence "permits a jury to find that defendants whose victims were assets to their community are more deserving of punishment than those whose victims are perceived to be less worthy" was, if true, constitutionally problematic. However, the Court was satisfied that the type of victim impact evidence contemplated by its opinion "is not offered to encourage comparative judgments of this kind — for instance, that the killer of a hardworking, devoted parent deserves the death penalty, but that the murderer of a reprobate does not. It is designed to show instead each victim's "uniqueness as an individual human being," whatever the jury may think the loss to the community resulting from his death might be. *Id.*

Not in *Payne*, nor subsequently, has the Court suggested that comparative worth assessments have a legitimate role in decisions about who should be put to death. *See, e.g., Humphries v. Ozmint*, 397 F.3d 206, 219 (4th Cir. 2005) (recognizing that "the *Payne* Court

---

[2] See https://youtube.com/playlist?list=PLOe39zKfUwXsRLjee0fnI65_-qYiDKfz4&si=YAhu4zfr8Ze7Kmm-.

disapproved of comparisons between the victim and other victims of society"); *id.* at 225 n.8 (noting that a "victim-to-victim comparison is . . . pernicious because, not only does it invite a commentary on collateral evidence not properly before the jury (the worthiness of other members (victims) of society), it does not counteract the defendant's mitigating evidence"); *United States v. Fields*, 516 F.3d 923, 947 (10th Cir. 2008) (finding no precedent approving evidence of impact of victim's death on wider community and declining to expand *Payne* to encompass same as it would be "a radical change in perspective: replacing a close-in focus on persons closely or immediately connected to the victim with a wide view encompassing generalized notions of social value and loss"); *United States v. Fell*, 01-CR-1201, No. 2017 WL 10809983, *10 (D. Vt. Jan. 20, 2017) (noting that "[victim impact] evidence is not admissible to prove that one victim matters more than another").

*United States v. Runyon*, 707 F.3d 475, 500-01 (4th Cir. 2013), cited by the government, ECF No. 350 at 12, is not to the contrary. In that case, the Fourth Circuit merely held that testimony regarding the decedent's naval service "did nothing more than help to provide a 'quick glimpse' of the central aspect of his professional life—and thus accorded with both the Eighth Amendment and the FDPA." *Id.* at 501. No part of the court's opinion held or implied that evidence or arguments that encourage a jury to sentence a defendant to death because of the relative value of his victim's life as compared to others are permissible.

Fourth, also contrary to law is the government's insistence that hardships and challenges endured by victims or their families that are wholly unrelated to the crime for which the defendant is being sentenced are a proper subject for victim impact testimony. ECF No. 350 at 15-16. As explained in the Motion, ECF No. 319 at 28-31, such evidence encourages jurors to impose a death sentence based on sympathy for difficulties the victim endured that the defendant

did not cause. *See United States v. Fell*, 2017 WL 10809983, *10 ("a trial is not the same as a funeral") (D. Vt. Jan. 20, 2017). The government's attempt to introduce such evidence under the guise of mere "background information" that simply "provides a glimpse or look into the lives" of the victims is, accordingly, troubling indeed.

Finally, the government's wholehearted embrace of the Third Circuit's opinion in *United States v. Savage,* 970 F.3d 217, 298-303 (3d Cir. 2020), ECF No. 350 at 18-19, undermines its assurances that it "will instruct witnesses not to opine upon the defendant or his character, the circumstances of the offense, or the potential sentence to be imposed," on account of its "obvious and strong interest in not inviting error in this case," *id.* at 34. In *Savage*, the court declined to disturb the defendant's death sentence on appeal based on victim impact testimony that, even the government admitted, and the court agreed, "'came close to' the constitutional line." *Id.* at 302. Trial counsel failed to properly object to the statements at issue, and indeed his conduct suggested that he had affirmatively decided to abandon opposition to them. *Id.* at 299. Accordingly, the Third Circuit reviewed the testimony only under the exceedingly deferential plain error standard. *Id.* Ultimately, the court held that, in light of horrific evidence of the grisly arson-murders of multiple victims committed by the defendant, he was insufficiently prejudiced by the victim impact testimony to warrant reversal. *Id.* at 303.

