UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

         v.                              22-CR-109 (LJV)
**Redacted Version of Sealed Document**

PAYTON GENDRON,

            Defendant.

_____

## MOTION TO STRIKE STATUTORY AND NON-STATUTORY
## AGGRAVATING FACTORS

Payton Gendron, by and through his attorneys, respectfully submits this Motion challenging

various aspects of the government's proposed statutory and non-statutory aggravating factors

alleged in its Notice of Intent to Seek the Death Penalty ("NOI"), (ECF No. 6), and outlined in its

Informational Outline, (Sealed ECF No. 210). The defense also respectfully requests oral

argument.

On September 10, 2024, and in response to the Court's Order, the government produced

(under seal) an "Informational Outline" of its anticipated penalty-phase presentation. (Sealed ECF

No. 210.) As explained previously (*see* ECF No. 160), the purpose of an Informational Outline is to

afford a capital defendant adequate notice of, and a sufficient opportunity to challenge, the

government's aggravating evidence. Indeed, "[t]he Court's screening of aggravating factors is

essential in channeling, directing, and limiting the sentencer's discretion to prevent arbitrary and

capricious imposition of the death penalty." *United States v. Solomon*, 513 F. Supp. 2d 520, 526

(W.D. Pa. 2007) (citing *Arave v. Creech*, 507 U.S. 463, 470-71 (1993). As illustrated by the

Informational Outline, the government's anticipated penalty-phase presentation would violate

Payton Gendron's rights under the Fifth, Sixth, and Eighth Amendments and the Federal Death

Penalty Act and otherwise unfairly prejudice, mislead or confuse the jury. The Court should curtail the Government's penalty phase presentation as set forth below.[1]

## I.     THE COURT SHOULD STRIKE AND/OR LIMIT THE GOVERNMENT'S PRESENTATION IN SUUPORT OF ITS ALLEGED STATUTORY AGGRAVATING FACTORS.

The government has alleged four aggravating factors from the list set forth at 18 U.S.C. § 3592(c): "grave risk of death to additional persons;" "substantial planning and premeditation;" "vulnerable victim;" and "multiple killings and attempted killings." (ECF No. 125 at 3.) The "grave risk" and "vulnerable victim" aggravators fail to comply with constitutional and statutory requirements and should be struck. The Court should also preclude the government from introducing extraneous and unduly prejudicial portions its "substantial planning and premeditation" aggravator and strike the "attempted killings" clause from the "multiple killings" aggravator.

### A.     The Court Should Strike the "Grave Risk of Death to Additional Persons" Aggravating Factor

### 1.     The Court Should Strike the Grave Risk of Death to Additional Persons Aggravator as it is Inconsistent with the Government's Theory of the Case, its Evidence and the Charges in the Indictment

The Court should strike the "grave risk of death to additional persons" statutory aggravating factor because it requires a *mens rea* of recklessness that is inconsistent with the government's theory, and resulting charges, that Payton Gendron specifically intended to kill all 69 individuals who, in addition to the 10 deceased victims, were in and around the Tops grocery store at the time of the shooting on May 14, 2022.

---

[1] In accordance with the Scheduling Order issued by the Court on February 24, 2024, defense challenges regarding "victim impact statements" are due or before March 17, 2025. *See* ECF No. 141. Accordingly, the defense reserves its challenges to the government's non-statutory "Victim Impact" and "Injury to Surviving Victims" aggravating factors for that filing.

The NOI states the aggravator in the following terms:

     1.    **Grave Risk of Death to Additional Persons.** PAYTON GENDRON, in the commission of the offense, and in escaping apprehension for the violation of the offense,[2] knowingly created a grave risk of death to one or more persons in addition to the victim of the offense. 18 U.S.C. § 3592(c)(5).

(ECF No. 125 at 3.)

█████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

As defined by statute, the grave risk aggravator requires proof beyond a reasonable doubt that the defendant "*knowingly* created a grave risk of death to 1 or more persons in addition to the victim of the offense." 18 U.S.C. § 3592(c)(5) (emphasis added). "'Knowingly' creating such a risk means that Defendant was conscious and aware that his conduct in the course of committing the offense might have this result." Leonard B. Sand, 1 *Modern Federal Jury Instructions*, Instruction 9A-10 (2024); *see also* 10th Circuit Court of Appeals, *Criminal Pattern Jury Instructions*, Instruction 12.07E (2021 ed.) (same). In other words, the aggravator requires a *mens rea* of recklessness. *See id.,* Notes on Use 2 ("The phrase 'knowingly created a grave risk of death' has been interpreted to mean 'reckless disregard for human life' or 'extreme indifference to human

---

[2] ███████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████ Accordingly, the "in escaping apprehension for the violation of the offense" language contained in the aggravator as written in the NOI is inapplicable and should be omitted going forward.

life'") (quoting *Tison v. Arizona*, 481 U.S. 137, 157-58 (1987) and *Enmund v. Florida*, 458 U.S. 782, 790-91 (1982)).

In this case, however, the government's theory is that Payton Gendron specifically intended to kill every single person to whom this aggravator purportedly applies. As to the three surviving injured victims, the Indictment charges in Counts 21-23 that Payton Gendron willfully caused bodily injury to the three victims and that each offense "included an attempt to kill.'' (ECF No. 6 at 5-6.) The Indictment specifies that Count 21 involves the attempt to kill Zaire Goodman, the named victim, pursuant to 18 U.S.C. § 249(a)(1)(B)(ii). *Id.* at 5. In its Bill of Particulars, the government makes clear its theory that the subjects of the attempts to kill for Counts 22 and 23 are "all Black people in the Tops vicinity" at the time of the shooting. (ECF No. 209 at 5.)

Additionally, at Count 27, the Indictment further charges that Payton Gendron attempted to cause bodily injury to individuals who were "in and around the Tops grocery store," and that the offense[3] also "included an attempt to kill" under 18 U.S.C. § 249(a)(1)(B)(ii). ECF No. 6 at 7. In its Bill of Particulars, the government further states that the subject of the attempt to kill referenced here is also "any Black person he could find in and around Tops on May 14, 2022." ECF No. 209 at 6. *See also* ECF No. 239 at 2-4, 7.

It is impossible for Payton Gendron to have formed the specific intent to kill the 69 people at issue as alleged and to have also simultaneously acted recklessly because the two mental states are mutually exclusive. An attempt crime requires that "the defendant '(a) had the intent to commit the object crime and (b) engaged in conduct amounting to a substantial step towards its commission.'" *United States v. Anderson*, 747 F.3d 51, 73 (2d Cir. 2014) (quoting *United States v. Farhane*, 634 F.3d 127, 145 (2d Cir. 2011)). Attempt to kill is, therefore, a specific intent crime.

---

[3] It is the defense position that Count 27 is invalid because it fails to state an offense (ECF No. 234); that issue is currently pending before the Court.

*See, e.g., United States v. Kwong*, 14 F.3d 189, 194 (2d Cir. 1994) ("'Although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill.'") (quoting *Braxton v. United States*, 500 U.S. 344, 349 (1991)).

A *mens rea* of reckless disregard for human life is separate and distinct from a specific intent to kill. In *Kwong*, the Second Circuit reversed the defendant's conviction for attempt to murder because the jury had been instructed that intent to kill could be established by proof of "reckless and wanton conduct on the part of the defendant," noting that "[t]he government now concedes that [the offense] require[s] proof of specific intent and that mere recklessness will not suffice." *Id.* at 195. *See also Fama v. Comm'r of Corr'l Servs.*, 235 F.3d 804, 812 (2d Cir. 2000) (noting that, under New York law, *mentes rea* of intent and recklessness are "mutually exclusive;" "'One who acts intentionally in shooting a person to death—that is, with the conscious objective of bringing about that result—cannot at the same time act recklessly—that is, with conscious disregard of a substantial and unjustifiable risk that such a result will occur. The act is either intended or not intended; it cannot simultaneously be both'") (quoting *People v. Gallagher*, 508 N.E.2d 909, 910 (N.Y. 1987)) (internal citations omitted); *United States v. Moreno*, 821 F.3d 223, 230 (2d Cir. 2016) ("Because it is legally impossible to intend to commit a crime that is defined … by an unintended result, one cannot attempt to commit reckless second degree assault").

