UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

       v.　　　　　　　　　　　　　　　　　　　22-CR-109 (LJV)
　　　　　　　　　　　　　　　　　　　　　　　　Redacted Version of ECF No. 381

PAYTON GENDRON,

           Defendant.

## MOTION TO SUPPRESS STATEMENTS

Payton Gendron, through undersigned counsel, moves to suppress any statements alleged to have been made by him at any time, to any law enforcement agent on May 14, 2022, or thereafter on the grounds that the statements were taken in violation of his right to remain silent; his right to counsel; and were otherwise involuntary. *See* U.S. Const., amends. V, VI; *see also Miranda v. Arizona*, 384 U.S. 436 (1966); *Dickerson v. United States*, 530 U.S. 428, 433 (2000); 18 U.S.C. § 3501(a). Moreover, Payton Gendron also moves to suppress any evidence recovered as a result of these unlawfully obtained statements. *See Wong Sun v. United States*, 371 U.S. 471 (1963). These statements include, but are not limited to, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

### I.　　BACKGROUND

Payton Gendron is charged in a 27-count Indictment related to the killings of 10 people and the wounding of three others at the Tops Market in Buffalo on May 14, 2022. ECF No. 6. He

is charged under 18 U.S.C. § 249(a)(1)(B)(i) and (ii), the federal hate-crime statute, and 18 U.S.C. § 924(j), the federal firearms statute.

On May 14, 2022, at approximately 2:35 p.m., Payton Gendron was taken into custody at gunpoint by members of the Buffalo Police Department in front of the Tops Market at 1275 Jefferson Avenue. He was immediately handcuffed at the scene and has been continuously in the custody of law enforcement from that time forward.

      a. *Correspondence with the Government pursuant to Rules 12 and 16 of the Federal Rules of Criminal Procedure and Related Discovery Issues*

In correspondence dated October 11, 2024, defense counsel for Payton Gendron asked the government to provide "specific and detailed notice of the materials that you intend to use in your case-in-chief at the guilt and/or penalty phases of the trial of this matter" pursuant to Federal Rules of Criminal Procedure 12(b)(4) and 16. *See* Exhibit A. The first item specifically requested was: (1) "a detailed list of all written, recorded, oral, or otherwise memorialized statements Payton Gendron allegedly made to or in the presence of law enforcement and their agents that you intend to use in your case-in-chief at trial and at any penalty phase." *Id*. at 1. The letter noted that the government had previously provided voluminous discovery "with a general notice that you intend to use all the materials disclosed to date in your case-in-chief at trial," but that "such a broad notice…is insufficient as a matter of law, and more is required under Fed. R. Crim P. 12(b)(4)(B) and 16 and the Fourth, Fifth, Sixth, and Eighth Amendments." *Id*. at 2. Specifically, the defense asserted that more detailed notice was required to provide the defense with "a meaningful opportunity to prepare a defense, including assessing and filing pre-trial suppression motions under Fed. R. Crim P. 12." *Id*. Defense counsel asked that this information be provided by October 31, 2024.

2

The government responded to this request by letter dated February 20, 2025, more than four months after it was received. *See* Exhibit B. While acknowledging the purpose of Rule 12(b)(4)(B) is to facilitate the defendant's ability to move to suppress evidence the government intends to use at trial and "to avoid the necessity of moving to suppress evidence which the government does not intend to use at trial," the government here declined to provide *any* additional information about which, if any, statements attributed to Payton Gendron (and included in the voluminous documents, videos, or body worn camera recordings provided in discovery) it intends to use at either phase of the capital trial. Because the government has declined to be more specific about which statements it intends to introduce at trial, evidence of which may be contained in multiple terabytes of discovery (encompassing audio and/or video material, and tens of thousands of documents), this motion is necessarily limited to general categories of post-arrest statements that may be offered as evidence against Payton Gendron at a guilt and/or penalty phase of trial and may be subject to suppression.

The challenge of identifying and isolating each of Payton Gendron's statements is daunting. There is not a single folder in the discovery in which all Payton Gendron's statements (recorded or memorialized in reports) can be found. To begin with, the discovery was not provided in folders organized by subject. Rather, each discovery production was provided as a single folder of documents titled only with the Bates number of their first pages. The first main production from September 21, 2022, was accompanied by an index breaking down 55,164 Bates-numbered pages into 32 sections. Many of Payton Gendron's statements – ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ can

be found in various subsections of the section ████████████████. However, there is additional body worn camera footage of the arrest located in multiple other sections of the 9/21/22 production, requiring countless hours to determine what is, or is not, duplicative.

In more than a dozen discovery productions after September 21, 2022, the government abandoned the 1-to-32-section organizational system and indexes were much sparser, listing categories like ████████████████████████████████████████ ██████████████████ or listing no categories at all, just a series of reports and their attachments. The defense has made every effort to review and index these tens of thousands of files; we cannot be sure, however, that we have not missed documents or recordings that represent statements by Payton Gendron. For example, the penultimate production, made April 14, 2025, is accompanied by an index listing a series of reports without categories. ███████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ We had not encountered these recordings previously, although it seems they were provided on a hard drive of Non-Bates Numbered Discovery provided with the initial main September 21, 2022, production in a subfolder titled ██████████████████.

