IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                                  22-CR-109-V

PAYTON GENDRON,

                Defendant.

### GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT PURSUANT TO THE FIFTH AND SIXTH AMENDMENTS AND THE JURY SELECTION AND SERVICE ACT

The United States of America, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, and Mac Warner, Deputy Assistant Attorney General, Civil Rights Division, and Joseph M. Tripi, Brett A. Harvey, and Caitlin M. Higgins, Assistant United States Attorneys, Sanjay Patel, Trial Attorney, Civil Rights Division, and Michael Warbel, Trial Attorney, Department of Justice Capital Case Section, of counsel, respectfully submits this opposition to the defendant's motion to dismiss pursuant to the Fifth and Sixth Amendments and the Jury Selection and Service Act (JSSA). *See* Docket No. 409.

### BACKGROUND

The defendant is charged with killing 10 Black people and injuring three other individuals as part of a racially motivated attack on a grocery store. *See* Docket No. 6. He now demands that the Court dismiss the indictment against him because, in his view, the

implementation of the Western District of New York Jury Plan led to the underrepresentation of certain minority groups—including Black persons. *See* Docket No. 409.

After two years of litigation and production of substantial discovery by the Clerk of the Court concerning the district's jury selection protocols generally and specifically in this case, the defendant wholly fails to meet his burden. His arguments fail both as a matter of law and fact. Perhaps recognizing this reality, the defendant conjures up alleged "failures" on the part of the Clerk that, in truth and fact, are neither failures nor violations of the JSSA. At bottom, the defendant fails to establish a systematic underrepresentation that was caused by the district's racially neutral jury plan, and his motion must be denied.

## **ARGUMENT**

### I.   Applicable Law

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial[ ] by an impartial jury of the State and district wherein the crime [was] committed." U.S. Const. amend. VI. In an effort to address the persistent systematic exclusion of, *inter alia*, Black people, women, and other groups that occurred well into the twentieth century, Congress enacted the Jury Selection and Service Act of 1968. *See United States v. Slaughter*, 110 F.4th 569, 578 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1439 (2025).

The JSSA provides: "It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court

convenes." 28 U.S.C. § 1861. It further states that "[n]o citizen shall be excluded from service as a grand or petit juror . . . on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C. § 1862. In this vein, "the JSSA requires each federal district court to adopt a plan for the random selection of grand and petit jurors that is 'designed to achieve' the objectives of Sections 1861 and 1862." *Slaughter*, 110 F.4th at 578 (quoting 28 U.S.C. § 1863(a)).

Likewise, "[i]n *Taylor v. Louisiana*, the Supreme Court formally recognized the fair cross-section requirement as fundamental to the right to an impartial jury guaranteed by the Sixth and Fourteenth Amendments." *Id*. "*Taylor* and the JSSA, read together, guarantee both state and federal criminal defendants the right to a grand and petit (trial) jury selected from a pool of people that fairly represents the community in which they are being tried." *Id*.

*Duren v. Missouri*, 439 U.S. 357 (1979), governs fair cross-section challenges under both the Sixth Amendment and the JSSA. *Id*. at 579. There, the Supreme Court held that to establish a prima facie violation of the fair cross-section requirement, a defendant must show:

> (1) "the group alleged to be excluded is a 'distinctive' group in the community"; (2) "the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community"; and (3) "this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

*Id*. at 578-79 (quoting *Duren*, 439 U.S. at 364).

If the defendant satisfies all three elements, "the burden shifts to the prosecution to show that a significant government interest is 'manifestly and primarily advanced by those

3

aspects of the jury-selection process that result in the disproportionate exclusion of a distinctive group.'" *Id.* at 579 (quoting *Duren*, 439 U.S. at 367-68) (editorial marks omitted).

The JSSA provides a statutory mechanism by which a defendant may assert such a challenge:

> In criminal cases, before voir dire begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

28 U.S.C. § 1867(a). Because the defendant fails to satisfy his burden under *Duren*, the Court should deny his motion to dismiss.

## II. The Court Should Deny the Defendant's Motion to Dismiss Pursuant to the Sixth Amendment Claim.

The government concedes that the defendant has satisfied prong one of *Duren* in asserting that Blacks, Hispanics/Latinos, and men are distinctive groups. The defendant, however, fails to establish prongs two and three, which is fatal to his claim. Accordingly, the government addresses prongs two and three below. Where, as here, the defendant fails to satisfy the third prong, many courts decline to resolve the second prong.[1] *See, e.g.*, *United States v. Rodriguez*, No. 20 Cr. 301, 2021 WL 4226046, at *3 (S.D.N.Y. Sept. 16, 2021); *United States v. Neilly*, No. 21 Cr. 94, 2021 WL 3913559, at *3 (S.D.N.Y. Sept. 1, 2021); *United States v. Lawrence*, 553 F. Supp. 3d 131, 142 (S.D.N.Y. 2021). This Court should do the same here.

