UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                    22-CR-109 (LJV)

                                      (Redacted Version of ECF No. 399)
PAYTON GENDRON,

        Defendant.

_____


## MOTION TO SUPPRESS EVIDENCE SEIZED FROM
## <u>APPLE iCLOUD ACCOUNT</u>

Payton Gendron, by and through his attorneys, pursuant to the Fourth Amendment to the

United States Constitution and Fed. R. Crim. P. 41, respectfully submits this Motion to Suppress

Evidence Seized from Apple iCloud account. Payton Gendron moves to suppress all evidence

seized from the Apple iCloud account ███████████████████████████████

pursuant to a search and seizure warrant, 22-mj-118. The warrant for the Apple iCloud account

was deficient for five reasons: First, the warrant application was predicated on information that

was illegally obtained through an Emergency Disclosure Request ("EDR") that was deficient on

its face and was submitted to Apple hours after any conceivable emergency had ended. Second,

the application failed to establish probable cause that evidence of the shooting at the Tops Market

on May 14, 2022, would be found anywhere within the iCloud account. Third, even if some

nexus had been demonstrated between the crime at issue and the account in general, the warrant

was further deficient because it failed to establish probable cause that evidence of the crime

would be found within each category of data in the account that the warrant authorized law

enforcement to search and those it permitted them to seize. The warrant lacked any temporal

limitation that could have constrained officers' discretion and ensured a connection between the categories of information to be searched or seized and the alleged criminal activity; it was thus overbroad. Fourth, the warrant was insufficiently particular in its description of the data that could be seized. Finally, suppression is required because the execution of the warrant violated the Constitution in multiple respects. The information seized during the responsiveness review exceeded the scope permitted by the warrant. Additionally, not only has the government retained the entire Apple iCloud warrant return, but it also appears to have unlawfully re-reviewed the return, including the information determined to be outside the scope of the warrant.

## **FACTUAL BACKGROUND**

Payton Gendron is charged in a 27-count Indictment related to the killings of 10 people and the wounding of three others at the Tops grocery store in Buffalo on May 14, 2022. ECF No. 6. He is charged under 18 U.S.C. § 249(a)(1)(B)(i) and (ii), the federal hate-crime statute, and 18 U.S.C. §§ 924(c) and (j), the federal firearms statute.

















**ARGUMENT**

**I.   The Court Should Suppress Evidence Seized From Payton Gendron's Apple iCloud Account Because There is an Insufficient Nexus Between the Account and the Alleged Criminal Activity.**

The Fourth Amendment protects individuals "against unreasonable searches and seizures" and requires that warrants must be supported by "probable cause . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. Probable cause determinations require "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the reviewing magistrate judge], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The determination of whether probable cause exists is based on the facts set forth in the four corners of law enforcement's sworn affidavit, and "wholly conclusory statement[s]" do not suffice. *Id.* at 239.

"The chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by the British 'under the authority of general warrants.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Payton v. New York*, 445 U.S. 573, 583 (1980); *Arizona v. Gant*, 556 U.S. 332, 345 (2009) ("[T]he central concern underlying the Fourth Amendment [is] the concern about giving police offers unbridled discretion to rummage at will among a person's private effects"). Both the Supreme Court and the Second Circuit have repeatedly recognized the heightened privacy concerns that are implicated in the context of searches and seizures of digital evidence given the significant risk of unlawful intrusion into the most sensitive aspects of a person's life.

Many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate. . . . [A] cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in

digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.

*Riley v. California*, 573 U.S. 373, 395-97 (2014) (emphasis in original); *see also United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) ("A general search of electronic data is an especially potent threat to privacy because hard drives and e-mail accounts may be 'akin to a residence in terms of the scope and quantity of private information [they] contain.'") (quoting *Galpin*, 720 F.3d at 446) (alteration in original). The same is true in the context of social media accounts. For example, in *United States v. Shipp*, the court held that the threat of intrusion into one's privacy is "further elevated in a search of Facebook data because, perhaps more than any other location—including a residence, a computer hard drive, or a car—Facebook provides a single window through which almost every detail of a person's life is visible." 392 F. Supp. 3d 300, 308 (E.D.N.Y. 2019).

