UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

     v.

PAYTON GENDRON,

             Defendant.

_____

                 22-CR-109 (LJV)

       Redacted Version of ECF No. 402

**MOTION TO SUPPRESS EVIDENCE RECOVERED FROM IPHONE
PURSUANT TO A STATE WARRANT TO SEARCH
<u>PAYTON GENDRON'S  CAR, GOPRO, AND IPHONE</u>**

Payton Gendron, by and through his attorneys, pursuant to the Fourth Amendment to the

United States Constitution, moves to suppress evidence—and all derivative fruits of that

evidence—obtained pursuant to an extraction of a Subscriber Identity Module ("SIM") seized

from his iPhone 11. The SIM extraction was conducted pursuant to a warrant issued by the City

Court in Erie County that authorized the search and seizure of Payton Gendron's car, the

contents of his GoPro device, and *all* electronic contents of his phone.[1] All the warrant

application says about Payton Gendron's iPhone is that it was found in his possession at the time

of his arrest. And as a result, the application submits that there was probable cause to seize *all of*

*its contents* without any temporal or categorical limitations whatsoever. In other words, the

warrant was a quintessential general warrant that authorized the search and seizure of *everything*

on the phone without regard to its evidentiary value in this case.

More specifically, the warrant was defective for three reasons. First, the application

supporting the warrant failed to establish probable cause that evidence of the crime under

_____

[1] This Motion does not challenge the search or seizure of items from Payton Gendron's car or
GoPro.

investigation would be found on Payton Gendron's iPhone. Second, even if the warrant

application established probable cause, it violated the Fourth Amendment's particularity

requirement because it authorized the search and seizure of everything on the phone without

relation to the specified crime. Third, the warrant was overbroad in what it authorized law

enforcement to search and seize because it authorized the search and seizure of everything on the

phone without regard to the probable cause that was purportedly established by the

unincorporated warrant application. Accordingly, the information seized from the phone, and all

derivative evidence, should be suppressed.

**<u>Factual Background</u>**

██████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████







**Argument**

I.    **The Warrant Application Lacked Probable Cause Because There Was an Insufficient Nexus Between Payton Gendron's iPhone Alleged Criminal Activity.**

The Fourth Amendment protects individuals "against unreasonable searches and seizures" and requires that warrants must be supported by "probable cause . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. Probable cause determinations require "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the reviewing magistrate judge], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The determination of whether probable cause exists

is based on the facts set forth in the four corners of law enforcement's sworn affidavit, and "wholly conclusory statement[s]" do not suffice. *Id.* at 239.

"The chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by the British 'under the authority of general warrants.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Payton v. New York*, 445 U.S. 573, 583 (1980); *Arizona v. Gant*, 556 U.S. 332, 345 (2009) ("[T]he central concern underlying the Fourth Amendment [is] the concern about giving police offers unbridled discretion to rummage at will among a person's private effects"). Both the Supreme Court and the Second Circuit have repeatedly warned about the potential privacy implications of general warrants that authorize searches and seizures of digital evidence given the significant risk of unlawful intrusion into the most sensitive aspects of a person's life.

> Many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate. . . . [A] cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.

*Riley v. California*, 573 U.S. 373, 395-97 (2014) (emphasis in original); *see also United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) ("A general search of electronic data is an especially potent threat to privacy because hard drives and e-mail accounts may be 'akin to a residence in terms of the scope and quantity of private information [they] contain.'") (quoting *Galpin*, 720 F.3d at 446) (alteration in original).

Probable cause is both location specific and crime specific: a magistrate judge may not approve a warrant unless there is a "nexus between the items sought and the 'particular place' to be searched." *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (quoting U.S. Const.,

amend. IV). Additionally, there must be a sufficient nexus between the criminal activities alleged and the location or items to be searched. *Id.*; *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) ("The warrant was defective in failing to link the items to be searched and seized to the suspected criminal activity."); *Burns v. United States*, 235 A.3d 758, 771 (D.C. 2020) ("The affidavit thus must demonstrate cause to believe not only that an item of evidence is likely to be found at the place to be searched, but also that there is a nexus between the item to be seized and the criminal behavior under investigation.") (quoting *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017)) (brackets omitted); *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967). This requirement "protects against the issuance of general warrants, instruments reviled by the Founders who recalled their use by Crown officials 'to search where they pleased.'" *Clark*, 638 F.3d at 94 (quoting *Stanford v. Texas*, 379 U.S. 476, 481 (1965)). The nexus requirement ensures that, "[r]egardless of whether an individual is validly suspected of committing a crime, an application for a search warrant concerning his property or possessions must demonstrate cause to believe that evidence is likely to be found at the place to be searched" and there must be a "nexus . . . between the item to be seized and criminal behavior." *Griffith*, 867 F.3d at 1271 (quoting *Groh v. Ramirez*, 540 U.S. 551, 568 (2004)); *Warden, Md. Penitentiary*, 387 U.S. at 307. Consistent with this requirement, probable cause requires more than speculation or hunches. *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023).

