UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

PAYTON GENDRON,

         Defendant.

22-CR-109-LJV
DECISION & ORDER

---

      A federal indictment charged Payton Gendron with hate crimes under the Matthew Shepard and James Byrd Jr. Hate Crimes Prevention Act of 2009, 18 U.S.C. § 249 ("Hate Crimes Act"), and firearm offenses, *id.* § 924(c), (j). Docket Item 6. The firearm offenses require predicate "crime[s] of violence," 18 U.S.C. § 924(c)(1)(A), which in this case are the hate crimes. *See* Docket Item 6 at 3-4.

      On June 10, 2024, Gendron moved to dismiss the firearms charges, arguing that the hate crime offenses with which he was charged are not predicate crimes of violence. *See* Docket Item 180. After the government responded, Docket Item 201, and Gendron replied, Docket Item 215, the Court heard oral argument, *see* Docket Item 237. The Court later asked the parties to address the meaning of certain statutory language in the Hate Crimes Act; heard additional oral argument, *see* Docket Item 273 at 20-28; and accepted written submissions on this topic, Docket Items 278, 297, and 318. The parties then briefed the effect of two recent cases—*Delligatti v. United States*, 604 U.S. ----, 145 S. Ct. 797 (2025), and *United States v. Cooper*, 131 F.4th 127 (2025)—on the Court's analysis. *See* Docket Items 299, 317, 328, and 336.

      To determine whether a crime constitutes a predicate crime of violence, courts must follow the categorical approach, which "ignore[s] the particular facts of the case"

and "focus[es] solely on whether the elements of the crime of conviction" require the use of force.  *See Mathis v. United States*, 579 U.S. 500, 504 (2016).  Applying that approach here, the question is not whether Gendron used force to commit hate crimes but whether *every* violation of the Hate Crimes Act requires such force.  Gendron raises three applications of section 249 that he says would not involve sufficient force: crimes committed by omission, acts involving "de minimis" force, and acts of self-harm.  Docket Item 180 at 3.

Having considered the substantial and skilled briefing and oral argument on both sides, the Court denies Gendron's motion.  The Supreme Court's decision in *Delligatti* forecloses Gendron's omission argument*, see* 145 S. Ct. at 805, and *Delligatti*'s reasoning about omissions extends to acts involving de minimis force.  Finally, the Court rejects the self-harm argument because acts of self-harm do not violate the Hate Crimes Act.

## **BACKGROUND**

Counts one through ten of Gendron's indictment allege hate crimes:  He "willfully caused bodily injury [to each of ten victims] because of their actual and perceived race and color" and "[t]he offenses resulted in the death of each of the victims."  Docket Item 6 at 2-3 (citing 18 U.S.C. § 249(a)(1)(B)(i)).  Counts eleven through twenty allege firearm offenses:

> [Gendron] knowingly used, carried, and discharged a firearm during and in relation to a crime of violence . . . that is, a violation of Title 18, United States Code, Section 249, as charged in Counts One through Ten, and in the course of the violation caused the death of each victim . . . through the use of a firearm in such a manner as to constitute murder as defined in Title 18, United States Code, Section 1111, in that the defendant . . . with malice aforethought, did unlawfully kill [ten victims] with a firearm.

Docket Item 6 at 4 (citing 18 U.S.C. § 924).  So counts eleven through twenty require a predicate "crime of violence" defined as "a felony" that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3) (commonly called the "elements clause").[1]  Again, the predicate crimes of violence are the hate crimes.

This issue is consequential because only the firearm offenses carry a potential death sentence.  *See* Docket Item 125; *compare* 18 U.S.C. § 924(j) (authorizing death sentence if, in the course of a violation of 18 U.S.C. § 924(c), the defendant "causes the death of a person through the use of a firearm" and "the killing is a murder") *with id.* § 249(a) (not authorizing death sentence).

