IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

———————————————————————

UNITED STATES OF AMERICA,

              v.                                   22-CR-109-V

PAYTON GENDRON,

                   Defendant.

———————————————————————

## GOVERNMENT'S REPLY IN SUPPORT OF
## MOTION TO MODIFY PROTECTIVE ORDER

The United States of America, by and through its undersigned attorneys, respectfully files this reply in support of its motion to modify the protective order. As discussed below, the government has proposed a modest change that does nothing more than establish a default rule of disclosure, rather than redaction. The government's proposal then puts the burden on the defendant—as case law requires—to show how public disclosure of individual facts would impair his right to a fair trial.

### ARGUMENT

**1. The Court has authority to modify the protective order.**

The defendant first argues that the government has failed to establish "good cause" to modify the protective order. Judge Schroeder observed early in this case that the Second Circuit "has yet to address the 'good cause' standard in the context of modification of a protective order in a criminal case." *United States v. Gendron*, 22-CR-109-LJV, 2023 WL 4530591, at *6 (W.D.N.Y. July 13, 2023). Judge Schroeder therefore applied the "standards

developed in the context of civil protective orders for guidance on what constitutes 'good cause' to modify a protective order in a criminal case." *Id.* at (collecting cases).[1]

Under this standard, "where there has been reasonable reliance upon [a] protective order, a district court should not modify the protective order absent a showing of improvidence in the grant of the protective order or some extraordinary circumstance or compelling need." Docket No. 82 at 14 (citing *SEC v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001)). Any reliance interests, however, are "tempered" where, as here, "the order was a blanket protective order," which "are more likely subject to modification than protective orders based upon a document by document review with a concomitant showing of good cause as to each document." *United States v. Bulger*, 283 F.R.D. 46, 54 (D. Mass. 2012). In other words, when a protective order treats every document shared in discovery as sensitive, a party's reliance on that order may be "overstate[d]." *Id.* ("Indeed, it is difficult to fathom that all of the estimated 300,000 documents produced are sensitive, confidential, grand jury testimony, Title III material or otherwise suitable and appropriate for continued protection.")

But more broadly, whether or not "good cause" exists is largely beside the point. If the First Amendment requires that certain documents be unredacted, nothing more is required to amend the protective order. Just as the parties cannot negotiate a protective order that, in practice, violates the First Amendment, neither can the Court enforce such an order. Put differently, experience has shown that (through the fault of no one), there was "improvidence in the grant of the protective order." Docket No. 82 at 14. The order is far broader than the

---

[1] In prior litigation concerning the protective order, the defendant did not challenge Judge Schroeder's decision to rely on civil law. *See* Docket No. 94 at 11-13. The government agrees with that approach as well.

First Amendment allows. The Court, then, is not only empowered to modify the order, but it is compelled to.

### 2. The government's proposed modification aligns the protective order with the First Amendment.

The defendant argues that the protective order should remain unchanged to protect his "right to a fair trial and impartial jury." Docket No. 457 at 12. But the basis for that argument—that this case has attracted significant media attention—is, by itself, insufficient to justify the broad redactions required by the protective order. To the contrary, "[t]he mere fact that [a case] has been the subject of intense media coverage is not . . . sufficient to justify closure." *ABC, Inc. v. Stewart*, 360 F.3d 90, 102 (2d Cir. 2004) (vacating order denying media's request to access *voir dire* in Martha Stewart prosecution). This makes sense: "[t]o hold otherwise would render the First Amendment right of access meaningless; the very demand for openness would paradoxically defeat its availability." *Id.* In other words, the defendant's right to a fair trial can exist alongside the public's right to know what is happening in this case. The law requires that these rights be "balance[ed]" rather than subject to "bright-line rule[s] which direct[] the parties to seal all" information from a particular source. *United States v. Gerena*, 869 F.2d 82, 86 (2d Cir. 1989). Paragraph 10 of the protective order is just such a "bright-line rule." It requires categorical redaction of even the most benign facts for no reason other than that those facts can be found in discovery.

The defendant does not dispute that the First Amendment requires a more nuanced approach to redaction. He instead argues that the government's proposed modification would result in "an unmonitored free-for-all", Docket No. 457 at 13, that would permit the parties to "carte blanche . . . publicly file any document." *Id.* at 13. That greatly overstates the case. The government's proposal anticipates the need for redaction in some instances by allowing

the parties to "move the Court to file additional information under seal when there is a legal basis to do so." Docket No. 444 at 6. The proposal, then, does nothing more than change the default rule. Rather than *assuming* that all discovery-related material must be sealed, the proposal requires the parties to justify redactions. That is as it should be, because that is what the First Amendment requires.

This reorientation reflects the reality that, more often than not, the parties' recent redactions are inconsistent with the First Amendment. By way of example, there is no apparent justification for redacting pages of briefing discussing search warrants and search warrant affidavits. At this point in the case, there are no law enforcement sensitives associated with the search warrants, and the search warrant affidavits address little (if anything) that is not within the public domain. Indeed, within two days of the defendant's attack, national media had already obtained—and reported on—the defendant's "cache of online postings." *Buffalo Suspect Planned Attack for Months, Online Posts Reveal*, N.Y. Times, May 16, 2022, available at https://www.nytimes.com/2022/05/16/nyregion/buffalo-shooting-attack.html (describing "thousands of lines of racist, antisemitic and often rambling remarks, and include details on how [the defendant] apparently planned and practiced for his attack and paid for his weapons and other equipment"). The defendant does not explain how his right to a fair trial is impacted by information the public has known about for years. The fact that the media might report on that information is insufficient to justify redaction. *See Stewart*, 360 F.3d at 102.

The defendant highlights several extreme examples (such as crime scene photographs or autopsy reports) in an effort to suggest that the government's proposed modification goes too far. But there is no serious question that such material would be appropriately redacted

4

or sealed to respect victims' and third party's privacy interests. *See, e.g.*, 18 U.S.C. § 3771(a)(8); *id.* § 3771(b)(1) (requiring government and Court to take steps, among other things, to protect victims' "dignity and privacy").[2] To the extent that the parties would ever need to file material like that on the docket (and there is no conceivable reason why they would), the parties can seek permission to file the documents under seal in the same way they do in any other case: by explaining to the Court why a particular document (or portion of a document) should be sealed. That process is straightforward, simple, and works hundreds of times in this District every year. This case is no different.

The defendant's reliance on *United States v. McVeigh*, 119 F.3d 806 (10th Cir. 1997), supports the government's proposal. In *McVeigh*, the Tenth Circuit observed that "[s]uppression motions have historically been open to inspection by the press and the public." *Id.* at 813. This is because a "suppression hearing is a critical pre-trial proceeding, one which is often 'as important as the trial itself.'" *Id.* It follows that "the public interest in access to a suppression hearing is particularly high." *Id.* In light of these weighty interests, the district court in *McVeigh* took a far more modest approach than the one in this case: it sealed only "those portions of the [suppression] motion and exhibits that contain materials, or excerpts from materials, ruled inadmissible." *Id.* The court reached this conclusion because "[a]ccess to inadmissible evidence is not necessary to understand the suppression hearing, so long as the public is able to understand the circumstances that gave rise to the decision to suppress. Moreover, suppressed evidence, by definition, will not be admissible at trial, and thus press

---

[2] The government does not in any way suggest that those photos are inadmissible at trial. To the contrary, in a murder prosecution, such photos are plainly admissible. *See, e.g.*, *United States v. Salameh*, 152 F.3d 88, 122-23 (2d Cir. 1998) (in prosecution for World Trade Center bombing, affirming admission of "graphic depictions" of crime scene).

access to such evidence will not play a significant positive role in the functioning of the criminal process, as that evidence is simply irrelevant to the process." *Id.* But, importantly, the district court still held an "open" "four-day long public suppression hearing, issued a publicly available order, and made available to the public redacted versions of the motions to suppress and attached exhibits." *Id.* at 813-14.

Much of that would be impossible under the defendant's categorical view that everything and anything provided in discovery could affect his right to a fair trial. For example, many of the defendant's suppression motions argue that the government exceeded the scope of a search warrant in seizing certain evidence. The defendant's view would appear to require that the parties argue that motion in a sealed courtroom to avoid publicly describing the warrant and evidence seized pursuant to that warrant, both of which are found in discovery. That hardly inspires "confidence in the administration of justice." *United States v. Erie County*, 763 F.3d 235, 240 (2d Cir. 2014) (quotation marks omitted). The government's proposed modification to the protective order helps avoid such results.

In the alternative, the Court could consider amending the protective order in a manner consistent with *United States v. Gerena*, 869 F.2d 82 (2d Cir. 1989). In *Gerena*, the district court issued an order allowing the parties to file public briefs that quoted non-suppressed statements from Title III intercepts, provided that the quotations did not involve non-parties. *Id.* at 83. The Second Circuit affirmed this order with a modification: "when the government wants to use unsuppressed Title III materials in a publicly filed memorandum or brief, the government must give defendants notice and the opportunity to object," after which the district court could weigh whether "that privacy or fair trial interests cannot be protected and that those interests outweigh the public's interest in access." *Id.* at 86. This procedure, the Second Circuit held,

6

"properly place[s] the burden on defendants" of explaining why information should remain under seal.

## <u>CONCLUSION</u>

For all the reasons stated above, the Court should modify paragraph 10 of the protective order.

DATED:        September 11, 2025
              Buffalo, New York

MICHAEL DIGIACOMO                      HARMEET K. DHILLON
United States Attorney                 Assistant Attorney General
Western District of New York           Civil Rights Division

BY:    *s/JOSEPH M. TRIPI*       BY:    *s/ SANJAY PATEL*
       *s/ BRETT A. HARVEY*             Trial Attorney
       *s/ CAITLIN M. HIGGINS*          Civil Rights Division
       *s/ MAEVE E. HUGGINS*            U.S. Department of Justice
       *s/ CHARLES M. KRULY*            150 M Street NE
       Assistant United States Attorney Washington, DC 20530
       United States Attorney's Office  (202) 598-9627
       Western District of New York     Sanjay.Patel@usdoj.gov
       138 Delaware Avenue
       Buffalo, New York 14202
       (716) 843-5839
       Joseph.Tripi@usdoj.gov

BY:    *s/MICHAEL S. WARBEL*
       Trial Attorney
       Criminal Division
       U.S. Department of Justice
       1331 F. St. NW, Ste. 623
       Washington, DC 20004
       (202) 514-5605
       Michael.Warbel@usdoj.gov