UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        v.                                         22-CR-109 (LJV)

PAYTON GENDRON,

                    Defendant.

**RESPONSE TO GOVERNMENT'S MEMORANDUM OF LAW REGARDING CLASSIFIED INFORMATION PROCEDURES ACT AND MOTION TO SET PRETRIAL CONFERENCE AND DESIGNATE CLASSIFIED INFORMATION SECURITY OFFICER AND DEFENSE REQUEST FOR DISCOVERY**

Defendant Payton Gendron, through undersigned counsel, respectfully submits this response to the government's Memorandum and Motion regarding classified information. (ECF No. 571.) As defense counsel stated at the status conference on April 22, 2026, Payton Gendron has no objection to the government's request to designate Matthew W. Mullery as the Classified Information Security Officer ("CISO") in this case or to designate the other named individuals as alternate CISOs. *See id*. at 15-16. Payton Gendron also joins the government's written request for a pretrial conference under the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3, § 2 (hereinafter CIPA § 2 conference). *See* ECF No. 571 at 14-15.

In addition to the issues the government will seek to address at the CIPA § 2 conference, the defense will ask the Court to order the government to provide the defense an unclassified summary of the information it seeks to delete, summarize, or substitute in advance of any briefing deadlines related to the government's anticipated CIPA § 4 motion. Without such a summary, Payton Gendron's ability to provide the Court with the targeted information necessary to a fair determination of whether the evidence is relevant and material to the guilt or penalty

phases of his trial will be significantly and needlessly impaired.  He will also ask the Court to set deadlines for briefing related to the filing of the government's anticipated CIPA § 3 and § 4 motions, including whether it should be allowed to file its motions or portions thereof *ex parte*, as well as deadlines for the CIPA § 4 motion itself and responses and replies thereto.

I.   **A CIPA P**RETRIAL **C**ONFERENCE IS **N**ECESSARY TO **E**STABLISH **F**AIR **P**ROCEDURES FOR **C**ONSIDERATION OF THE **G**OVERNMENT'S **R**EQUEST TO **W**ITHHOLD **D**ISCOVERY FROM **P**AYTON **G**ENDRON IN **T**HIS **C**APITAL **P**ROSECUTION.

The purpose of a CIPA § 2 pretrial conference is to "consider matters relating to classified information that may arise in connection with the prosecution," including the timing of requests for discovery and the filing of substantive motions and notices pursuant to various provisions of the Act.  At such a conference, "the court may consider any matters which relate to classified information or which may promote a fair and expeditious trial."  18 U.S.C. App. 3, § 2. Upon request, a "court *shall* promptly hold a pretrial conference[.]" In other words, such a conference is mandatory. *Id.* (emphasis added). Payton Gendron joins the government's request for a CIPA § 2 pretrial conference. ECF No. 571 at 17.  At the status conference on April 22, 2026, however, government counsel asked the Court to set June 12, 2026, as the deadline for it to file any motion to restrict discovery under CIPA § 4. The status conference does not obviate the need for the CIPA § 2 conference the government requested.  Because briefing on the government's CIPA Memorandum and proposed procedures had not been completed (or scheduled) before the status conference, a CIPA § 2 conference is still required.[1] *See* 18 U.S.C. App. 3, § 2.

---

[1] Given the issues that must be resolved before the Court considers the government's CIPA § 4 motion, June 12, 2026, is not a realistic date.  The defense is entitled to an opportunity to fairly litigate the procedures surrounding the filing of the government's CIPA § 4 motion, including whether the government may file that motion *ex parte*.  Prior to the CIPA § 2 pretrial conference, defense counsel will confer with the government in the hopes of presenting the Court with a stipulated schedule.

The defense requests a CIPA § 2 pretrial conference be scheduled forthwith and that the following matters be addressed at that conference:

1. The defense request for an unclassified summary of the classified information at issue (*see* § II, *infra*).

2. The defense request that the government begin the security clearance process for defense counsel (*see* § III, *infra*).

3. A briefing schedule related to the government's anticipated CIPA § 4 application to withhold or substitute discovery (*see* § IV, *infra*).

II.    **THE DEFENSE CANNOT MEANINGFULLY PARTICIPATE IN THIS PROCESS WITHOUT BASIC INFORMATION ABOUT THE NATURE OF THE CLASSIFIED INFORMATION AT ISSUE.**

In its request for a CIPA § 2 conference, the government asserted that due to the classified nature of certain information, it would be unable to provide the Court with specifics regarding that information in open court "(e.g., the type of information at issue, the amount of information at issue, the period of time when such information was collected, which agencies are involved, etc.)." ECF No. 571 at 14. However, it offered to present "this information to the Court orally in an *ex parte*, *in camera* hearing," if the Court ordered it to do so. *Id*. Payton Gendron objects to the government's proposal to provide information to the Court *ex parte* and *in camera* at the CIPA § 2 conference.

CIPA makes no allowance for a Section 2 hearing to be conducted *in camera* or *ex parte*. In fact, its plain language clearly assumes that the defense will be present and involved. *See id.* ("No admission made by the defendant … at such a conference may be used against the defendant…"); *see also United States v. Leveille*, No. 1:18-CR-02945-WJ, 2020 WL 5764276, at *2 (D.N.M. Sept. 28, 2020) (noting that CIPA § 2 does not envision *ex parte* submissions; "While the provision states that '... the court may consider any matters which relate to classified information' at a CIPA § 2 pretrial conference, there is no mention at all regarding e*x parte*

submissions. The Government cites to a Second Circuit case, *United States v. Aref,* for the proposition that a federal court can properly hold *ex parte* hearings with the Government when evaluating alleged classified material. 533 F.3d 72 (2d Cir. 2008). However, that case discussed only §§ 3 and 4 of CIPA—with no mention of § 2.").

Moreover, the government's argument implicitly recognizes the need for basic information about the evidence at issue for the Court to meaningfully set deadlines and procedures, yet it seeks to summarily deny the defense *any* information about the evidence other than its counsel's belief that there isn't a lot of it.  The government offers no reason why the defense cannot be told, at a minimum, "the type of information at issue, the amount of information at issue, the period of time when such information was collected," and the general topics to which the evidence might be relevant.  At this point, the defense has no information regarding the nature of the evidence. Without *some* information, defense counsel cannot adequately respond to the government's requested procedures or timeline other than to lodge general objections and provide the Court with unnecessarily expansive information about possible guilt and penalty phase defenses.  As the Supreme Court has recognized, "'[f]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights . . . . No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.'" *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 55 (1993) (in absence of exigent circumstances, due process clause requires government to provide notice and meaningful opportunity to be heard before seizing real property subject to civil forfeiture) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170-72 (1951) (Frankfurter, J., concurring)).

4

Thus, Payton Gendron respectfully asks the Court to order the government to provide the defense with an unclassified summary of the evidence in advance of any briefing deadlines related to the government's anticipated CIPA § 3 and § 4 motions.  At the very least, the summary should include "the type of information at issue, the amount of information at issue, the period of time when such information was collected," and the general topics to which the evidence might be relevant.  If deemed necessary, Payton Gendron does not object to the entry of a protective order restricting defense counsel from further disclosure of that summary.

III.    **THE COURT SHOULD ORDER THE GOVERNMENT TO BEGIN THE SECURITY CLEARANCE PROCESS FOR DEFENSE COUNSEL.**

At the upcoming CIPA § 2 pretrial conference, the defense would like to address whether the CISO to be appointed should begin the security clearance process for defense counsel so that they may participate as fully as possible in this litigation.

IV.    **THE COURT SHOULD SET A BRIEFING SCHEDULE RELATED TO THE GOVERNMENT'S ANTICIPATED CIPA § 4 APPLICATION TO WITHHOLD OR SUBSTITUTE DISCOVERY.**

A.    **Introduction to CIPA § 4.**

CIPA § 4 deals with "[d]iscovery of classified information by defendants." 18 U.S.C. App. 3, § 4.[2]  It permits the government to delete, summarize, or substitute specified items of

---

[2] 18 U.S.C. App. 3, § 4 provides:

> The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

classified information before providing the items in discovery, but only "upon a sufficient showing" that full production would pose a reasonable danger to national security. *Id.*; *see also United States v. Abu-Jihaad*, 630 F.3d 102, 141 (2d Cir. 2010) (the "state secrets" privilege to withhold information applies under CIPA Section 4 only if "there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged") (quoting *United States v. Reynolds*, 345 U.S. 1, 8 (1953)).

CIPA was not intended to, and does not, change the government's discovery obligations under the Federal Rules of Criminal Procedure or *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. *See, e.g., United States v. Libby*, 429 F. Supp. 2d 1, 7 (D.D.C. 2006) ("[CIPA] creates no new rights or limits on discovery of a specific area of classified information . . . [,] it contemplates an application of the general law of discovery in criminal cases to the classified information based on the sensitive nature of the classified information") (quoting *United States v. Yunis,* 867 F.2d 617, 621 (D.C. Cir. 1989)). Nor does CIPA alter the Federal Rules of Evidence.

The purpose of CIPA is to protect sensitive national security information, not to impede a defendant's fair trial rights. *See United States v. Stewart*, 590 F.3d 93, 130 (2d Cir. 2009); *United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008) (government's privilege under CIPA "must give way" when classified information is helpful or material to the defense). Indeed, Congress made clear that this provision "rests on the presumption that the defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without this act." S. Rep. No. 96–823, at 9 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4294, 4302.

The Second Circuit has developed the following three-step test for evaluating a government application to delete, summarize or substitute information pursuant to CIPA § 4. *See Aref*, 533 F.3d at 80.

### 1. Is the information relevant or otherwise discoverable?

Because "the threshold to admissibility [of evidence in any case] is relevance," *see United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998), *overruled on other grounds by* 184 F.3d 1206 (10th Cir. 1999), the first question to ask is whether the information is relevant or otherwise discoverable in the criminal case. *See Aref,* 533 F.3d at 80; *see also Yunis,* 867 F.2d at 623. This is a "low hurdle" to satisfy. *Yunis,* 867 F.2d at 623. This step thus requires only a straightforward application of Fed R. Evid. 401.[3] *See McVeigh,* 153 F.3d at 1190 ("As for the degree of probative value required under Rule 401, the rule sets the bar very low."); *United States v. Woody,* 250 F. App'x 867, 880 (10th Cir. 2007) (unpublished) ("the court could reasonably conclude the evidence was relevant, a relatively low hurdle").

### 2. Is the information "classified," does the state secret privilege apply, and has the government validly asserted the privilege?

The next step is determining whether the information is, in fact, classified. "Classified information" is defined as "information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. App. 3, §1(a). Classification may be established by the affidavit of a government official, as long as the affidavit "adequately describes the reasons for the information's classification and the harm that would result from disclosure." *United States v. Juma Khan*, No. 08 CR 621 (NRB), 2010 WL 330241, at *1 (S.D.N.Y. Jan. 20, 2010).  The regulations governing the classification of information under CIPA caution that "[i]nformation shall not be classified in order to conceal inefficiency,

---

[3] Fed. R. Evid. 401 states: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

violations of law, or administrative error; to prevent embarrassment to a person, organization, or agency; to restrain competition; or to prevent or delay release of information that does not require protection in the interest of national security." 28 C.F.R. § 17.22(d).

Even if the evidence is classified, if it is relevant or otherwise discoverable, it must be disclosed to the defense, absent the government's assertion of a privilege. Under CIPA § 4, before the government may delete, summarize, or substitute classified evidence, the government must invoke the state-secrets privilege, and the trial court must determine whether that privilege applies. *Aref*, 533 F.3d at 80.  In making that determination, courts in the Second Circuit must determine, among other things, whether there is a reasonable danger that disclosure of the evidence will expose "matters which, in the interest of national security, should not be divulged." *Id.* (citation omitted). This element of the state-secrets privilege gives the court some ability to look behind the classification of the information and determine whether its disclosure could harm national security.  *See United States v. Hanjuan Jin,* 791 F. Supp. 2d 612, 619 (N.D. Ill. 2011) (noting this step requires an inquiry into "the validity of the Government's assertion of privilege").  The Court must also determine whether the privilege has been "lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Id.* at 619; *see also Abu-Jihaad*, 630 F.3d at 141.

If the Court determines disclosure will not harm national security, then the information must be disclosed to the defendant. If the Court determines the state-secrets privilege has been properly invoked, then the Court must proceed to the third and final step of the inquiry.

> **3.  Is the information helpful or material to the defense of an accused, is it essential to a fair determination of a cause, or is it useful to counter the government's case or to bolster a defense?**

If the information is relevant and yet the Court concludes the government is validly asserting the state-secret privilege, the Court resolves that conflict by asking whether the information is "material" or "'helpful to the defense of [the] accused, or is essential to a fair determination of a cause.'" *Aref*, 533 F.3d at 79 (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)). That is, whether the information is "useful 'to counter the government's case or to bolster a defense.'" *Id.* (quoting *United States v. Stevens*, 985 F.2d 1175,1180 (2d Cir.1993)). Putting this all together, the third question this Court must ask is whether the information is helpful or material to the defense of an accused, is essential to a fair determination of a cause, or is useful to counter the government's case or to bolster a defense. If so, the information should be disclosed to the defendant.

To satisfy this third inquiry, the "evidence need not rise to the level that would trigger the Government's obligation under *Brady v. Maryland*, 373 U.S. 83 [] (1963), to disclose exculpatory information." *Id.* "While *Brady* information is plainly subsumed within the larger category of information that is 'at least helpful' to the defendant, information can be helpful [– and therefore warrant disclosure –] without being 'favorable' in the *Brady* sense." *United States v. Mejia*, 448 F.3d 436, 457 (D.C. Cir. 2006).

Further, determining whether the relevant, yet classified, information is helpful or material under this inquiry "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the [withheld information], and other relevant factors." *Roviaro*, 353 U.S at 62. One district court helpfully explained the principles to be applied under this third step, stating, *inter alia*:

> [A]lthough information that is in any way exculpatory is obviously both material and helpful to the defense, so too is information that, even though not exculpatory, could still serve either to **counter the government's case**, for example by **discrediting a prosecution witness, or to bolster a defendant's arguments**, for

example by serving as **a prior consistent statement** corroborating a defense the accused may raise. In assessing the materiality or helpfulness of withheld information, a court "considers not only the logical relationship between the information and the issues in the case, but also the importance of the information in light of the evidence as a whole." *In re Terrorist Bombings*, 552 F.3d [93,] 125 [(2d Cir. 2008)] (internal quotations omitted). Information is sufficiently helpful to the defense (viewed against the discovery that the defense has already been provided) when the information creates "**a reasonable likelihood that the testimony could affect the judgment of the trier of fact.**" *United States v. Valenzuela–Bernal*, 458 U.S. 858, 874 [] (1982); *Yunis*, 867 F.2d at 624.

*United States v. El-Hanafi,* No. S5 10 CR 162 KMW, 2012 WL 603649, at *4 (S.D.N.Y. Feb. 24, 2012) (emphasis added). One appellate court aptly detailed other situations where information is likely to satisfy this third-step inquiry:

In some cases, a court might legitimately conclude that it is necessary to place a fact in context in order to ensure that the jury is able to give it its full weight. For instance, it might be appropriate in some circumstances to attribute a statement to its source, or to phrase it as a quotation. As the Court said in *Old Chief*, "[a] syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it."

*United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998) (quoting *Old Chief v. United States*, 519 U.S. 172, 188 (1997)).

Moreover, because this is a capital case, due process requires the government to disclose not only evidence that would be favorable to the defense at trial, but also evidence that would be favorable at sentencing, i.e., that would help establish mitigating factors or to weaken or counter aggravating ones. Indeed, *Brady* itself was a case about discovery for capital sentencing. *See Brady v. Maryland*, 373 U.S. 83 (1963); *see also Kyles v. Whitley*, 514 U.S. 419 (1995); *United States v. Petty*, No. 1:25-cr-00123-CNS, 2025 WL 1333860, at *1 (D. Colo. May 7, 2025) ("the Court finds persuasive Mr. Petty's argument that he need only establish a 'substantial basis for claiming that a mitigating factor will apply at the penalty phase ... to invoke' the government's 'obligation under *Brady* and its progeny to produce any evidence which is material to that

mitigating factor'") (quoting *United States v. Con-Ui*, No. 3:13-CR-123, 2016 WL 4140520, at *3 (M.D. Pa. Aug. 4, 2016)).  In several respects, the scope of material discoverable under *Brady* for purposes of the penalty phase is more expansive than it is for the initial, liability phase of a capital trial.

The government's discovery obligations under Rule 16(a)(i)(E)(i) also apply to "information material to defense preparation for the penalty phase." *United States v. Tsarnaev*, No. 13–cr-10200–GAO, 2013 WL 6196279, at *4 (D. Mass. Nov. 27, 2013). Thus, the government must disclose a wide array of information well beyond the crime itself including, for example, the involvement of others in the offense or in events leading up to the offense and information about the defendant's history, character, and background.

In the related context of information covered by the informant privilege, the Supreme Court explained that "[t]he desirability" of using the otherwise-privileged information as evidence or at least interviewing the withheld witness or further investigating the information, "was a matter for the accused rather than the Government to decide." *Rovario*, 353 U.S. at 64. Such principles should be kept in mind when a court is answering the third step's inquiry at any CIPA § 4 proceeding. *Cf. Dennis v. United States*, 384 U.S. 855, 870 (1993) ("disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice"); *Gregg v. Georgia*, 428 U.S. 153, 204 (1976) (stating it is "desirable for the jury to have as much information before it as possible when it makes the sentencing decision" in a capital case).

Thus, when information may be useful, helpful, or material to the defense, the classified material or information must be provided, though a court may permit the government to make appropriate deletions or substitutions upon a proper showing. 18 U.S.C. App. 3 § 4.

**B.      Request for the Court to Set a Deadline for Briefing Regarding the Procedures to Be Followed Under CIPA § 4.**

In its CIPA Memorandum and at the recent status conference, the government indicated it intends to file a motion under CIPA § 4.  The defense respectfully asks the Court to set deadlines for briefing related to the filing of the government's anticipated CIPA § 4 motion, including whether it should be allowed to file its motion or any portions thereof *ex parte*, as well as deadlines for the CIPA § 4 motion itself and responses and replies thereto.

Section 4 provides that "[t]he court *may* permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone[,]" *id.* (emphasis added); it does not create a categorical impediment to disclosure or adversary proceedings. In other words, nothing in the statute permits the government to make such *ex parte* submissions as a matter of right. Rather, the use of the permissive "may" in the plain text of CIPA § 4, rather than the mandatory "shall," makes clear that courts retain discretion to reject *ex parte* submissions on a case-by-case basis.

The defense acknowledges that district courts traditionally have allowed the government to proceed *ex parte* under CIPA § 4 and appellate courts have rejected due process challenges to that procedure.  *See, e.g., Abu-Jihaad*, 630 F.3d at 142.  However, the defendants in those cases were not facing the death penalty.  The defense is aware of only two authorized capital cases in which a court considered a CIPA § 4 application.  In the first, *United States v. Jose Denis*, Case No. 99-cr-00714 (S.D. Fla.), the defense did not object to the *ex parte* nature of the proceeding at trial, but only to the lateness of the government's disclosure of the evidence. *See Denis v. United States*, No. 05-23089-CIV, 2009 WL 1563543, at *4 (S.D. Fla. June 2, 2009), *aff'd*, 425 F. App'x 821 (11th Cir. 2011). The defendant did challenge the *ex parte* nature of the proceeding on appeal and in habeas, but since he had been sentenced to life the case was no longer capital when

12

the courts reached that issue. In the second, *United States v. Saipov*, the defense did object to the court's consideration of the government's § 4 submission *ex parte*, but it did not argue that allowing the government to proceed *ex parte* violated the Eighth Amendment's requirement of heightened reliability in capital proceedings. Instead, the defense argued that withholding the information at issue violated those Eighth Amendment principles. *See United States v. Saipov*, 17 Cr. 0722 (VSB) (S.D.N.Y.), ECF No. 157 (filed Apr. 16, 2019) (objecting to ex parte CIPA conference) and ECF No. 199 (filed Aug. 9, 2019) (same); *see also United States v. Saipov*, No. S1 17-CR-722 (VSB), 2019 WL 5558214, at *3 (S.D.N.Y. Oct. 29, 2019) (concluding proceeding *ex parte* under CIPA § 4 did not violate the defendant's rights).

Thus, the specific question of whether the Eighth Amendment requires the government to show exceptional circumstances before being allowed to proceed *ex parte* under CIPA § 4 in a capital case appears to be a question of first impression and should be thoroughly briefed before the government should be allowed to file its CIPA § 4 motion *ex parte* in this case. *See Strickland v. Washington*, 466 U.S. 668, 704–05 (1984) (Brennan, J., concurring in part and dissenting in part) ("Time and again the Court has condemned procedures in capital cases that might be completely acceptable in an ordinary case.").

"Courts have held the Government to the highest of standards when it seeks to terminate the life of a human being as a consequence for a crime that the individual has committed." *United States v. Cole*, 799 F. Supp. 3d 438, 469–70 (D.V.I. 2025); *see also Strickland*, 466 U.S. at 704 (Brennan, J., concurring in part and dissenting in part) ("[W]e have consistently required that capital proceedings be policed at all stages by an especially vigilant concern for procedural fairness and for the accuracy of factfinding[.]"). "That is why the Supreme Court has mandated that 'in capital cases especially, Courts should be extremely careful how they interfere with any

13

of the chances of life, in favour of the prisoner.'"  *Cole*, 799 F. Supp. 3d at 470 (quoting *Illinois v. Somerville*, 410 U.S. 458, 461 (1973)). The Eighth Amendment requires this Court to be especially vigilant for procedural fairness during this process in which the government seeks to deprive Payton Gendron of evidence related to his case.  Given the importance of this issue, Payton Gendron will ask the Court to set a briefing schedule related to the procedures for the government to file any CIPA § 4 motion, including whether it should be allowed to do so *ex parte,* in addition to a briefing schedule related to the CIPA § 4 itself.

## V.    CONCLUSION.

For the foregoing reasons, Defendant Payton Gendron respectfully requests that the Court promptly schedule a CIPA § 2 pretrial conference and direct the government to provide the defense with an unclassified summary of the evidence it seeks to delete, summarize, or substitute.

Dated:    April 28, 2026
          Buffalo, New York

        *s/Sonya A. Zoghlin*
        Sonya A. Zoghlin
        Assistant Federal Public Defender

        *s/MaryBeth Covert*
        MaryBeth Covert
        Senior Litigator

        *s/Julie Brain*
        Julie Brain
        Attorney at Law

        *s/Theresa M. Duncan*
        Theresa M. Duncan
        Law Office of Theresa M. Duncan