IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.                                                      22-CR-109-LJV

PAYTON GENDRON,

                    Defendant.

---

### GOVERNMENT'S REPLY CONCERNING
### THE CLASSIFIED INFORMATION PROCEDURES ACT

"The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *CIA v. Sims*, 471 U.S. 159, 175 (1985) (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (*per curiam*)). Courts have therefore long recognized that "[i]t is not in the national interest for revelation of either the existence or the product of [foreign intelligence operations and information] to extend beyond the narrowest limits compatible with the assurance that no injustice is done to the criminal defendant." *United States v. Lemonakis*, 485 F.2d 941, 963 (D.C. Cir. 1973).

The "animating purpose" of the Classified Information Procedures Act (CIPA), 18 U.S.C. App. 3, is to "harmonize a criminal defendant's right to obtain and present exculpatory material with the government's need to withhold information from discovery when disclosure would be inimical to national security." *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 115-16 (2d Cir. 2008) (quotation marks and citations omitted). To that end, CIPA § 4 authorizes a court to review, *in camera* and *ex parte*, whether classified documents are discoverable in a particular case. If the documents are not

1

discoverable, § 4 authorizes the court to "delete" those documents from "discovery under the Federal Rules of Criminal Procedure." CIPA § 4. If, by contrast, the documents are discoverable (either in whole or in part), § 4 permits the Court to authorize "a summary" of, or a "substitution" for, the classified material. *Id.*

Time and again, the Second Circuit has held that CIPA § 4 proceedings are properly conducted *ex parte* because, "[w]hen the government is seeking to withhold classified material from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) (quotation marks omitted). The defendant nevertheless seeks to litigate a point that has been rejected by "every court that has considered this issue." *United States v. Amawi*, 695 F.3d 457, 472 (6th Cir. 2012). The Court should not be the first to permit defense counsel to participate in CIPA § 4 litigation. Likewise, the defendant's request for unclassified summaries of the documents at issue flies in the face of CIPA's text and Second Circuit case law.

The Court should therefore deny the defendant's request and permit the government to file its § 4 motion, *ex parte*, as scheduled on June 12, 2026.

### 1. The Court has already conducted a CIPA § 2 conference and scheduled a deadline for the government to file its CIPA § 4 motion.

The Court held a conference pursuant to CIPA § 2 at the April 22, 2026, status conference, at which the Court directed the government to file its CIPA § 4 motion by June 12, 2026. Docket No. 579. The defendant did not object to this deadline. He instead asked for permission to file a response with "some objections and some clarifications." Apr. 22, 2026, Tr. at 16:4-7.

2

The defendant now asks the Court to schedule another § 2 hearing to "fairly litigate the procedures surrounding the filing of the government's CIPA § 4 motion, including whether the government may file that motion *ex parte*." Docket No. 577 at 2 n.1. Specifically, the defendant seeks a hearing to schedule "deadlines for briefing related to the government's anticipated § 4 motion, including whether it should be allowed to file its motion or any portions thereof *ex parte*, as well as deadlines for the CIPA § 4 motion and responses and replies thereto." *Id.* at 12.

There is no need to schedule briefing on these topics. The Court has already directed the government to file its § 4 motion by June 12, 2026. Docket No. 576. And as discussed below, the Second Circuit has held—in four different published decisions—that the government is permitted to file a § 4 motion *ex parte*. There is therefore no need to set deadlines "related to the filing of the government's anticipated § 4 motion," nor is there a need to schedule a deadline for the defendant to respond to an *ex parte* motion that will not be served on him. *Id.*

The Court should therefore permit the government to file its § 4 motion, *ex parte*, and as already scheduled, on June 12, 2026. The defendant has preserved his objection to the government's ability to proceed *ex parte*. Permitting litigation over meritless procedural arguments that have been repeatedly rejected will only invite delay.

**2. The government is authorized to file its § 4 motion *ex parte* and to provide justification for doing so in classified declarations.**

CIPA § 4 provides that a "court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone." 18 U.S.C. App. 3, § 4. Thus, "notwithstanding the rarity of *ex parte* proceedings in criminal

matters, there can be no question that a district court's *ex parte*, *in camera* adjudication of CIPA motions falls squarely within the authority granted by Congress." *United States v. Al-Farekh*, 956 F.3d 99, 107 (2d Cir. 2020). This makes sense. After all, "[w]hen the government is seeking to withhold classified material from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." *Aref*, 533 F.3d at 81 (quotation marks omitted). Indeed, other parts of CIPA show that "Congress knew how to provide for the participation of defendants in certain *ex parte* proceedings." *Al-Farkh*, 956 F.3d at 107 (citing CIPA § 6). But "[n]othing in § 4 suggests that defense counsel has a role to play when the district court assesses the relevance or helpfulness of the classified information. Just the opposite." *United States v. Asgari*, 940 F.3d 188, 192 (6th Cir. 2019).[1]

CIPA therefore recognizes that "a method for protection of classified material is necessary," and it does so using "procedures [that] have been established by Congress and held to be constitutional." *United States v. Stewart*, 590 F.3d 93, 132 (2d Cir. 2009). CIPA, in other words, codifies "a necessary, if imperfect, accommodation of the varied interests implicated." *Id.* The Second Circuit has repeatedly affirmed the propriety of *ex parte* CIPA proceedings. *See Al-Farekh*, 956 F.3d at 107; *United States v. Abu-Jihaad*, 630 F.3d 102 (2d Cir. 2010); *Aref*, 533 F.3d at 81; *Stewart*, 590 F.3d at 132. In short, "challenge[s] to . . . *in camera* and *ex parte* proceedings" under CIPA are "a battle already lost in the federal courts." *United States v. Sedaghaty*, 728 F.3d 885, 908 (9th Cir. 2013). And to the extent the defendant argues that the government has not sufficiently justified its request to file its § 4 motion *ex parte*, the

---

[1] The defendant suggests that § 4's use of the term "may" means that § 4 "does not create a categorial impediment to disclosure or adversary proceedings." Docket No. 577 at 12. The government, however, is aware of only one case in which a district court ordered the disclosure of classified materials that were not discoverable; that decision was reversed on appeal. *United States v. Asgari*, 940 F.3d 188, 189 (6th Cir. 2019). *See also Amawi*, 695 F.3d at 472 (stating "every court that has considered this issue has held that CIPA permits *ex parte* hearings").

4

government's forthcoming § 4 motion will be accompanied by classified declarations explaining why it is appropriate for the government to proceed *ex parte*. CIPA requires nothing more. *See United States v. Libby*, 429 F. Supp. 2d 18, 24-25 (D.D.C. 2006) ("declin[ing] to adopt the defendant's position that he must first have the opportunity to litigate whether the government has established exceptional circumstances before the government can submit to the Court *ex parte* filings pursuant to Section 4," noting that "[t]here is simply no requirement for such a showing in the CIPA, and this Court cannot judicially require it").

The defendant concedes that "district courts traditionally have allowed the government to proceed *ex parte* under CIPA § 4 and appellate courts have rejected due process challenges to that procedure." Docket No. 577 at 12. He argues, however, that the Eighth Amendment creates an exception that "requires the government to show exceptional circumstances before being allowed to proceed *ex parte* under CIPA § 4 in a capital case." *Id.* at 13. The Eighth Amendment, the defendant argues, "requires this Court to be especially vigilant for procedural fairness during this process." *Id.* at 14. The fact that this is a capital case does not give license to read an exception into CIPA that would grant a defendant access to classified material that, "[a]s a practical matter," may not be "discoverable at all." *Al Farkh*, 956 F.3d at 107.[2]

---

[2] In *United States v. Saipov*, S1 17-CR-722 (VSB), 2019 WL 5558214 (S.D.N.Y. Oct. 29, 2019)—a capital case—the court permitted the government to file an *ex parte* CIPA motion over the defendant's objection that doing so "would violate his constitutional rights." *Id.* at *3. *See also In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 120-21 (2d Cir. 2008) (in capital case, rejecting argument that defendant's rights were violated by order "limit[ing] access to classified material to individuals who could obtain security clearance," which "effectively barred [the defendant] from personally reviewing classified material produced by the government").

The defendant's citation to the Eighth Amendment does not change this conclusion. Although he does not say so explicitly, the defendant's argument appears to be based on the axiom that "death is different." The Supreme Court introduced the "death is different" concept in *Woodson v. North Carolina*, 428 U.S. 280 (1976). Noting the qualitative difference between the death penalty and a

Nonetheless, to accommodate the defendant's concerns, the government proposes a

procedure that permits defense counsel to participate in this process while also respecting the

classified nature of the documents at issue. As will be explained in the government's

forthcoming motion, the government will ask the Court to conclude that the material at issue

is not discoverable.[3] To assist the Court in deciding whether the information is discoverable,

the government invites the Court to meet with defense counsel, *ex parte*, to discuss the

---

sentence of imprisonment, *Woodson* struck down North Carolina's mandatory death penalty statute because it "fail[ed] to allow the particularized consideration of relevant aspects of the character and record of each convicted defendant before the imposition upon him of a sentence of death." *Id.* at 304. Given that "the penalty of death is qualitatively different from a sentence of imprisonment," the Court held "there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Id.*

The Supreme Court has not, however, held that the qualitative distinction between the death penalty and alternative sentences creates additional rights; requires courts to revisit or enhance fundamental levels of scrutiny generally applicable to criminal cases; or permits district courts to usurp Congress' authority and re-write long-established statutes. To the contrary, countless aspects of capital trials are indistinguishable from their non-capital counterparts. The nature of the right to counsel, for instance, is not altered in capital cases. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("For purposes of describing counsel's duties . . . Florida's capital sentencing proceeding need not be distinguished from an ordinary trial."). Nor is the analysis for the admissibility of evidence. *See Tennard v. Dretke*, 542 U.S. 274, 284–85 (2004) ("We established that the 'meaning of relevance is no different in the context of mitigating evidence introduced in a capital sentencing proceeding' than in any other context.") (quoting *McKoy v. North Carolina*, 494 U.S. 433, 440–41 (1990)). The defendant offers no reason to believe that the Eighth Amendment permits his attorneys to participate in a process designed to "protect the secrecy and integrity of the intelligence process," the reasons for which are "too obvious to call for enlarged discussion." *Sims*, 471 U.S. at 170.

[3] The defendant's response contains an extended discussion of how courts decide whether classified evidence is discoverable. *See* Docket No. 577 at 7-11. The government generally agrees that *United States v. Aref*, 533 F.3d 72, 78-81 (2d Cir. 2008), and its progeny provide the general framework for reviewing a § 4 motion. The government notes, however, that "classified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege." *United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989). Thus, *United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998), on which the defendant relies to address the concept of relevance, Docket No. 577 at 7, has no application in this context. The government will address this law in more detail in its § 4 motion. *See United States v. Trump*, 701 F. Supp. 3d 1, 3 (D.D.C. 2023) (holding that defense counsel was not entitled to "paragraphs and pages of the CIPA § 4 Motion that are not portion-marked as classified and to the government's citations to legal authority," noting that the government's "discussion of legal principles in that memorandum is sufficiently interwoven with, and informed by, its application of those principles to the evidentiary materials at issue to counsel against such a disclosure") (quotation and editorial marks omitted).

defendant's potential defenses and potential mitigation arguments. The Court can then review the government's motion—and the classified material—with those potential defenses and mitigation arguments in mind. This procedure will assist the Court in fulfilling its role as a "confidential arbiter[] with responsibility to evaluate the [classified] information's relevance." *Asgari*, 940 F.3d at 191. Indeed, the Second Circuit has endorsed this practice as one that is a "proper[] exercise[]" of a court's "authority under CIPA." *Al-Farekh*, 956 F.3d at 109 (noting that the district court met with defense counsel to "present [the defendant's] theory of the case and his potential defenses," after which the court reviewed the government's motion and the government "revised some of its proposed substitutions after meeting with the District Court").

3. **The defendant is entitled to an unclassified summary only if the Court determines that a summary is necessary after reviewing the classified documents.**

The defendant requests "an unclassified summary of the evidence in advance of any briefing deadlines," seeking—"[a]t the very least"—information about "the type of information at issue, the amount of information at issue, the period of time when such information was collected, and the general topics to which the evidence might be relevant." Docket No. 577 at 5. This puts things backwards: "[T]he plain language of § 4 makes clear that a district court is *required* to decide in the first instance whether the Government's classified information is discoverable and the extent and form of any disclosure to the defendant." *Al-Farkh*, 956 F.3d at 107 (emphasis added). Indeed, there is "no due process right to receive a description of the materials in the government's possession that are not discoverable." *Sedaghaty*, 728 F.3d at 909. Only if the Court concludes that the materials are

discoverable (either in whole or in part) is the Court authorized to direct the disclosure of an unclassified summary.

Thus, CIPA does not authorize a defendant to be provided with a summary of the information at issue because, "[a]s a practical matter, . . . it may well be that the information in a § 4 is not discoverable at all." *Al-Farkh*, 956 F.3d at 108. The fact that the defendant seeks an unclassified summary does not change things; indeed, the type of information the defendant requests could itself reveal classified information. "[T]he government's security interest in" certain information may "lie[] not so much in the contents of the" information, "as in the time, place, and nature of the government's ability to" obtain such information "at all. Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods." *Yunis*, 867 F.2d at 623.

### 4.  Defense counsel is not currently entitled to security clearances.

The defendant asks the Court to "order the government to begin the security clearance process for defense counsel." Docket No. 577 at 5 (capitalization normalized). The defendant, however, cites no authority for this proposition. That is because there is none. To the contrary, "[i]t should be obvious that no one has a 'right' to a security clearance." *United States Department of the Navy v. Egan*, 484 U.S. 518, 528 (1988). And in the context of CIPA, "[t]he possession of a security clearance only becomes relevant *after* the district court determines, in accordance with section 4, that any classified information is discoverable." *Amawi*, 695 F.3d at 473 (emphasis in original).

Little would be gained by starting the process of clearing defense counsel before the Court has even reviewed the classified material at issue. Indeed, "[p]ersons with an appropriate security clearance still may not have access to classified information if they do not have a 'need to know' that information." *Al-Farekh*, 956 F.3d at 109 n. 19 (citing Exec. Order No. 13526, §§ 4.1(a), 6.1(dd), 75 Fed. Reg. 707, 720, 728-29 (Dec. 29, 2009)). A defense attorney "does not have a 'need to know' classified information that is neither helpful nor material to the defense of his or her client." *Id.* Courts have therefore repeatedly held that even already-cleared defense counsel may not participate in § 4 proceedings. *See United States v. Liu*, 19 Cr. 804 (VEC), 2021 WL 3374535, at *4 (S.D.N.Y. Aug. 3, 2021) (collecting cases for this proposition). It follows, then, that there is no need to begin to clear defense counsel to review documents that they may never be entitled to review. *See United States v. Salas-Aguayo*, No. CR 12-3109 JB, 2024 WL 95372, at *8 (D.N.M. Jan. 9, 2024) ("As federal courts have been unwilling to allow defense counsel already in possession of security clearance to bypass the court's *ex parte* review of CIPA documents, the Court is here unwilling to take the more drastic action of ordering that [the defendant's] counsel receive security clearance to review documents before the Court has conducted its *ex parte* review of those documents.")

## CONCLUSION

The Court should permit the government to file its CIPA § 4 motion on June 12, 2026,

and it should permit the government to do so *ex parte*.

Respectfully Submitted,

MICHAEL DIGIACOMO
United States Attorney

Dated: May 6, 2026　　　　　BY:　s/BRETT A. HARVEY
Buffalo, New York　　　　　　　s/CHARLES M. KRULY
　　　　　　　　　　　　　　　　s/MAEVE E. HUGGINS
　　　　　　　　　　　　　　　Assistant United States Attorneys
　　　　　　　　　　　　　　　United States Attorney's Office
　　　　　　　　　　　　　　　Western District of New York
　　　　　　　　　　　　　　　138 Delaware Ave.
　　　　　　　　　　　　　　　Buffalo, New York 14202