UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

      v.                                    22-CR-109 (LJV)

PAYTON GENDRON,

              Defendant.

_____

## JOINT PROPOSED JURY SELECTION PROCEDURES

Dated:  July 20, 2026
         Buffalo, New York

| | |
|---|---|
| *s/Sonya A. Zoghlin* | *s/Brett A. Harvey* |
| *s/MaryBeth Covert* | *s/Craig A. Gestring* |
| Assistant Federal Public Defenders | *s/Maeve E. Huggins* |
| Federal Public Defender's Office | *s/Charles M. Kruly* |
| Western District of New York | *s/Pierre Richard Antoine* |
| | Assistant United States Attorneys |
| *s/Julie Brain* | United States Attorney's Office |
| Attorney at Law | Western District of New York |
| | |
| *s/Theresa M. Duncan* | *s/Neville S. Hedley* |
| Law Office of Theresa M. Duncan LLC | *s/Khalil Quinan* |
| | Trial Attorneys, Civil Rights Division |
| | U.S. Department of Justice |
| | |
| | *s/Michael S. Warbel* |
| | Trial Attorney, Criminal Division |
| | U.S. Department of Justice |

Case 22-cr-00109-LJV   Document 637 *SEALED*   Filed 07/20/26   Page 2 of 5

Joint Proposed Jury Selection Procedures

1.      The parties agree that the Court should begin the voir dire process by calling 12 jurors per day, with the option of decreasing or increasing the number as needed. The parties further agree that all jurors should be scheduled to arrive in the morning to hear the Court's instructions.  The parties defer to the jury administrator whether to keep everyone at the courthouse, or to release half to return around noon.

2.      **Defense**: The defense requests that only the Court, court staff, and members of defense and prosecution teams be physically present in the courtroom during voir dire and that the proceedings be livestreamed to another courtroom where the public may observe them. The defense also proposes that the tables in the well of the courtroom be rearranged to form a square at which Judge Vilardo and the potential juror will have their own tables across from one another and the parties will have their own tables across from each other, with additional seating behind each table to accommodate the respective teams.  Please see the diagram attached as Exhibit A. The defense team requests that Payton Gendron be allowed to sit between his counsel so that he can confer with them as necessary during the proceedings.

        **Government**: The government proposes that potential jurors sit in the jury box, the Court question from the bench, and the parties question from the podium.  The government opposes any closing of the courtroom, regardless of courtroom configuration.

3.      **Joint**: The Defense proposes that the following language about juror privacy be added to the instructions given to each panel of 12 jurors.  **The Government objects to the highlighted portions, but agrees the non-highlighted portions should be given**:

        As we explained in the questionnaire that you filled out in June, that document will be kept confidential.  Your completed questionnaire will not be made public.  You will have a copy of your questionnaire available to you during questioning, but no one else will have access to it other than the Court and its staff, and members of the defense and prosecution teams.

        We will, however, ask you about some of your responses today.  These proceedings are public, so we have established procedures to be respectful of your privacy and make you as comfortable as possible while answering those questions.  First, only the Court, court staff, and members of defense and prosecution teams will be physically present during questioning.  These proceedings will be livestreamed to another courtroom where the public may observe them.  Second, we will refer to you only by your juror number (so please don't take offense at that). Third, you will always have an opportunity to request that your responses about a particular issue or question be given in private session.  To do that we will temporarily stop the livestream feed to the other courtroom.  Some of you noted in your questionnaires that there are questions you prefer to discuss in private and

Case 22-cr-00109-LJV    Document 637 *SEALED*    Filed 07/20/26    Page 3 of 5

we will respect that.  You are also free to identify any additional questions you would like to discuss privately with the Court and the parties.  We must have your honest, truthful and candid answers and plan to do what we can to make the process as comfortable as possible for you while also honoring the public's right to observe these proceedings.

4.      The parties agree the Court will start the individual voir dire of each juror with attorney follow-up.

**Defense**: The defense proposes the Court ask each juror the questions found in Exhibit B.

**Government:** The government has no objection to questions contained in Exhibit B. The government proposes that the parties may, but are not required, to submit questions in advance for any particular juror.  If submitting questions in advance, they should be submitted at least two days before the respective juror appears.  Regardless, the government suggests that the Court begin the questioning of each juror on topics of pretrial publicity, whether they have formed opinions about the case, and their views on the death penalty.

5.      **Joint**: The parties agree that each side should have approximately 10 minutes to question each prospective juror, with the understanding that some jurors may require less questioning and others more.  The parties should alternate who goes first in questioning the jurors.

**Government:** The government recommends a strict 10-minute time limit per side for follow-up questioning.  The government also proposes that, regardless of who goes first, each party have only one opportunity to question a juror, that leave of court must be obtained for any additional questioning (i.e., a second opportunity for follow-up), and that the Court should grant such leave sparingly and only for good cause.

6.      **Joint**: The parties ask that cause challenges be made after a prospective juror has been excused from the courtroom, and that the parties alternate who goes first in raising challenges for cause. Only jurors who have been excused by consent should be told they are excused.  Any jurors for whom a party objects to the cause challenge should not be excused until such time as the Court has ruled on any motions for reconsideration.

**Defense**: Any motions for reconsideration must be filed no more than 3 days after the transcript of the voir dire of the juror in question is available.

**Government**: Should either party anticipate a motion for reconsideration regarding the qualification/disqualification of a juror, they should identify any such jurors by the end of the court day on which that juror appeared in court and request expedited completion of the transcript for that particular juror.  Any motions for reconsideration must then be filed no more

than 24 hours after the transcript of the voir dire of the juror in question is available.

7.        **Defense**: The defense requests that it be granted an additional 12 peremptory challenges given the extensive pretrial publicity in this case, to which virtually every potential juror has acknowledged being exposed, and the impact of that publicity on jurors' prejudgments of the appropriate sentence in this case. Granting the defense an additional 12 challenges, for a total of 32 challenges, is also consistent with the 6-10 ratio for peremptory challenges in non-capital cases. *See* Fed. R. Crim. P. 24(b)(2).

        **Government**: The government objects to this request and asks for a briefing schedule on this issue.

8.        **Defense**: With the additional defense peremptory challenges, 76 qualified jurors will be necessary to complete peremptory strikes (52 peremptory challenges + 12 jurors + 6 alternates +6 peremptory challenges to alternates).

        **Government:** The government maintains that 64 qualified jurors are necessary to complete the strikes.

        **Joint**: The Court may elect to qualify additional jurors to allow for any last-minute contingencies.

9.        **Defense**: For peremptory strikes, all qualified jurors should be brought into the courtroom and be seated in order no less than two days after the last juror is qualified. The Court would then read a brief statement explaining this final stage of jury selection, ask the jurors questions related to media exposure and changed circumstances (allowing counsel to ask follow-up questions as appropriate),[1] and then excuse the jurors and request that they call the Court at a

---

[1] The parties proposes the Court ask the following questions:

- Since you were here last, have you read, seen or heard anything about this case including about the defendant Payton Gendron, the victims or their families, or anything else from any source?
- Since you were here last, have you done any kind of research, internet or otherwise, about this case, Payton Gendron, or the people involved in this trial, or posted anything online about this case or your jury service, including commenting on or "liking" items posted by others?
- Since you were here last, have you spoken to anyone or has anyone spoken to you about this case or Payton Gendron or the victims or their families? Including discussions with fellow prospective jurors?
- Since you were here last, have you overheard any discussion about this case or Payton Gendron or the victims or their families including discussions among fellow jurors?
- Since you were here last, has anything changed about your ability to serve as a juror in this case that you have not yet shared with the Court?

designated day and time to be advised of their status.  The parties would then exercise their peremptory strikes.

In order to permit the parties to perform comparative juror analysis and raise appropriate *Batson* motions, the prospective jurors provisionally selected as petit and alternate jurors and the jurors who were peremptorily struck by one of the parties will not be advised of their status or released from service at the conclusion of the parties exercising the peremptory strikes. The parties will have no less than 48 hours to file any *Batson* motions. After the Court rules on any *Batson* motions, the Court will identify the petit and alternate jurors who will serve and excuse the remainder.

**Government**: Once at least 64-70 jurors have been qualified and accepted by the parties, individual voir dire shall cease.  The Jury Administrator will provide a list of qualified prospective jurors in sequence order to the Court and parties.  The following business day, the parties will exercise peremptory challenges and the petit jury will be selected.  Using the list of prospective jurors, the parties will alternate going first in choosing whether to strike or pass each juror.  Each party may exercise 20 peremptory strikes.  *See* Fed. R. Crim. P. 24.  The parties will raise any *Batson* challenges contemporaneous to a peremptory strike.  Once a jury of 12 is selected, the parties will continue the process to select six alternate jurors.  When selecting alternate jurors, each party may exercise up to three peremptory strikes.  Any peremptory strikes not used in picking the petit jury may not carry over to be used in selecting the alternate jurors.  Once six alternate jurors are selected, any remaining prospective jurors will be excused and the jury selection process will be at a close.