UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v. 22-CR-109 (LJV)

PAYTON GENDRON,

Defendant.

**REPLY TO GOVERNMENT RESPONSE TO MOTION TO PRECLUDE EXPERT TESTIMONY OF FBI SSA MATTHEW YEAGER OR, IN THE ALTERNATIVE, TO COMPEL DISCOVERY PURSUANT TO FED. R. CRIM. P. 16(a)(1)(G)**

Payton Gendron, by and through his attorneys, respectfully submits this Reply to the government's Response in Opposition, ECF No. 638, to his Motion to Preclude Expert Testimony of FBI SSA Matthew Yeager or, in the Alternative, to Compel Discovery Pursuant to Fed. R. Crim. P. 16(a)(1)(G), ECF No. 599. Nothing in the government's Response alters the inescapable conclusion that its Rule 16 notice as to SSA Yeager is insufficient. Given the procedural posture of this case, the only appropriate remedy for the government's recalcitrance is exclusion of its expert's testimony.

**The Government Has Failed to Comply With its Discovery Obligations under Rule 16(a)(1)(G).**

In its Response, the government offers little substantive argument that its Rule 16(a)(1)(G) Notice complies with the requirements of the Rule, beyond its bald averment that "[t]he government's disclosure provides a complete statement of all opinions that will be elicited, the bases and reasons for those opinions, and SSA Yeager's qualifications to give those opinions." ECF No. 638 at 1-2. This claim is, "at best, an exaggeration." *United States v. Mrabet*, 703 F. Supp. 3d 442, 443 (S.D.N.Y. 2023) (describing government's claim that expert notice

complied with Rule 16(a)(1)(G), when court's examination of disclosure revealed that it failed to satisfy 2022 amendments to Rule).

The government first claims that it "satisfied its obligations" by stating that SSA Yeager will "testify to the meaning behind the terminology, symbology, ideological tenets, justification, reference, and phrases the defendant used." ECF No. 638 at 2. But that statement consists of precisely the sort of "broadly and briefly described categor[y]" of information found wanting in *Mrabet*, 703 F. Supp. 3d at 444. *See* ECF No. 599 at 2-3 (also quoting *United States v. Kwok*, No. 23 Cr. 118 (AT), 2024 WL 1773134, at *2 (S.D.N.Y. Apr. 24, 2024) (notice that "merely identif[ies] the general topics about which the expert will testify, rather than the expert's actual opinions," is insufficient). The government again fails to delineate the universe of "terminology, symbology, ideological tenets, justification, reference, and phrases" about which its expert proposes to testify, much less disclose the "meaning" that he will ascribe to each. *See also* ECF No. 638 at 3 (stating that its disclosure "identif[ied] a multitude of specific facts and statements that SSA Yeager reviewed and analyzed in coming to his conclusions," but failing to specify the "multitude" or state what those conclusions are).

The government then references its statement that SSA Yeager will testify "that the defendant's statements, writings, reading and viewing materials, other expressions, actions, and other evidence in this case are consistent with the adoption of a white supremacy extremist ideology, including a belief in the need to use violence to achieve white supremacy." ECF No. 638 at 2-3. While constituting an opinion of sorts, this statement is similarly opaque. The description of six general, and one entirely open-ended, categories of information that these vague conclusions may be based on fails to comply with the requirement that the notice set forth "the bases and reasons for" all opinions. Fed. R. Crim. P. 16(a)(1)(G)(iii). Nor does the statement

reveal the methodology that SSA Yeager purportedly used to probe Payton Gendron's consciousness and determine his "ideology" and "belief."

Certainly, resort to SSA Yeager's "extensive professional training and experience," ECF No. 638 at 3, is an inadequate substitute for the required statement of bases and reasons for his opinions. *See Mrabet*, 793 F. Supp. 3d at 444 (holding that reference to witness's "training, education, and experience, including his 37 years as a law enforcement officer," is "a patent evasion" of Rule 16 requirement that bases and reasons for opinions be disclosed); *United States v. Gentile*, No. 21-CR-54 (RPK), 2024 WL 3251702, at *3 (E.D.N.Y. Jun. 20, 2024) (statement that expert's opinions "are founded in his education, knowledge, and experience in the fund industry . . .  is an '*ipse dixit* of the expert from experience' statement that is inadequate to satisfy the Rule 16 standard") (quoting *Mrabet*). Accordingly, references to SSA Yeager's "17-year FBI career" and details thereof add no support for the government's argument that its notice is sufficient, except perhaps as to the separate requirement that it state the witness's qualifications. *See* Fed. R. Crim. P. 16(a)(1)(G)(iii).

The opinion of the district court in *United States v. Bowers*, No. 18-cr-00292-RJC, ECF No. 1272 (W.D. Pa. May 26, 2023), offers no assistance to the government either. That court was able to determine that the opinions of the expert in that case were "informed by . . . experiences that are sufficiently similar and sufficient in number." *Id.* at 20. Here, however, no such assessment is possible, as the government has failed to properly identify what its expert's opinions are.

**The Appropriate Sanction for the Government's Willful Failure to Comply With its Discovery Obligations is Preclusion of SSA Yeager's Testimony.**

In arguing against preclusion of SSA Yeager's testimony as the appropriate sanction, the government faults the defense for its "delay" in bringing its failures to its attention. *See* ECF No.

638 at 5-6. Of course, it is the government's responsibility to understand and satisfy its legal obligations. Additionally, the timing of the defense action clearly had no bearing whatsoever on the government's unwillingness to fulfill its obligation to disclose the information required by Rule 16(a)(1)(G)(iii).

Due to the unrelenting press of other litigation in this matter, and in light of the June 1, 2026, deadline for filing *Daubert* motions set by the Court, see ECF No. 433, defense counsel only began scrutinizing the government's disclosure in early April, 2026. When we did so, its inadequacy was apparent. We did not, however, simply wait until the deadline and move to preclude the expert from testifying. Rather, on April 21, 2026, we asked the government, in writing, to supplement its submission to conform to the Rule and enable us to timely file any appropriate challenges thereto. *See* Exhibit A (4/21/26 Letter from Defense Counsel to Government).

In the letter, defense counsel not only identified the deficiencies in the disclosure but also cited case law discussing the 2022 amendments to Rule 16 and spelling out its requirements. *See id.* The government offered no response until June 2, 2026, when it tersely declined to supplement its disclosure in any way. *See* Exhibit B (6/2/2026 Letter from Government to Defense Counsel). Indeed, although the Motion to Preclude Expert Testimony was filed June 17, 2026, the government still has not provided any further information regarding SSA Yeager's proposed testimony.

The government's decision to take this position, even when directly confronted with authority demonstrating that it is legally unsupportable, cannot be characterized as anything other than willful. Apparently, it assumed that the Court would tolerate such "shoddy noncompliance with amended Rule 16," *Mrabet*, 703 F. Supp. 3d at 445, even though district

courts in this circuit have been demanding better for several years, *see id.* (putting government "on notice" that in the future it would be required to produce its Rule 16 expert disclosures prior to trial for court to "timely assess their adequacy").

In its Response, the government asserts that Payton Gendron "has failed to articulate how he has been prejudiced by the alleged deficient disclosure," and included in his Motion only a single "conclusory sentence" on the subject. ECF No. 638 at 7. To the contrary, the Motion notes the procedural posture of the case—i.e., the imminence of jury selection—as well as the mountain of other work that the defense team must complete at this juncture, including review of over 1,000 lengthy jury questionnaires; responses and replies to extensive motions in limine; and now amendment of the penalty phase jury instructions in light of the opinion of the Second Circuit on July 27, 2026, to say nothing of preparing its case for both guilt and sentencing phases of trial. *See* ECF No. 599 at 7-8. Requiring the defense to also prepare and litigate a *Daubert* challenge to SSA Yeager's testimony would unfairly place yet more strain on the team's limited resources—an outcome that the Court's June 1, 2026, deadline for such motions was designed to avoid.

Contrary to the government's assertion, the unscientific, experiential nature of SSA Yeager's purported expertise in no way decreases the necessity for an expert disclosure that fully complies with Rule 16(a)(1)(G)(iii), or lessens the complexity of a *Daubert* challenge thereto. *See* ECF No. 638 at 7-8. In fact, the opposite is true. The "'exactness of hard science methodologies,'" *id.* at 7 (quoting *United States v. Joseph*, 542 F. 3d 13, 21 (2d Cir. 2008)), at least guarantees a standard framework in which the reliability of an expert's analysis and conclusions can be assessed. Where, as here, the testimony is based upon anecdotal information picked up in ad hoc fashion over the course of an individual's professional career, the task of

ensuring that there is a reliable basis for his conclusions beyond mere *ipse dixit* is slippery and amorphous. Defense counsel would be required, at a minimum, to consult extensively with their own experts in order to conduct such an assessment and prepare an adequate response.

As the government notes, SSA Yeager "will testify about the definitions and meanings of [the] defendant's words, statements, and references, and how they connect with other evidence." ECF No. 638 at 7. Of the examples of such words and phrases included in the government's notice, many are indeed self-explanatory as a general matter. *See* ECF No. 599 at 4 n.1. How SSA Yeager claims to know what Payton Gendron meant by them, however, or how he thinks they relate to unspecified "other evidence," "the adoption of a white supremacy extremist ideology," and the achievement of white supremacy; what is "common among white supremacists;" and, indeed, what exactly is "white supremacy" in his mind, ECF No. 638 at 2-3, remain a mystery. Clearly, the testimony contemplated by the government goes well beyond merely defining terms. More than that, however, the defense cannot determine.

The government has failed to provide the information required by Rule 16, thereby preventing the timely filing of a *Daubert* motion, and thus it cannot reasonably claim to have "complied" with its discovery obligation in a "timely" manner. ECF No. 638 at 5. That it filed *something* on the deadline set by the Court is meaningless when that 'something' was entirely inadequate to serve its intended purpose. It is now too late for the government to remedy the deficiency without unfair prejudice to the defense. Pursuant to Rule 16(d)(2)(C), the Court should therefore preclude the government from introducing the testimony of SSA Yeager.

Respectfully submitted,

Dated: August 31, 2026
Buffalo, New York

*s/Sonya A. Zoghlin*
Sonya A. Zoghlin
Assistant Federal Public Defender

*s/MaryBeth Covert*
MaryBeth Covert
Senior Litigator

*s/Julie Brain*
Julie Brain
Attorney at Law

*s/Theresa M. Duncan*
Theresa M. Duncan
Law Office of Theresa M. Duncan LLC