IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v. 22-CR-109-V

PAYTON GENDRON,

Defendant.

**GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT'S SUPPLEMENTAL MOTION TO STRIKE AGGRAVATING FACTORS (DOCKET NO. 672)**

**THE UNITED STATES OF AMERICA**, by and through its undersigned attorneys, of counsel, submits this brief in opposition to the defendant's supplement to his motion to strike aggravating factors. Docket No. 672.

The Second Circuit held that the injury to surviving victims and racial animus aggravators are permissible under the Federal Death Penalty Act. *See United States v. Gendron*, 183 F.4th 162 (2d Cir. 2026). The defendant now seeks to supplement his original motions, asking this Court to again strike or preclude virtually all evidence supporting those aggravators. For the reasons set forth below, and those detailed in the government's original responses to the defendant's motions to strike aggravating factors, Docket Nos. 289, 350, and 411, the Court should deny each of the defendant's requests.

## LAW AND ARGUMENT

### A. The Court Should Deny the Defendant's Motion to Strike or Consolidate the Injury to Surviving Victims Factor.

The defendant acknowledges the Second Circuit's holding that the injury to surviving victims aggravator was permissible under the FDPA. He therefore strains credulity to suggest

that the aggravator is still improper under the Eighth Amendment, at least as it relates to emotional and psychological harm the defendant caused the surviving victims. He suggests that what may be relevant and probative of a death sentence under the FDPA is not so under the Eighth Amendment. Specifically, he argues, among other things, that the evidence of emotional and psychological harm lacks sufficient gravity, *see*, *e.g.*, Docket No. 672 at 6-8, and that emotional and psychological injuries to surviving victims were unforeseeable to him when he opened fire on patrons and employees in a crowded grocery store. *See id*. at 8.

The defendant's claim is foreclosed by the Second Circuit's opinion. Citing the government's aggravating factor—including that the defendant "'caused serious physical *and* emotional injury, *and* severe psychological impact to individuals who survived' the attack,"—the court stated: "The surviving victims factor is clearly relevant." 183 F.4th at 168 (quoting government's notice of intent to seek the death penalty, Docket No. 125 (emphasis added)). The court made no distinction between the aggravator's reference to physical, emotional, or psychological injuries. Instead, the court emphasized the broad scope of aggravating factors permitted by the FDPA. *See id*. ("Such factors include both those specifically enumerated in the FDPA's sixteen-item list and '*any other aggravating factor* for which notice has been given.'" (quoting 18 U.S.C. § 3592(a)(2) (court's emphasis)). The court went on to explain that "an aggravator is 'surely relevant' if it helps the jury 'consider all of the circumstances of the crime in deciding whether to impose the death penalty' and 'direct[s] the jury to the individual circumstances of the case.'" *Id*. (quoting *Jones v. United States*, 527 US. 373, 401-02 (1999)). In doing so, the court cited Supreme Court case law explaining how the Eighth Amendment limits non-statutory aggravating factors. *See id.*

Here, not only has the Second Circuit approved of this aggravating factor as alleged, but it is also plain that the emotional and psychological injuries the defendant inflicted upon the surviving victims are "circumstances of the crime" and "direct the jury to the individual circumstances of the case." *Jones*, 527 U.S. at 401-02. This is what is required of an aggravating factor by both the FDPA and the Eighth Amendment. Whether the victims were black or white, and whether the defendant sought to target them or not, the fact remains that, in the course of his murderous conduct, the defendant shot three people who have suffered tremendous physical *and* emotional *and* psychological injuries. It was certainly foreseeable to the defendant that in committing a mass attack upon a crowded grocery store with a semi-automatic rifle, persons would be both killed and injured, and those injured would be scarred physically, emotionally, and psychologically. The jury must hear this evidence, and the government intends to present the evidence from the surviving victims, themselves—not through another family member.

The defendant's arguments relating to the gravity of the emotional and psychological harm are, in the least, insulting to the surviving victims. The government has outlined to the defense the emotional and psychological injuries suffered by these victims, and they need not be laid out again here. As recognized by the Second Circuit, the infliction of these injuries was clearly a "circumstance of" the capital offenses and they undoubtedly aggravate the defendant's conduct. This is nothing like suggesting that, as the defendant cites from *Cuff*, the defendant's conduct was worse because it was committed on a certain day of the week, or even that it was committed with a firearm.[1] Rather, as recognized by *Bowers* in rejecting a

[1] The fact that a crime was committed with a firearm could, in fact, be aggravating. Indeed, Congress has found that use of a firearm to commit murder is aggravating in that it made several crimes of violence that are not otherwise punishable by death capital offenses if death is caused by the use of a firearm. *See* 18 U.S.C. § 924(j).

similar challenge to a surviving victims aggravator, "evidence of non-physical injuries suffered by those victims who survived the attack[] clearly will have some bearing on the Defendant's personal responsibility and moral guilt." *United States v. Bowers*, No. 18-292, 2023 WL 3979375, *10 (W.D. Pa. June 13, 2023).

Though more appropriate for a motion *in limine* or timely objection at trial, the defendant's undue prejudice arguments are also unpersuasive. To succeed on this claim, he must establish "unfair" prejudice. *See United States v. Lujan*, 603 F.3d 850, 859 (10th Cir. 2010) (holding the FDPA "permits balancing of probative value against '*unfair* prejudice,' not all prejudice"). He cites no authority from federal capital cases in support of this argument. Indeed, to the contrary, in affirming the admission of testimony from surviving victims in other mass-casualty cases, courts have at least implicitly recognized the high probative value of such evidence. *See*, *e.g.*, *United States v. McVeigh*, 153 F.3d 1166, 1216 (10th Cir. 1998) (affirming introduction of testimony from three surviving victims and noting the government could have called numerous others to testify "about the 168 victims who died in the blast *and the impact of the explosion on the numerous injured victims*" (emphasis added)); *United States v. Bin Laden*, 126 F. Supp. 2d 290, 300 (S.D.N.Y. 2001) (recognizing "deleterious effect" of embassy bombing upon both surviving and deceased victims and, though consolidating factors, permitting victim impact factor to "include *any* 'injury, harm, and loss'" inflicted upon surviving victims without distinguishing physical, emotional, or psychological harms (emphasis added)).

Here, the defendant knowingly shot and wounded three surviving victims, and their emotional and psychological injuries are to be expected. They are unquestionably relevant to the defendant's culpability. He will also have broad latitude to present mitigation at trial.

There is, therefore, nothing "unfair" in allowing the jury to consider evidence of the emotional and psychological harm he caused to his surviving victims.

Accordingly, and for additional reasons set forth in the government's initial response to the defendant's motion to strike or limit victim impact factors, Docket No. at 350 at 38-42, this Court should deny the defendant's motion to strike the "injury to surviving victims" aggravator.

What is more, given the Second Circuit's strong statements regarding the relevance of this aggravating factor, this Court should reject the defendant's request to merge it with the victim impact aggravator. Though this was a compromise solution adopted in *Bin Laden*, it has not been adopted by numerous other courts hearing mass-casualty cases.

**B. The Court Should Deny the Defendant Motion to Strike or Amend the Racially Motivated Killing Factor and Deny the Defendant's Request to Limit Evidence In Support of this Factor.**

The defendant moves the Court to require the government to redraft this factor. He also renews arguments to limit the evidence that may be introduced in support of this factor. But as the Court has acknowledged, the evidence the defendant seeks to preclude is all probative of his motive and intent.[2] And as the Second Circuit made clear, the jury "may . . .

[2] When arguing the defendant's motion to strike the incitement aggravator, the Court and counsel had the following exchange:

MR. WARBEL: So, and the evidence [in *Wisconsin v. Mitchell*, 508 U.S. 476 (1993)] was just . . . his racial animus, statements of his racial animus.
THE COURT: And that comes in.
MR. WARBEL: Yes.
THE COURT: Of course.
MR. WARBEL: To prove his motive.
THE COURT: Yes.

Tr. June 17, 2025, at 57:18-25.

weigh [the] defendant's racist motive," because that "motive plays a starring role at sentencing." 183 F.4th at 169. Against this backdrop, and for reasons stated below and more fully in the government's prior briefing, *see* Docket No. 289 at 41-57, this Court should deny the defendant's motion.

The government need not redraft this aggravating factor. The Second Circuit affirmed the factor as written. In doing so, the court recognized the independent significance of the first clause of the factor, which points to the defendant's "bias, hatred, animus, and contempt" regarding Black people, which the court found to be "neutral terms describing internal states of mind." *Id*. at 170. The court also explained that "a jury evaluating a racist motive is simply analyzing a defendant's particularly culpable, hate-driven rationale." *Id*. Thus, the court noted (as did the government in its initial briefing, *see* Docket No. 289 at 42), that the aggravating factor alleged in this case is "virtually identical to" bias-motivation factors that were employed in "similar hate-crimes cases." *Id*. (referring to *Bowers* and *Roof*).

The defendant also misses the mark by suggesting strict limits on the presentation of evidence that supports this factor. As the defendant recognizes, the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." Docket No. 672 at 3 (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 486, 489 (1993)). Indeed, this principle is "beyond cavil." *United States v. Salameh*, 152 F.3d 88, 112 (2d Cir. 1998). Here, the defendant's racist propaganda, which is replete throughout his manifesto and Discord writings, is highly probative of his motive and intent to kill as many black people as possible. Again, as the Second Circuit held, this evidence demonstrates the defendant's "internal state of mind" and his "particularly culpable, hate-driven rationale" for his attack. 183 F.4th at 170.

Resisting this straightforward application of settled law, the defendant argues that "a jury may only consider evidence that is narrowly tailored towards, and directly probative of, the permissible purpose." Docket No. 672 at 3. But he cites no authority for this claim. Instead, the defendant seeks to smuggle in First Amendment principles to limit evidence of motive, just as he did in moving to strike the incitement aggravator. The Second Circuit rejected this effort in a footnote, noting simply that it "was . . . misplaced." *Gendron*, 183 F.4th at 169 n.3. The defendant offers no reason why evidence of his racial motive should be treated differently.

The defendant's racist beliefs are why he committed this crime. That is exactly what the "racially motivated killings" aggravating factor seeks to establish: that the defendant's conduct is more reprehensible—and, thus, more deserving of death—because it was motivated by racial bias and hatred. Stated another way, and paraphrasing the Second Circuit, "the government is seeking the death penalty not because Gendron said terrible things or is an avowed white supremacist, but because he murdered people" because of, in part, his racial hatred. *Id.* at 169.

To best weigh this factor, the jury must be privy to *all* of the defendant's statements demonstrating his bias and hatred. *See United States v. Fell*, 360 F.3d 135, 143 (2d Cir. 2004) ("[T]he Supreme Court has . . . made clear that in order to achieve . . . heightened reliability, *more* evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors.") (quotation marks omitted; emphasis in original). This would include direct statements that he specifically hated and intended to kill Black people, but also his posting or re-posting of racist and bigoted memes and statements of others, which he adopted and which likewise are probative of his general racist motive for committing his attack.

Indeed, during argument on the defendant's motion to strike this aggravating factor, the defendant conceded that "the fact that these crimes were committed because of the race of the victims is absolutely gonna come in in." Tr. June 17, 2025 at 46:16-18. The Court agreed. *See supra* at note 2. Now that the Second Circuit has opined on the relevance and propriety of this racial motivation factor, the probative value of the evidence of the defendant's racist motives is unquestioned. Accordingly, and for reasons more fully discussed in the government's prior briefing, *see* Docket No. 289 at 43-48 (discussing First Amendment issues) and 48-51 (discussing probative value), which are fully incorporated here, this Court should deny the defendant's motion to limit the government's evidence in support of the "racially motivated killings" aggravating factor.

Finally, the defendant moves the Court to limit the government from presenting evidence of the defendant's racist motive for committing his attack that predated his 18th birthday. In response, the government incorporates by reference its prior briefing on this issue, as if fully set forth herein. *See* Docket No. 289 at 51-54.

## **CONCLUSION**

For the reasons set forth above, and those more fully stated in prior briefing that is cited above, the government requests that this Court deny the claims renewed in the defendant's supplement.

DATED: September 8, 2026
Buffalo, New York

MICHAEL DIGIACOMO
United States Attorney
Western District of New York

BY: *s/BRETT A. HARVEY*
*s/CRAIG R. GESTRING*

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

BY: *s/KHALIL H. QUINAN*
Trial Attorney

*s/CHARLES M. KRULY*
*s/MAEVE E. HUGGINS*
*s/PIERRE RICHARD ANTOINE*
Assistant United States Attorneys
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202

BY: *s/MICHAEL S. WARBEL*
Trial Attorney
Criminal Division
U.S. Department of Justice
1301 New York Avenue NW,
Ste. 505
Washington, DC 20530
(202) 514-5605
Michael.Warbel@usdoj.gov

Civil Rights Division
U.S. Department of Justice
150 M Street NE, Suite 700
Washington, DC 20002
(202) 262-5409
Khalil.Quinan@usdoj.gov