UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

PAYTON GENDRON,

Defendant.

22-CR-109-LJV
DECISION & ORDER

Last year, this Court issued an order in this case, *United States v. Gendron*, 2025 WL 5072296 (W.D.N.Y. Apr. 22, 2025), establishing the procedures that will be followed in connection with evidence of "mental disease or defect or any other mental condition of the defendant bearing on . . . punishment in a capital case," *see* Federal Rule of Criminal Procedure 12.2 ("Rule 12.2"). On June 22, 2026, the defendant, Payton Gendron, submitted a notice of intent to introduce expert evidence relating to his mental condition on the issue of punishment. Docket Item 609. The government then moved to conduct mental health examinations of Gendron, Docket Item 621; Gendron responded, Docket Item 625; the government replied, Docket Item 633; and Gendron filed a sur-reply, Docket Item 645. The Court heard oral argument on July 30, 2026, and decided certain issues on the record. *See* Docket Items 649 (minute entry) and 658 (transcript).

The Court also ordered the government to provide notice of its proposed testing. *See* Docket Item 649. The government filed that notice on August 7, 2026, Docket Item 652; Gendron responded, opposing some of the proposed testing, Docket Item 668; and

the government replied on August 21, 2026, Docket Item 671.[1] The government's notice included a declaration from one of its experts, [redacted], Docket Item 652 at 3-8,[2] and Gendron's reply included a declaration from one of his experts, [redacted], Docket Item 668A.

This order memorializes the Court's earlier decisions and resolves pending issues.[3] The Court has considered the parties' briefs and arguments—including those relating to the Court's earlier establishment of Rule 12.2 procedures, Docket Items 270, 279, and 298—and for the reasons that follow, grants in parts and denies in part the government's motion to conduct mental health examinations of Gendron.

---

[1] The Court grants the government's motion to file a reply and treats the proposed reply as the government's reply.

[2] Page numbers in docket citations refer to ECF pagination.

[3] The government's motion to conduct mental health examinations stated in a footnote that the government intended to provide its rebuttal experts with the "video recording of [Gendron's] custodial statements after [his] arrest." Docket Item 621 at 29 n.5. Defense counsel objected. Docket Item 625 at 36-38. At oral argument—without objection from defense counsel—the Court ruled that the government could show the video to its experts but that it could not play the audio of the statements. *See* Docket Item 658 at 56-57. The Court granted the government's request to submit additional briefing on this issue. *See id.* at 57.

The government filed its supplemental memorandum on August 19, 2026, Docket Item 670. In the memorandum, the government explained that "[i]n 2023 and 2024, [when] the government engaged the services of its mental health experts[, it] provided them with discovery materials that included [Gendron]'s custodial statements." *Id.* at 2 n.1. Gendron filed his response on September 3, 2026, Docket Item 677, and the government informally reserved its right to file a reply. The Court will issue a separate ruling addressing this issue when it is fully briefed. In the interim, despite any earlier disclosure of the video with audio to the experts, the Court's most recent ruling applies: The government experts may review only the video, not the audio.

## DISCUSSION

Under Rule 12.2, defendants must give notice of their "inten[t] to introduce expert evidence relating to a mental disease or defect or any other mental condition . . . bearing on . . . the issue of punishment in a capital case." Fed. R. Crim. P. 12.2(b). "[T]he court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court." *Id.* (c)(1)(B). The results of any government examination "must be sealed and must not be disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition." *Id.* (c)(2).

Gendron gave notice that he intended to present four experts: [redacted] Docket Item 609 at 1-2.

The defense experts administered the following tests: [redacted]

[redacted]

## I. EXAMINATIONS

The procedures under Rule 12.2 are designed to give the government an opportunity to rebut any defense evidence related to the defendant's mental condition. *See United States v. Williams*, 731 F. Supp. 2d 1012, 1017 (D. Haw. 2010) ("When a defendant raises a defense that relies on an expert examination of his mental condition, the Fifth Amendment does not protect him from being compelled to submit to a *similar examination* conducted on behalf of the prosecution or from the introduction of evidence from that examination for the purpose of *rebutting* the defense."); *see also* 18 U.S.C. § 3593(c) ("The government . . . shall be permitted to rebut any information received at the [sentencing] hearing[] and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any . . . mitigating factor."). With that principle in mind, and balancing the interests of both sides, the Court will allow the government's experts to perform the following tests.

A. [redacted] *See* Docket Item 658 at 13-15. Either of the proposed psychiatrists, [redacted], *see* Docket

Item 621 at 2-3, may complete this testing.[4] The government's request that the psychiatrists observe each other's examinations, *see id.* at 6, is denied as moot.

B. The government may conduct [redacted] As requested by the government, *see id.* at 3, [redacted].

C. [redacted]. As requested by the government, *see id.*, [redacted] may complete this testing. The Court approves the following tests:

- [redacted] that a defense expert administered, *see* Docket Item 668A at 2, 6, and they therefore are appropriate rebuttal testing.
- [redacted]. *See*

[4] The government may propose a different expert, but it must provide notice to defense counsel and the Court and the Court must approve that choice.

*id.* at 3, 5. [redacted] Docket Item 652 at 7, and, as [redacted] also concedes, those subtests "reasonably counter results from the [redacted]," which a defense expert administered, Docket Item 668A at 2-3, 6. [redacted][5] therefore are appropriate rebuttal testing.

- [redacted] Docket Item 652 at 6-7. [redacted] says that it [redacted] *Id.*; *see also id.* at 3 (explaining that the [redacted]).

[redacted] covers topics that may be appropriate rebuttal despite the test's

---

[5] [redacted] proposed administering [redacted] are appropriate rebuttal tests, and the Court's ruling applies only to those subtests.

more comprehensive nature. If some or all the testing ultimately is not responsive to Gendron's evidence, defense counsel may argue that it cannot be used. And the defense experts may complete additional testing if necessary.

- [redacted] Docket Item 652 at 6-7. [redacted] *See* Docket Item 668A at 4. [redacted]." *Id.* at 9-10.

  The government may administer all three tests. If it ultimately seeks to introduce results [redacted], defense counsel may renew their objection as well as cross-examine and offer sur-rebuttal testimony about that test's alleged shortcomings.

The Court denies the government's request to complete the following tests: [redacted] *See* Docket Item 652 at 6-8. As the

Court explained at the oral argument, the government may "tell the story that rebuts the [d]efense's story," but it is not entitled to tell the "whole story" about Gendron's mental health. *See* Docket Item 658 at 24. The Court finds that these two tests are designed not to rebut evidence from the defense but to tell the "whole story" about Gendron's intelligence and personality and therefore are not appropriate rebuttal tests.[6]

## II. EXAMINATION LOCATION, RECORDING, AND LIVE FEED

The examinations will take place at the facility where Gendron is housed. The government's request to examine Gendron at the courthouse, *see* Docket Item 621 at 19-20, is denied without prejudice. If Gendron is moved from the facility where he currently is housed—where the defense experts conducted their testing, *see* Docket Item 658 at 38—the government may renew its request.

The government's contested request for video recording of clinical interviews—but not of the testing—is granted. *See* Docket Item 621 at 24-25. Defense counsel argue that the government will gain an "outsize and unjustified advantage of being able to play for the jury portions of the recording that it deems particularly prejudicial and supportive of its case for death." *See* Docket Item 625 at 16-17. But the government agreed at oral argument that it would not attempt to introduce any recordings as

[6] [redacted] asserts that [redacted] *See* Docket Item 652 at 4. [redacted] *Id.* at 7. The government may cross-examine the defense experts about alleged deficiencies in their examinations and testing and during rebuttal, the government experts may testify about tests that were not, but in their opinion should have been, performed.

evidence. *See* Docket Item 658 at 43. Given that concession, the Court will permit recording of the interviews because this "will facilitate evaluations of the experts' methods, inquiries, and alleged errors, and will ensure that any statements by [Gendron] can be placed in their full context." *See* Docket Item 621 at 25 (government's motion); Docket Item 658 at 39 (defense counsel's agreeing that "transparency is valuable and that both sides having access to information about how the examination[]s [are] conducted would be important and meaningful and would result in a better presentation . . . to the jury").

Gendron has renewed his request for defense counsel to view a live feed of the examinations. *See* Docket Item 625 at 16. The Court previously denied this request, *Gendron*, 2025 WL 5072296 at *1, and the Court sees no reason to reverse course. The Court agrees with the government that "a live feed [would] give[] . . . [d]efense [counsel] a preview of [the government's] expert analysis," which Rule 12.2 does not contemplate. *See* Docket Item 658 at 40; Fed. R. Crim. P. 12.2(c)(2) (requiring "[t]he results and reports of any examination" by a government expert to be "sealed" and "not . . . disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition").

What is more, as defense counsel acknowledged at oral argument, the Court's allowing recording of the interviews will provide them the same information that they seek through the live feed.[7] *See* Docket Item 658 at 42-43.

---

[7] At oral argument, defense counsel raised the idea of designating another expert who was not part of the defense team to observe a live feed. *See* Docket Item 658 at 44. Such an expert would communicate his or her observations to defense counsel only

## III. QUESTIONING ABOUT CRIME

In its motion for testing, the government argued that its experts "should . . . not be prohibited during their evaluations from questioning [Gendron] about his offense conduct." Docket Item 621 at 20. In his sur-reply, Gendron explained that he "sought no restriction upon questioning [him] about the offense conduct." Docket Item 645 at 2. The Court therefore permits the government experts to question Gendron about the offense conduct, subject to the restrictions described below.

## IV. INSTRUCTIONS FOR EXPERTS

Defense counsel ask the Court to give certain instructions to the government experts. *See* Docket Item 625 at 14-15. The government did not object to these instructions in its reply. *See generally* Docket Item 633. The Court finds that the requested instructions comport with Rule 12.2, and in particular its prohibition against admitting into evidence certain expert statements. The rule precludes expert testimony about any "statement made by a defendant in the course of any examination. . . [or] other fruits of the statement" for use against the defendant, "except on an issue regarding mental condition on which the defendant . . . has introduced expert evidence." Fed. R. Crim. P. 12.2(c)(4).

The Court therefore grants Gendron's request and issues a modified version of his proposed instructions below. The government is responsible for conveying this decision and order—including these instructions—to its experts:

---

if the jury found Gendron guilty of a capital crime and Gendron confirmed his intent to introduce mental health evidence during the penalty phase. *See id.* Counsel agreed that—as with the live feed request—a recording would render this option unnecessary, *see id.*, and the Court therefore denies this request.

The sole purpose of the government's rebuttal examinations must be to confirm or rebut expert mental health testimony presented by the defense as outlined in the Rule 12.2 Notice, Docket Item 609. Although the experts may question Gendron about the offense conduct, that questioning is permissible only to confirm or rebut the expert mental health testimony presented by the defense. The government's examinations shall not be used to search for any motive for the alleged crimes and shall not be used to search for evidence to support the government's alleged aggravating factors.

## CONCLUSION

The government's motion to conduct mental health examinations of Gendron, Docket Item 621, is GRANTED IN PART and DENIED IN PART for the reasons explained above.[8]

SO ORDERED.

Dated: September 4, 2026
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

[8] The government's motion also requests disclosure of certain records. *See* Docket Item 621 at 8-9. The Court made detailed rulings at the oral argument about those requests and has issued two related orders requiring the facilities where Gendron is and has been housed to disclose records. *See* Docket Item 658 at 45-54; Docket Item 646; Docket Item 653.