UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

PAYTON GENDRON,

Defendant.

22-CR-109-LJV
ORDER

## DECORUM ORDER

To ensure that the trial and related proceedings in this matter are conducted in an orderly manner conducive to a fair adjudication, it is ORDERED that:

### Schedule

1. Jury selection and trial will begin on **October 13, 2026**, in the United States District Court for the Western District of New York, Robert H. Jackson Courthouse, 2 Niagara Square, Buffalo, New York.
2. Jury selection will begin with voir dire on that date in the Niagara Courtroom, 8th Floor West (“8W”).
3. Evidence will be presented at a trial scheduled to commence immediately upon completion of jury selection in the Erie Courtroom, 9th Floor West (“9W”).
4. Jury selection and trial will generally be held Monday through Thursday from 9:00 a.m. to 5:00 p.m. There will generally be a lunch break from 12:30 p.m. to 1:30 p.m., as well as shorter mid-morning and mid-afternoon breaks.
5. Jury selection and trial will not be held on court holidays and December 2-3.
6. This schedule is subject to change as conditions warrant.

**Courthouse Information**

7. The courthouse is open to the public from 7:30 a.m. to 5:00 p.m., and for any extension of those hours necessary to accommodate court proceedings. All visitors should produce photo identification and must pass security screening at the security checkpoint to enter the courthouse.

8. Electronic devices, as defined in Amended General Order 161 and the Pilot Media Plan, are prohibited in the courthouse, except as provided in this order, other court orders, or in the Pilot Media Plan.[1]

9. "[M]ember[s] of the Bar of [the Western District of New York], acting in [their] professional capacity . . . and who possess[] a valid Court-issued Identification Card, non-lawyer professionals assisting [such] member[s] of the Bar . . . [,] attorney[s] with the United States Attorney's Office, . . . attorney[s] with the Federal Public Defender's Office, or . . . attorney[s] admitted *pro hac vice*, may bring [electronic devices] into the [c]ourthouse[] . . . for [their] own use." WDNY Amended General Order No. 161, ¶ 6.

10. Court staff and Credentialed Media—as defined and explained further in paragraphs 37-38—may have electronic devices in the courthouse but not in any courtroom.

11. The Clerk's Office is authorized to provide a live feed transmission of the jury selection and trial proceedings to any overflow spaces and any designated media room as detailed in this order. For the purposes of this feed, a court-controlled

---

[1] The Pilot Media Plan is available on the Western District of New York website: https://www.nywd.uscourts.gov/sites/nywd/files/WDNY%20Pilot%20Media%20Plan.pdf

closed-circuit video camera will be fixed on the Court, counsel, and witnesses. The camera will not focus on potential jurors or jurors.

12. Aside from the live feed transmission described in paragraph 11, live broadcasting is prohibited from anywhere inside the courthouse. *See* WDNY Pilot Media Plan, ¶ 6. Re-broadcasting any live feed transmission is prohibited as well.

**Courtroom Information**

13. Attendees in the main jury selection courtroom, the main trial courtroom, and any overflow courtrooms may not talk, gesture, or make any noise in a way that is disruptive to the proceedings or that distracts jurors, witnesses, or other observers. Attendees in the main jury selection courtroom and the main trial courtroom should remain seated until the Court recesses.

14. No one in the courthouse may wear or carry any clothing, buttons, or other items with any message or symbol addressing any issue related to this case. This includes but is not limited to any messages or symbols in support of or against capital punishment or depicting or referring to the defendant or any victims. Representatives of the United States Marshals Service are empowered to enforce this rule.

15. Any law enforcement officer who will testify may wear his or her law enforcement uniform on any day that he or she testifies. Otherwise, law enforcement officers who are observing trial proceedings in the main trial courtroom may not wear their law enforcement uniforms.

16. No food or beverage is permitted in any courtroom, except that counsel, jurors, court staff, and witnesses will be provided water.

17. No electronic devices of any kind will be permitted inside any courtroom, except that attorneys of record, ancillary legal support staff, court staff, and court security staff may have cell phones, tablets, laptop computers, and other digital or electronic devices for use for trial purposes, and provided that any audio, video, or image-recording functions on those devices are not used. Attorneys of record and ancillary legal support staff may use electronic devices only in the well of the courtroom.

18. The main jury selection or trial courtroom and any overflow courtrooms will open at 8:00 a.m. and close within thirty minutes of proceedings ending for the day.

**Main Jury Selection Courtroom**

19. Up to 10 seats will be reserved for victims and their families[2] and up to 10 seats will be reserved for Payton Gendron's family and those supporting him.[3]

20. Up to 5 seats will be reserved for Credentialed Media and sketch artists.

21. Up to 5 seats will be reserved for the general public on a first-come, first-served basis.

---

[2] The Court therefore grants the government's request—made on the record at the oral argument on September 8, 2026—for 10 seats for victims and their families. *See* Docket Item 688 at 19. Together with the overflow courtroom for this group as described in paragraphs 34-35, the Court finds this allocation of seating consistent with the Crime Victims' Rights Act, *see* 18 U.S.C. § 3771(a)(3) (describing victims' "right not to be excluded from any . . . public court proceeding").

[3] During jury selection, the government and defense teams will be responsible for escorting attendees of their respective sections into the courtroom.

22. The reserved seats described in paragraphs 19-21 will be the only seats available in the gallery during jury selection. Any unused reserved seats will remain reserved for the respective groups unless the Court orders otherwise.

23. The court will provide overflow courtrooms as described more fully below.[4]

24. The allocation of seats and availability of overflow space are subject to change at any time.

**Main Trial Courtroom**

25. There are approximately 89 total seats in the gallery of Courtroom 9W (Erie Courtroom) where trial will take place.

26. Up to 36 seats—specifically, the three rows in the gallery behind the government's counsel tables—will be reserved for victims and their families;[5] up

[4] The Court denies without prejudice defense counsel's request to allow "only the Court, court staff, and members of defense and prosecution teams" in the courtroom during jury selection, Docket Item 637 at 2; *see also* Docket Item 669. *See United States v. King*, 140 F.3d 76, 83 (2d Cir. 1998) ("Voir dire access limitations are properly invoked only where circumstances demonstrate their need, and, even then, any limitation must be narrowly drawn and supported by findings, after alternatives have been considered." (italics omitted)). Rather than fully close the courtroom to spectators, the Court finds that limiting the number of spectators as described in paragraphs 19-21 is "narrowly drawn" and necessary to manage the courtroom efficiently and to promote juror candor. *See id.*

To address defense counsel's concern about "accommodat[ing] jurors who wish to discuss certain matters in private," Docket Item 669 at 1, if the Court grants such requests, it will clear the courtroom except for the government and defense legal teams. This procedure will ensure that all attorneys and Payton Gendron can observe and hear jurors' answers. The live feed in the overflow courtrooms will play without audio during that time.

[5] The Court finds that because victims have a statutory "right not to be excluded from any . . . public court proceeding" and are to be treated "with respect for [their] dignity and privacy," *see* 18 U.S.C. § 3771(a)(3), (8), there exists an overriding interest and a substantial reason to allocate 36 seats for victims and their families.

to 9 seats—specifically, the row in the gallery behind defense counsel's tables—will be reserved for Payton Gendron's family and those supporting him.[6] The Court will provide signs labeling these rows. The government and defense teams will be responsible for determining whether attendees meet the criteria to sit in their respective rows.

27. Approximately 12 seats will be reserved in the gallery for Credentialed Media and sketch artists.

28. Any remaining seats in the gallery will be available to the general public on a first-come, first-served basis. Any unused reserved seats will remain reserved for the respective groups unless the Court orders otherwise.

29. The Court will provide overflow courtrooms as described more fully below.

30. The allocation of seats and availability of overflow space are subject to change at any time.

---

[6] The number of seats per side is based on estimates and the requests of counsel—defense counsel requested two rows (18 seats), and the government requested five rows (50 seats). The number of seats are subject to change, and additional seats will be allocated to Payton Gendron if needed.

As is standard, the row within the well behind the government's counsel tables and defense counsel's tables will be available for the government's and defense counsel's respective legal teams. This row has approximately nine seats per side.

**Overflow Courtroom for General Public**

31. Overflow seating for the general public will be available in Courtroom 9E (Buffalo Courtroom) during jury selection and trial. A live audio and video feed from jury selection and trial will be provided.

32. The overflow courtroom for the general public has approximately 74 seats. The courtroom will be filled on a first-come, first-served basis.

33. The overflow courtroom for the general public shall be monitored by a Court Security Officer to ensure compliance with the Court's orders.

**Overflow Courtroom for Victims and Their Families**

34. Overflow seating for victims and their families will be available during jury selection and trial.[7] A live audio and video feed from jury selection and trial will be provided in that space.

35. The overflow courtroom for victims and their families has approximately 60 seats and will be filled on a first-come, first-served basis.

[7] Given the number of victims and the nature of the charges, the Court finds it reasonable to provide a separate viewing room for victims and their families.

**Media Information**

36. The WDNY Pilot Media Plan is available on the Western District of New York website:

https://www.nywd.uscourts.gov/sites/nywd/files/WDNY%20Pilot%20Media%20Plan.pdf

It provides comprehensive information for the media, including information about applying for Credentialed Media status. The Court refers below to some parts of the Pilot Media Plan. Members of the media should refer to the Pilot Media Plan for additional information.

37. Credentialed Media means "an individual who has been issued a WDNY Media Card." WDNY Pilot Media Plan, ¶ 4.4.

38. Individual members of the media may apply for Credentialed Media status. "Credentialed Media have broader latitude to possess and use electronic devices in the courthouse, may have access to dedicated workspace, and may receive priority courtroom seating in high-profile cases." WDNY Pilot Media Plan, ¶ 8.

39. Members of the media may not bring any electronic devices into the main jury selection courtroom, the main trial courtroom, or any overflow courtroom.

40. The Court encourages Credentialed Media to enter into a press pool or agree to rotate who will be allowed in the courtroom during jury selection and trial. As stated in the Pilot Media Plan, "[i]f demand exceeds the number of reserved seats, the Clerk of Court will determine seating." WDNY Pilot Media Plan, ¶ 8.6(D).

**Jurors**

41. No one may depict or identify individual jurors or potential jurors at any time during the proceedings in any manner including, but not limited to, photographing, videotaping, or sketching. A "juror" is anyone who has been sworn to serve as a juror in this case. A "potential juror" is anyone in the jury pool until that person is excused from service or sworn as a juror.

42. Any attempt to contact or interact with any juror or potential juror is strictly prohibited. Conversations, interviews, and written communications with potential jurors before the completion of jury selection and with jurors, including alternates, at any time before the Court discharges the jury at the conclusion of the proceedings are prohibited.

43. Potential jurors who have been excused from service may consent to being interviewed by the media or other persons. On the other hand, excused potential jurors may decline to discuss this case with anyone. If an excused potential juror communicates that he or she does not want to discuss the proceedings, there should be no further attempts to contact the excused potential juror.

44. The rules about communications with jurors and potential jurors stated in paragraphs 42 and 43 apply equally to communications with family members or people living in the same household as any juror or potential juror.

45. When the jury has been discharged after its final verdict, any juror may consent to being interviewed by the media or other persons. Jurors are not obligated to discuss this case with anyone at the trial's conclusion, and if a juror

communicates that he or she does not want to discuss the proceedings, there should be no further attempts to contact the juror.

**Witnesses**

46. Prospective witnesses shall arrive well in advance of the time they are scheduled to testify and proceed to Courtroom 9W. A witness exclusion order will be in effect. No witnesses (other than victims and their families, Payton Gendron's family, and those specifically identified by the Court) may enter the courtroom or any overflow courtrooms any day or time before their testimony. Government and defense counsel are responsible for ensuring their witnesses' compliance with the requirements of this paragraph.

**Other Provisions**

47. The United States Marshal, his Deputies, and Court Security Officers shall be responsible for maintaining order and decorum in the courthouse and its courtrooms. All orders given by the United States Marshal, his Deputies, and Court Security Officers shall be deemed orders of this Court and must be followed immediately.

48. For safety reasons, no one may block, and no activity may take place at, any point of ingress or egress to the courthouse, courtroom, stairwells, and elevators.

49. This order may be modified or amended at any time by the Court without further notice.

50. Any violation of any portion of this order may result in exclusion from the courtrooms, the courthouse, and the media room; revocation of media privileges; or other sanction deemed appropriate by the Court.

SO ORDERED.

Dated: September 28, 2026
Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE