***United States v. Payton Gendron***

**22-CR-109-LJV**

# DEFENDANT'S EXHIBIT A

## DECLARATION OF JEFFREY MARTIN

The undersigned, Jeffrey Martin, declares as follows:

1. My name is Jeffrey O'Neal Martin. I am over the age of majority and provide this declaration voluntarily and based on my personal knowledge.

2. I hold a Bachelor's degree in Mathematics and Economics from Vanderbilt University and a Master's degree in Economics from the University of Chicago.

3. I am employed as a consultant on statistical issues, a consultant on actuarial issues, and as a consultant to political campaigns. I have been qualified as an expert on statistical issues in Federal Courts and State Courts.

4. Since 1997, I have been involved in cases involving challenges to the jury lists in Federal and State Courts. I have worked on over 50 cases in Federal Courts.

5. I have been asked by counsel for Payton Gendron to review the construction and demographics of the jury list that will be used to select trial jurors in this case.

### SUMMARY OF FINDINGS

6. The data supplied shows an under-representation of Black or African-American persons in the 2025 Qualified Jury Wheel used to select trial jurors. The under-representation is statistically significant.

7. The data supplied shows an under-representation of Hispanic or Latino persons in the 2025 Qualified Jury Wheel used to select trial jurors.

8. The data supplied shows an under-representation of Male persons in the 2025 Qualified Jury Wheel used to select trial jurors.

9. A historical review of AO-12 Forms shows consistent statistically significant under-representation of Black or African-American persons.

### THE JURY ELIGIBLE POPULATION OF THE WESTERN DISTRICT OF NEW YORK

10. The jury eligible population is defined as the population that is aged 18 years and older and who are citizens of the United States. While there are other requirements to serve as a juror besides age and citizenship, this definition is standard for the analysis of jury lists and is the basis for census numbers on the Administrative Office of the U.S. Courts' Form AO-12 ("Report on the Operation of the Jury Selection Plan* Completed Pursuant to 28 U.S.C. § 1863(a)"). Form AO-12 is used by federal Courts and Clerks to assess the representativeness of their jury lists.

11. The census numbers used by federal Courts and Clerks are the United States Census Bureau's American Community Survey 5 Year Average which is published every year. The most current numbers, are the census numbers for the year 2024. This analysis will use the 2024 census numbers.

12. Historically, the American Community Survey 5 Year Average numbers for a year are released in the following year, but as of August 4th, 2026, the United States Census Bureau is still determining when the numbers for 2025 will be released.

13. The Form AO-12 dated May 15th, 2026 for the current Master Jury Wheel refilled on October 1st, 2025, uses the American Community Survey 5 Year Average for the year 2020.

14. The trial jurors will be selected from the Buffalo Division of the Western District of New York from the Master Jury Wheel refilled on October 1st, 2025.

15. Using the 2024 American Community Survey 5 Year Average numbers, the jury eligible population for the Buffalo Division of the Western District of New York includes 1,202,562 persons and is 82.54% White persons, 8.64% Black or African-American persons, 0.50% American Indian or Alaska Native persons, 1.98% Asian persons, 0.02% Native Hawaiian or Pacific Islander persons, 2.06% persons of some other race, and 4.26% multi-racial persons. The jury eligible population is 4.61% Hispanic or Latino persons. The jury eligible population is 48.63% Male and 51.37% Female.

16. Note that the Post-Enumeration Survey conducted by the United States Census Bureau found that Black or African-American persons, American Indian and Alaska Native, and Hispanic or Latino persons were statistically significantly under-counted in the 2020 decennial census. If census numbers were adjusted for this undercount, the under-representation shown in the statistical analysis for Black or African-American persons and Hispanic or Latino persons would be greater.

**STATISTICAL ANALYSIS OF THE DATA FOR THE BUFFALO DIVISION**

17. The 2025 Master Jury Wheel refilled on October 1st, 2025 used to select trial jurors in this case does not include demographic information and includes some ineligible and exempt persons and potentially duplicated persons.

18. Self-reported information on race, gender, and Hispanic ethnicity is collected once a person submits a qualification questionnaire.

19. The 2025 Qualified Jury Wheel as reported on Form AO-12 for the Buffalo Division is used in the statistical analysis of the representativeness that follows.

20. From the supplied Form AO-12, the 2025 Qualified Jury Wheel for the Buffalo Division includes 4,796 persons with self-reported racial information and is 86.34% White

persons, 6.07% Black or African-American persons, 1.17% American Indian or Alaska Native persons, 2.44% Asian persons, 0.19% Native Hawaiian or Pacific Islander persons, 1.67% persons of some other race, and 2.13% multi-racial persons (excluding 31 persons without self-reported racial information). The 2025 Qualified Jury Wheel is 4.19% Hispanic or Latino persons (excluding 55 persons without self-reported Hispanic ethnicity). The 2025 Qualified Jury Wheel is 47.65% Male and 52.35% Female (excluding 51 without self-reported gender).

21. There are several standard statistical analyses used to analyze the under-representation of a distinctive group. The most common and easiest to calculate are Absolute Disparity and Comparative Disparity. From a scientific perspective, the number of Standard Deviations from Expected or Statistical Decision Theory shows whether the under-representation of a group is systematic or merely the result of "luck of the draw."

**ABSOLUTE DISPARITY IN THE DATA FOR THE BUFFALO DIVISION**

22. Absolute Disparity, which is the difference between the percent representation of a group in the population and the percent representation of the same group in the jury list, has the benefit of being very easy to calculate. Once Absolute Disparity is calculated, then there is a judgment of whether the Absolute Disparity is great enough to reflect a non-representative jury list. There is no scientifically determined threshold to reflect a non-representative jury list, only that more Absolute Disparity is worse than less.

23. For example, Absolute Disparity is much harsher on smaller populations than it is on larger populations. A set threshold of acceptable Absolute Disparity of 10% would allow the complete exclusion of Black or African-American persons (8.64 of the population) or Hispanic or Latino persons (4.61% of the population).

24. The Absolute Disparity for Black or African-American persons on the 2025 Qualified Jury Wheel is 2.57% under-representation (8.64% minus 6.07%).

25. The Absolute Disparity for Hispanic or Latino persons on the 2025 Qualified Jury Wheel is 0.42% under-representation (4.61% minus 4.19%).

26. The Absolute Disparity for Male persons on the 2025 Qualified Jury Wheel is 0.97% under-representation (48.63% minus 47.65%).

**COMPARATIVE DISPARITY IN THE DATA FOR THE BUFFALO DIVISION**

27. In response to the shortcomings of Absolute Disparity, Comparative Disparity has also been used to analyze jury lists. As a formula, Comparative Disparity is the Absolute Disparity of a group divided by the population percentage of the group. Comparative Disparity (also known as Relative Disparity), or the rate at which a group is under-represented or over-represented, treats smaller groups in the same way that it treats

larger groups. That is, Comparative Disparity takes into account the relative size of the distinctive group. If there is a 50% Comparative Disparity under-representation, it reflects that half of the group is missing whether from a larger group such as White persons (82.54%) in the Buffalo Division, or a smaller group such as Black or African-American persons (8.64%). Like Absolute Disparity, there is no scientifically determined threshold of non-representativeness except that more Comparative Disparity under-representation is worse than less.

28. Note that, mathematically, since the population percentage of a group can never be greater than 100% or 1.00, Comparative Disparity which is divided by something less than or equal to 1.00, will always be greater than Absolute Disparity.

29. The Comparative Disparity for Black or African-American persons on the 2025 Qualified Jury Wheel is 29.78% under-representation (2.57% divided by 8.64%). That is, more than a quarter of the Black or African-American persons expected to be in the Qualified Jury Wheel are missing.

30. The Comparative Disparity for Hispanic or Latino persons on the 2025 Qualified Jury Wheel is 9.14% under-representation (0.42% divided by 4.61%).

31. The Comparative Disparity for Male persons on the 2025 Qualified Jury Wheel is 2.00% under-representation (0.97% divided by 48.63%).

**STANDARD DEVIATIONS FROM EXPECTED IN THE DATA FOR THE BUFFALO DIVISION**

32. Standard Deviation analysis or Statistical Decision Theory is a widely accepted and fundamental tool used by statisticians to analyze data. Standard Deviation analysis allows statisticians to scientifically determine if the under-representation of a distinctive group is statistically significant or not. That is, in any group drawn from the population such as a jury list, there are random factors that mean that the demographics of the jury list drawn from the population will not match the population demographics exactly because of "luck of the draw." However, standard deviations allow statisticians to scientifically determine whether the demographics of the jury list diverge substantially enough from the population demographics that the difference is not the product of chance but is systematic. Statisticians use a standard of 2 or 3 standard deviations to determine statistical significance. If there is no systematic under or over-representation of a distinctive group, the divergence of demographics should exceed 2 standard deviations only approximately 5% of the time while the divergence of demographics should exceed 3 standard deviations only approximately 0.5% of the time. In the same way that the decrease in probability from 2 standard deviations to 3 standard deviations from expected is much greater than 1.5 times (or 3/2 times), higher standard deviations from expected exponentially reduce the probability. The probability of more than 5 standard deviations from expected is practically 0.00%. The smaller the sample size, the larger the range of possible outcomes and so the less a non-random factor can be determined.

33. The percentage of Black or African-American persons in the 2025 Qualified Jury Wheel differs from the percentage of Black or African-American persons in the jury eligible population by more than 6 standard deviations. The under-representation of Black or African-American persons is statistically significant. That is, the under-representation is a product of a systematic non-random factor.

34. The percentage of Hispanic or Latino persons in the 2025 Qualified Jury Wheel differs from the percentage of Hispanic or Latino persons in the jury eligible population by more than 1 standard deviation.

35. The percentage of Male persons in the 2025 Qualified Jury Wheel differs from the percentage of Male persons in the jury eligible population by more than 1 standard deviation.

**HISTORICAL DISPARITY OF THE BUFFALO DIVISION**

36. Form AO-12s were supplied for other Master Jury Wheels for the Buffalo Division showing a historical view of representativeness. Form AO-12 was supplied for the Master Jury Wheel refiled on August 1st, 2017, October 10th, 2018, October 1st, 2019, September 24th, 2020, September 21st, 2021, October 11th, 2022, and October 1st, 2025 (used to select trial jurors in this case).

37. Form AO-12 for the Master Jury Wheels refiled on August 1st, 2017, October 10th, 2018, and October 1st, 2019 include less than 200 persons in the Sampling for the Qualified Jury Wheel while later Form AO-12s include more than 7,000 persons. Because of the small numbers reported and their inconsistency with later Form AO-12s the forms are not included in the analysis of historical disparity.

38. The Qualified Jury Wheel as reported on Form AO-12 for the September 24th, 2020 Master Jury Wheel includes 7,578 persons and is 6.17% Black or African-American persons, 2.82% Hispanic or Latino persons, and 49.11% Male persons.

39. The Qualified Jury Wheel as reported on Form AO-12 for the September 21st, 2021 Master Jury Wheel includes 7,924 persons and is 6.21% Black or African-American persons, 2.96% Hispanic or Latino persons, and 49.57% Male persons.

40. The Qualified Jury Wheel as reported on Form AO-12 for the October 11th, 2022 Master Jury Wheel includes 7,705 persons and is 6.51% Black or African-American persons, 3.58% Hispanic or Latino persons, and 48.97% Male persons.

41. The Qualified Jury Wheel as reported on Form AO-12 for the October 1st, 2025 Master Jury Wheel includes 4,796 persons and is 6.07% Black or African-American persons, 4.19% Hispanic or Latino persons, and 47.65% Male persons.

42. The under-representation of Black or African-American persons compared to the jury eligible population shows consistent statistically significant under-representation.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated this 10th day of September 2026

______________________________ Jeffrey Martin