# FEDERAL PUBLIC DEFENDER'S OFFICE
## WESTERN DISTRICT OF NEW YORK

MARIANNE MARIANO
***FEDERAL PUBLIC DEFENDER***
marianne_mariano@fd.org

MARYBETH COVERT
***SENIOR LITIGATOR***
marybeth_covert@fd.org

300 PEARL STREET, SUITE 200
BUFFALO, NEW YORK 14202

716-551-3341
FAX: 716-551-3346

ROCHESTER OFFICE
28 EAST MAIN STREET
FIRST FEDERAL PLAZA, SUITE 400
ROCHESTER, NEW YORK 14614
585-263-6201
585-263-5871-FAX

*REPLY TO: **BUFFALO***

October 13, 2026

Hon. Lawrence J. Vilardo
United States District Judge
United States Courthouse
2 Niagara Square
Buffalo, NY 14202

Re: *United States v. Gendron*, 22-cr-109 (LJV)

Dear Judge Vilardo,

We write to respectfully move the Court to make adjustments to its questioning of individual jurors. Specifically, we request:

(1) that the Court fully question jurors who respond affirmatively to Questions 1-5 that the Court poses to the panel, regarding information about the case that jurors may have been exposed to since they completed the juror questionnaire, to establish the full extent of information to which the juror may have been exposed. We further request that the Court then permit the parties an opportunity to ask follow-up questions, instead of proceeding to ask the juror to confirm that whatever he or she heard will not affect his or her ability to be a fair juror;

(2) that the Court omit questions that ask the juror whether he or she has "made up your mind in any way now whether the death penalty or life imprisonment without the possibility of release is the appropriate penalty here," or whether they "can still consider and weigh aggravating factors and mitigating circumstances" after the juror has made a statement that suggests they may be impaired in that regard, such as professing a belief that a person who takes a life necessarily forfeits their own life. Such questions communicate to the juror the correct or most acceptable answer, and by eliciting the juror's assurance that he or she can in fact be open-minded, the Court effectively precludes the parties from meaningfully exploring the juror's true feelings, unguided by what he or she thinks the law requires or what the Court would prefer to hear; and

(3) that the Court omit questions designed to elicit jurors' assurances that they can set aside anything they know or feel about the case. The Court told numerous jurors that, if seated, the Court will instruct them (a) that they must set aside anything they have learned about the case from outside the courtroom and (b) that they must base their decision on the facts presented in

the courtroom and the instructions on the law that the Court gives them, and then asked them (c) if they had any concerns about their ability to follow those instructions. This question suffers from the same infirmity as Questions 8 and 9 to which the defense objected via letter motion filed on October 12, 2026. Namely, the question telegraphs to the juror the socially desirable answer and invites them to provide it by offering their assurance that they will do what the Court tells them to do and will follow the law. Again, once the juror has offered such assurances, meaningful exploration of feelings and attitudes that may in fact be a basis for excusal for cause is not possible.

It is the Court's obligation to determine whether a juror's state of mind is such that his or her "bias, prejudice, or preconception" will impair his or her ability to render an impartial verdict on the question of guilt and or penalty. *Dingle v. State*, 759 A.2d 819, 825 (Md. 2000) (noting that "it is the trial judge that must decide whether, and when, cause for disqualification exists for any particular venire person"). This function requires the Court to make credibility findings for, even with the best and most honest intentions, a potential juror may fail to recognize that their own judgment may be compromised. The parties must therefore be permitted the opportunity to ask sufficient questions of the juror to uncover such evidence of unconscious bias as may be present.

"'If there is any likelihood that some prejudices in the jurors' mind which will even subconsciously affect his decision of the case, the party who may be adversely affected should be permitted questions designed to uncover that prejudice.'" *Id.* at 824 (quoting *Bedford v. State*, 566 A.2d 111, 117 (1989); *see also Morgan v. Illinois*, 504 U.S. 719, 735 (1992) ("As to general questions of fairness and impartiality, such jurors could in all truth and candor respond affirmatively, personally confident that such dogmatic views are fair and impartial, while leaving the specific concern unprobed."); *United States v. Sampson*, No. 01-10384, 2016 WL 11726909, at *3 (D. Mass Oct. 7, 2016) ("I do not find that Juror 155 was dishonest in response to such questions. However, his summary assurances following questions which suggested a desirable response on these important subjects do not persuade me that he could discharge his duties as a juror in this case in a fair and impartial manner.").

The juror's own subjective assessment of his or her own impartiality and fairness, no matter how confidently held and asserted, is thus an insufficient basis upon which to adequately determine whether there are grounds to excuse that juror for cause:

> Confession by a venire person is one way of establishing bias, but it is not the only way; the strike for cause process encompasses the situation where the motion to strike is made on the basis of information developed during the voir dire process, not simply where the prospective juror admits an inability to be fair and impartial.

*Id.* at 827 (internal quotations omitted); *see also United States v. West*, 458 F.3d 1 (D.C. Cir. 2006) ("as we have cautioned in the past, 'whether a juror can render a verdict based solely on evidence adduced in the courtroom should not be adjudged on that juror's own assessment of self-righteousness without something more'") (quoting *United States v Edmond,* 52 F.3d 1080, 1097 (D.C. Cir. 1995)).

When such a subjective assurance is offered in response to the Court, as opposed to counsel, it should be viewed with special caution. *See* Hon. Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 160 (2010) ("[E]mpirical research suggests that potential jurors respond more candidly and are less likely to give socially desirable answers to questions from lawyers than judges. As a district court judge for over fifteen years, I cannot help but notice that jurors are all too likely to give me the answer that they think I want, and they almost uniformly answer that they can "be fair").

The Court must consider, and the parties must be permitted an opportunity to uncover, "the answers he or she gives, the character and duration of the position, the venire person's demeanor, and any and all other relevant circumstances." *Dingle,* 759 A.2d at 828 (internal quotations omitted):

> Without information bearing on the relevant experiences and associations of the affected individual venire persons . . . the court simply does not have the ability, and, therefore, is unable to evaluate whether such persons are capable of conducting themselves impartially. Moreover, the petitioner is deprived of the ability to challenge any of those persons for cause. Rather than advancing the purpose of voir dire, [inadequate questioning and reliance upon the jurors own subjective assessment] distorts and frustrates it.

*Id.* at 830; *see also United States v Littlejohn*, 489 F.3d 1335, 1343 (D.C. Cir. 2007) ("'Undoubtedly,' we noted, 'there are occasions upon which further questioning is needed to permit the trial court to make its own judgment of a juror's impartiality based on objective facts, rather than relying exclusively on the jurors' subjective determinations of whether they [are] prejudiced") (quoting *West*, 458 F.3d at 11).

Respectfully submitted,

s/MaryBeth Covert
s/Sonya A. Zoghlin
Assistant Federal Public Defenders
Federal Public Defender's Office
Western District of New York

s/Julie Brain
Attorney at Law

s/Theresa M. Duncan
Law Office of Theresa M. Duncan LLC