The defense submits that another court reviewing the statements approved in *Savage* would have easily concluded that they *crossed* the constitutional line. The Supreme Court has squarely held that, notwithstanding the lack of a per se bar to victim impact evidence, a witness's "characterizations and opinions . . . about the crime, the defendant, and the appropriate sentence" are never admissible. *Bosse v. Oklahoma*, 580 U.S 1, 2 (2016) (per curiam). In *Savage*, however, the victim impact statements included: a witness's opinion that the defendant had "no thought of

remorse" and had "the audacity to play God;" a witness's opinion that "[i]t is not fair or right for" the defendant "to walk around the earth free," and the desire that the "full extent of the law [] be done in this matter;" that the victims had been "waiting for justice;" the rhetorical question "[w]hat kind of man would kill women and children?" characterizations of the crime as "a heinous act," "evil" and as a "brutal[] murder[] for no reason;" and the opinion that the defendant "could care less that [he] inflicted so much pain and grief to so many people." *Id.* at 301-03.

Similar comments were confronted by the court in *Johnson*, 713 F. Supp. 2d at 621, where the decedent's widow described the defendant and codefendants as "three selfish, greedy criminals [who] tried to take what others had earned through their hard work" and said to the defendant "[y]ou are an evil man and your life is a disgrace." The district court was compelled to grant a new sentencing trial based in part on this impermissible testimony, which the court found "[c]learly" constituted "an Eighth Amendment violation." *Id.* at 622-23. In so doing, the court cited *United States v. Bernard*, 299 F.3d 467, 480 (5th Cir. 2002), in which the Fifth Circuit found that testimony by a victim impact witness accusing the defendant of having a "heart [] so hard, you couldn't even see the innocence of the two you've killed," and describing the crime as "a useless act of violence and a total disregard of life" that "tragically and recklessly stole[]" the victims' lives, was plain error.

The government's citation to *Savage* as an exemplar of what victim impact evidence should be, ECF No. 350 at 18-19, should thus counsel against reliance upon its assurances that it will adequately police the constitutionality of its own presentation and militates in favor of adopting the procedures proposed by the defense. *Cf. Johnson*, 713 F. Supp.2d at 623 (noting government counsel's concession at oral argument that characterizing defendant as evil was improper and commenting that the "Court is disturbed and dismayed that the prosecutors
10

themselves, one of whom has extensive capital experience, did not on their own excise the improper comments" from the witness's statement).

### The Government's Asserted Intention to Supplement and Expand its Presentation of Victim Impact Evidence is in Direct Violation of this Court's Prior Order

Finally, the Court should reject the government's attempt to rewrite the Court's Order directing the government to prepare an Informational Outline regarding its alleged aggravating factors and limiting the circumstances under which that outline may be amended. *See* ECF No. 197. On August 2, 2024, the Court ordered the government to produce an informational outline of the evidence it intends to introduce to support its alleged aggravating factors, including the non-statutory victim impact aggravating factor. *Id.* at 9-11. The Court specified that the government "may supplement the outline if it shows good cause and gives Gendron adequate notice." *Id.* at 12.

In its Response, however, the government unilaterally asserts the right to "update" its Informational Outline "[n]o more than 14 days prior to the commencement of in-court voir-dire," to include "any new information relating to the witnesses identified in the original Outline and to identify any additional victim impact witnesses not included in the original Outline and 'the type and scope of the loss, injury, and harm suffered.'" ECF No. 350 at 43 (citation omitted). Further, the government purports to excuse itself from the requirement that it show good cause for any requested amendment, pledging to state same only "[t]o the extent any new witnesses are identified." *Id.*

When the Court ordered the government to provide the Informational Outline and limited the circumstances under which it could thereafter be amended, it did so for a reason. It recognized, like many district courts before it, that "an informational outline [] assists the court in fulfilling its role as an evidentiary gatekeeper." ECF No. 197 at 4. The imposition of

11

constraints on subsequent alterations to the outline was an explicit recognition that last-minute changes would hamper the Court's ability to comply with this obligation and, in turn, impair Payton Gendron's right to a fair trial. Accordingly, the government must be required to abide by the Court's existing Order that it demonstrate good cause for any proposed modification. Additionally, to allow sufficient opportunity for the parties and the Court to address the propriety of any proposed amendment and to litigate any issues that may arise if leave to amend is granted, the Court should direct that any request to amend be required to be filed no later than 45 days before the deadline for the penalty phase motions *in limine*.

Dated: May 27, 2025
Buffalo, New York

Respectfully submitted,

*s/Sonya A. Zoghlin*
Assistant Federal Public Defender

*s/MaryBeth Covert*
Senior Litigator

*s/Julie Brain*
Attorney at Law