Case law precluding the finding of multiple, inconsistent gateway intent factors under 18 U.S.C. § 3591(a)(2) is analogous and instructive. Under that provision of the FDPA, a defendant is eligible for a death sentence only if it is proven beyond a reasonable doubt that his mental state was such that he: "intentionally killed the victim," § 3591(a)(2)(A); "intentionally inflicted serious bodily injury that resulted in the death of the victim," § 3591(a)(2)(B); "intentionally participated in an act, contemplating that the life of a person would be taken … and the victim died," § 3591(a)(2)(C); **or** "intentionally … engaged in an act of violence, knowing that the act created a

grave risk of death to a person … such that participation in the act constituted a reckless disregard for human life and the victim died," § 3591(a)(2)(D) (emphasis added).

As indicated by Congress's drafting of this section in the disjunctive, the four possible mental states are distinct and mutually exclusive. They are "discrete alternative bases" for finding an eligible *mens rea* that "reflect four distinctly different levels of moral culpability, ranging downward from direct 'intentional killing,' (A), to intentionally engaging in conduct with known potential for causing death that did in fact cause it, (D)." *United States v. Tipton*, 90 F.3d 861, 898-99 (4th Cir. 1996).[4] That § 3591(a)(2)(A), intentional killing, is inconsistent and cannot coexist with § 3591(a)(2)(D), reckless disregard of a grave risk of death, further underscores that a finding of attempt to kill under 18 U.S.C. § 249(a)(1)(B)(ii) is irreconcilable with the allegation of knowingly creating a grave risk of death to another pursuant to 18 U.S.C. § 3592(c)(5).

Also instructive are cases interpreting state law corollaries of 18 U.S.C. § 3592(c)(5). The Arizona death penalty statute includes a grave risk of death aggravating factor that is identical to its federal counterpart. *See State v. McCall*, 677 P.2d 920, 933 (Ariz. 1983) (quoting A.R.S § 13-703(F)(3)). The Arizona Supreme Court has consistently held that this aggravating factor has no application where the defendant intended to kill the individual in question. *Id.* at 933-34 (aggravating factor erroneously found where evidence showed defendant intended to murder victim

---

[4] In *Tipton*, the Fourth Circuit was interpreting the predecessor to 18 U.S.C. § 3591(a)(2), 18 U.S.C. § 848(n)(1). The four mental state factors are the same in each provision; however, under 18 U.S.C. § 848 the jury was instructed also to consider the mental state factor as an aggravating factor during the weighing process, whereas under 18 U.S.C. § 3591 the intent factors serve only as a threshold to reach the aggravating factors and play no role in the jury's weighing of aggravators versus mitigators and its ultimate decision. *See United States v. Jackson*, 327 F.3d 273, 300-01 (4th Cir. 2003). The opinion in *Tipton* noted the risk of prejudice from an instruction permitting the jury to find all four intent factors because of the resulting skewing of the weighing process. 90 F.3d at 899. Because that particular risk was absent in *Jackson*, the court there found no error in allowing the jury to find all four factors. 327 F.3d at 301. However, the court did not address, and it appears the appellant did not raise, the continuing vitality of the *Tipton* holding that the four factors nevertheless reflect discrete, mutually exclusive *mentes rea*.

who was shot in head but survived); *see also State v. Johnson*, 710 P.2d 1050, 1055 (Ariz. 1985) (holding trial court erred in applying grave risk aggravating factor to surviving victim where conviction for attempted murder established defendant "intended to kill both and did not care which he killed first;" aggravator inapplicable "when the other person endangered was a victim or intended victim of the criminal conduct"). The Florida Supreme Court reached the same conclusion. *See White v. State*, 403 So. 2d 331, 337 (Fla. 1981) (invalidating grave risk aggravator where all homicides were committed execution-style).

Given the government's express theory that Payton Gendron intended to kill all 69 individuals it has noticed in its Informational Outline as the basis for its "grave risk of death to additional persons" aggravator, the factor is inapplicable to this case, and the Court should therefore strike it to avoid confusing the jury and unfairly prejudicing Payton Gendron. Thus was the conclusion of the district court in *United States v. Basciano*, 763 F. Supp. 2d 303, 341-44 (E.D.N.Y. 2011), with respect to one of the gateway intent factors. In that case, the defendant was charged with intentional murder in aid of racketeering under 18 U.S.C. § 1959, and the government alleged two of the four mental state factors in 18 U.S.C. § 3591(a)(2), including § 3591(a)(2)(D), engaging in an act of violence creating a grave risk of death with reckless disregard of human life. *Id.* at 341. The defense moved to strike that gateway factor on the ground that, if he was found guilty as charged of intentional murder, the jury would necessarily have found an intentional mental state and should not then be permitted to make an inconsistent finding that the defendant acted recklessly. *Id.* at 341-42.

The court granted the motion. Although the government was technically permitted to charge a crime and a gateway factor with inconsistent *mentes rea*, the court explained, striking the gateway factor was appropriate "given the government's concession" that its "theory of the case … [wa]s not a reckless-disregard theory, but rather an intent theory." *Id.* at 344 (acknowledging that

"there [wa]s a risk of confusion to the jury by inserting a notion of reckless disregard theory") (internal quotations omitted). According to the court, "[s]ince the Government concede[d] that a reckless-disregard theory is not consistent with its theory of the case, the risk of confusing the jury outweighs the minimal benefit of allowing the jury to consider this theory." *Id. See also United States v. Stitt*, 760 F. Supp. 2d 570, 582-83 (E.D. Va. 2010) (striking 18 U.S.C. § 848(n)(1)(A) and (B) mental state factors prior to resentencing proceeding as "simply inconsistent with the Government's evidence").

### 2. The Court Should Strike the "Grave Risk" Aggravator to Avoid Unnecessarily Confusing the Jury.

Properly understood, the "grave risk of death to additional persons" statutory aggravating factor requires proof, at a minimum, that a specific group of people were exposed to a real and substantial risk of death because they were within an identifiable, proximate "zone of danger" created by the defendant's commission of the capital homicides. In this case, however, it is clear from the Bill of Particulars, the Informational Outline and information disclosed in discovery that the government's evidence cannot sustain that burden of proof with respect to the aggravator as alleged. The class of persons that it alleges was at grave risk of death includes numerous individuals who were simply in or near the supermarket during the attack, and not in sufficient proximity to the 10 deceased victims to have been at real and substantial risk of losing their lives. The Court should therefore strike the aggravating factor at this time because submitting it at trial under such circumstances risks confusing the jury and unfairly prejudicing Payton Gendron.

As a plurality of the Supreme Court has noted, unless an appropriate limiting construction is applied by the courts, the grave risk of death aggravating factor is unconstitutionally vague. *See Gregg v. Georgia*, 428 U.S. 153, 202 (1976) (opinion of Stewart, Powell, & Stevens, JJ.) (noting that, on its face, aggravating factor of "creating 'a great risk of death to more than one person'…

might be susceptible of an overly broad interpretation…"). For this factor to pass constitutional muster, courts must construe it in a way that "channel[s] the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance.'" *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 303 (1976) (opinion of Stewart, Powell, & Stevens, JJ.)); *see also Gregg*, 428 U.S. at 202-03 (upholding Georgia's great risk of death aggravator based on limiting construction placed on it by Georgia Supreme Court); *Proffit v. Florida*, 428 U.S. 242, 256 (1976) (opinion of Stewart, Powell, & Stevens, JJ.) (upholding Florida's version of same aggravating factor based on state court's narrowing interpretation of statutory language).

The Fourth Circuit recognized this responsibility with respect to the FDPA in *United States v. Barnette*, 211 F.3d 803, 819 (4th Cir. 1999) (citing *Gregg* and *Proffit*); *see also United States v. Regan*, 228 F. Supp.2d 742, 748-49 (E.D. Va. 2002) ("In *Barnette*, the Fourth Circuit, relying on *Gregg*, acknowledged that this factor is unconstitutionally vague unless the court can narrowly instruct the jury with regard to how this factor applies to the facts of a specific case."). There, the court held that the constitutionality of the FDPA's statutory grave risk of death aggravator must be assessed "in the context of the factual allegations of the crimes" and in light of the judicial construction it is given through clarifying instructions to the jury. *Id. See also United States v. Cheever*, 423 F. Supp. 2d 1181, 1202-03 (D. Kan. 2006) (noting that "vagueness is evaluated not only in light of the words used to define the aggravator, but also based on the construction given that factor by the courts . . . largely by the jury instructions"). So long as, on the facts of the particular case, those instructions are "not overly broad" and provide the jury with "a common sense core of understanding," the grave risk of death factor is not unconstitutionally vague. *Barnette*, 211 F.3d at 819 (citing *Tuilaepa v. California*, 512 U.S. 967, 973-75 (1994)).

The instruction given by the district court and approved by the Fourth Circuit in *Barnette* defined "grave risk of death" as "a significant and considerable possibility" of death created by the defendant's placing of other persons "in a zone of danger" through his commission of the capital crimes. *Id.* Those specifications find additional support in pattern instructions. *See* Leonard B. Sand, 1 *Modern Federal Jury Instructions*, Instr. 9A-10 (2024) ("'Grave risk of death' means a significant and considerable possibility that another person might be killed . . . 'Persons in addition to the victims' include innocent bystanders in the zone of danger created by the Defendant's acts"); Eighth Circuit Court of Appeals, *Model Jury Instructions—Criminal*, Instr. 12.07E (2023 ed.) (same). They have also been adopted by other district courts. *See also, e.g., United States v. Bowers*, No. 18-cr-292-RJC, ECF No. 1556 at 33-34 (W.D. Pa. Aug. 23, 2023);[5] *United States v. Tsarnaev,* No. 13-cr-10200-GAO, ECF No. 1418 at 33-34 (D. Mass. May 14, 2015).[6]

The facts of two cases in particular are instructive. In *United States v. Cheever*, 423 F. Supp. 2d 1181, 1202-03 (D. Kan. 2006), the court determined that the defendant's concerns about the vagueness of the "grave risk" aggravator were cured by the government's decision to limit its applicability to two individuals who were "sufficiently close" to the trajectories of bullets fired by the defendant in connection with his commission of the charged capital murder. As the court wrote:

> The government revealed that this factor is based on allegations that defendant fired
> two rounds from his .44 caliber handgun into the kitchen area of the residence while

---

[5] Notably, the grave risk of death aggravating factor in *Bowers* was limited to 12 named public safety officers who arrived at the synagogue to arrest Mr. Bowers and were involved in an exchange of gunfire with him prior to taking him into custody. *See id.*, ECF Nos. 44 at 12, 86 at 3. The aggravator was not alleged as to the ten surviving civilian victims who were inside the synagogue when the decedents were killed and with whom Mr. Bowers was charged with attempting to kill, two of whom were physically injured, nor as to the individuals in the parking lot of the synagogue at the time of the shooting who were uninjured. *See id.*

[6] Although the grave risk of death aggravator was initially alleged in *United States v. Saipov*, No. 17 Cr. 722 (VSB) (S.D.N.Y.), in which the defendant drove a rental truck down a crowded West Side Highway bike path killing eight and injuring several others, the government withdrew it prior to the start of the penalty phase of the trial.

deputies were attempting to remove the wounded sheriff from the house.  The government asserts that two other people, Darrell and Belinda Cooper, were also in or near the vicinity of the kitchen when the shots were fired, and **that the bullets' trajectories were sufficiently close to the Coopers to place them at risk of being hit** . . . The "grave risk of death" factor is focused on the danger posed to the Coopers.  []Therefore, defendant's vagueness concerns have been addressed.

*Id.* (emphasis added).

In *Barnette* itself, the "grave risk" aggravator was limited to two individuals, Sonji Hill and her mother Bertha Williams, who were clearly in the defendant's "target zone." 211 F.3d at 819-20. Specifically, the court observed:

The evidence shows that Barnette aimed his shotgun at Miss Hill when she was standing 50 feet away and threatened to shoot her . . . Bertha Williams was standing an arm's length away from her daughter when Barnette shot Miss Williams from 10 to 12 feet away. Because Barnette's shot **came close enough to Bertha Williams that any small error in aim could have wounded or killed her** in addition to her daughter, Mrs. [sic] Williams was easily in Barnette's target zone.  Under these circumstances, this aggravating factor was not vague, and the jury had sufficient evidence to conclude that Barnette placed both of these women at a grave risk of death.

*Id.* (emphasis added).

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████    *See* Sand, *supra* ("In order to find that the Government

has proven this factor beyond a reasonable doubt, you must unanimously agree on a particular

person or class of persons who were placed in danger by Defendant's actions."). If the Court were

to allow submission of the aggravator as written, it would be required to instruct the jury that it

must unanimously find beyond a reasonable doubt that, in committing one or more of the capital

offenses, Payton Gendron placed the entire class of individuals in a zone of danger sufficiently

proximate to the deceased victims that there was a real and considerable possibility that they would

all be struck by a bullet and killed.[7] Based on the government's evidence, theory of the case and concessions, such a finding would have to be rejected as a matter of law.

It is clear from the Indictment, the Bill of Particulars, the Informational Outline and information provided in discovery that the government's evidence cannot establish that each member of its asserted class was exposed to a grave risk of death as properly defined because many of the "additional persons" were not within the "zone of danger" of Payton Gendron's capital crimes.



[7] In the event that the Court does not strike the aggravating factor, the defense will submit the precise instruction requested in its proposed penalty phase jury instructions.



Without diminishing the trauma that those individuals experienced, none of them were close enough to the deceased victims to fall within the zone of danger created by the capital offenses. The government cannot prove that the class of persons alleged to have been placed at grave risk of death was in fact at such risk, and the jury will be required to reject the aggravating factor as a matter of law. The Court should therefore follow the lead of the district courts in

*Basciano* and *Stitt* discussed above and decline to submit this factor to the jury, as it would inject irrelevant considerations into the sentencing process and serve no purpose other than to confuse the jurors and put a thumb on death's side of the scale. *See Basciano*, 763 F. Supp. 2d at 341-44 (granting pretrial motion to strike gateway intent factor where jury finding that factor was present would be inconsistent with guilt phase verdicts in light of government's theory of case due to risk of jury confusion); *Stitt*, 760 F. Supp. 2d at 582-83 (striking gateway mental state factors prior to resentencing proceeding as "simply inconsistent with the Government's evidence").

As was true of the gateway intent factors eliminated in *Basciano* and *Stitt*, there is no strict requirement that an aggravating factor that is invalid based upon the government's evidence and theory of the case be stricken pretrial. *See United States v. Regan,* 228 F. Supp. 2d 742, 749 (E.D. Va. 2002) (noting that "there is no constitutional requirement that the existence of an aggravating factor be determined prior to the start of trial"). In some cases, the government's theory and the evidence it has at its disposal to try to prove that theory may not be known until the penalty phase is underway. *See id.* (declining to adjudicate validity of grave risk of death aggravator pretrial because "the facts of this case do not reveal how the Government will show that Defendant created a grave risk of death to anyone").

However, where, as here, the evidence is known, and the government has clearly stated its theory in its pleadings and through its charging decisions, there is no reason to postpone the decision. *Id.* (distinguishing cases in which pretrial rulings were made after consideration of facts and theory) (citing *United States v. McVeigh*, 944 F. Supp.1478, 1490 (D. Colo. 1996) (rejecting vagueness challenge to grave risk of death aggravator pretrial based on "context of the factual allegations of the indictment")) and *United States v. Walker*, 910 F. Supp. 837, 849-50 (N.D.N.Y. 1995) (permitting grave risk of death aggravator to go to jury where government's factual allegations established valid basis on which it could be proved). As the Supreme Court has held, in

a weighing jurisdiction the death penalty determination "may be impermissibly skewed if the sentencing jury considers an invalid [aggravating] factor." *Jones v. United States*, 527 U.S. 373, 398 (1999) (citing *Stringer v. Black*, 503 U.S. 222, 232 (1992)). Accordingly, the Court should strike the aggravator now on this ground, also.

In the alternative, if the Court were to reject both of these independent reasons to strike the aggravating factor in its entirety, at a minimum the government should be prohibited from presenting evidence regarding any individual who was not within the "zone of danger" created by Payton Gendron's commission of the capital offenses because he or she was insufficiently close to the trajectories of the bullets that killed the deceased victims to have been at risk of being hit.

**B.  The Court Should Preclude the Government from Introducing Aspects of Payton Gendron's Alleged Conduct and Beliefs That Lack Probative Value Regarding Payton Gendron's Preparation for the Attack on the Tops Supermarket in Support of the "Substantial Planning and Premeditation" Aggravating Factor**

The NOI states the aggravator in the following terms:

2.    **Substantial Planning and Premeditation.** PAYTON GENDRON committed the offense after substantial planning and premeditation to cause the death of a person.

18 U.S.C. § 3592(c)(9).

(ECF No. 125 at 3.)

Evidence is irrelevant to this aggravator unless it helps a jury assess whether the defendant's planning and premeditation prior to committing the capital offenses was "considerable or ample for the commission of the crime." *See* Eighth Circuit Court of Appeals, *Model Jury Instructions—Criminal*, Instr. 12.07I (2023 ed.) ("Planning" means mentally formulating a method for doing something or achieving some end. "Premeditation" means thinking or deliberating about something and deciding whether to do it beforehand. "Substantial" planning and premeditation means a considerable or significant amount of planning and premeditation.") (citing *United States v. McCullah*, 76 F.3d 1087, 1110-11 (10th Cir. 1996) ("'Substantial' planning does not require 'considerably more planning than is typical' but rather it means 'considerable' or 'ample for commission of the crime.'")).



. Under 18

U.S.C. § 3593(c), "information may be excluded at a penalty phase if its probative value is

outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the

jury." As the Second Circuit has recognized, "the balancing test set forth in the FDPA is, in fact,

more stringent than its counterpart" in Federal Rule of Evidence 403, "which allows the exclusion

of relevant evidence 'if its probative value is substantially outweighed," whereas the qualifier

"substantially" is absent from 18 U.S.C. § 3593(c). *United States v. Pepin*, 514 F.3d 193, 204 (2d

Cir. 2008) (quoting *United States v. Fell*, 360 F.3d 135, 145 (2d Cir. 2004)). Accordingly, district

courts must carefully fulfill "their role as evidentiary gatekeepers" at a capital-sentencing hearing

to screen out "prejudicial evidence that might render a trial fundamentally unfair." *Id.*

Against this backdrop, evidence of Payton Gendron's underlying ideology and abstract

beliefs is unrelated to determining *how much* he planned and conceived of the attack. Proof of *why*

Payton Gendron acted does nothing to assist a jury in determining the extent of his planning or

premeditation, and its consideration would only risk misleading or confusing the issues. It would

also unfairly prejudice Payton Gendron by encouraging the jury to find this aggravator based on

contempt for his ideology.[8]

---

[8] ████████████████████████████████████████████████████████ Just as "a defendant's abstract

beliefs, however obnoxious to most people, may not be taken into consideration by a sentencing

judge," *United States v. McLaurin*, 731 F.3d 258, 263-64 (2d Cir. 2013) (quoting *Wisconsin v.

Mitchell*, 508 U.S. 476, 485-86 (1993)), they may not be considered by a sentencing jury weighing

a death sentence. *See generally Zant v. Stephens*, 462 U.S. 862, 885 (1983) (aggravating factor may



*See generally Lewis v. Jeffers*, 497 U.S. 764, 774 (1990) (The Fifth, Sixth, and Eighth Amendments of the Constitution require that a capital sentencing scheme suitably direct and limit a sentencing jury's discretion "so as to minimize the risk of wholly arbitrary and capricious action").

*See, e.g., Bland v. Sirmons*, 459 F.3d 999, 1027 (10th Cir. 2006) (condemning prosecutor's statement "[m]aybe the Defendant will be in prison, maybe he will be behind that concrete and those jail bars with his T.V. and his cable and good food" as "making light of the penalty of life in prison to demonstrate that the only proper punishment for a defendant's crime was death"); *United States v. Johnson*, 713 F. Supp. 2d 595, 631 (E.D. La. 2010) (granting motion for new sentencing hearing in federal capital prosecution in part based on

---

not "authorize[] a jury to draw adverse inferences from conduct that is constitutionally protected"). Accordingly, the Court should limit the government's presentation on this aggravator to evidence clarifying the concrete steps Payton Gendron took to carry out the attack on the Tops Supermarket at Jefferson Avenue and preclude any other evidence that encourages speculation about other targets and a focus on his abstract beliefs. *See* Section II(B) (addressing First Amendment violations related to the government's anticipated presentation to prove its "racially motivated killings" non-statutory aggravator).

government's argument that "[defense counsel] essentially asks you to send [the defendant] to his room where he gets privileges, three squares, and the ability to have visitors. The only visitors that [the victim] will have come to his grave site").

### C. The Court Should Strike the "Vulnerable Victim" Aggravating Factor Because the Government Cannot Make the Required Showing of a Nexus Between the Victims' Alleged Vulnerabilities and Their Deaths

The Court should strike the third statutory aggravating factor, vulnerable victim, because the circumstances of this case make clear that the government cannot prove the required nexus between the alleged vulnerabilities of the five victims, namely their advanced ages, and their deaths.

The NOI states the aggravator in the following terms:

3.    **Vulnerable Victim.** PAYTON GENDRON committed the offenses charged in Counts 12, 13, 14, 15, and 19 against a victim who was particularly vulnerable due to old age and infirmity.[9]  18 U.S.C. § 3592(c)(11).

ECF No. 125 at 3.

As the government elsewhere concedes, proof of this aggravating factor requires a "'nexus between the victim's vulnerability and the crime.'" ECF No. 167 at 34 (quoting *United States v. Savage*, No. 07-cr-5502013, 2007 WL 1934531, at *9 (E.D. Pa. May 10, 2013)). Accordingly, "[v]ulnerability must be assessed on the basis of the relation of the victim's condition to the particular circumstances of the crime." *Id.* at 33 (citing *Jones v. United States*, 577 U.S. 373, 401-02 (1999) (plurality opinion)). *See also United States v. Johnson*, 136 F. Supp. 2d 553, 560 (W.D.

---

[9] In its Response in Opposition to the defense Motion for Informational Outline, (ECF No. 167 at 33), the government states that it "concedes the 'infirmity' prong of this aggravating factor for all listed victims and will proceed at trial only on the 'old age' prong." Accordingly, the "or infirmity" language contained in the aggravator as written in the NOI is inapplicable and should be omitted going forward.

Va. 2001) (striking vulnerable victim aggravating factor for lack of nexus between victim's vulnerability (pregnancy) and the crime, in which she was killed instantaneously by a bomb blast); 1 Leonard B. Sand, *et al.*, *Modern Federal Jury Instructions—Criminal*, Inst. 9A-14 (2008) (jury must find "a connection between the victim's vulnerability and the offense committed upon the victim. A connection does not mean that the defendant targeted the victim because of the vulnerability. It means that, once targeted, the victim was more susceptible to death due to the vulnerability"); *id.*, Inst. 9A-14, Comment ("this aggravating factor should not pertain to situations where a victim is killed due to a circumstance entirely unconnected to the person's vulnerability"). *United States v. Mills*, 393 F. Supp. 3d 650, 678 (E.D. Mich. 2019) ("Although [the statutory] language does not contain an express nexus requirement, the Court agrees with Defendants that this factor requires some nexus between the vulnerability of the victim and the criminal offense").

In this case, Payton Gendron is accused of committing the capital offenses using a high-powered, semiautomatic rifle capable of firing dozens of rounds in seconds. Unlike bullets fired from a handgun, which typically pierce straight through a target, bullets from an assault rifle "can liquefy organs because of their much higher projectile speeds." Emma Bowman and Ayana Archie, *This is How Handguns and Assault Weapons Affect the Human Body*, NPR (June 6, 2022 at 5:58 AM ET), available at: https://www.npr.org/2022/06/06/1103177032/gun-violence-mass-shootings-assault-weapons-victims. If anything, it appears that children are more vulnerable to the bullets fired from a high-powered assault rifle, "as the surface area of their organs and arteries are smaller." *Id.* The age of the five victims at issue here therefore had no bearing on the likelihood that they would be killed as a result of Payton Gendron's actions, and this aggravating factor should be stricken. *See United States v. Mikos*, 539 F.3d 706, 721 (7th Cir. 2008) (Posner, J., dissenting) (arguing that "vulnerable victim" aggravator was unsupported by the evidence in the killing of a very obese woman because "the average person would not have escaped in this case

20

with his life" and the victim" could not have outrun [the] bullets even if she had been an Olympic sprinter").

### D. The Language of the "Multiple Killings" Aggravating Factor Should be Amended to Properly Reflect that it is Limited to the 10 Deceased Victims of the Capital Counts.

In its instructions to the jury, verdict forms and other important contexts, the Court should direct that the Multiple Killings aggravator be stated in terms that properly reflect the aspect of the offense to which it refers and strike the "attempted killings" clause as surplusage.

The NOI states the aggravator in the following terms:

4.    **Multiple Killings and Attempted Killings.** PAYTON GENDRON intentionally killed and attempted to kill more than one person in a single criminal episode. 18 U.S.C. § 3592(c)(16).

ECF No. 125 at 3.

In its Response in Opposition to Defendant's Motion for an Informational Outline of Certain Aggravating Factors, (ECF No. 167 at 36), the government urged the Court to deny an Informational Outline as to this factor, stating that "the defendant pleaded guilty and was sentenced in state court for killing all ten victims" and, thus, "the factual basis for this factor is clear from its plain language and the substantive charges of the indictment." *See also* ECF No. 185 at 1 n.1 (noting in reply government's statement that this aggravator is "narrow and concrete'" and that its "'factual basis'" is "simply the allegation that he 'kill[ed] all ten victims'") (quoting ECF No. 167 at 36). Accordingly, the "attempted to kill" language contained in the aggravator as written in the NOI is inapplicable and should be omitted going forward.

## II.    THE COURT SHOULD STRIKE AND/OR RESTRICT THE GOVERNMENT'S PRESENTATION OF ITS NON-STATUTORY AGGRAVATING FACTORS

The Fifth, Sixth, and Eighth Amendments of the Constitution require that a capital

sentencing scheme suitably direct and limit a sentencing jury's discretion "so as to minimize the risk of wholly arbitrary and capricious action." *Jeffers*, 497 U.S. at 774. The Due Process Clause of the Fifth and Fourteenth Amendments also protects defendants from the "introduction of evidence 'that is so unduly prejudicial that it renders the trial fundamentally unfair.'" *Andrew v. White*, 604 U.S. ___ (2025) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)). Because the principal role of an aggravating factor is to channel jury discretion, courts must ensure that each aggravating factor put before a sentencing jury is "particularly relevant." *Gregg* 428 U.S. at 192. Accordingly, it is essential that an aggravating factor be measured in perspective of the "fundamental requirement of *heightened reliability* that is the keystone in making 'the determination that death is the appropriate punishment in a specific case.'" *United States v. Friend*, 92 F. Supp. 2d 534, 541 (E.D. Va. 2000) (emphasis in original) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)).

"Although it is true that the FDPA provides that the Government may introduce any 'other' aggravating factor for which it has given notice, the prosecutor does not enjoy unbridled discretion to choose aggravating factors." *United States v. Frank*, 8 F. Supp. 2d 253, 265 (S.D.N.Y. 1998) (citing *Zant*, 462 U.S. at 885). Because "not every consequence of a defendant's actions will support the imposition of capital punishment," *Bin Laden*, 126 F. Supp. 2d at 302, there are limitations on what the government may submit during the penalty stage. In this case, the government has exercised its discretion to create non-statutory aggravating factors that fail to "channel the sentencer's discretion by clear and objective standards that provide specific and detailed guidance, and that make rationally reviewable the process for imposing a sentence of death," *Godfrey*, 446 U.S. at 428. Accordingly, the Court should strike them.

> **A. The Court should strike the government's proposed non-statutory "racially-motived killings" aggravator based on racist ideas and expression as it unconstitutionally punishes constitutionally protected**

**speech that has no legitimate purpose and is overwhelmingly prejudicial, and because race is an impermissible aggravator under the HCPA and FDPA.**

The Court should strike this proposed non-statutory aggravating factor as written because it penalizes Payton Gendron for speech that is constitutionally protected under the First Amendment and irrelevant for any legitimate purpose in this capital sentencing proceeding. Additionally, the evidence that the government proposes to introduce in support of this aggravator is so extensive and wide-ranging that, with few exceptions, any probative value it has is outweighed by the overwhelming and unfair prejudice that it will cause. The aggravating factor is also inappropriate because Congress deliberately declined to permit the imposition of a death sentence for homicides committed under the HCPA, and because 18 U.S.C. § 3593(f) precludes the use of race of the victims as a basis upon which to impose a sentence of death.

The NOI states the proposed aggravator in the following terms:

3.     **Racially-Motivated Killings.** PAYTON GENDRON expressed his bias, hatred, and contempt toward Black persons and his animus toward Black persons played a role in the killings of [the 10 deceased victims].

ECF No. 125 at 4.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████     It is also, however, protected speech under the First Amendment.

The First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent," or to prove legitimate aggravating factors at sentencing. *Wisconsin v. Mitchell*, 508 U.S. 476, 486, 489 (1993); *see also Barclay v. Florida*, 463

U.S. 939, 949 (1983) (plurality opinion) (holding that defendant's writings expressing "racial intolerance and subversive advocacy" properly considered by capital sentencing judge because relevant to several statutory aggravating factors). At the same time, "[a] defendant's abstract beliefs, however obnoxious to most people, may not be taken into account" by his sentencer. *Id.* at 485. Those beliefs, and expressions of them, are constitutionally protected. If, and only if, such protected speech "serve[s] a legitimate purpose" and is "relevant to the issues involved" may it properly be admitted and considered by the jury in a capital penalty phase. *Dawson v. Delaware*, 503 U.S. 159, 164-66 (1992); *see also United States v. Kane*, 452 F. 3d 140, 142-43 (2d Cir. 2006) (per curiam) (citing *Barclay* and *Dawson*, permitting consideration of defendant's writings at sentencing where offered to rebut his mitigating evidence and not "for the irrelevant and impermissible purpose of showing general moral reprehensibility"); *United States v. Fell*, 531 F. 3d 197, 230 (2d Cir. 2008) (holding that admission of evidence of defendant's satanic beliefs and "666" tattoo at capital sentencing was error; "[w]hile evidence of the defendant's abstract moral beliefs may in some cases be constitutionally admissible to show motive, there must be stronger evidence of the connection than occurred here") (internal citation omitted). And "'[s]uch testimony is to be scrutinized with care to be certain the statements are not expressions of mere lawful and permissible … opinion.'" *United States v. Caronia*, 703 F.3d 149, 161 (2d Cir. 2012) (quoting *Mitchell*, 508 U.S. at 489-90).

The non-statutory aggravating factor proposed by the government purports to be directed towards Payton Gendron's motive for committing the 10 killings underlying the capital charges in this case. In fact, however, it sweeps in dramatically more constitutionally protected speech than that which simply illustrates his motive, or "reason[] for acting." *Mitchell*, 508 U.S. at 487. It is critical to note that, while the government may make evidentiary use of protected activity where it is probative of the defendant's reason for acting, it may not introduce such evidence to provide

explanations of his belief systems or *why* he acted for that reason. Thus, the three states that have a bias motivated statutory aggravating factor in their capital sentencing schemes all limit the jury to a finding that the capital murder was committed "because of" the victim's race or other protected characteristic. *See* Cal. Penal Code § 190.2(a)(16) (2023) (providing for special circumstance when victim "intentionally killed *because of* his or her race, color, religion, nationality, or country of origin"); Colo. Rev. Stat. § 18-1.3-1201(5)(n) (2023) (aggravating factor where "defendant committed the class 1 felony against the victim *because of* the victim's race, color, ancestry, religion, or national origin"); Nev. Rev. Stat. § 200.033(11) (2023) (aggravating circumstance where "murder was committed on a person *because of* the actual or perceived race, color, religion, national origin, physical or mental disability, sexual orientation or gender identity or expression of that person") (emphases added). Indeed, the HCPA itself is written in these terms, which represent the boundaries of what is constitutionally permissible.

Payton Gendron's motive for the killings, *i.e.*, the reason why he selected and murdered the victims that he did, is because the individuals were Black. The government's proposed aggravator, however, is not so limited. It has two clauses; first, that Payton Gendron "expressed his bias, hatred, and contempt toward Black persons," and second, that "his animus toward Black persons played a role in the killings" of the deceased victims. ECF No. 210 at 3. The first clause is "explicitly directed at expression," *Mitchell*, 508 U.S. at 487, and obviously includes Payton Gendron's abstract beliefs and expressions thereof irrespective of whether they have any direct connection to the killings. It suggests that the government intends to try to introduce evidence of racist and bigoted beliefs that have no probative value as to motive, and the Informational Outline bears that out. The second clause, that his racial animus "played a role" in the killings, *id.*, is vague and places no appropriate limits on the jury's consideration of his protected speech as a reason to sentence him to death.

25





In *Roper v. Simmons*, 543 U.S. 551 (2005), the Supreme Court held that the Eighth Amendment requires a categorical ban on giving a death sentence for a crime committed when the defendant was under the age of 18 years. *Id.* at 572. In doing so, it stated "[a]n unacceptable likelihood exists that the brutality or cold-blooded nature of any particular crime would overpower mitigating arguments based on youth as a matter of course, even where the juvenile offender's objective immaturity, vulnerability, and lack of true depravity should require a sentence less severe than death." *Id.* at 572-73.

The logic of *Simmons* precluding the possibility of a death sentence for crimes committed before 18 also precludes a capital jury from considering, in support of a death sentence, a capital

defendant's actions as a juvenile, too. Indeed, when a capital defendant's alleged juvenile activities (including banal internet searches) are introduced against him in the penalty phase, it becomes impossible to say that the reason why each juror voted for death was due to something other than a desire to punish the defendant for his juvenile conduct. The Supreme Court has stressed the Eighth Amendment requirement that there is a "heightened 'need for reliability in the determination that death is the appropriate punishment in a specific case.'" *Caldwell v. Mississippi*, 472 U.S. 320, 323 (1985) (quoting *Woodson*, 428 U.S. at 305) (plurality opinion)); *Ford v. Wainwright*, 477 U.S. 399, 411 (1986) ("In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability."). The use of Payton Gendron's juvenile conduct in a capital sentencing proceeding does not meet this heightened requirement of reliability.

██████████████████████ In another case, where overwhelming direct evidence of motive did not exist, the government might be permitted to use a limited amount of evidence of abstract racial animus to establish that killings of Black victims were in fact committed because of the victims' race. *See, e.g., Kapadia v. Tally*, 229 F.3d 641, 647 (7th Cir. 2000) (approving sentencing judge's use of defendant's antisemitic statements as evidence of motivation for attack on synagogue and community center and resulting future danger where defense denied that offense had anything to do with fact that targets were Jewish institutions).

Here, however, such constitutionally protected and highly inflammatory evidence serves no legitimate purpose. At the same time, it is enormously prejudicial to Payton Gendron and thus also must be excluded under 18 U.S.C. §3593(c). That provision states: "information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." *Id.* Prejudice is unfair when the evidence has "an undue tendency to suggest decision on an improper basis.'" *United States v. Awadallah*, 436 F.3d 125, 133 (2d Cir. 2006) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████ Even if such evidence had any probative value for any legitimate purpose, the facts that the government has abundant and compelling alternative means of proving motive precludes its admission. *Id.* at 132 (noting that probative value is "informed by the availability of alternative means to present similar

---

[10] ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████

evidence").

The Constitution permits punishing Payton Gendron for killing individuals and punishing him more severely because he did so because of their race; it does not permit punishing him for being a racist or holding or expressing morally reprehensible beliefs. If the government is allowed to submit a racially motivated non-statutory aggravating factor at all, it should be redrafted to reflect only the allegation that Payton Gendron committed the capital murders of the 10 victims because they were Black. The otherwise constitutionally protected speech that it is permitted to introduce to support it should be limited to statements that are directly probative of the relevant fact.

In actuality, the Court should strike the aggravator altogether. Congress explicitly elected not to authorize the death penalty for homicides motivated by racial animus. *See* 18 U.S.C. § 249(a) ("Whoever … willfully causes bodily injury …  because of the actual or perceived race, color, religion, or national origin of any person … shall be imprisoned for any term of years or for life … if death results from the offense"). Where Congress has expressly and deliberately provided for a maximum penalty of life in prison for a crime motivated by racism, the government cannot be permitted to make that same motivation the basis for a death sentence by alleging it as a non-statutory aggravating factor.

Additionally, placing "express[ions] of bias, hatred, and contempt toward Black persons" at issue, and seeking a death sentence because "animus toward Black persons played a role in the killings," compels jurors to consider the victims' race and skin color when making their sentencing determination in direct violation of 18 U.S.C. § 3593(f). The FDPA expressly prohibits the consideration of the race or color of any victim or defendant when deciding the ultimate penalty:

> In a hearing held before a jury, the court, prior to the return of a finding under subsection(e), shall instruct the jury that, in considering whether a sentence of death is justified, it **shall not** consider the race,

30

> color, religious beliefs, national origin, or sex of the defendant or of
> any victim and that the jury is not to recommend a sentence of death
> unless it has concluded that it would recommend a sentence of death
> for the crime in question no matter what the race, color, religious
> beliefs, national origin, or sex of the defendant or of any victim may
> be. The jury, upon return of a finding under subsection (e), shall also
> return to the court a certificate, signed by each juror, that
> **consideration of the race, color, religious beliefs, national origin,**
> **or sex of the defendant or any victim was not involved in**
> **reaching his or her individual decision** and that the individual juror
> would have made the same recommendation regarding a sentence for
> the crime in question no matter what the race, color, religious beliefs,
> national origin, or sex of the defendant or any victim may be.

*See* 18 U.S.C. § 3593(f) (emphasis added). Allowing the government to advance the racially

motivated killing aggravator flatly violates the antidiscrimination intent of section 3593(f), and

creates an unconstitutional risk that juror bias, confusion, or passion will influence the verdict in

violation of the Eighth Amendment. The Court cannot, in one breath, instruct the jury to weigh the

"racially motivated" nature of the offense on death's side of the scale, and in another breath,

admonish them not to consider the victims' or the defendant's race. Therefore, the aggravator

should be stricken in its entirety.

**B.  The non-statutory "attempt to incite violence" aggravating factor rests**
**upon constitutionally protected speech under the First Amendment and**
**is irrelevant to the jury's determination of the appropriate sentence for**
**Payton Gendron.**

The Court should also strike the "attempt to incite violence" non-statutory aggravating

factor because it unconstitutionally penalizes speech that is protected by the First Amendment and

because it lacks sufficient relevance to the jury's determination of the appropriate sentence for

Payton Gendron.

The NOI states the proposed aggravator in the following terms:

4.      **Attempt To Incite Violence.**  PAYTON GENDRON, in

preparation for and in committing the acts of violence charged in this case,

attempted to incite violent action by others.

ECF No. 125 at 4.









Because they do not rise to anywhere near the level of incitement, and are simply thoughts and words, Payton Gendron's writings are constitutionally protected speech under the First Amendment that cannot be the basis of an aggravating factor.

> [T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action . . . [T]he mere abstract teaching . . . of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action.

*Brandenburg v. Ohio*, 395 U.S. 444, 447-48 (1969) (internal quotations omitted). *See also id.* at 447 n.2 (noting previous ruling on First Amendment grounds overturning conviction for "mere advocacy, unrelated to its tendency to produce forcible action") (citing *Yates v United States*, 354 U.S. 298 (1957)).

An aggravating factor is invalid if it "authorizes a jury to draw adverse inferences from conduct that is constitutionally protected." *Zant*, 462 U.S. at 885. Certainly, even speech otherwise protected by the First Amendment may be introduced at a capital sentencing proceeding if it is relevant to prove a valid aggravating factor, such as future dangerousness. *See Dawson v. Delaware*, 503 U.S. 159, 164-66 (1992) (holding that even evidence of beliefs that are protected by the First Amendment may be admissible in aggravation if it is "relevant to the issues involved," such as when it "serve[s] a legitimate purpose in showing that a defendant represents a future

danger to society"). But the government is forbidden from urging the jury to sentence someone to death based on evidence that "prove[s] nothing more than [his] abstract beliefs." *Id.* at 167-68 (finding constitutional error in allowing prosecution to employ evidence of defendant's membership in Aryan Brotherhood where it had "no bearing on the issue being tried" at the sentencing hearing").

Moreover, the government may not manufacture such "relevance" by creating an aggravating factor that is based solely on constitutionally protected activity and bootstrapping the admissibility of the evidence that way. *Cf. Barclay*, 463 U.S. at 949 & n.7 (finding that sentencing judge could consider expressions of racial hatred at sentencing, not as non-statutory aggravator but as it related to valid statutory aggravating factors). In any event, the fact that the government's proposed evidence in this case fails to even rise to the level of incitement, or even an attempt to incite, also means that it is insufficiently relevant to the capital sentencing determination.

A non-statutory aggravating factor must "provide a principled basis" upon which jurors may "distinguish those who deserve capital punishment from those who do not." *Arave*, 507 U.S. at 474. That is, the evidence upon which it is based must have "some bearing on the defendant's 'personal responsibility and moral guilt.'" *Zant*, 462 U.S. at 879 (quoting *Enmund*, 458 U.S. at 801). It must be "sufficiently relevant to the question of who should live and who should die." *Cheever*, 423 F. Supp. 2d at 1207 (quoting *United States v. Davis*, 912 F. Supp. 938, 943 (E.D. La. 1996)). *See also United States v. Hammer*, 2014 WL 2465276, at *9 (M.D. Pa. 2014) (noting that non-statutory aggravating factors "must meet a 'strikingly high level of relevance'") (quoting *Bin Laden*, 126 F. Supp. 2d at 302); *United States v. Gilbert*, 120 F. Supp. 2d 147, 150-51 (D. Mass. 2000) ("As the Supreme Court has held, aggravating factors in death penalty cases must be '*particularly* relevant to the sentencing decision'") (quoting *Gregg*, 428 U.S. at 192) (emphasis in original).

36

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████  *See Ciancia*, 2015 WL 13798677, at \*6-7 (striking non-statutory aggravator alleging that by shooting TSA employees at airport defendant also terrorized airline passengers and employees and caused them emotional distress because it "d[id] not highlight behavior that is relevant to whether Defendant receives a death sentence"). ███████████████, as inflammatory and deeply offensive as they are, "do[] not, in any rational sense, make [the] homicide[s] worse, whether one looks at it from the standpoint of the crime, the victim or the perpetrator." *United States v. Cuff*, 38 F. Supp. 2d 282, 288 (S.D.N.Y. 1999). Rather, they are far more akin to the "threatening words and warped bravado, without affirmative acts" that the district court found to be "simply too slippery to weigh as indicators of character [and] too attenuated to be relevant in deciding life or death" in *Davis*, 912 F. Supp. at 943 (striking portions of non-statutory aggravators that constitute only malfeasance as a police officer, threatening rhetoric and other evidence of "words alone" that did not "impact on health and safety"). This proposed non-statutory aggravator should be stricken.

> **C. The non-statutory aggravating factor "selection of site" is impermissibly duplicative of both the multiple killings and the substantial planning and premeditation factors and must be stricken.**

The Court should also strike the "selection of site" non-statutory aggravating factor because, to the extent that it has relevance to the jury's sentencing determination, it is duplicative of both the multiple killings and substantial planning and premeditation statutory aggravating factors and the "racially motivated" non-statutory aggravator and thus represents an unconstitutional attempt by the government to "double count" the same circumstances as multiple aggravators on death's side of the scale. Additionally, it directs the jury to explicitly consider the

race of the victims in determining the appropriate sentence, in direct violation of 18 U.S.C. § 3593(f).

The NOI states the proposed aggravator in the following terms:

> 5.      **Selection of Site.**  PAYTON GENDRON selected the Tops Friendly Market, located at 1275 Jefferson Avenue in Buffalo, New York, in order to maximize the number of Black victims of the offense.

ECF No. 125 at 5.

In *United States v. McCullah*, the Tenth Circuit held that where aggravating factors "substantially overlap with one another" such that, in order to find one, the jury "necessarily has to conclude" that the other is present, submitting those factors separately to the jury constitutes impermissible "double counting." 76 F.3d at 1111. Under a statutory scheme like the FDPA, it reasoned, "ask[ing the jury] to weigh a factor twice" when making its sentencing determination "has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally." *Id.* at 1111-12 (citing *Stringer*, 503 U.S. at 230-32). This is so because "the mere finding of an aggravating factor cannot but imply a qualitative value to that factor." *Id.* at 1112; *see also Davis*, 912 F. Supp. at 946 ("Since this is a statute in which the jury is to 'weigh' aggravating factors versus mitigating factors, there is always the danger that one or more jurors will weigh by counting. Breaking out what is essentially one factor into separately itemized factors is unduly prejudicial and confusing.").

Neither the Supreme Court nor the Second Circuit has definitively held that duplicative aggravating factors violate the fundamental constitutional requirements for a valid capital sentencing scheme. *See United States v. Jones*, 527 U.S. 373, 398 (1999) (opinion of Thomas, Rehnquist, O'Connor and Kennedy, J.J.) (assuming for the sake of argument that double counting objection is well-taken but finding no impermissible duplication in case before Court); *United*

*States v. Fell*, 531 F.3d 197, 235-36 (2d Cir. 2008) (same). However, in addition to the Tenth

Circuit, numerous district courts have so found and have stricken proposed aggravating factors that

contravene the principle established in *McCullah*. *See, e.g., Davis*, 912 F. Supp. at 946 (striking

government's proposed aggravating factor of 'low rehabilitative potential' as duplicative of 'future

dangerousness'); *United States v. Nguyen*, 928 F. Supp. 1525, 1543-44 (D. Kan. 1996) (same); *Bin

Laden*, 126 F. Supp. 2d at 300-01 (striking separate aggravating factor of 'injury to surviving

victims' and merging it with 'victim impact evidence' on grounds of impermissible double-

counting); *United States v. Johnson,* 136 F. Supp. 2d 553, 561-62 (W.D. Va. 2001) (finding

aggravating factors of 'termination of decedent's pregnancy' and 'death of fetus' impermissibly

duplicative); *United States v. Regan,* 228 F. Supp. 2d 742, 751 (E.D. Va. 2002) (striking

duplicative aggravators related to defendant's alleged removal of classified material from

government facilities); *United States v. Rivera*, 405 F. Supp. 2d 662, 668 (E.D. Va. 2005) ("[I]t is

constitutional error for the same aggravating factor to be considered by the sentencer more than

once, even if dressed in new clothing."). This Court should follow suit.[15]

    For the purposes of the duplication analysis, courts look to both the aggravating factor as

written, to determine what fact or facts about the offense or the defendant it encapsulates as a basis

for finding the defendant more deserving of a death sentence, and to the evidence that the

government proposes to introduce to support of it. While overlapping evidence that supports two

aggravators doesn't necessarily render them impermissibly duplicative, *see Jones*, 527 U.S. at 399

---

[15] It bears noting that a decision to preclude the jury from considering a separately submitted and duplicative aggravating factor in no way affects the *evidence* that the government may present and the jury may consider. *Bin Laden*, 126 F. Supp. 2d at 299. If evidence is relevant and admissible to prove the remaining aggravator in addition to the duplicative one, "by definition [it] is necessarily subsumed under the surviving umbrella aggravator and thus remains relevant and admissible." *Id.* Thus, the only effect of striking the duplicative aggravator is to avoid "cloud[ing] the issues and plac[ing] an unwarranted thumb on death's scale." *Id. See also Davis*, 912 F. Supp. at 946 (same).

(finding no impermissible duplication where "at best, certain evidence was relevant to" both aggravators), *Fell*, 531 F.3d at 236 (finding no duplication where while evidence supporting aggravators "arguably overlap[ped] to a certain degree ... separate consideration of different facts was required for the jury to find each factor"), complete subsumption of the evidence of one within the evidence of another does, *see Nguyen,* 928 F. Supp. at 1544 (striking duplicative aggravator where the court could not "fathom how the evidence supporting the two factors can materially differ in this case"); *Regan,* 228 F. Supp. 2d at 751 (striking aggravators where allegations of removal of classified material from government facilities "necessarily subsumes" evidence of second aggravator of removing "many other documents" from an agency). And where the aggravating factors as written both point to the same fact or facts to urge a defendant's death-worthiness, they are constitutionally invalid. *See Davis*, 912 F. Supp. at 946 (striking aggravator where, although based on different proffered evidence, factor itself (low rehabilitative potential) was merely "the converse" of another (future dangerousness)); *Bin Laden*, 126 F. Supp. 2d at 300 (striking separate 'injury to surviving victims' aggravator as duplicative of 'victim impact evidence' because "both function to provide the jury with details concerning the wide-spread human trauma allegedly caused by the accused's criminal conduct").

The "selection of site" non-statutory aggravator alleged in this case is potentially relevant to Payton Gendron's death-worthiness in two ways. One relates to his alleged mental state, in that he chose the location of the shooting because of his desire to cause the death of not just one but multiple individuals, and specifically Black individuals; the second relates to the devastating human toll of his actions, namely the death of 10 victims and the wounding of others. On either ground, however, this proposed aggravator is duplicative of another.

First, the factor's reliance upon the desire to kill multiple individuals is duplicative of the "multiple killings" statutory aggravator. The multiple killings aggravator, too, is designed to

highlight the importance of an especially culpable mental state and the scale of the effects of the defendant's actions. *Bin Laden*, 126 F. Supp. 2d at 300. With respect to mental state, the aggravator "focuses on Defendant's particular desire that there be multiple victims rather than just one." *Id.* And, of course, the aggravator reflects Congress's judgment that the harm caused by a defendant's actions is exponentially increased by the number of lives lost. *Id.* (aggravator highlights "the sheer magnitude of the crime"). Thus, although different evidence may be marshalled to prove the two aggravators, the point of them is identical. *Compare with Jones*, 527 U.S. at 399 (finding "vulnerable victim" aggravator based on characteristics of decedent that increased the probability of her death not duplicative of "victim impact" aggravator based on personal characteristics "that captured victim's individual uniqueness and the effect of the crime on her family").

Second, the focus of the aggravator on the race of the victims is unconstitutionally duplicative of the "racially motivated" aggravator, which independently urges the jury to sentence Payton Gendron to death on the ground that he selected his victims because they were Black. The "racially motivated" aggravator thus completely subsumes this portion of the "selection of site" factor and renders it redundant. Third, the "selection of site" aggravator is impermissibly duplicative of the "substantial planning and premeditation" statutory aggravator. The latter similarly has two potential sources of relevance to a jury's determination of whether to impose a death sentence—it embodies a more culpable mental state, in as much as it recognizes a defendant's determination to commit the capital offense and decision to forego opportunities to abort his plan, and it also accounts for the increased likelihood that the crime will be completed and bring about the intended harm. Given that these aspects of Payton Gendron's offense are covered by the substantial planning aggravator, again the "selection of site" non-statutory aggravator is impermissibly duplicative. Additionally, the evidence the government intends to introduce to support "selection of site" is completely subsumed within the evidence that it seeks to present to

prove "substantial planning and premeditation"; there is nothing of significance included in the government's Informational Outline with respect on the former that is not already encompassed in its proffer with respect to the latter. *Compare* ECF No. 210 at 32-36 *with id.* at 6-13. Just like the stricken aggravator in *Bin Laden*, then, the selection of site aggravating factor "serves no significant sentencing role other than to cloud the issues and place an unwarranted thumb on death's scale," and it too should be disallowed. 126 F. Supp. 2d at 299.

Lastly, the Court should strike the aggravator because it improperly encourages the jury to consider the race of the victims and of Mr. Gendron in violation of 18 U.S.C. § 3593(f). Once again, it is impossible for the Court to instruct the jury to debate whether Payton Gendron is more worthy of the death penalty because he chose a particular location to maximize the number of Black casualties and simultaneously admonish the jury—as it must—against considering the race of the deceased victims in determining the appropriateness of a death sentence. The aggravator must be stricken on this ground also.

## III.    CONCLUSION

For the reasons set forth herein, the Court should grant the Motion. The defense respectfully requests that the Court conduct oral argument on the Motion.

Dated: Buffalo, NY
        January 27, 2025

                                    Respectfully Submitted,


                                    *s/Sonya A. Zoghlin*
                                    Sonya A. Zoghlin
                                    Assistant Federal Public Defender

                                    *s/MaryBeth Covert*
                                    MaryBeth Covert
                                    Senior Litigator

*s/Julie Brain*
Julie Brain
Attorney at Law

*s/Monica Foster*
Monica Foster
Indiana Federal Community Defenders, Inc.