In this context, the government's refusal to specify which statements it intends to use as evidence at the guilt and/or penalty stage of the impending capital trial, and where in the discovery each statement is located, presents a uniquely unfair and inefficient posture from which to file the instant suppression motion.

b.  *Post-Arrest Statements*

Based on the defense review of the discovery provided thus far, the statements alleged to have been made by Payton Gendron to law enforcement officials fall into several general categories: ███████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████.[1]

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

---

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████







## II.  LEGAL ARGUMENT

The statements attributed to Payton Gendron during each of the time periods and circumstances referred to above should be suppressed for the following reasons. First, ▮

▮ were the product of custodial interrogation not preceded by Miranda warnings. *See Miranda v. Arizona*, 384 U.S. 436 (1966); U.S. Const., amend. V. Second,

▮. *See Michigan v. Mosely*, 423 U.S. 96, 106 (1975); *Edwards v. Arizona*, 451 U.S. 477, 484-485

---

[3] ▮

(1981). Further, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ should also be suppressed because they were involuntary. *See Mincey v. Arizona*, 437 U.S. 385 (1978); 18 U.S.C. § 3501(a). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ also violated his right to counsel under the Sixth Amendment. *See Kirby v. Illinois*, 406 U.S. 682, 689 (1972).

In *Miranda v. Arizona*, the Supreme Court held that the prosecution may not use a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant was first warned of his Fifth Amendment privilege against self-incrimination and then voluntarily waived that right. 384 U.S. at 444.

> Custodial interrogation exists when a law enforcement official questions an individual and that questioning was (1) conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak (the in-custody requirement) and (2) when the inquiry is conducted by officers who are aware of the potentially incriminating nature of the disclosures sought (the investigative intent requirement).

*United States v. Rodriguez*, 356 F.3d 254, 258 (2d Cir. 2004) (citing *United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987) (internal citations omitted)).

In determining whether a defendant was in custody, a court must consider two questions. First, "whether a reasonable person would have thought he was free to leave the police encounter at issue." *United States v. Newton*, 369 F.3d 659, 672 (2d Cir. 2004), *cert. denied*, 125 S. Ct. 371 (2004). If so, the court must then consider whether the "reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *Id.* (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). Here, there is no question

9

that Payton Gendron, who was seized at gunpoint and handcuffed by police immediately after exiting the Tops Market on May 14, 2022, was in custody from that moment forward.

Moreover, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) ("interrogation" includes express questioning or its "functional equivalent," i.e., words or action by law enforcement that are "reasonably likely to elicit an incriminating response.") ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Any statements made in response to this custodial interrogation that preceded the administration of Miranda warnings must be suppressed.

So, too, should this Court suppress any statements attributed to Payton Gendron ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████. *See United States v. Quiroz*, 13 F.3d 505, 512 (2d Cir. 1993) (once suspect has invoked his right to counsel, the ban on further police-initiated questioning is absolute); *see also See Michigan v. Mosely*, 423 U.S. at 106 (defendant's assertion of his right to remain silent must be "scrupulously honored"); *Edwards v. Arizona*, 451 U.S. at 484-485 (once an accused has invoked his right to counsel, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated questioning). █

████████████████████████████████████████████████████.

████████████████████████████████████████████████████

████████████████████████████████████ The Due Process and Self-Incrimination Clauses of the Fifth Amendment require "that a confession be voluntary to be admitted into evidence." *Dickerson v. United States*, 530 U.S. at 433. As opposed to statements taken in violation of *Miranda v. Arizona*, which are admissible for impeachment if their "trustworthiness…satisfies legal standards" (*Harris v. New York*, 401 U.S. 222, 224 (1971)), "any criminal trial use against a defendant of his <u>involuntary</u> statement is a denial of due process of law, 'even though there is ample evidence aside from the confession to support the conviction.'" *Mincey v. Arizona*, 437 U.S. at 398 (emphasis in original) (quoting *Jackson v. Denno*, 378 U.S. 368, 376 (1964). *See also New Jersey v. Portash*, 440 U.S. 450, 459 (1979) ("[A] defendant's compelled statements, as opposed to statements taken in violation of *Miranda*, may not be put to any testimonial use whatever against him in a criminal trial.")

"'A confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given.'" *United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014) (quoting *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991)). The voluntariness inquiry

11

probes "the physical and psychological environment that yielded the confession" (*Crane v. Kentucky*, 476 U.S. 683, 688-89 (1986)) – i.e., "the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation and the conduct of law enforcement officials.'" *United States v. Taylor*, 745 F.3d at 24 (*citing Colorado v. Connelly*, 479 U.S. 157, 164-65 (1986)).



In the alternative and at a minimum, Payton Gendron has a due process right to "a fair hearing and a reliable determination on the issue of voluntariness." *Jackson v. Denno*, 378 U.S. at 377; *Sims v. Georgia*, 385 U.S. 538, 543-44 (1967).

For Sixth Amendment purposes, the right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings." *Kirby v. Illinois*, 406 U.S. at 689. Therefore, at a minimum, Payton Gendron's Sixth Amendment right to counsel attached at his arraignment on the accusatory instrument in Buffalo City Court. Where a defendant's Sixth Amendment right to counsel has attached, the relevant issue is not whether

12

officers engaged in "interrogation," but rather whether they "deliberately elicited" statements from the defendant. *See Fellers v. United States*, 540 U.S. 519, 524 (2004). This prohibition would, therefore, apply to any statements the government seeks to introduce into evidence that were made after Payton Gendron's City Court arraignment.

### III.  CONCLUSION

For the foregoing reasons, counsel for Payton Gendron respectfully request that any statements alleged to have been made by him to law enforcement at any point after he was taken into custody at or about 2:30 p.m. on May 14, 2022, be suppressed or, in the alternative, that a hearing be held to determine the facts herein.

Dated:  June 9, 2025
        Buffalo, New York

>               *s/Sonya A. Zoghlin*
>               Sonya A. Zoghlin
>               Assistant Federal Public Defender
>
>               *s/MaryBeth Covert*
>               MaryBeth Covert
>               Senior Litigator
>
>               *s/Julie Brain*
>               Julie Brain
>               Attorney at Law