---

[1] Because the defendant's arguments fail as a matter of law, and to obviate the need for the Court to resolve complex factual questions, this response does not address the accuracy of the statements made by the defendant's expert. If necessary, the government requests an opportunity to file a supplemental brief after consulting with its own expert.

**A. The Court Should Deny the Defendant's Motion to Dismiss Because he Fails to Establish that the Distinctive Groups were Underrepresented.**

The defendant asserts that the 2021 Buffalo Division Qualified Jury Wheel, Form AO-12 reflected the following absolute disparities:  (1) Black persons – 3.65%; (2) Hispanic/Latino persons – 1.58%; and (3) Male persons – 1.73%.  *See* Docket No. 409 at 13.  These numbers match or fall below those in *United States v. Biaggi*, 909 F.2d 662, 678 (2d Cir. 1990).  There, the Second Circuit held that where the absolute disparities for Blacks and Hispanics were 3.6% and 4.7%, the defendant failed to establish a fair cross-selection claim under the Sixth Amendment.  *Id.*  The Second Circuit, however, advised that "[w]e think the facts of this case press the . . .absolute numbers' approach to its limit, and would find the Sixth Amendment issue extremely close if the underrepresentations had resulted from any circumstance less benign than use of voter registration lists."  *Id.*[2]  Since *Biaggi*, "courts in this circuit have repeatedly rejected fair cross section claims where the absolute disparities fall near *Biaggi*'s but the reasons for underrepresentation are benign in nature."  *United States v. Todd*, No. 20-CR-256 (KAM), 2021 WL 5712153, at *6 (E.D.N.Y. Dec. 1, 2021) (quoting *United States v. Celestine*, No. 20CR286ARRSJB, 2021 WL 4133755, at *8 (E.D.N.Y. Sept. 10, 2021)).  Accordingly, given the disparities identified by the defendant fall within *Biaggi*'s guidance, the Court should deny the defendant's motion to dismiss because the defendant fails to establish that the distinctive groups are underrepresented.

---

[2] Although the defendant identifies several statistical methods to measure disparity, the Second Circuit has "embraced the absolute disparity/absolute numbers method to assess underrepresentation."  *Slaughter*, 110 F.4th at 580.  This method "allows the court to calculate the average difference per venire in the number of jurors from the distinctive group due to underrepresentation."  *Id.* at 580.

**B. Even if the Court Holds that the Defendant Established Underrepresentation, the Court Should Still Deny the Defendant's Motion Because He Fails to Establish that the Alleged Underrepresentationd are Due to Systematic Exclusion of the Groups in the Jury-Selection Process.**

The defendant argues that "[s]ystematic exclusion may be proven where, as here, a defendant demonstrates that underrepresentation of a distinctive group occurred over an extended time." *See* Docket No. 409 at 15. Not so.

"There is systematic exclusion when the underrepresentation is due to the system of jury selection itself, rather than external forces." *United States v. Saipov*, No. S1 17-CR-722 (VSB), 2023 WL 3495408, at *3 (S.D.N.Y. May 16, 2023) (quoting *United States v. Rioux*, 97 F.3d 648, 658 (2d Cir. 1996)). "To demonstrate systematic exclusion, the Defendant must isolate specific flaws in the Jury Plan and then prove that those flaws are what caused the underrepresentation at issue." *United States v. Tagliaferro*, No. 19-CR-472 (PAC), 2021 WL 1172502, at *3 (S.D.N.Y. Mar. 29, 2021). "The law is clear that evidence of mathematical disparity, without more, is insufficient to make out a prima facie case of improper jury selection." *Anderson v. Casscles*, 531 F.2d 682, 685 (2d Cir. 1976); *see also United States v. Suquilanda*, No. 21 CR 263 (VM), 2021 WL 3500868, at *4 (S.D.N.Y. Aug. 9, 2021) (same). Additionally, persistent underrepresentation is insufficient to demonstrate systematic exclusion. *See Saipov*, 2023 WL 3495408, at *3.

Courts have repeatedly rejected the defendant's argument that underrepresentation, without more, even over an extended time, satisfies prong three. *See, e.g.*, *Slaughter*, 110 F.4th at 583 ("But we are aware of no Second Circuit or Supreme Court case in which the persistence of disparities over time, standing alone, satisfied *Duren* prong three."); *United*

*States v. Lucas*, No. 21-CR-382 (SHS), 2021 WL 4925715, at *4 (S.D.N.Y. Oct. 21, 2021) ("Lucas wrongly asserts that one may establish systematic exclusion by showing that the underrepresentation occurred over a significant time period. Rather, a defendant must articulate how one or more factors causes any underrepresentation and may not merely list potential causes." (internal citation and quotation marks omitted)). This Court should too.

Here, the defendant appears to offer no argument or evidence whatsoever regarding how the jury selection process caused systematic exclusion. To the extent his arguments under the heading "D. Substantial Failure to Comply with the JSSA Requires Dismissal," should be considered to support his Sixth Amendment claim, they fail as a matter of law (both as to the Sixth Amendment and the JSSA claims). The defendant asserts that the exclusion of both inactive voters and non-driver's license holders violated the JSSA. *See* Docket No. 409 at 16-17. He is wrong.

"There is systematic exclusion when the underrepresentation is due to the system of jury selection itself, rather than external forces." *Rioux*, 97 F.3d at; *see also United States v. Middlebrooks*, 2021 WL 2402162, at *2 (S.D.N.Y. June 10, 2021). For this reason, "courts in this circuit have consistently held that the exclusion of inactive voters does not satisfy *Duren*'s third prong." *United States v. Corbett*, No. 20-CR-213 (KAM), 2021 WL 5588816, at *8 (E.D.N.Y. Nov. 30, 2021) (citing *Middlebrooks*, 2021 WL 2402162, at *3 ("The cause of exclusion is people moving, which courts have held 'is an external force.' It is not systematic."); *United States v. Charles*, No. 20 CR 419(VM), 2021 WL 2457139, at *5 (S.D.N.Y. June 16, 2021) ("[V]oters become 'inactive' when they move, which constitutes an

7

external force and undermines finding a violation."); *see also United States v. Scott*, 545 F. Supp. 3d 152, 175 (S.D.N.Y. 2021) ("Therefore, though the exclusion of inactive voters and voters who become eligible during the years in between the filling of the wheel may prevent some citizens from serving on juries, it does not amount to a violation of the JSSA."); *Celestine*, 2021 WL 4133755, at *9 ("While the District's exclusion of inactive voters and non-driver's license holders from its venires may have disparate impact on communities of color, courts have found that the use of facially neutral means to construct a jury pool is benign, even if, because of demographic patterns or other private sector influences, these result in disproportionate representation." (citation and internal quotation marks omitted)). "Consequently, the defendants cannot show systematic exclusion because the underrepresentation caused by the exclusion of inactive voters is attributable to the external force of people moving." *Corbett*, 2021 WL 5588816, at *8; *See United States v. Schulte*, No. S3 17 CR. 548 (PAC), 2021 WL 1146094, at *8 (S.D.N.Y. Mar. 24, 2021) ("[T]he Court cannot charge the District's Jury Plan with a Sixth Amendment violation because of how often people move residences throughout the District.").

Similarly, his argument regarding non-driver's license holders equally fails because "[t]he exclusion of non-driver's license holders is facially neutral, and any resulting underrepresentation is attributable to 'outside causes' – such as 'demographic changes' or external socioeconomic forces – that 'do not constitute systematic exclusion.'" *Corbett*, 2021 WL 5588816, at *8 (quoting *Schulte*, 2021 WL 1146094, at *7). Accordingly, the Court should deny the defendant's Sixth Amendment cross-section claim because he cannot and does not establish that any alleged underrepresentation is due to the jury selection process.

### III. The Court Should Deny the Defendant's Motion to Dismiss Predicated on the JSSA.

The defendant asserts that the Court should dismiss this case because: (1) the Clerk failed to "adequately manage and supervise the jury selection process"; (2) the Clerk failed to create any written guidelines or instructions to ensure that the source data would be combined in a uniform manner consistent with the goals of the JSSA and the Sixth Amendment"; and (3) the Clerk failed "to preserve materials relating to the construction of the Master Jury wheel." *See* Docket No. 409. These failures, the defendant contends, undermined "the fairness and integrity of the grand jury process." *Id*. at 15. This argument fails for several reasons.

First, the defendant tethers these failures to the exclusion of inactive voters and non-driver's licenses, which are precluded as a matter of law. Second, the defendant does not establish that these are violations of the JSSA. For example, the defendant—with no legal support—asserts that the Clerk violated the JSSA by delegating to Sutera. But 28 U.S.C. § 1869 defines "clerk" and "clerk of the court," to include "any authorized deputy clerk, and any other person authorized by the court to assist the clerk in the performance of functions under this chapter." That plainly covers the use of a vendor such as Sutera. Nor does the defendant point to any provision requiring the Clerk to "create any written guidelines or instructions" to provide to Sutera. The JSSA requires only that the district jury plan "specify detailed procedures to be followed by the jury commission or clerk in selecting names from sources." 28 U.S.C. § 1863(b)(3). The WDNY Plan complies with this stricture. *See* WDNY Jury Plan, *available at* https://www.nywd.uscourts.gov/sites/nywd/files/Jury%20Plan%20-%20March%202025.pdf at 2-4. In this vein, Sutera also described the process that was used

9

to produce the Master Jury Wheel. *See* Docket No. 310 at 3 and 9. The described process fully comports with the JSSA and the WDNY Jury plan.

Likewise, the defendant fails to prove that the JSSA mandates that the Clerk preserve every single record in the process. To the contrary, the JSSA simply states that "all records and papers compiled and maintained by the jury commission or clerk before the master wheel was emptied," be preserved. 28 U.S.C. § 1868. In turn, the WDNY delineated certain categories of documents that the Clerk must, and did, maintain: the jury selection plan; orders regarding refilling of the master jury wheel, petit juries, and grand juries; jury memos from the Administrative Office and internal memos; qualification questionnaires; pre-screening questionnaires; individual petit jury and grand jury panel information; and Administrative Office reports: JS-11, JS-11G, and AO-12. Furthermore, although the defendant contends that Sutera impermissibly destroyed source data in violation of the JSSA, he both fails to identify how the JSSA required Sutera to maintain that document and overlooks that New York State law requires Sutera to do so.

In or around 2016, WDNY revised its jury selection plan to increase diversification. *See* Exhibit A; *see also Howell v. Superintendent Rockview SCI*, 939 F.3d 260, 269 (3d Cir. 2019) (holding that when analyzing *Duren*'s third step, courts look to "efforts at reform to increase the representativeness of jury lists"). This effort included expanding source data from agencies beyond the Department of Motor Vehicles and voter registration data. *See id.* But "[t]he main obstacle to accomplishing this goal was that New York State law regulates the ability of state agencies to share this sort of information." *Id.* Even after legislation passed

10

that allowed agencies to share the data, the biggest hurdle remained "making sure appropriate data protection precautions were taken." *Id.* Ironically, the defendant criticizes the Clerk for failing to preserve data that WDNY fought to obtain to diversify the jury pool. What is more, the defendant ignores Sutera's representation that "all records on each source [were] used in the merger of data." *See* Docket No. 310 at 10. The defendant offers no reason to question that representation. Thus, the defendant failed to establish that the Clerk violated any violation of the JSSA or WDNY Jury Plan.

But even if the Court disagrees, "[a]t best, these allegations are nonactionable 'technical violations.'" *United States v. Marutyan*, No. 20 CR. 0652 (VM), 2022 WL 2078193, at *5 (S.D.N.Y. June 9, 2022). "Mere 'technical' violations of the procedures prescribed by the [JSSA] do not constitute 'substantial failure to comply' with its provisions." *United States v. LaChance*, 788 F.2d 856, 870 (2d Cir. 1986) (internal citations omitted). "[A] substantial violation of the JSSA occurs only when the alleged violation frustrates the Act's principles of random selection." *Marutyan*, 2022 WL 2078193, at *5 (quoting *Rioux*, 930 F. Supp. at 1589-81). Even if the defendant could prove the failures above constituted violations of the JSSA—which he cannot—he falls short of establishing that they were substantial violations. The defendant fails to prove that any of the alleged violations implicate the fundamental concerns of the JSSA—namely, random selection, fair cross-section, and objective criteria. Therefore, the Court should deny the defendant's motion to dismiss pursuant to the JSSA.

11

## CONCLUSION

For all the reasons stated above, the Court should deny the defendant's motion to dismiss pursuant to the Fifth and Sixth Amendments and the Jury Selection and Service Act.

DATED:     July 17, 2025
           Buffalo, New York

MICHAEL DIGIACOMO                       MAC WARNER
United States Attorney                  Deputy Assistant Attorney General
Western District of New York            Civil Rights Division


BY:   *s/JOSEPH M. TRIPI*           BY:   *s/SANJAY H. PATEL*
      *s/ BRETT A. HARVEY*                Trial Attorney
      *s/ CAITLIN M. HIGGINS*             Civil Rights Division
      *s/ CHARLES M. KRULY*               U.S. Department of Justice
      *s/ MAEVE E. HUGGINS*               150 M Street NE
      Assistant United States Attorney   Washington, DC 20530
      United States Attorney's Office    202-532-3805
      Western District of New York       Sanjay.Patel@usdoj.gov
      138 Delaware Avenue
      Buffalo, New York 14202
                                    BY:   *s/MICHAEL S. WARBEL*
                                          Trial Attorney
                                          Criminal Division
                                          U.S. Department of Justice
                                          1331 F. St. NW, Ste. 623
                                          Washington, DC 20004
                                          (202) 514-5605
                                          Michael.Warbel@usdoj.gov