Probable cause is both location specific and crime specific: a magistrate judge may not approve a warrant unless there is a "nexus between the items sought and the 'particular place' to be searched." *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (quoting U.S. Const., amend. IV). Additionally, there must be a sufficient nexus between the criminal activities alleged and the location or items to be searched. *Id.*; *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) ("The warrant was defective in failing to link the items to be searched and seized to the suspected criminal activity."); *Burns v. United States*, 235 A.3d 758, 771 (D.C. 2020) ("The affidavit thus must demonstrate cause to believe not only that an item of evidence is likely to be found at the place to be searched, but also that there is a nexus between the item to be seized and the criminal behavior under investigation.") (quoting *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017)) (brackets omitted); *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967). This

requirement "protects against the issuance of general warrants, instruments reviled by the Founders who recalled their use by Crown officials 'to search where they pleased.'" *Clark*, 638 F.3d at 94 (quoting *Stanford v. Texas*, 379 U.S. 476, 481 (1965)). The nexus requirement ensures that, "[r]egardless of whether an individual is validly suspected of committing a crime, an application for a search warrant concerning his property or possessions must demonstrate cause to believe that evidence is likely to be found at the place to be searched" and there must be a "nexus . . . between the item to be seized and criminal behavior." *Griffith*, 867 F.3d at 1271 (quoting *Groh v. Ramirez*, 540 U.S. 551, 568 (2004)); *Hayden*, 387 U.S. at 307. Consistent with this requirement, probable cause requires more than speculation or hunches. *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023).

The nexus requirement is particularly important in the context of search warrants for digital devices and information. *See Galpin*, 720 F.3d at 446. The combination of the often-personal nature of digital evidence, combined with the vast storage capacity of digital devices, compounds the potential for privacy violations. *Id.* at 446-47; *Lauria*, 70 F.4th at 128-29. The nexus requirement protects against that potential by requiring case-specific reasons to believe that evidence of the crime(s) under investigation is likely to be found before digital evidence may be searched and seized. *See United States v. Silva*, No. 23 Cr. 204 (PGG), 2024 WL 3488305, at *6 (S.D.N.Y. July 19, 2024) ("What is missing here is some 'case-specific evidence' that 'nudge[s] [Det. Boyer's] training and experience across the line from sheer speculation to probable cause'") (quoting *United States v. Bertini*, No. 23 CR. 61 (PGG), 2023 WL 8258334, at *9 (S.D.N.Y. Nov. 29, 2023)).

Courts routinely hold that a law enforcement officer's training and experience cannot, on its own, create the required nexus in the absence of case-specific reasons to believe that evidence

of the crime under investigation will be found in the place to be searched. *Id.*; *United States v. Garcia*, No. 3:20-CR-00058 (KAD), 2023 WL 4850553, at *7 (D. Conn. July 28, 2023) ("the officer's opinion, standing alone, is generally not sufficient to establish a link between the item to be searched and the alleged criminal activity") (quotation omitted); *United States v. Gomez*, 652 F. Supp. 461, 463 (E.D.N.Y. 1987) (holding that while an agent's specialized knowledge can be considered, it cannot alone establish probable cause without specific evidence connecting illegal activity to the place searched); *State v. Thein*, 138 Wash. 2d 133, 147–48 (1999) (rejecting generalizations that drug dealers often store drugs at home as insufficient for probable cause); *Commonwealth v. Broom*, 52 N.E.3d 81, 89 (Mass. 2016) (requiring a "substantial, particularized basis" connecting phone files to the crime under investigation).

## A. The Apple iCloud Warrant Was Predicated on Illegally Obtained Information.

The Stored Communications Act ("SCA") governs the voluntary and compelled disclosure of electronic information by third party internet service providers ("ISP") like Apple. The SCA prohibits an ISP from disclosing its customers' communications or records to governmental entities. 18 U.S.C. § 2702(a). In turn, the SCA confers upon account holders a statutory right of privacy in the nondisclosure of information held by ISPs:

> The SCA gives network account holders statutory privacy rights against access to stored information held by ISPs. The statute also creates Fourth Amendment-like privacy protections regulating the methods by which government investigators may obtain users' private information in a service provider's possession. First the SCA limits the government's ability to compel service providers to disclose information in their possession about their subscribers. *See* 18 U.S.C. § 2703. Second, it limits the service provider's ability to voluntarily disclose information about their subscribers to the government. *See id.* § 2702.

*In re United States*, 665 F. Supp. 2d 1210, 1213 (D. Or. 2009). One exception to those privacy rights, and the general prohibition against disclosure of account-holder information, however, is for emergency situations "if the provider, in good faith, believes that an emergency involving

danger of death or serious physical injury to any person requires disclosure without delay." 18

U.S.C. § 2702(b)-(c).

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Accordingly, investigators' EDR to

Apple, and Apple's subsequent return of information, violated the SCA and Payton Gendron's

statutory rights in the nondisclosure of that information.

The Second Circuit has held that when a warrant application contains illegally obtained

evidence, the reviewing court should "excise the tainted evidence and determine whether the

remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a

warrant." *United States v. Reilly*, 76 F.3d 1271, 1282 n.2 (2d Cir. 1996), *aff'd on reh'g*, 91 F.3d

331 (2d Cir. 1996); *see also United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000).

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████ But the reviewing

magistrate judge, Judge Kenneth Schroeder, Jr., should never have been able to consider that information because it was obtained in violation of the SCA. Accordingly, upon review, this Court should excise that illegally obtained evidence and assess whether the remaining "untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." *Reilly*, 76 F.3d at 1282 n.2.

**B.  SA Dlugokinski's Affidavit Fails to Link Payton Gendron's Apple iCloud Account to Any Potential Evidence of the Alleged Criminal Activity.**

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████

However, the affidavit failed to establish probable cause to believe that evidence of the crime would be found in Payton Gendron's Apple iCloud account. ████████████████

███████████████████████

▋  ██████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

█████████████████████████████████

███████████████████████████████

▋  ██████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████



Cell phones and social media accounts are used so routinely by all members of the community (not just criminals), that it is unreasonable to conclude that merely possessing such an account gives rise to probable cause sufficient to justify the search of that account the owner is accusing any type of crime. And courts suppress evidence where the warrant applications fail

---

[2] The Apple iTunes Store is a digital music marketplace selling songs, albums, music videos, ringtones and alert tones. It has not sold apps since Apple launched the App Store in 2008.

to connect a digital device or account to the specific offense under investigation. As the court in *Silva* concluded:

> The government's contention that Silva communicated with fellow gang members over the seized cellphone—and that the evidence of those communications will likely be found on that cellphone—rests on no more than a hunch. That hunch is premised on the notion that because cellphones have become ubiquitous and indispensable in daily life, anyone engaged in conspiratorial criminal activity would likely use his cellphone in connection with or to facilitate that criminal activity. Relying on that logic would, however, entirely vitiate the requirement that a search warrant must aver some fact that connects the location or material to be searched to a suspect's alleged participation in criminal activity.

*Silva*, 2024 WL 3488305, at *6.

In *Lauria*, the Second Circuit found that the fact that Mr. Lauria and his co-defendant, Mr. Molina, were Facebook "friends," and the fact that Mr. Lauria's cell phone was in communication with Mr. Molina's phone shortly before a robbery, did not demonstrate a "'reasonable probability' that the sought months of records for [Mr.] Molina's -2454 cell phone would contain evidence pertaining to" two robberies. 70 F.4th at 129.

In *Garcia*, the court suppressed evidence obtained from a warrant to search a cell phone despite overwhelming evidence that Mr. Garcia was involved in the homicide under investigation. 2023 WL 4850553, at *7-8. Notwithstanding that evidence, the court suppressed the cell phone evidence because nothing in the warrant application connected Mr. Garcia's *cell phone* to the homicide. As the court explained, despite Mr. Garcia's connection to the offense, "nothing in the . . . warrant application package, provides any facts upon which the issuing judge could find that there was a fair probability that contraband or evidence of the crime in question— homicide—would be found on *Garcia's cell phone*." *Id.* at *8 (emphasis in original).

The same is true here. Even if SA Dlugokinski's affidavit connects Payton Gendron to the shooting on May 14, 2022, nothing in the agent's affidavit connects Payton Gendron's *Apple*

*iCloud account* to that offense; there is a complete absence of "case-specific evidence" in the affidavit to tie the account to the shooting. Therefore, the Apple iCloud warrant failed to establish the requisite nexus between the criminal activity under investigation and *any* aspect of the Apple iCloud account, and all evidence seized pursuant to the warrant must be suppressed. *Lauria*, 70 F.4th at 129; *Silva*, 2024 WL 3488305, at *6; *Garcia*, 2023 WL 4850553, at *7-8.

## II.  Evidence Seized From Payton Gendron's Apple iCloud Account Must be Suppressed Because the Warrant Was Unconstitutionally Overbroad

Even if it had been sufficient to establish probable cause to search some aspect of Payton Gendron's Apple iCloud account, the affidavit manifestly failed to justify issuance of a warrant purporting to authorize law enforcement to rummage through every scrap of information relating to the account that Apple maintained. And yet, that was precisely the effect of the warrant that was ultimately issued. The warrant was therefore unconstitutionally overbroad. The determination of overbreadth requires a focus on "'whether there exists probable cause to support the breadth of the search authorized.'" *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 464 (S.D.N.Y. 2013) (quoting *United States v. Hernandez*, No. 09 CR 625(HB), 2010 WL 26544, at *8 (Jan. 6, 2010)).

A warrant must not authorize law enforcement to search or seize evidence that is outside the scope of the probable cause that the warrant application establishes. In *Galpin* the Second Circuit explained that a warrant can be overbroad where the "description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446 (quotations omitted). Similarly, "an unparticularized description of the items subject to search under a warrant may result in the warrant exceeding the scope of established probable cause." *Garcia*, 2023 WL 4850553, at *4 (quoting *United States v. Conley*, 342 F. Supp. 3d 247, 271 (D. Conn. 2018)). "In other words, a warrant is overbroad if the

description of items to be searched or seized is broader than the limits imposed by the probable cause justifying the warrant." *Id.* (quoting *Conley*, 342 F. Supp. 3d at 271).

### A.  The Warrant Was Overbroad Because it Imposed No Temporal Limitation on the Data to be Searched or Seized

An important consideration in deciding whether a warrant is overbroad[3] is whether the warrant contains a temporal limitation that reasonably corresponds to the conduct for which probable cause has been established. Courts within the Second Circuit, and elsewhere, routinely hold that warrants violate the Fourth Amendment where they lack any temporal limitation that constrains the government's power to search and seize information. *See, e.g.*, *Zemlyansky*, 945 F. Supp. 2d at 459-60 (collecting cases); *Wey*, 256 F. Supp. 3d at 387-88 (same); *see also Garcia*, 2023 WL 4850553, at *11; *United States v. Harvey*, No. 21-CR-335(SJ), 2022 WL 684050, at *10 (E.D.N.Y. Mar. 8, 2022). The importance of a temporal limitation is even greater in the context of a crime that was short in duration. *See id.* As explained above, the Apple iCloud warrant application failed to establish probable cause to believe that evidence of the crime under investigation would be found anywhere in Payton Gendron's Apple iCloud account. But even if it had, the warrant authorized the search and seizure of information—with no temporal limitation—that stretched far broader than any conceivable probable cause that the warrant established.

███████████████████████████████████████████████

████████████████████████████████████████████████████

---

[3] Courts sometimes address the issue of the lack of a temporal limitation under the rubric of the Fourth Amendment's particularity requirement. *See, e.g., Zemlyansky,* 945 F. Supp. 2d at 459-60 ("'[a] warrant's failure to include a time limitation, where such limiting information is available and the warrant is otherwise wide-ranging, may render it insufficiently particular'") (quoting *United States v. Costin*, No. 5 Cr. 38, 2006 WL 2522377, at *12 (D. Conn. July 31, 2006) (alteration in original)).

████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████

████████████ The lack of any temporal limitation therefore rendered the warrant overbroad.

*Harvey*, 2022 WL 684050, at *10 ("the Court is troubled by the warrant's unlimited temporal

sweep and the lack of any plausible basis to justify it").

     **B.  The Warrant Was Overbroad With Respect to the Data That Could Be Searched**

     The warrant's expansive definition of the data that Apple was required to disclose to law

enforcement, and that law enforcement were in turn authorized to search, also rendered it

overbroad in violation of the Fourth Amendment. ███████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

[REDACTED] The warrant is therefore grossly overbroad.

### C.  The Warrant Was Facially Invalid Because it was Overbroad With Respect to the Data That Could Be Seized

The information seized from Payton Gendron's Apple iCloud account must also be suppressed because the warrant authorized the seizure of vast amounts of data for which no probable cause had been established. While the warrant application may have established probable cause to believe that the shooting at the Tops Market on May 14, 2022, had been committed and Payton Gendron committed it, the warrant itself authorized the seizure of data unconnected to that crime for which no probable cause had been shown; it was therefore unconstitutionally overbroad.



18 U.S.C. § 249 is a broad statute that covers a wide variety of bias-motivated conduct. It encompasses crimes committed or attempted because of a person's race, color, religion or national origin, § 249(a)(1), as well as those committed or attempted because of a person's gender, sexual orientation, gender identity or disability that have some effect on interstate commerce, § 249(a)(2)(A)-(B). It incorporates the willful causation of bodily injury running the gamut from "a cut, abrasion, bruise" or "any other injury to the body no matter how temporary," 18 U.S.C. § 1365(h)(4), § 249(c)(1), to death, § 249(a)(1)(B)(i), § 249(a)(2)(A)(ii)(I), and includes crimes involving kidnapping, aggravated sexual abuse and attempts to commit same, § 249(a)(1)(B)(ii), § 249(a)(2)(A)(ii)(II). The statute includes offenses committed both with and without the use of any kind of firearm, dangerous weapon, explosive or incendiary device. § 249(a)(1), § 249(a)(2)(A). The statute thus covers everything from pinching someone's arm to a fatal mass shooting, committed because of any of eight separate categories of heterogenous personal characteristics. Similarly, a broad range of conduct can violate both 18 U.S.C. §§ 924(c)(1)(A)(iii) and 924(j)(1), so long as it involves the discharge of any firearm, from a machinegun to a pistol, during any categorical crime of violence.

No probable cause was established to seize anything unrelated to the shooting at the Tops

Market on May 14, 2022. ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ As drafted, however, it

was fatally overbroad.

### III.  The Warrant Was Invalid Because it was Insufficiently Particular Regarding the Data That Could Be Seized

The information seized from Payton Gendron's Apple iCloud account also must be

suppressed because the warrant lacked the constitutionally required particularity with respect to

the data that could be seized. "To satisfy the Fourth Amendment's particularity requirement, a

warrant must: (1) 'identify the specific offense for which the police have established probable

cause;' (2) 'describe the place to be searched;' and (3) 'specify the items to be seized by their

relation to designated crimes.'" *United States v. Motovich*, 21-CR-497-WFK, 2024 WL

2943960, at *9 (E.D.N.Y. 2024) (quoting *Galpin*, 720 F.3d. at 445-46).

The warrant must be "'sufficiently specific to permit the rational exercise of judgment by

the executing officers in selecting what items to seize.'" *United States v. Shi Yan Liu*, 239 F.3d

138, 140 (2d Cir. 2000) (quoting *United States v. LaChance*, 788 F.2d 856, 874 (2d Cir. 1986)

(alteration omitted)). It must provide a basis upon which to distinguish items that are evidence of

the crime under investigation from those that have no connection to it.  *See Zemlyansky,* 945 F.

Supp. 2d at 457 (citing *Wheeler v. City of Lansing*, 660 F.3d 931, 941 (6th Cir. 2011) (in the

context of a search of a house for stolen goods, categories in  warrant are overbroad where they

"provid[e] no basis to distinguish the stolen items from [the defendant's] own personal

property") and *United States v. Hernandez*, No. 09 Cr. 625, 2010 WL 26544, at *10 (S.D.N.Y.

Jan. 6, 2010) (the categories of items to be seized from a business lack particularity where they "could have encompassed most all of the business records on the premises")).

"Mere reference to 'evidence' of a violation of broad criminal statute or general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to seize." *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992) (citing *United States v. Maxwell*, 920 F.2d 1028, 1033 (D.C. Cir. 1990) (holding that warrant authorizing seizure of business records and equipment "evidencing a scheme, artifice or devise of transactions in interstate or foreign commerce," which are "fruits, instrumentalities and evidence of crimes against the United States of America, that is fraud by wire in violation of Title 18, United States Code, Section 1343" insufficiently particular as "[r]eferences to broad statutes realistically constitute no limitation at all on the scope of an otherwise overbroad warrant and therefore cannot save it") and *United States v. Holzman*, 871 F.2d 1496, 1509-10 (9th Cir. 1989) (holding that warrant for "any property or devices used or obtained through fraud operations" is "epitome of a general warrant" because it failed to limit the search to items readily identified with a particular transaction")); *see also United States v. Spilotro,* 800 F.2d 959, 964 (9th Cir. 1986) (holding warrants lacked sufficient particularity where, *inter alia*, they failed to "at the very least, . . . describe[e] the criminal activities themselves rather than simply referring to the statute believed to have been violated," and instead "authorize[d] wholesale seizures of entire categories of items not generally evidence of criminal activity, and provide[d] no guidelines to distinguish items used lawfully from those the government had probable cause to seize"); *United States v. Sayles*, No. 19-CR-186, 2021 WL 3195016, at *9 (W.D.N.Y. May 6, 2021) *adopted by* 2021 WL 3191886 (W.D.N.Y. July 28, 2021) (finding warrant insufficiently particular where it authorized

search for evidence of a shooting at specified date, time and location but failed to set forth items to be searched for and seized").

Overall, the Fourth Amendment requires the officer drafting the warrant to be as specific as possible. "A failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary." *George*, 975 F.2d at 76.

The Apple iCloud warrant in this case satisfies neither the first nor the third particularity requirement. It cites only to broad criminal statutes that it alleges have been violated, even though the application it is based on established probable cause (except for the required nexus to the account) for only one specific criminal incident, namely the shooting at the Tops Market on May 14, 2022. *See* Section I., *supra*. And the warrant fails to adequately specify the items to be seized by their relation to the shooting, ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

███████████████

      ███████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████



In short, the warrant was so vague on the subject of what could be seized that it was effectively an unconstitutional general warrant.

**IV. The Execution of the Warrant Violated the Fourth Amendment in Multiple Respects**

In addition to the unconstitutionality of the warrant itself, the manner in which it was executed by the government violated the Fourth Amendment in several distinct ways. "The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (internal citation omitted). *See also United States v. Graziano*, 558 F. Supp. 2d 304, 316 (E.D.N.Y. 2008)

(noting that "under the Fourth Amendment, the manner of the execution of the warrant in searching the computer also will be subject to judicial review under a 'reasonableness' standard"). The government seized large quantities of data that were outside the scope of the search warrant during its initial responsiveness review, and thereafter disregarded the terms of the warrant altogether when it effectively seized the entire Apple iCloud return and intermingled responsive and non-responsive data, to all of which the prosecution team had unfettered access.

### A.  Law Enforcement Seized Evidence From Payton Gendron's Apple iCloud Account That Was Outside the Scope of the Warrant.

Law enforcement unconstitutionally seized large quantities of data from the Apple iCloud return that were outside of the scope of the seizure authorized by the warrant. "A search must be confined to the terms and limitations of the warrant authorizing it." *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988). "[W]hen items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items." *Id.* When the officers executing the warrant act "in flagrant disregard of the warrant's terms," however, the appropriate remedy is "suppression of *all* evidence seized" pursuant to that warrant. *Id.* (emphasis in original). "Executing agents are considered to have 'flagrantly disregarded' the warrant's terms where '(1) they effect a widespread seizure of items that were not within the scope of the warrant and (2) do not act in good faith.'" *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 309 (S.D.N.Y. 2018) (quoting *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000)).

### 1.  Law Enforcement Seized Whole Categories of Data Without Regard to Whether it Was Within the Scope of the Warrant.

Law enforcement's obligation under the Fourth Amendment, Fed. R. Crim. P. 41(e)(2)(B) and the terms of the warrant at issue here was to conduct a timely responsiveness review of the return and to seize only the data that fell within the scope of the warrant. Under Fed. R. Crim. P.

41(e)(2)(B), a warrant for digital information may authorize the executing officers to initially over-seize such information and to subsequently search the data provided to identify and seize that which is within the scope of the warrant. *Id.* ("A warrant [for electronically stored information] may authorize the seizure of electronic storage media or the seizure and copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant"); *id.* Advisory Comm's Note (2009) ("[t]his rule acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant"). *See generally United States v. Nejad*, 436 F. Supp. 3d 707, 734-38 (S.D.N.Y. 2020). Although there is no fixed time limit on when the responsiveness review must be completed, "'the Fourth Amendment requires the government to complete its review, i.e., execute the warrant, within a reasonable period of time.'" *Wey*, 256 F. Supp. 3d at 383 (quoting *United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012) (collecting cases)).

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████









**2. Law Enforcement Seized Large Amounts of Data That Was Irrelevant and Outside the Scope of the Warrant.**

Even where the entire category of data was not seized, the seizure effected by law enforcement at the conclusion of their responsiveness review was in excess of that permitted by the warrant.

**3. The Government Disregarded the Requirements of the Warrant and Seized the Entire Disclosure From Google.**

After the review of the return for responsiveness by law enforcement was finished,

execution of the warrant was complete. *See Nejad*, 436 F. Supp. 3d at 736 (finding that "at the

conclusion of its responsiveness review . . . the D.A. had identified all of the documents from the

entire data set properly seized under the warrants, and the execution of those warrants was thus

complete"); *United States v Sun*, No. 24-cr-346, 2025 WL 1220040, at *3 (E.D.N.Y. Apr. 28,

2025) (finding execution of warrant complete when FBI agents generated a responsiveness

report).  Any further examination of the non-responsive data that was included in the original

disclosure by Google thus required the government to obtain a new search warrant. *See id.;*

*Nejad*, 436 F. Supp. 3d at 736 (finding that "searches conducted subsequent to the completion of

the responsiveness review violated the Fourth Amendment"); *United States v. Ganias*, 824 F.3d

199, 220-21 (2d Cir. 2016) (en banc) (approving government's decision to apply for new warrant

to search mirrored copies of computer hard drives seized and previously reviewed). That data

should have been segregated from the responsive data and either returned to Payton Gendron or

stored securely with no further government access. Instead, however, law enforcement

maintained all data in its regular filing system and provided a copy of the entire return to the

United States Attorney's Office.

Upon information and belief, the return was treated the same way as all other discovery

material by the United States Attorney's Office, intermingled with it and accessed freely by the

prosecution team. An evidentiary hearing is required to establish the extent to which government

personnel have accessed and reviewed the non-responsive material. *See Wey*, 256 F. Supp. 3d at

366 (noting that hearing was required to address whether government acted reasonably in

executing searches of computers and computer-related equipment). At a minimum, however,

staff members indexed and filed the material and affixed electronic Bates numbers and, in some

cases, descriptors, to each page. Copies of both responsive and non-responsive portions of the return were subsequently disclosed to the defense team in discovery in multiple productions.

WHEREFORE, for the foregoing reasons, Defendant, Payton Gendron, respectfully requests that this Motion be granted and that all information recovered from his Apple iCloud account and all fruits thereof be suppressed.

Dated:  June 27, 2025
       Buffalo, New York

                                       *s/Sonya A. Zoghlin*
                                       Sonya A. Zoghlin
                                       Assistant Federal Public Defender

                                       *s/MaryBeth Covert*
                                         MaryBeth Covert
                                         Senior Litigator

                                       *s/Julie Brain*
                                         Julie Brain
                                       Attorney at Law