The nexus requirement is particularly important in the context of search warrants for digital devices and information. *See Galpin*, 720 F.3d at 446. The combination of the often-personal nature of digital evidence, combined with the vast storage capacity of digital devices, compound the potential for privacy violations. *Id.* at 446-47; *Lauria*, 70 F.4th at 128-29. The nexus requirement protects against that potential by requiring case-specific reasons to believe

that evidence of the crime(s) under investigation is likely to be found before digital evidence may be searched and seized. *See United States v. Silva*, No. 23 Cr. 204 (PGG), 2024 WL 3488305, at *6 (S.D.N.Y. July 19, 2024) ("What is missing here is some 'case-specific evidence' that 'nudge[s] [Det. Boyer's] training and experience across the line from sheer speculation to probable cause'") (quoting *United States v. Bertini*, No. 23 CR. 61 (PGG), 2023 WL 8258334, at *9 (S.D.N.Y. Nov. 29, 2023)).

Courts routinely hold that a law enforcement officer's training and experience cannot, on its own, create the required nexus in the absence of case-specific reasons to believe that evidence of the crime under investigation will be found in the place to be searched. *Id.*; *United States v. Garcia*, No. 3:20-CR-00058 (KAD), 2023 WL 4850553, at *7 (D. Conn. July 28, 2023) ("the officer's opinion, standing alone, is generally not sufficient to establish a link between the item to be searched and the alleged criminal activity") (quotation omitted); *United States v. Gomez*, 652 F. Supp. 461, 463 (E.D.N.Y. 1987) (holding that while an agent's specialized knowledge can be considered, it cannot alone establish probable cause without specific evidence connecting illegal activity to the place searched); *State v. Thein*, 138 Wash. 2d 133, 147–48 (1999) (rejecting generalizations that drug dealers often store drugs at home as insufficient for probable cause); *Commonwealth v. Broom*, 52 N.E.3d 81, 89 (Mass. 2016) (requiring a "substantial, particularized basis" connecting phone files to the crime under investigation).

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

████████████████ But that truism does not amount to probable cause to believe that evidence of a mass shooting was likely to be found on Payton Gendron's iPhone. If it did, that would nullify the Fourth Amendment's nexus requirement, and law enforcement would have carte blanche to search and seize the contents of any criminal suspect's phone to determine where that person was, and who that person was in contact with around the time of the conduct under investigation. Courts have resoundingly rejected that approach. As the court held in *Silva*, "Relying on that logic would . . . entirely vitiate the requirement that a search warrant must aver some fact that connects the location or material to be searched to a suspect's alleged participation in criminal activity." *Silva*, 2024 WL 3488305, at *6.

Similarly, in *Garcia*, the court suppressed evidence obtained from a warrant to search a cell phone despite overwhelming evidence that Mr. Garcia was involved in the homicide under investigation. 2023 WL 4850553, at *7-8. Notwithstanding that evidence, the court suppressed the cell phone evidence because nothing in the warrant application connected Mr. Garcia's *cell phone* to the homicide. As the court explained, despite Mr. Garcia's connection to the offense, "nothing in the . . . warrant application package, provides any facts upon which the issuing judge could find that there was a fair probability that contraband or evidence of the crime in question— homicide—would be found on *Garcia's cell phone*." *Id.* at *8 (emphasis in original).

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████ The warrant application, therefore, lacked probable cause to

believe that evidence of the shooting would be found on the iPhone, and all information gathered pursuant to the warrant—and any derivative evidence—should be suppressed. *Lauria*, 70 F.4th at 129; *Silva*, 2024 WL 3488305, at *6; *Garcia*, 2023 WL 4850553, at *7-8.

**II.    The State iPhone Warrant Violated the Fourth Amendment's Particularity and Overbreadth Requirements.**

As explained above, the question of whether the warrant was supported by probable cause focuses on the warrant application. However, the warrant itself must also comply with the Fourth Amendment. "The Warrants Clause both 'requires particularity and forbids overbreadth.'" *Garcia*, 2023 WL 4850553, at *4 (quoting *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009)). Accordingly, even if this Court finds that the warrant was supported by probable cause to search Payton Gendron's iPhone, the information collected from that phone pursuant to it should still be suppressed because the warrant lacked particularity and was overbroad.

*Particularity.* "Courts implement the particularity requirement by insisting that warrants not 'leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized.'" *United States v. Wey*, 256 F. Supp. 3d 355, 380 (S.D.N.Y. 2017) (quoting *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 453 (S.D.N.Y. 2013)). And "where, as here, the property to be searched is digital, the particularity requirement assumes even greater importance." *United States v. Harvey*, No. 21-CR-335 (SJ), 2022 WL 684050, at *10 (E.D.N.Y. Mar. 8, 2022) (quoting *United States v. Purcell*, 967 F.3d 159, 183 (2d Cir. 2020)). The Second Circuit has held that a warrant must satisfy three criteria in order to comport with the Fourth Amendment's particularity requirement. First, the warrant must "identify the specific offense for which the police have established probable cause." *Galpin*, 720 F.3d at 445. Second, the warrant must "describe the place to be searched." *Id.* at 445-46. Third, the warrant must "specify the

items to be seized by their relation to designated crimes." *Id.* at 446 (internal quotation marks omitted).

   ***Overbreadth.*** Overbreadth is a related, but distinct, concept. "[A] search warrant does not necessarily lack particularity simply because it is broad." *Garcia*, 2023 WL 4850553, at *5 (quoting *Ulbricht*, 858 F.3d at 100). "A warrant that comports with the Fourth Amendment's particularity requirements may nevertheless be overbroad where the 'description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based.'" *Id.* (quoting *Galpin*, 720 F.3d at 446). While overbreadth and particularity are distinct legal concepts (though they are "frequently conflated"), "'an unparticularized description of the items subject to search under a warrant may result in the warrant exceeding the scope of established probable cause.'" *Id.* (quoting *United States v. Conley*, 342 F. Supp. 3d 247, 271 (D. Conn. 2018)).

   "In addition to the foregoing, courts in th[e] [Second] Circuit have identified certain 'circumstance-specific considerations' that may bear on whether a given warrant lacks particularity, even if they do not constitute formal, universal requirements." *Wey*, 256 F. Supp. 3d at 381 (quoting *Zemlyansky*, 945 F. Supp. 2d at 454). For example, courts routinely find warrants unconstitutional where they "impose[] too wide a time frame or fail[] to include one altogether."[3] *Id.* (quoting *Zemlyansky*, 945 F. Supp. 2d at 454) (collecting cases).

   ***Incorporation.*** The Supreme Court has held that the Fourth Amendment "requires particularity in the warrant, not in the supporting documents." *Groh v. Ramirez*, 540 U.S. 551,

---

[3] Some courts (including the court in *Wey* and *Zemlyansky*) consider temporal limitations in assessing particularity, whereas others consider it as an issue of overbreadth. This Motion addresses the lack of a temporal limitation as a matter of overbreadth.

557 (2004). Accordingly, "'the fact that the warrant *application* adequately described the things to be seized does not save the *warrant* from failure to satisfy that requirement.'" *Wey*, 256 F. Supp. 3d at 381 (quoting *Groh*, 540 U.S. at 557) (emphasis in original). That is because the search warrant itself serves an important purpose to notify the person whose property is being searched or seized that law enforcement has been lawfully authorized to conduct the search, for the purposes specified in the warrant, and that that authority is limited as specified in the warrant. "[T]hat high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection." *Groh*, 540 U.S. at 557. "Accordingly, 'a court may construe a warrant with reference to a supporting application or affidavit' only 'if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.'" *Wey*, 256 F. Supp. 3d at 381-82 (quoting *Groh*, 540 U.S. at 557-58). As the Second Circuit has held, "for an attached affidavit properly to be incorporated into a warrant, the warrant must contain deliberate and unequivocal language of incorporation— language in a warrant that simply references an underlying affidavit does not suffice." *Id.* at 382 (internal quotations and alterations omitted).

### A. The State iPhone Warrant Failed to Incorporate the Warrant Application.

The State iPhone warrant did not incorporate by reference, or attach, the warrant application that was presented to, and granted by, Judge Hannah. This Court must, therefore, assess the particularity of the warrant based on the four corners of the warrant itself, and without regard to any additional information provided to Judge Hannah in the warrant application. *Groh*, 540 U.S. at 557-58; *Wey*, 256 F. Supp. 3d at 381-82.

**B.  The State iPhone Warrant Violated the Fourth Amendment's Particularity Requirement.**

As discussed above, the Second Circuit has held that a warrant must satisfy three requirements in order to comport with the Fourth Amendment's particularity principle: (1) the warrant must identify the specific offense for which the government has established probable cause; (2) the warrant must describe the place to be searched; and (3) the warrant must specify the items to be seized by their relation to the offense for which there is probable cause. With respect to the search and seizure of Payton Gendron's iPhone, the warrant failed all three requirements.

**1.  The State iPhone Warrant Failed to Specify the Specific Offense for Which the Issuing Magistrate Judge Found Probable Cause.**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████  Simply put, "[n]othing on the face of the . . . warrant informs the searching officer for which crimes the search is being undertaken." *Zemlyansky*, 945 F. Supp. 2d at 454; *Wey*, 256 F. Supp. 3d at 384 ("on their face, both Warrants fail to set forth the crimes under investigation. As noted, they neither cite criminal statutes nor in any way describe any suspected criminal conduct.").

**2.  The State iPhone Warrant Failed to Describe the Place to Be Searched.**

████████████████████████████████████████████████████████

██████  Therefore, the warrant literally authorized a general search of the phone, which is exactly what the particularity requirement is meant to prohibit. *Galpin*, 720 F.3d at 447-48 ("If the warrant is read to allow a search of all computer records without description or limitation it

would not meet the Fourth Amendment's particularity requirement.") (quoting *United States v. Burgess*, 576 F.3d 1078, 1091 (10th Cir. 2009)); *see Zemlyansky*, 945 F. Supp. 2d at 457.

### 3. The Warrant Failed to Specify the Items to Be Seized By Their Relation to the Designated Crimes.

████████████████████████████████████████████████████████

█████████████████████████████████     By contrast, the Fourth Amendment requires the officer drafting the warrant to specify particular categories of information to be searched, and specific categories of information to be seized that relate to particular crimes set forth in the warrant. "A failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary." *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992).

Courts often find warrants lack particularity even where they set forth broad categories of information to be seized. But here, the warrant did not even do that. It simply authorized the search and seizure of anything and everything on the phone.

In *Wey*, the court granted the defendant's motion to suppress after finding, among other issues, that the warrant lacked particularity. 256 F. Supp. 3d at 385-86. The court found that the warrant "set[] forth expansive categories of often generic items subject to seizure—several of a 'catch-all' variety—without, crucially, any linkage to the suspected criminal activity, or indeed any meaningful content-based parameter or other limiting principle. Importantly, the property is hardly, by 'its particular character, contraband.'" *Id.* (quoting 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.6(a) (5th ed. 2012)).

Similarly, in *Zemlyansky*, the court found that a warrant violated the Fourth Amendment's particularity requirement where it authorized the seizure of exceedingly broad

categories of information. 945 F. Supp. 2d at 457-59. In addition to the breadth of the categories, the court recognized that several of the categories "suffer[red] from ambiguity" and, therefore, "afford[ed] a reasonable officer extremely broad discretion in deciding what items fall within this term's scope." *Id.* at 459. The court ultimately held that:

> At bottom, missing from all these categories—and from the warrant in general—are any instructions to the officers to search for and seize records related to the five modality clinics at the center of the alleged conspiracy in question, related to particular suspects in the case, limited to the time period of the suspected conspiracy, related to the crimes alleged, or any other limits.

*Id.*

With respect to its authorization to search Payton Gendron's iPhone, the warrant here was literally a general warrant. It authorized the seizure of anything and everything, regardless of its connection to the May 14, 2022 shooting. *Zemlyanksy*, 945 F. Supp. 2d at 452 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)); *Wey*, 256 F. Supp. 3d at 379-80; *Harvey*, 2022 WL 684050, at *10. The entire purpose of the Fourth Amendment's particularity requirement is to constrain the discretion of the searching officers by placing judicially-approved limits on what they can search and what they can seize, so as to limit the degree to which the search invades a suspect's privacy interests. *Wey*, 256 F. Supp. 3d at 380 ("Courts implement the particularity requirement by insisting that warrants not 'leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized.'") (quoting *Zemlyansky*, 945 F. Supp. 2d at 453). Here, the warrant blatantly disregarded that constitutional requirement by placing no limits whatsoever on the searching officers' power to search or seize information from Payton Gendron's iPhone. Accordingly, everything seized from the iPhone pursuant to the warrant—and all evidence that derived from that information—should be suppressed.

### C.  **The State iPhone Warrant Was Overbroad.**

As explained above, "a warrant is overbroad if the description of items to be searched or seized is broader than the limits imposed by the probable cause justifying the warrant." *Garcia*, 2023 WL 4850553, at *4 (quoting *Conley*, 342 F. Supp. 3d at 271); *Galpin*, 720 F.3d at 446. One reason a warrant might be overbroad is because it lacks particularity. *Garcia*, 2023 WL 4850553, at *4 ("'an unparticularized description of the items subject to search under a warrant may result in the warrant exceeding the scope of established probable cause'") (quoting *Conley*, 342 F. Supp. 3d at 271). Another important consideration in deciding whether a warrant is overbroad is whether the warrant contains a temporal limitation that reasonably corresponds to the conduct under investigation. Courts within the Second Circuit, and elsewhere, routinely hold that warrants violate the Fourth Amendment where they lack any temporal limitation that constrains the government's power to search and seize information. *See, e.g.*, *Wey*, 256 F. Supp. 3d at 387-88 (collecting cases). The importance of a temporal limitation is even greater in the context of a crime that was short in duration. *See Harvey*, 2022 WL 684050, at *10.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████

This sort of all-encompassing authorization to search and seize *anything* on a suspect's phone is exactly what the court in *Garcia* held was unconstitutional. There, the court held (as this Court should) that the warrant lacked probable cause to search the contents of Mr. Garcia's phone. *Garcia*, 2023 WL 4850553, at *7-8. But the court also held that the warrant was unconstitutionally broad:

> [E]ven had the Court deferred to the issuing judge's finding of probable cause . . . the warrant could only conceivably be read to confer probable cause to search the phone for evidence of communications in reasonable temporal proximity to the homicide. . . . [The warrant's] authorization of the complete extraction of any and all data on the phone allowed the search and seizure of information well beyond any possible probable cause that could have conceivably been established by the warrant's supporting materials.

*Id.* at *11. The court held that "[s]uch an all-encompassing search of a modern cell phone—which has the capacity to contain vast troves of information about all aspects of a person's life from the 'mundane to the intimate'—with[] almost no indicia of probable cause to support the scope of the search cannot be countenanced." *Id.* (quoting *Riley*, 573 U.S. at 395).

For the same reason, here, the warrant was unconstitutionally overbroad in what it authorized agents to search and seize. *See United States v. Winn*, 79 F. Supp. 3d 904, 920 (S.D. Ill. 2015) ("The bottom line is that if the applying officer wants to seize every type of data from the cell phone, then it was incumbent upon him to explain in the complaint how and why each type of data was connected to Defendant's criminal activity, and he did not do so.") (quoted in *Wey*, 256 F. Supp. 3d at 392).

The warrant's overbreadth is also compounded by its lack of any temporal limitation. Courts within the Second Circuit and elsewhere have repeatedly found warrants in violation of the Fourth Amendment where they lack any temporal limitation that cabins the government's search and seizure authority to a reasonable time period in relation to the crime under investigation. *Zemlyansky*, 945 F. Supp. 2d at 459-60 (collecting cases); *Wey*, 256 F. Supp. 3d at 387-88 (same); *see also Garcia*, 2023 WL 4850553, at *11; *Harvey*, 2022 WL 684050, at *10. The warrant here makes no attempt to limit the government's search or seizure authority, including through the imposition of any temporal limits on that authority. The warrant is, therefore, facially overbroad.

### III.  <u>All Information Seized Pursuant to the State iPhone Warrant—and All Derivative Evidence—Should Be Suppressed.</u>

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

---

[4] As explained in more detail in Payton Gendron's motion to suppress evidence obtained from Verizon, the EDR was also unlawful because it violated his privacy rights established by the Stored Communications Act ("SCA"). The SCA generally prohibits internet service providers from disclosing its customers' communications or records to governmental entities. 18 U.S.C. § 2702(a). One exception to that general rule is "if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay." 18 U.S.C. § 2702(b)-(c). ████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████
████████████████████████

███████████████████████████████████████████

████████████ Therefore, all of that information should be suppressed. *Wong Sun v. United States*, 371 U.S. 471 (1963) (establishing the rule that evidence that is derivative of illegal police conduct is suppressed as "fruit of the poisonous tree").

## <u>CONCLUSION</u>

Payton Gendron respectfully requests that this Court grant an order of suppression of all fruits of the warrant issued by Judge Hannah, insofar as it authorized a search of his iPhone, on the grounds alleged herein and any other grounds that may become apparent upon a hearing on the Motion.

Dated:          June 27, 2025
                Buffalo, New York

                                    *s/Sonya A. Zoghlin*
                                    Sonya A. Zoghlin
                                    Assistant Federal Public Defender

                                    *s/MaryBeth Covert*
                                    MaryBeth Covert
                                    Senior Litigator

                                    *s/Julie Brain*
                                    Julie Brain
                                    Julie Brain, Attorney at Law