## DISCUSSION

Both sides agree that the Court must use the categorical approach to determine whether hate crimes are crimes of violence and thereby satisfy the elements clause. *See* Docket Item 180 at 6-9; Docket Item 201 at 3-5.  As explained above, this approach "ignore[s] the particular facts of the case" and "focus[es] solely on whether the elements of the crime of conviction" satisfy the elements clause.  *See Mathis*, 579 U.S. at 504.  "If any—even the least culpable—of the acts criminalized" are not crimes of violence, the elements clause is not satisfied.[2]  *See Borden v. United States*, 593 U.S. 420, 424

---

[1] Section 924(c) also has a "residual clause," which the Supreme Court struck down as unconstitutionally vague in *United States v. Davis*, 588 U.S. 445, 470 (2019).

[2] In years past, the Supreme Court and Second Circuit required that there be a realistic probability, not just a theoretical possibility, that a statute would be applied in the way that a defendant proposed for the purposes of the categorical approach.  *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (applying "realistic probability" test in immigration context); *United States v. Hill*, 890 F.3d 51, 56 (2d. Cir. 2018).

(2021) (plurality opinion).³  This approach "paradoxically instructs courts . . . to embark on an intellectual enterprise grounded in the facts of *other* cases not before them, or even *imagined* scenarios."  *United States v. Evans*, 924 F.3d 21, 31 (2d Cir. 2019) (noting that the approach has resulted in "judicial difficulties").

---

Under that test, a defendant "must at least point to his own case or other cases in which . . . courts in fact did apply the statute in the . . . manner for which he argues." *Gonzales*, 549 U.S. at 193.

But *United States v. Taylor*, 596 U.S. 845 (2022), called *Gonzales* and the realistic probability test into question.  The Supreme Court held that an attempted Hobbs Act robbery did not qualify as a crime of violence because neither the intent to take property by force or threat, nor a substantial step toward that end, require the government to prove that the defendant used, attempted to use, or threatened to use force.  *Id.* at 852.  The Court rejected the government's arguments that *most* attempted Hobbs Act robbery prosecutions involve a threat of force and that Taylor failed to identify cases in which someone was prosecuted for the crime without proving a communicated threat.  *Id.* at 857-58.  And the Court said that Taylor *had* identified cases of this type; noted that it was "odd[]" and impractical for the defendant to have the burden to prove the government's prosecutorial habits; and held that the "more fundamental" issue was that section 924(c) is about a crime's elements, not about whether force is "*sometimes* or even *usually*" associated with the crime.  *Id.*

Gendron says that *Taylor* "put the realistic probability test to rest," Docket Item 180 at 8, and the government conceded at oral argument that "the realistic probability test does not apply here," Docket Item 244 at 7.  This Court therefore does not apply the realistic probability test.  *But see Cooper*, 131 F.4th at 133 (applying categorical approach post-*Taylor*, and explaining that the court "d[id] not see a 'realistic probability'" that a statute would be applied in the manner that the defendant suggested (quoting *Hill*, 890 F.3d at 59)).

³ *Borden* involved the elements clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e), which is nearly identical to the elements clause at issue here.  Two other provisions, 18 U.S.C. § 16(a) and U.S.S.G. § 4B1.2(a), have similar elements clauses.  Because of the similarities, courts have found authorities interpreting one phrase to be persuasive in interpreting the others.  *See United States v. Tabb*, 949 F.3d 81, 84 (2d Cir. 2020); *United States v. Evans*, 924 F.3d 21, 29 n.4, 30-31 (2d Cir. 2019).  The parties' briefs cite many cases involving the other provisions, *see, e.g.*, Docket Item 180 at 5 & n.4; Docket Item 201 at 9, and this Court relies on such cases throughout this decision.

The elements of the Hate Crimes Act provision at issue, section 249(a)(1)(B), are: (i) willfully, (ii) causing bodily injury to any person, (iii) because of the actual or perceived race of any person, with (iv) death resulting. 18 U.S.C. § 249(a). So the pertinent question is this: Does willfully causing bodily injury to any person because of the actual or perceived race of any person, with death resulting, "necessarily involve[] the defendant's 'use, attempted use, or threatened use of physical force against the person of another.'" *See Borden*, 593 U.S. at 424 (quoting 18 U.S.C. § 924(e)(2)(B)(i)).

Gendron contends that a person can violate the Hate Crimes Act in three independent ways that do not require the use of force—by an omission, by an act involving only de minimis force, or by an act of self-harm—and that a violation of the statute therefore is not categorically a crime of violence.

**I.     OMISSIONS**

Gendron argues that a person could commit a hate crime by omission not involving the use of force. Docket Item 180 at 24-25. On March 21, 2025, however, the Supreme Court decided *Delligatti*, 145 S. Ct. 797, a case addressing "whether an individual who knowingly or intentionally causes bodily injury or death by failing to take action uses physical force within the meaning of the elements clause." *Id.* at 804. The Supreme Court answered in the affirmative and held that "causing bodily harm by omission requires the use of force." *See id.* at 805; *see also id.* at 806 ("[E]ven the indirect causation of bodily harm requires the use of violent force.") As Gendron now concedes, "*Delligatti* forecloses [his] omissions argument." Docket Item 317 at 2.

II.   DE MINIMIS FORCE

Gendron also asserts that a person can commit a hate crime with only de minimis force, which he contends is insufficient to satisfy the elements clause. Docket Item 180 at 3, 18-23. For the reasons that follow, this Court disagrees.

An element of the Hate Crimes Act is the "caus[ing of] bodily injury." 18 U.S.C. § 249(a)(1). Bodily injury is defined as "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of the function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary." *See id.* §§ 249(c)(1), 1365(h)(4). It "does not include solely emotional or psychological harm to the victim." *Id.* § 249(c)(1).

Gendron initially argued that the elements clause requires the "intentional causation of *serious* bodily injury through violent physical force." Docket Item 180 at 3 (emphasis added) (quotation marks omitted). He hypothesized that a defendant driven by anti-Black animus could violate section 249(c) by "shov[ing a] Black victim . . . accidentally[] into the path of an oncoming police car, which could strike and kill him." *Id.* at 23. Or, he said, a defendant could poke someone, causing the victim "to fall and suffer a fatal head injury." *Id.* Gendron acknowledged that "[i]n these examples, the defendant would have used force against another person," but, he asserted, this was not the type of force associated with "serious bodily injury" that the elements clause requires. *Id.* (citing *Villanueva v. United States*, 893 F.3d 123, 130 n.6 (2d Cir. 2018)).

The Supreme Court's decision in *Stokeling v. United States*, 586 U.S. 73 (2019), however, demonstrates that force capable of causing a serious injury is not required to meet the elements clause. And *Cooper* and *Delligatti*—decided earlier this year— resolve any doubts about that issue.

In *Stokeling*, the Supreme Court held that "physical force" in the elements clause is force "capable of causing physical injury." 586 U.S. at 85. The Court said that "hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling" constitute physical force under that definition. *Id.* (quoting *United States v. Castleman*, 572 U.S. 157, 182 (2014) (Scalia, J., concurring)). There need only be a "potentiality" "that the force used will cause physical pain or injury," not "any particular degree of likelihood or probability." *Id.* at 84.

More recently, the Second Circuit found that the assertion that the elements clause requires force capable of causing "serious" physical injury "overstates the amount of force that is required to satisfy the 'use of physical force' element of a crime of violence." *Cooper*, 131 F.4th at 132. "Both [the Second Circuit] and the Supreme Court have made clear that the 'physical force' required for an offense to be a crime of violence . . . is 'force capable of causing physical pain or injury to another person.'" *Id.* (quoting *United States v. Scott*, 990 F.3d 94, 111 (2d Cir. 2021), and citing *Stokeling*, 586 at 84). So the standard is "force capable of causing physical pain or injury," *id.* at 134 (quoting *Stokeling*, 586 U.S. at 84), "[n]othing more, and nothing less," *id.* And that "is not a high standard to meet." *Id.* at 132-33.

As Gendron now acknowledges, *Cooper* "rejected certain premises" of his initial position, namely his premise that the elements clause requires force capable of causing *serious* physical injury. *See* Docket Item 317 at 7; *Cooper*, 131 F.4th at 132-33 & n.3. And the Second Circuit explicitly held that the reasoning in *Villanueva*, 893 F.3d 123, on which much of Gendron's original briefing relied, *see generally* Docket Item 180 (citing

7

*Villanueva* footnote at issue six times), "cannot survive the authoritative pronouncement of the Supreme Court in *Stokeling*." *Cooper*, 131 F.4th at 133 n.3.

*Delligatti* also addressed the amount of force required to satisfy the elements clause. "[A]lthough 'the merest touching' is not violent force, any force that actually causes injury or death is." *Delligatti*, 145 S. Ct. at 806 (quoting *Stokeling*, 586 U.S. at 83). The defendant in *Delligatti* had argued that "there cannot be an 'automatic connection' between injury and the *violent* force [section] 924(c) requires because even a small degree of force might injure an 'eggshell' victim." *Id.* at 807. The Supreme Court dismissed this argument by explaining that it had held in *Stokeling* that "the minimal force needed to overcome the resistance of 'a feeble or weak-willed victim' still qualifies as sufficiently 'violent' to fall within the statute's ambit." *Id.* (quoting *Stokeling*, 586 U.S. at 83). "Deliberately causing injury necessarily involves the use of force in the sense relevant here." *Id.* So the degree of force required to satisfy the elements clause is less than what Gendron has argued, and *Delligatti* teaches that courts may look to the result—whether the force "actually causes injury or death"—in their analyses.[4] *See id.* at 806.

---

[4] Gendron acknowledges that the language in *Delligatti* "suggests that intentionally causing any degree of injury categorically involves the use of violent physical force," but he contends that this "does not bind this Court because . . . the quantum-of-force question wasn't at issue [in that case]." Docket Item 317 at 4. In support of that contention, he quotes caselaw saying that "general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision," *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 35 (2012) (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821)). *See* Docket Item 317 at 4. In light of those principles, the language of *Delligatti* on this issue may not be binding. Nevertheless, *Delligatti* still is a very recent articulation of law by a supermajority of the Supreme Court that should, at a minimum, be "respected." *See Ark. Game & Fish*

Having considered these precedents, the Court holds that there is no mismatch between the force required by the Hate Crimes Act and the elements clause. To violate the provision of the Hate Crimes Act at issue, the conduct must "cause[] bodily injury." *See* 18 U.S.C. § 249(a). One cannot cause bodily injury without using force capable of causing such injury. And that is all that the elements clause requires. *See Cooper*, 131 F.4th at 134 (citing *Stokeling*, 586 U.S. at 84).

Gendron argues that the statutory definition of "bodily injury" in the Hate Crimes Act "sweeps in non-qualifying conduct such as poking [that causes temporary pain], spitting [that causes temporary vision loss], [and] shouting [that causes the victim's ears to ring] . . . that does not rank as causing 'injury' in the generic sense."[5] Docket Item 317 at 8; *see* Docket Item 180 at 21-22. Of course, to fit the present context, these scenarios also would somehow need to result in death. And that argument therefore rings of the "'eggshell' victim" theory that *Delligatti* rejected. *See* 145 S. Ct. at 807. As *Delligatti* explained, force that "actually causes injury or death" is sufficient. *Id.* at 806 (quoting *Stokeling*, 586 at 83). So even minor uses of force can qualify as force sufficient to satisfy the elements clause if they actually cause injury or death. *See Stokeling*, 586 U.S. at 85 (explaining that actions including a slap, shove, or pinch can constitute physical force).

---

*Comm'n*, 568 U.S. at 35; *cf. id.* at 34-35 (declining to follow a "nondispositive sentence" in a case from more than 80 years earlier and noting "subsequent developments in [Supreme Court] jurisprudence"). The Court chooses to apply the language of *Delligatti* to its analysis both for that reason and because the Court finds it to be correct.

[5] The government does not dispute that this hypothetical conduct could violate the Hate Crimes Act. Docket Item 244 at 17-18.

For all these reasons, the Court rejects Gendron's argument that the elements clause requires a higher degree of force than does the Hate Crimes Act.

### III.    SELF-HARM

Finally, Gendron argues that a defendant could violate the Hate Crimes Act through self-harm, which would not satisfy the elements clause's requirement that physical force be used "against the person or property *of another*." *See* 18 U.S.C. § 924(c)(3) (emphasis added).  After careful consideration, the Court finds that this argument fails because self-harm does not satisfy the Hate Crimes Act.

To violate the provision of the Hate Crimes Act at issue, a defendant must "willfully cause[] bodily injury to any person . . . because of the actual or perceived race . . . of any person" and "death results."  18 U.S.C. § 249(a)(1).  Gendron's argument focuses on the first use of the words "any person."  The "plain meaning" of "any person," he argues, "includ[es] the defendant himself."  Docket Item 180 at 10.  He offers a hypothetical of "[a] person intentionally set[ting] himself on fire . . . to announce his racist ideology and stoke racial prejudice . . . with the unintended consequence that a first responder or bystander catches fire and dies."  Docket Item 318 at 2.  And he contends that this would satisfy the Hate Crimes Act but not the elements clause because the defendant would willfully have caused bodily injury resulting in death because of race but would not have "use[d] . . . physical force against the person . . . *of another*," 18 U.S.C. § 924(c)(3) (emphasis added).  *See* Docket Item 318 at 2.  The government counters that Gendron's hypothetical is impossible because "one can never violate the [Hate Crimes] Act by intentionally causing bodily injury only to oneself."  Docket Item 297 at 1.

10

The principles of statutory interpretation guide the Court. "In interpreting a statute, [courts] begin of course by giving effect to the plain meaning of the text—'and, if that text is unambiguous,' [the] analysis 'usually ends there as well.'" *Williams v. MTA Bus Co.*, 44 F.4th 115, 127 (2d Cir. 2022) (quoting *United States v. Gayle*, 342 F.3d 89, 92 (2d Cir. 2003)). To find the plain meaning, courts "draw[] on 'the specific context in which that language is used.'" *Id.* (quoting *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016)). If the text is ambiguous, courts "look to traditional canons of statutory construction for guidance in resolving the ambiguity." *Id.* Then, if the text remains unclear, courts look at the "broader statutory context and its history." *Id.* (quoting *N.Y. Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207, 216 (2d Cir. 2021)).

At first glance, the word "any" in "any person" appears to have a broad meaning that could include defendants themselves. In *United States v. Gonzales*, 520 U.S. 1 (1997), for example, the Supreme Court explained that "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Id.* at 5 (quoting Webster's Third New International Dictionary 97 (1976)). This "straightforward statutory command" meant that "there [wa]s no reason to resort to legislative history" and "no room to speculate about congressional intent."[6] *Id.* at 6, 9.

---

[6] The statute at issue was 18 U.S.C. § 924(c)(1), which provides,

> any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, . . . shall, in addition to the punishment provided for such crime[,] . . . be sentenced to a term of imprisonment of not less than [five] years. . . . [N]o term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the . . . drug trafficking crime during which the firearm was used[ or] carried.

The Supreme Court held that "any other term of imprisonment" included both state and federal sentences. *Gonzales*, 520 U.S. at 5.

In *Deravin v. Kerik*, 335 F.3d 195 (2d Cir. 2003), the Second Circuit relied on *Gonzales* and likewise interpreted "any" expansively.[7] *See id.* at 204; *see also United States v. Weisinger*, 586 F. App'x 733, 738-39 (2d Cir. 2014) (summary order) (holding that "any person" in sentencing enhancement for offenses involving "sexual contact," defined as "touching . . . any person with an intent to . . . arouse . . . any person," "plainly reache[d] masturbation"). The court relied on the plain language and its "literal effect," but it also explained that the interpretation did not result in "absurdity or . . . inconsistency" with the purpose of the underlying statute. *Deravin*, 335 F.3d at 204.

Unlike these cases, the context in which the Hate Crimes Act uses "any" creates some ambiguity. *See Williams*, 44 F.4th at 127 (explaining that courts must draw on the specific context in which a word is used to determine plain meaning). "In law as in life, . . . the same words, placed in different contexts, sometimes mean different things." *Yates v. United States*, 574 U.S. 528, 537 (2015) (Ginsburg, J.) (plurality opinion). And "a statute's meaning does not always turn solely on the broadest imaginable definitions of its component words." *Dubin v. United States*, 599 U.S. 110, 120 (2023) (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018)).

Textual clues convince this Court that, contrary to Gendron's argument that the "plain text reaches willfully causing bodily injury to oneself," Docket Item 180 at 11, "any person" in the Hate Crimes Act is ambiguous. The defendant must "willfully cause[] bodily injury to any person," 18 U.S.C. § 249(a)(1), and Congress refers to "the victim"

---

[7] The statue at issue was Title VII's prohibition against retaliation for "participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The Second Circuit held that the statute applied to retaliation for "defending oneself against charges of discrimination." *Deravin*, 335 F.3d at 203-04.

when defining and limiting "bodily injury," *id.* § 249(c)(1) ("[T]he term 'bodily injury' . . . does not include solely emotional or psychological harm to the victim . . . ."). In that context, if bodily injury includes self-harm, then the defendant would be both the perpetrator and the victim, which does not comport with any general usage of the word "victim." See *United States v. Rainford*, 110 F.4th 455, 485 (2d Cir. 2024) ("[I]n law, a person generally cannot be his own victim."); *In re Wellcare Health Plans, Inc.*, 754 F.3d 1234, 1239 (11th Cir. 2014) (interpreting statute that contemplated a distinct class of perpetrators and victims and concluding that "a victim does not exist without a perpetrator, and a perpetrator cannot be his own victim"). Congress's use of the word "victim" in the Hate Crimes Act suggests that it contemplated someone other than the perpetrator being the object of the bodily injury.

"[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute," *Dubin*, 599 U.S. at 120-21 (internal quotation marks omitted) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)), and the statute's and section's titles shed additional light on the meaning of "any person." The statue is the "Matthew Shepard and James Byrd, Jr., Hate Crimes Prevention Act of 2009," and section 249 is titled "Hate crime acts." Both titles refer to hate crimes, which are quintessentially acts against other people. And the statute was named for Matthew Shepard, "a gay student who was beaten to death in Wyoming in 1998," and James Byrd Jr., "an African American man who was murdered by white supremacists in Texas in 1998." See *Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act*, Cornell Law School, Legal Information Institute, https://www.law.cornell.edu/wex/matthew_shepard_and_james_byrd_jr_hate_crimes_pr

evention_act (last visited Aug. 20, 2025). Congress sought to prevent acts like these—bias-motivated violence against other people. Thus, the titles suggest that the statute is about outward facing violence, not inward facing harm.

The word "willfully" in the statute also suggests that the law does not cover self-harm. "Willful" has a nuanced meaning that is meant "to separate innocent from wrongful conduct." *United States v. George*, 386 F.3d 383, 394 (2d Cir. 2004). "[A]s a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.' In other words, in order to establish a 'willful' violation of a statute, 'the [g]overnment must prove that the defendant acted with knowledge that his conduct was unlawful.'" *United States v. Kosinski*, 976 F.3d 135, 154 (2d Cir. 2020) (quoting *Bryan v. United States*, 524 U.S. 184, 191-92 (1998)). In fact, that definition, which requires a "bad purpose," is the "generally applicable" definition of willfulness. *Id.*; *see also* Leonard B. Sand, et al., *Modern Federal Jury Instructions-Criminal*, ¶ 3A.01, Instr. 3A-3 (2025) ("'Willfully' means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the bad purpose to disobey or to disregard the law.").

For "highly technical statute[s]," a "heightened standard of willfulness" sometimes demands "[k]nowledge of the specific law that one is violating." *Kosinski*, 976 F.3d at 154 & n.13 (citation omitted) (citing Internal Revenue Code as an example of a complex statute). In other cases, a lessened standard applies. When "no conceivable meritorious reason exists" for knowingly engaging in a certain act, the bad purpose is built into the act itself, so it may be unnecessary to find "that the defendant acted with an awareness of the generally unlawful nature of his or her conduct, an improper

14

purpose, or an 'evil-meaning mind.'" *See George*, 386 F.3d at 394-95 (applying lessened standard to statute proscribing "knowingly and willingly" making a false statement to receive a passport).

Gendron argues that the lowest standard applies to the Hate Crimes Act: "[C]ausing bodily injury on the basis of race . . . is 'not innocent behavior' and 'no conceivable meritorious reason exists' for doing it. [*Id.*] Consequently, requiring proof that a defendant intentionally caused bodily injury for race-motivated reasons more than suffices to 'separate innocent from wrongful conduct.'" Docket Item 278 at 7. The government agrees—in part—by saying that "'no conceivable meritorious reason exists' for one person to cause bodily injury *to another person*, especially when that violence is racially motivated." Docket Item 297 at 7 (emphasis added) (quoting *George*, 386 F.3d at 395).

Based on what both sides agree "willfully" means, Gendron's interpretation of the statute is unworkable. If the reference to "any person" encompasses self-harm, many acts of self-harm, such as bleaching one's skin or chewing one's nails until they bleed—if racially motivated—would satisfy the Hate Crimes Act. *See* 18 U.S.C. § 249(a)(1); Docket Item 297 at 2, 8. On Gendron's reading, these self-directed harms would be criminal so long as they were intentional and not accidental. Although these acts have no apparent intrinsic wrongfulness, an offender would face up to ten years in prison for doing them. 18 U.S.C. § 249(a)(1)(A). Gendron's reading of the law therefore has unreasonable consequences.

What is more, when passing the law, Congress made the following finding about its purpose:

15

> Slavery and involuntary servitude were enforced, both prior to and after the adoption of the 13th amendment to the Constitution of the United States, through widespread public and private violence directed at persons because of their race. . . . Accordingly, eliminating racially motivated violence is an important means of eliminating, to the extent possible, the badges, incidents, and relics of slavery and involuntary servitude.

34 U.S.C. § 30501(7).  Punishing self-harm has no connection to "violence directed at persons because of their race" or "eliminating . . . the badges, incidents, and relics of slavery and involuntary servitude."  *See id.*

Congress also found that "[t]he incidence of violence motivated by the actual or perceived race, color, religion, national origin, gender, sexual orientation, gender identity, or disability of the victim poses a serious national problem."  *Id.* § 30501(1).  Like the text of the statute, this finding refers to the existence of a "victim," and as noted above, it is clear that "the victim"—the object of the violence—refers to someone other than the defendant.  So not only does Gendron's interpretation conflict with the text of the statute, it also is entirely divorced from its purpose.[8]

Finally, although the parties agree that the realistic probability test does not apply to this case, *see supra* note 2, it is worth noting that the United States "has never prosecuted someone under the [Hate Crimes] Act for causing bodily injury only to

---

[8] On August 20, 2025, Gendron notified the Court about *United States v. Juvenile B*, --- F.4th ----, 2025 WL 2301379 (8th Cir. Aug. 8, 2025), in which the Eighth Circuit addressed a statute criminalizing "knowingly caus[ing] another person to engage in a sexual act . . . by threatening or placing that other person in fear that *any person* will be subjected to death, serious bodily injury, or kidnapping," 18 U.S.C. § 2241(a) (emphasis added).  *See* Docket Item 446.  In that case, the court found that the words "any person" might well "include the defendant himself" and that the crime prohibited by the statute therefore was not one of violence.  *See Juvenile B.*, 2025 WL 2301379, at *2-4.  That case is distinguishable for many reasons, most basically because the underlying statute is different, seeks to remedy different harms, and requires a separate intended victim— the person whom the defendant caused to engage in the sexual act.

himself." Docket Item 297 at 10. Gendron has not suggested otherwise, nor has he identified a single real-world example that even comes close to matching the factual pattern of his hypothetical. And while the government's interpretation does not control, it is significant that the prosecution "is on record here confirming that the statute does not criminalize [self-harm]." *Id.*

## CONCLUSION

For the reasons stated above, Gendron's motion to dismiss counts 11-20 of the indictment for failure to state an offense under 18 U.S.C. § 924(c), Docket Item 180, is DENIED.

SO ORDERED.

Dated:  August 21, 2025
        Buffalo, New York

                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE